## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| EMILY PINON, on behalf of herself and all others similarly situated, | ) ) ) | **CLASS ACTION COMPLAINT** |
| | ) | CASE NO: |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DAIMLER AG and MERCEDES BENZ USA, LLC | ) ) ) | |
| | ) ) | |
| Defendants. | ) ) | Jury Trial Demanded |

## INTRODUCTION

1.     Plaintiff Emily Pinon brings this putative class action complaint against Defendants Daimler AG and Mercedes Benz USA, LLC.

2.     Pinon brings this action individually and on behalf of all others similarly situated and alleges upon personal knowledge, information, and belief that Defendants Daimler AG ("Daimler") and Mercedes Benz USA, LLC ("MBUSA" and collectively "Mercedes") are liable to her and the proposed class under federal and state law for the design, manufacturing, marketing, and sale of vehicles with defective paint.

1

3.      The vehicles at issue in this litigation include, but may not be limited to, the 2009-2015 Mercedes C-Class, 2013-2015 Mercedes CLA-Class, 2003-2009, 2011-2015 Mercedes CLS-Class, 2012-2016 Mercedes E-Class, 2011-2015 Mercedes GLK-Class, 2014-2015 Mercedes G-Class, 2014-2016 Mercedes SL-Class, and 2012-2016 Mercedes SLK-Class ("Class Vehicles) which are painted in Mars Red.[1]

4.      This action is brought to remedy violations of law in connection with Mercedes's design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.  The Class Vehicles were painted with 590 Mars Red paint which has a serious defect that causes the exterior surface of the vehicles to microblister, peel, and bubble.  Mercedes knew, or should have known, of the issues with the paint prior to sale of the Class Vehicles but continued to put the latently defective product on the market.  As these issues came to light, Mercedes breached its express and implied warranties by continuing to sell the defective vehicles and refusing to remedy the issues.

## **PARTIES**

5.      Plaintiff Emily Pinon ("Pinon") is an adult resident and citizen of Alabama.

---

[1] Discovery will enable Pinon to more precisely determine which model-years share the same uniform (and uniformly defective) paint.

6.     Defendant MBUSA is a Delaware corporation with its principal place of business in Atlanta, Georgia.

7.     MBUSA is a wholly owned subsidiary of Daimler.

8.     At all times relevant herein, MBUSA has been and has acted as an agent of Daimler and was and is subject to Daimler's control.

9.     Defendant Daimler is a German corporation with its principal place of business in Stuttgart, Germany.

10.     Mercedes designed, manufactured, marketed, distributed, sold, leased, and warranted the vehicles at issue.  Mercedes also developed and disseminated the manuals, warranty booklets, advertisements, and promotional materials relating to the vehicles.

11.     At all times relevant herein, Daimler (itself and through its related entities) engaged in the business of designing and manufacturing the Class Vehicles.

12.     Upon information and belief, Daimler was solely responsible for designing the Class Vehicles, including their defective exterior surfaces, and therefore is an essential party to this action concerning a design defect in the Class Vehicles' exterior paint.

13.     Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the design of Class Vehicles, the

manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the paint defect.

14.    Daimler has been directly involved in assisting, directing, and controlling MBUSA, and MBUSA's authorized dealers' handling of Class Member complaints regarding the paint defect.

15.    Daimler has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers and lessees of Class Vehicles. It established MBUSA as its wholly-owned subsidiary company. It named MBUSA with its official "Mercedes-Benz" title. It provided MBUSA with marketing and technical materials avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as nothing less than Daimler's presence in the United States for purposes of selling and leasing "Mercedes-Benz" brand vehicles and providing related services.

16.    Based on the foregoing actions, representations, and omissions, MBUSA's representations regarding the Class Vehicles that were the responsibility of Daimler in, for example, Daimler's design of the Class Vehicles, and were injured because of their purchase or lease of defective Class Vehicles.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

18.     This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law.

19.     This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367(a).

20.     This Court has personal jurisdiction over MBUSA because MBUSA is authorized to do business in this District, conducts substantial business in the District, has its principal place of business in the District, is at home in the District, and some of the actions giving rise to the complaint took place in the District. Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over MBUSA permissible under traditional notions of fair play and substantial justice.

21.     This Court also has personal jurisdiction over MBUSA under 18 U.S.C. § 1965 because MBUSA is found in, has an agent in, or transacts business in this District.

22.     This Court has personal jurisdiction over Daimler because Daimler has continuous and systematic general business contacts in this District.

23.     By headquartering its wholly owned subsidiary MBUSA in this District, and using MBUSA as its channel for marketing, distributing, warranting, selling and leasing the Daimler-designed Class Vehicles in the District and the United States, Daimler itself has deliberately taken affirmative steps to make Daimler-designed vehicles available to consumers in the District and the rest of Georgia, including Pinon and Class Members; created continuing obligations between Daimler and residents of the District; and purposefully availed itself of the benefits and protections of conducting business in the District.

24.     Daimler employees and representatives regularly visit MBUSA, thereby continuously conducting business in this District.

25.     Further, Daimler's wholly owned subsidiary MBUSA is at home in this District, and MBUSA's contacts in this District can be attributed to Daimler.

26.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants, as corporations, are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

27.     Additionally, Defendants transact business within the District, MBUSA has its principal place of business in this District, and some of the events establishing the claims occurred in this District.

## FACTS

28.     In November 2016, Pinon purchased a 2015 Mercedes C250, Vehicle Identification No. WDDGJ4HB3FG410029, in Mars Red from a dealership in Hoover, Alabama.

29.     At the time Pinon purchased her vehicle, it had 9,747 miles and came with an express four year or 50,000-mile limited warranty, whichever comes first.

30.     The warranty Pinon received is same as the one all Class Members received, whether they purchased their vehicle directly through Mercedes or through a subsequent used-car retailer.

31.     Pinon's Class Vehicle had not been wrecked nor had it been repainted – it has the original Mercedes paint from the factory.

32.     Pinon purchased her Class Vehicle for her personal, family, and household use and on most days and nights stores it inside her home's garage.

33.     Pinon expected her Class Vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that the paint on her Class Vehicle was defective. Had she known these facts, she would not have bought her Class Vehicle or would have paid less for it.

34.     Pinon first experienced problems with the Mars Red paint on her vehicle in within a short time of purchasing and in early 2018, one spot on her hood became so bad that it looked as though the clear coat was bubbling and peeling. The car was less than three years old at this point.

35.     The Mars Red paint and clear coat condition continued to deteriorate and in February 2018, Pinon took her vehicle to the Mercedes dealership in Hoover, Alabama.  The Mercedes dealership declined to help in any way.

36.     During the February 2018 visit, Mercedes personnel acknowledged that the Mars Red paint was defective and that they were aware of multiple other Mars Red vehicles having the same problem.

37.     The Mars Red paint continued to get worse showing defects in most body panels.  In June 2018, Pinon began a dialogue with Mercedes personnel via the "Mercedes Me" app in an attempt to resolve her issues.  The Mercedes representative instructed Pinon to take her car some 26 miles to the Irondale Mercedes dealership.

38.     During this June 2018 visit, Cecil Sims, a Mercedes representative, acknowledged multiple problems with other Mars Red Mercedes stating that her car needed to be sanded to raw metal, repainted, and that doing so was "major body work" and would result in at least a $2,000 depreciation.  He estimated the whole repainting process would take four to six weeks leaving Pinon without her vehicle during that time.

39.    Over the next few weeks, Pinon was given the "run around" by Mercedes – at times Mercedes acknowledged the issues promising to help address them and at other times simply offering to do some sort of discount on a new Mercedes.

40.    In late June 2018 and early July 2018, Pinon continued to have conversations with Mercedes including acknowledgement that the Irondale Mercedes dealership alone had been involved personally in repainting at least six Mars Red Mercedes for the same defect Pinon experienced.

41.    To repair and repaint Pinon's Class Vehicle, she would have to pay approximately $7,000.  Repainting the car would require sanding the vehicle to the metal and would depreciate the value of the vehicle by a minimum of $2,000.  There is no short cut – the Class Vehicles must be sanded and repainted using some color other than Mars Red.

42.    As an implied acknowledgement of the defects in the Mars Red paint, Mercedes no longer offers "Mars Red" and if Pinon's car was repainted she would no longer have a "Mars Red" vehicle making her Class Vehicle different and less valuable than what she purchased.

43.    The same defective Mars Red paint was applied to Class Vehicles.

44.    Ultimately, Mercedes has refused to repair or replace Pinon's vehicle, despite acknowledging the common Mars Red defect.

45.    Although it is difficult to see the extent of the defect via pictures, the

following pictures show Pinon's Mars Red paint today and the obvious defects:









46.     Pinon's vehicle is just one of thousands of Class Vehicles that suffer from an irreparable defect in the exterior paint that results in peeling, flaking, bubbling, erosion, and microblistering of the clearcoat. Upon information and belief, these conditions are all the result of defective paint which has plagued the Class Vehicles.

47.     Notwithstanding this long-standing problem and extensive knowledge of the issue, Defendant continued to advertise and sell the defective vehicles and

failed to issue an appropriate recall. It knowingly failed to provide truthful information about the defects of the Mars Red paint.

48.    For each Class Vehicle, Defendant issued an express warranty which covered the vehicle, including but not limited to, the exterior paint, warranting it to be free of defects in materials and workmanship at the time of purchase or lease.

49.    This warranty was a material factor in Pinon's decision to purchase a Class Vehicle.

50.    Pursuant to its express and written warranties, Defendant warranted the Class Vehicles, including the exterior surfaces, to be free of defects in design, materials, and workmanship, and warranted that repairs or replacements necessary to correct defects in material or workmanship arising during the first 48 months or 50,000 miles, whichever came first, would be made by authorized dealers, without charge.

51.    Defendant also sold or leased the Class Vehicles under implied warranties of merchantability. Defendant impliedly warranted the Class Vehicles to be merchantable, fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in a nondefective condition for use by their owners or lessees for the ordinary purpose for which they were intended and were not otherwise injurious. Defendant is under a duty to design, construct,

manufacture, inspect, and test the Class Vehicles so as to make them suitable for the ordinary purposes of their use.

52.    Defendant breached its warranties for the Class Vehicles as a result of the latent defect with the Mars Red paint. Despite acknowledging the defect, Defendant breached its warranties by failing to repair the paint as warranted, and otherwise continuing to use the defective paint on its vehicles.

53.    In breach of Defendant's warranties, the Class Vehicles are defective, unfit for the ordinary purposes for which they are intended to be used, and not merchantable.

## Mercedes's Marketing and Concealment

54.    Upon information and belief, Mercedes knowingly manufactured and sold the Class Vehicles with the paint defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles' exterior paint.

55.    Mercedes directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

56.    Mercedes's marketing material describes the various Class Vehicles as "state-of-the-art," "luxury," "fine craftsmanship," and "the most advanced vehicles on the road." Mercedes slogan for its vehicles is "the best or nothing."

57.     Mercedes itself has recognized the importance of the quality of paint used on its vehicles.  Mercedes discusses its paint process on its website, stating:

**Because of high volumes built each day, it is paramount that we achieve high quality levels expected of Mercedes as well as implementing measures to continuously improve. Paint is not just about color. The paint also protects the body. This means protecting it from corrosion and sealing it from the environment.**

58.     Mercedes has further emphasized "[t]he purpose of the clear coat is to protect the color from damage due to the outside elements and UV damage."

59.     Although Mercedes knew of the clear coat's propensity to peel, blister, flake, and bubble on vehicles with the defective Mars Red paint, it failed to notify Pinon and Class Members of this prior to their purchase of the vehicle.

60.     Instead, Mercedes informed consumers that "[d]efects in paint, trim or other appearance items are normally taken care of during our new vehicle preparation or by the authorized Mercedes-Benz Center during new vehicle inspection."

61.     When Pinon purchased the vehicle, she relied upon representation of Mercedes that the cars had been inspected and any paint defects were "taken care of" prior to placing the vehicles on the market.  Further, Pinon relied on the representation that her vehicle would "achieve [the] high quality levels expected of Mercedes" and that if Mercedes had knowledge of a defect it would "[implement] measures to continuously improve."

62.     Pinon and Class, in deciding to purchase the Class Vehicles, relied upon Mercedes to inform the public and potential purchasers of Mercedes cars of any defects in the Class Vehicles, including defects in the Mars Red paint.  Mercedes failed to inform Pinon and Class of the defect with the Mars Red paint, and Pinon and Class would not have purchased the vehicles had they known of the defects in the paint, or they would have paid a much lower price for the vehicles had they known of the defect.

**A.     Mercedes Knew of the Mars Red Paint Defect Prior to Sale or Lease of the Class Vehicles.**

63.     Defendant was aware of irreparable defects with the Mars Red paint used in Class Vehicles.  Defendant was aware of these defects at the time it advertised and sold the Class Vehicles and thereafter when it continued to disseminate information about the vehicles.

64.     At those times, the defects with the Mars Red paint that Mercedes knew about, or should have known about, included -- but were not limited to -- defects in the design, manufacture, materials, and workmanship of the vehicle.  Mercedes failed to inform Pinon about the defects, and the defects have rendered the vehicle unmerchantable.

65.     On information and belief, prior to the manufacture and sale of the Class Vehicles, Mercedes knew of the Mars Red paint defect through, or as

17

evidenced by, sources such as pre-release design and testing information; technical service bulletins; service center data; early consumer complaints made directly to Mercedes, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done, including testing in response to consumer complaints; aggregate data from Mercedes dealers; and other internal sources unavailable to Pinon and Class without discovery.

**B.    Mercedes Knew of the Mars Red Paint Defect from Its Own Technical Service Bulletins.**

66.    Defendant was aware of and on actual or constructive notice about the above referenced complaints and investigations.

67.    In fact, Defendant has previously issued a Technical Service Bulletin (TSB) concerning the defect with the Mars Red paint used on its vehicles. Upon information and belief, on June 12, 2014, Mercedes issued TSB #LI98.00-P-058914. The TSB concerns "[a]ll vehicles with 590 – Mars Red only" and cites the issues as peeling, flaking, or exhibiting bubbles under the surface of the exterior clearcoat finish.

**C.    Mercedes Knew of the Mars Red Paint Defect from Class Member Complaints Made Directly to Mercedes.**

68.    Mercedes also knew or should have known about the Mars Red paint defect based on complaints made directly to Mercedes. The large number of complaints, and the consistency of their descriptions of peeling, blistering, flaking,

and bubbling caused by the defective paint, alerted or should have alerted Mercedes to this substantial defect affecting a wide range of its vehicles.

69.    Information as to the full extent of complaints made directly to Mercedes about the defective paint is information presently in the exclusive custody and control of Mercedes and is not yet available to Pinon prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Mercedes and Mercedes dealerships about the paint issues they experienced. The number and consistency of these complaints should have alerted Mercedes to the existence of the Mars Red paint defect.

70.    Further, knowledge of the defect is evidenced by recognition of an issue with the Mars Red paint by every Mercedes' employee Pinon spoke with about her vehicle's paint issues when she herself went to complain directly to Mercedes.  For example, Pinon was specifically told by an employee at the Mercedes dealership that "Mercedes knew about the defect and it was definitely a problem with [Mercedes's] paint."

### D.    Mercedes Knew of the Mars Red Paint Defect from Repair Data.

71.    Mercedes also knew or should have known about the Mars Red paint defect because of the large number of repainting and repair jobs it performed on vehicles with Mars Red paint due to peeling, blistering, and bubbling.

72.     For instance, the sales manager at the Irondale Mercedes dealership expressed to Pinon that he had been involved in repainting up to eight vehicles with the Mars Red paint defect.

73.     Upon information and belief, Mercedes collects, reviews, and analyzes detailed information about repairs made on vehicles at its dealerships and service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within Mercedes's control and unavailable to Pinon prior to discovery.

### E.     Mercedes Knew of the Mars Red Paint Defect from Class Member Complaints Collected by NHTSA's Office of Defect Investigations.

74.     Mercedes knew or should have known about the Mars Red paint defect based on manufacturer communications with the NHTSA.

75.     Federal law requires automakers like Mercedes to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

76.     Thus, automakers should and do monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers ongoing obligation to identify potential defects in their vehicles, including design-related defects, such as paint defects causing peeling, flaking, and bubbling.

77.    From its monitoring of the NHTSA databases, Mercedes knew or should have known about the defective Mars Red paint which caused peeling, flaking, and bubbling in its vehicles.

78.    NHTSA's publicly available ODI database contains only complaints made in the past five years on its website; thus complaints made before 2013 are not readily accessible. Mercedes, however, had contemporaneous and on-going access to the NHTSA consumer complaint data and that information cannot be obtained by Pinon without discovery.  However, Pinon has been able to gain access to NHTSA's manufacturer communication data relating to the peeling, flaking, and bubbling issues with Mercedes' vehicles, as shown below:

| 10136017 | MERCEDES BENZ | E63 | 2009 | Humming, droning, vibrations, shuddering, jolting, slip |
|---|---|---|---|---|
| 10136017 | MERCEDES BENZ | SL63 AMG | 2009 | Humming, droning, vibrations, shuddering, jolting, slip |
| 10136016 | MERCEDES BENZ | CLS550 | 2015 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2014 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2013 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2012 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2011 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2009 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2008 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2007 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2006 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2005 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2004 | Clearcoat peeling / flaking / bubbling |
| 10136016 | MERCEDES BENZ | CLS550 | 2003 | Clearcoat peeling / flaking / bubbling |
| 10136015 | SMART | FORTWO | 2017 | Brake pedal/carpet seal does not fit properly |

## Safety Issue Type: Manufacturer  Communications

**June 12 2014**    Manufacturer Communication Number: 10136016

### Components: STRUCTURE

**NHTSA ID Number**    10136016

**Manufacturer Communication Number**    LI98.00-P-058914
**Summary**

Clearcoat peeling / flaking / bubbling

### Affected Products (12)

#### Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| MERCEDES BENZ | CLS550 | 2003-2009, 2011-2015 |

| 10135679 | MERCEDES-BENZ | CLA117 | 2011 | 7G-DCT: FC 06A6D0 and FC 060A00 stored in fault memory |
|------|------|------|------|------|
| 10135678 | MERCEDES-BENZ | MERCEDES-BENZ | 9999 | Clearcoat peeling / flaking / bubbling |
| 10135677 | MERCEDES-BENZ | MERCEDES-BENZ | 9999 | Status of Parts Ordering - Passenger Cars |

## Safety Issue Type: Manufacturer  Communications

**May 10 2016**    Manufacturer Communication Number: 10135678

### Components: EQUIPMENT, STRUCTURE

**NHTSA ID Number**    10135678

**Manufacturer Communication Number**    LI98.00-P-058914
**Summary**

Clearcoat peeling / flaking / bubbling

### Affected Products (1)

#### Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| MERCEDES-BENZ | MERCEDES-BENZ | 9999 |

79.     As the communications show, Mercedes was, or should have been, aware of and monitoring these issues, and thus should have known about the Mars Red paint defect as early as 2003.

**F.     Mercedes Knew of the Mars Red Paint Defect Based on Class Member Complaints on Public Online Forums.**

80.     In addition to complaints made directly to Mercedes and communications with the NHTSA, many Class Vehicle owners posted complaints about the Mars Red paint defect on public online vehicle owner forums.   The following is a small sampling of such complaints:

- "2013 Mercedes 250 coupe mars red paint defect. Paint is failing underneath the clear coat causing large blotches." Posted on www.lemonlaw.com in January 2018.

- "I just purchased my first (and maybe last) C250 a little over a month ago from a large dealership in the DFW area. I chose it over a BMW… which leaves me doubting my decision, primarily for its color- Mars red. Last weekend I noticed a bubble which turned out to be a baseball size area on the front passenger side door where the clear coat and paint was missing. The dealer says they can't do anything about it because I didn't purchase the 'additional' interior/exterior insurance. Now customer service from MB tells me it's not covered under the manufacturer's warranty. I haven't even made my first car payment and I am dealing with this nightmare. Any suggestions are appreciated!" Posted on mbworld.org in February 2016

- "I am shocked that people still don't know about the problem with Mars/FireOpel red paint. Its been ongoing now for 10 years. And only now has Mercedes discontinued the colour. They refuse to say there has been a problem with the paint and even the actual paint manufacturers wont admit who or what is at fault. My SLK 172 has had a full back to bare metal respray

ind Dec 2015 and now its back in again having another Back to metal respray. That's 2 in 2 years." Posted on mbworld.org in February 2017.

- "Mercedes-Benz totally ignores the customer complaint. Will even go as far as to lie to you and literally hang up the phone on you! I bought a slk280 used with only 14,000 miles on it within a year and a half. I noticed that the clear coat was starting to come on. (sic) I contacted the dealership where I bought it. They told me that it was probably acid rain so I contacted Mercedes and they said that they had no problems with their paint. I believe them. 2 years later my problems way worse and then I find out that other people with red and silver paints are having problems with the clear coat peeling!" Posted on consumeraffairs.com in September 2016.

- "Bought new 2009 C300. Only has 40,000 miles. Biggest junk we ever owned. Driver seat came apart. Paint on front bumper cover and all door handles peeling off (all plastic areas). Dealer agreed to repaint. After 1 year it's happening again (Color is Mars Red)." Posted on consumeraffairs.com in April 2017.

- "I have a 2014 Mercedes GLK 350 with AMG package an Mars Red. We bought brand new about 18 months ago and the clear coat last week started coming off. The whole car is blistering as well." Posted on mbworld.org in December 2015.

- "I bought a 2014 Mars Red Mercedes SLK250 in November of 2013. I was happy with my car up until a month ago when I saw some problem with the paint. It looked like bubbling on the trunk and I saw a few more spots on the hood. I took it down to the dealership were I got the car, (Mercedes of Cutler Bay, Florida). My service tech told me that it was the clear coat that was coming off and this was a problem that this color has, and that the warranty would cover the repair, which would be a total strip down and repaint the car, but he warned me of by the car bring repainted that it would greatly depreciate the value of the car, he suggested that they send pictures to Mercedes. That was done and Mercedes had told the dealership that they would only honor the warranty. Nothing was said about the depreciation that I would have to take. This is not my fault!!! It is a factory problem that they knew about before I got my car. No one ever disclosed while buying the car that Mercedes was experiencing a problem with Mars Red. There are many references on the

24

internet that people just like me have been having the same issue with the same color MARS RED. My SLK 250 only has 6,700 miles it is in perfect condition, never in any accidents or scratches or any damages at all. It is very unfair for me to have to take a large depreciation on a NEW CAR." Posted on mbworld.org in August 2015.

- "I'm currently having the same issue with my Mars Red '13 C250 Coupe. The entire car is discolored! The whole paint job looks "oxidized," except on the plastic bumpers. It's done this twice now, both times when the weather is up and down temps and rainy. Evidently there are problems with the mars red paint and I will probably need a whole new paint job." Posted on mbworld.org in November 2014.

- "Hey, been lurking for a while. I have a '13 C250 coupe and while washing it today, I noticed some discoloration on the truck lid. To my amazement the paint is completely faded like an old GM car from the 80's. Took to local MB dealer and they said "Mars Red is having an issue." Waiting for body shop to call me to schedule our COMPLETE repaint!! Has anyone else had this issue?" Posted on mbworld.org in November 2014.

- "2013 E350 Mars Red Paint Problem: Anyone else encounter this? Went to the dealer for something else and noticed cloudy bubbles under the clear coat in the rear left QP. Service guy says we'll let the mechanic check it out. Two days later they tell me they had found them all around the car and that they had to REPAINT the entire vehicle! According to the service manager, Mercedes corp. didn't even hesitate because they knew this was an issue. My next question is what will this do to the value of my car? If they have to remove every body panel I can't imagine it will be as tight as it was from the factory when they put it back together. Three weeks in and another two to go. I'm getting sick of this little 350 SUV they gave me. NOT the same." Posted on mbworld.org in December 2014.

81.    As shown by this small sampling of complaints from forums and websites such as www.mbworld.org, www.consumeraffairs.com, and www.lemonlaw.com, consumers have been vocal in complaining about the Mars

Red paint defect and the damage it has caused. A multi-billion dollar vehicle design and manufacturing company such as Mercedes undoubtedly tracks and has tracked such sites and was aware or should reasonably have been aware of the Mars Red paint defect in the Class Vehicles.

## CLASS ACTION ALLEGATIONS

82.    Pinon brings this action on behalf of herself and other similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23. The Classes which Pinon seeks to represent are composed of and defined as (collectively "Class"):

    a. A class of all consumer residents in the United States who own, owned, lease, or leased a Class Vehicle.

    b. A subclass of all consumer residents in Alabama who own, owned, lease, or leased a Class Vehicle.

83.    The following persons are excluded from the definition of the Class:

    a. U.S. District Court judges, magistrate judges of any U.S. District Court, judges of the U.S. Court of Appeals for the Eleventh Circuit, and U.S. District Court personnel having any involvement with administration and/or adjudication of this lawsuit;

    b. Class counsel and their employees; and

    c. Employees of Defendant.

84.     This action has been brought and may properly be maintained as a Class action pursuant to the provisions of the Federal Rules of Civil Procedure, for these reasons:

a.     Members of the Class are geographically distributed throughout the United States and exceed 1,000 in total so that their joinder is impractical; and

b.     Common questions of law or fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.

c.     Pinon's claims are typical of the claims of the members of the Class under Federal Rule of Civil Procedure 23. Each member of the Class either owns, owned, leases, or leased a Class Vehicle.

d.     Pinon will fairly and adequately protect the interest of the Class as required by Federal Rule of Civil Procedure 23. Pinon has no interests which are adverse to the interest of the Class. Pinon has retained counsel who has substantial experience in the prosecution of Class actions.

e.     The prosecution of separate actions by individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant; or (ii) adjudications

with respect to individual members of the Class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interest.

f.   Pursuant to Federal Rule of Civil Procedure 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to Pinon and Class, causing injury to them and making Class-wide relief appropriate, specifically declaratory and injunctive relief.

g.   The questions of law or fact common to the Class predominate over questions affecting only individual members. A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23. The harm suffered by many individual members of the Class may not be great enough to warrant the expense and burden of individual litigation, which would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the complex factual issues of the case. By contrast, the conduct of this action as a Class action presents far fewer

management difficulties, conserves the resources of the parties and the court system, and protects the rights of each Class member.

## COUNT ONE
### (Breach of Express Warranty)

85.     Pinon, individually and for the Class, hereby incorporates each and every allegation as though fully set forth herein.

86.     For each Class Vehicle, an express written warranty was issued that covered the vehicle, including but not limited to the exterior paint, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

87.     Defendant breached its warranties by offering for sale and selling defective vehicles that were by design and construction defective, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

88.     Defendant further issued an express written warranty to the original owner, and each subsequent owner, that an authorized Mercedes-Benz Center would make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period, without cost.

89.     Defendant breach its warranties by refusing to repair or repaint the Class Vehicles for latent defects which arose during the warranty period or refusing to do so without charge to the owners.

90.     Defendant's breach of its express warranties proximately caused the Class to suffer damages in excess of $5,000,000.00.

91.     WHEREFORE, Pinon and the Class seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Class vehicles, replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Pinon and the Class may be entitled.

## COUNT TWO
## (Breach of Implied Warranty)

92.     Pinon, individually and for the Class, hereby incorporates each and every allegation as though fully set forth herein.

93.     Defendant impliedly warranted that the Class Vehicles, which it designed, manufactured, sold, or leased to Pinon and Class members, were merchantable, fit for their ordinary use, not otherwise injurious to consumers, and would come with adequate warnings.

94.     Persons who purchased a Class Vehicle are entitled to the benefit of their bargain: a vehicle without defective paint that peels, blisters, and bubbles.

95.     Because the Class Vehicles are equipped with the defective Mars Red paint, the vehicle purchased or leased and used by Pinon and Class members is unfit for use when sold, threatens injury to its occupants, and is not merchantable. Defendant breached the implied warranty of merchantability in the sale or lease of the Class Vehicles to Pinon and members of the Class in that the vehicles were not fit for their ordinary purpose and not merchantable.

96.     Had the fact that the Mars Red paint defect existed been disclosed at the time of sale, the Class Vehicles could not have been sold, or could not have been sold at the same price.

97.     Defendant's breach of its implied warranties proximately caused the Class to suffer damages in excess of $5,000,000.00.

98.     WHEREFORE, Pinon and the Class seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Class vehicles, replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Pinon and the Class may be entitled.

## COUNT THREE
## (Equitable and Injunctive Relief)

99.     Pinon, individually and for the Class, hereby incorporates each and every allegation as though fully set forth herein.

100.     Pinon, members of the Class, and the public will suffer irreparable harm if Defendant is not ordered to properly repair all of the Class Vehicles immediately, offer rescission to the Class by repurchasing their Class Vehicles for their full cost, reimburse the lessees of the Class Vehicles the monies they have paid toward their leases, recall all defective vehicles that are equipped with the defective Mars Red paint, and cease and desist from marketing, advertising, selling, and leasing the Class Vehicles.

101.     Defendant is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles sold.

102.     Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Class Vehicles.

103.     WHEREFORE, Pinon and the Class seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Class vehicles, replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Pinon and the Class may be entitled.

## COUNT FOUR
### (Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.)

104.    Pinon, individually and for the Class, hereby incorporates each and every allegation as though fully set forth herein.

105.    For each Class Vehicle, Defendant issued an express written warranty that covered the vehicle, including but not limited to the exterior surfaces, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

106.    Defendant breached its express warranties by offering for sale and selling defective vehicles that were by design and construction defective, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

107.    Pinon and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

108.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

109.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

110.    Defendant's written and implied warranties relate to the future performance of its vehicles because it promised that the Class Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

111.    Defendant has breached and continues to breach its written and implied warranties of future performance, thereby damaging Pinon and Class members, when their Class Vehicles fail to perform as represented due to an undisclosed Mars Red paint defect. Defendant fails to fully cover or pay for necessary inspections, repairs, and/or vehicle replacements for Pinon and the Class.

112.    Pinon, members of the Class, and the public will suffer irreparable harm if Defendant is not ordered to properly repair all of the Class Vehicles immediately, offer rescission to the Class by repurchasing their Class Vehicles for their full cost, reimburse the lessees of the Class Vehicles the monies they have paid toward their leases, recall all defective vehicles that are equipped with the defective Mars Red paint, and cease and desist from marketing, advertising, selling, and leasing the Class Vehicles.

113.    Defendant is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles sold.

114.    Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Class Vehicles.

115.    WHEREFORE, Pinon and the Class seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, and appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, the repair of all Class vehicles,

replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Pinon and the Class may be entitled. That relief is in excess of $5,000,000.00.

## COUNT FIVE
### (Unjust Enrichment)

116.    Pinon, individually and for the Class, hereby incorporates each and every allegation as though fully set forth herein.

117.    Defendant knew or should have known that Pinon and the Class paid for the Class Vehicles with the expectation that they would perform as represented.

118.    Pinon and the Class conferred substantial benefits on Defendant by purchasing the defective Class Vehicles. Defendant knowingly and willingly accepted and enjoyed those benefits.

119.    Mercedes' retention of those benefits is inequitable.

120.    As a direct and proximate cause of Defendant's unjust enrichment, Pinon and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest. That relief is in excess of $5,000,000.00.

## COUNT SIX
### (Fraud and Suppression Claim)
### (for Alabama Subclass)

121.    Pinon, individually and for the Alabama Subclass, hereby incorporates each and every allegation as though fully set forth herein.

122.    Pinon and the Alabama Subclass purchased or leased the Class Vehicles.

123.    Mercedes concealed and suppressed material facts concerning the quality of the Class Vehicles.

124.    Mercedes concealed and suppressed material facts concerning the quality of the exterior paint used on the Class Vehicles.

125.    Mercedes concealed and suppressed material facts concerning the Mars Red paint defect causing Class Vehicles' exterior surfaces to peel, flake, microblister, and bubble.  Mercedes knew that Pinon and Class Members would not be able to inspect or otherwise detect the latent defect prior to purchasing or leasing the vehicles.

126.    At all relevant times, Defendant had the duty and obligation to disclose to Pinon and Subclass the defects with the Mars Red paint in the Class Vehicles. Mercedes breached that duty by failing to disclose the issue with the defective paint and continuing to sell vehicles with the Mars Red paint, despite knowledge of the issues.

127.    Mercedes committed the foregoing acts and omissions in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Mercedes vehicles, that the Class Vehicles were world class, comfortable, warranted and reliable vehicles and concealed the information in order to prevent harm to Mercedes

and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the representations and omissions played a significant role in the decision to purchase or lease the Class Vehicles.

128.    Mercedes had a duty to disclose the paint defect in the Class Vehicles because it was known and/or accessible only to Mercedes; Mercedes had superior knowledge and access to the facts; and Mercedes knew the facts were not known to, or reasonably discoverable, by Pinon and Subclass. Mercedes also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality.

129.    As a result, Pinon and Subclass were misled as to the true condition of the Class Vehicles at purchase/lease.  The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Vehicles purchased or leased by Pinon and Subclass. Whether a manufacturer's products are as stated or backed by the manufacturer are material concerns to a consumer.

130.     Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, avoid recalls that would hurt the brand's image and cost money, and did so at the expense of Pinon and Subclass.

131.     Had Pinon and Subclass known the truth, specifically that the Mars Red paint was not durable and long-lasting and, to the contrary, was defective, they would not have purchased or leased their vehicles, or they would have paid far less to buy or lease them.

132.     Because of the concealment and/or suppression of the facts, Pinon and Subclass suffered pecuniary injuries, including, but not limited to, loss of value, inconvenience, and repair costs.  Mercedes' fraudulent concealment of the defect was the proximate cause of those losses.

133.     Additionally, Defendant omitted, suppressed, or concealed material facts of the defect of the Mars Red paint used on the Class Vehicles, leading to the same result: first, had Pinon and Subclass been informed of the truth, specifically that the paint was not durable and long-lasting and, to the contrary, was defective, they would not have purchased or leased their vehicles, or they would have paid far less to buy or lease them; and second, Pinon and Subclass suffered pecuniary injuries proximately caused by Mercedes' suppression of the material facts of the defect, and

those injuries include, but are not limited to, loss of value, inconvenience, and repair costs. Those injuries exceed $5,000,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Pinon, on behalf of HERSELF and all others similarly situated, request an order and judgment against Mercedes which –

1.      Certifies the Class and appoints Pinon and her counsel to represent the Class.

2.      Grants declaratory judgment to Pinon and Class.

3.      Enjoins Defendant from doing the wrongs alleged.

4.      Grants compensatory relief to Pinon and Class in the utmost amount allowed by law.

5.      Awards punitive damages against the Defendant in favor of Pinon and Class in the utmost amount allowed by law.

6.      Awards a reasonable attorneys' fees to Pinon and Class, as prescribed by law and for the common and public good obtained in this action.

7.      Grants such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## **DEMAND FOR JURY TRIAL**

Pinon and the Class hereby demand a trial by struck jury on all issues.

Dated this 21st day of August 2018.

Respectfully submitted,

*/s/ James F. McDonough, III.*
JAMES F. MCDONOUGH, III.
GA Bar No.:  117088
jmcdonough@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332

Taylor C. Bartlett
W. Lewis Garrison, Jr.
GA Bar No.: 286815
HENINGER GARRISON DAVIS, LLC
2224 1ˢᵗ Avenue North
Birmingham, Alabama 35203
Telephone:   (205) 326-3336
Facsimile:    (205) 326-3332
taylor@hgdlawfirm.com
lewis@hgdlawfirm.com

Steve Jackson
GA Bar No.: 387443
Jackson & Tucker, P.C.
Black Diamond Building
2229 First Avenue North
Birmingham, AL 35203
Phone: 205-252-3535
Fax: 205-252-3536
steve@jacksonandtucker.com

***Attorneys for Plaintiff***

## <u>LOCAL RULE 7.1 COMPLIANCE CERTIFICATE</u>

Pursuant to L.R. 7.1.D, this certifies that the foregoing document complies with the font and point selections approved by L.R. 5.1.C. The foregoing document was prepared using Times New Roman font in 14 point.

Dated: August 21, 2018.

*/s/ James F. McDonough, III.*
James F. McDonough, III (GA Bar #: 117088)
**Heninger Garrison Davis, LLC**
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
P: (404) 996-0860
F: (205) 380-8076
jmcdonough@hgdlawfirm.com
