# EXHIBIT 1

**TO MOTION FOR PRELIMINARY APPROVAL**

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

010-9145-8317/2/AMERICAS

# TABLE OF CONTENTS

1.  DEFINITIONS ............................................................................................................... 1

2.  DENIAL OF ANY WRONGDOING AND LIABILITY ....................................................... 7

3.  BACKGROUND ........................................................................................................... 7

4.  CONSIDERATION TO THE CLASS ............................................................................. 9

   A.  Reimbursement for Qualified Past Repairs .......................................................... 9

   B.  Coverage for Qualified Future Repairs ................................................................ 11

5.  PAYMENTS BY DEFENDANTS .................................................................................. 14

6.  RELEASE .................................................................................................................... 17

7.  APPROVAL OF THE SETTLEMENT; JUDGMENT AS TO DEFENDANTS ................ 20

8.  SETTLEMENT ADMINISTRATION AND NOTICE ...................................................... 21

9.  CLAIMS ADMINISTRATION AND CLAIMS PROCEDURE ......................................... 27

   A.  Reimbursement Claims for Qualified Past Repairs. ............................................ 27

   B.  Coverage Claims for Qualified Future Repairs .................................................... 31

10.  DISPUTE RESOLUTION ........................................................................................... 32

11.  TAXES ....................................................................................................................... 33

12.  MISCELLANEOUS TERMS ....................................................................................... 33

i

This Agreement is made and entered into by and between Emily Pinon, Gary C. Klein, Kim Brown, Joshua Frankum, Dinez Webster, and Todd Bryan ("Plaintiffs"), on the one hand, and Defendants Daimler AG and Mercedes-Benz USA, LLC ("MBUSA") (collectively, "Defendants"), on the other hand, to settle, compromise, release, and discharge the claims on behalf of Plaintiffs and all those similarly situated according to the terms and conditions herein.

## 1.   <u>DEFINITIONS</u>

As used in this Agreement (which, as defined below, includes the accompanying Exhibits), the following terms have the meanings set forth below. The plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be.

1.1    "590 Mars Red" means the exterior paint color marketed by Defendants as "Mars Red" or "Fire Opal," which is referenced by paint codes 590 or 3590.

1.2    "Administrative Costs" means all of the costs of the Notice Plan relating to this Settlement and the costs of administering and processing claims, disbursements of consideration, and other necessary and reasonable costs associated with administering this Settlement, including the compensation of the Settlement Administrator and the Third-Party Neutral. Administrative Costs shall be paid by Defendants.

1.3    "Agreement" means this Class Action Settlement Agreement and Release, including the notices and other documents contemplated by this Class Action Settlement Agreement and Release, and any amendments thereto. The Agreement may alternatively be referred to as the "Settlement" or "Settlement Agreement."

1.4    "Attorneys' Fees, Costs, and All Other Expenses" means the settlement amounts approved by the Court for payment to Class Counsel to cover attorneys' fees, costs, and any other expenses incurred by Class Counsel in this Litigation. Defendants are not responsible for any

1

other expenses, including but not limited to any costs and expenses of addressing objections and appeals, any claims by other plaintiffs' counsel for attorneys' fees or costs, and any other expenses incurred by or on behalf of any Plaintiffs, Plaintiffs' counsel, Class Members, or Class Counsel.

1.5     "Authorized Service Center" means any service center specifically authorized at the time of repair or presentment to provide warranty services for Mercedes-Benz vehicles, including authorized Mercedes-Benz dealerships and authorized Mercedes-Benz Service Centers, which are identifiable by ZIP code at

https://www.mbusa.com/mercedes/dealers/schedule_service.

1.6     "Claims Period" means the time during which Settlement Class Members may submit a Reimbursement Claim Form under the Settlement, and which is set forth in Section 9.4 of this Agreement.

1.7     "Class Counsel" means Heninger Garrison Davis, LLC, including W. Lewis Garrison, Jr., James F. McDonough, III, Taylor C. Bartlett, K. Stephen Jackson, and Travis E. Lynch.

1.8     "Class Notice" means the notice to the Settlement Class approved by the Court. The Settling Parties will cooperate to develop a proposed plain-English and user-friendly Class Notice to submit to the Court, for its approval with the motion for preliminary approval.

1.9     "Class Representatives" means the Plaintiffs in their representative capacity for the Settlement Class, as approved by the Court.

1.10    "Class Representative Service Award" means a payment, to be approved by the Court, to Plaintiffs in their capacity as Class Representatives to compensate them for their work on behalf of the Settlement Class, including participating in the Litigation, performing work in support of the Litigation, and undertaking the risks of Litigation.

2

1.11   "Court" means the Honorable Mark H. Cohen of the United States District Court for the Northern District of Georgia, or the Judge of the Northern District of Georgia assigned to preside over the above-captioned action if not Judge Cohen.

1.12   "Defense Counsel" means Defendants' counsel of record in the Litigation, Troy M. Yoshino, Eric J. Knapp, Dara D. Mann and Scott J. Carr of Squire Patton Boggs (US) LLP, and Stephen B. Devereaux and Madison H. Kitchens of King & Spalding LLP.

1.13   "Effective Date" means 14 days after the date on which any Final Order and Judgment entered pursuant to the Agreement becomes "final."  The Final Order and Judgment entered pursuant to this Agreement becomes "final" on the day after all appellate rights with respect to that Final Order and Judgment have expired or have been exhausted in a manner that conclusively affirms the Final Order and Judgment.  Thus, if there are no appeals filed, the Effective Date of this Settlement is seventy-five (75) days after the date when the Final Order and Judgment in this Litigation is entered.  If there are appeals, the Effective Date is 14 days after the date on which any appeals of the approval of the Settlement have been resolved in favor of the Settlement.

1.14   "Final Order and Judgment" means the order and judgment of the Court dismissing this matter with prejudice as to Defendants and approving this Agreement.

1.15   "Independent Service Center" means any vehicle repair service provider other than an Authorized Service Center.

1.16   "In-Service Date" means the date that the Subject Vehicle was first purchased or leased by any customer from an authorized Mercedes-Benz dealership.

1.17   "LI98.00-P-058914" means the Defendants' Technical Service Bulletin, LI98.00-P-058914, attached hereto as Exhibit A.

1.18    "Litigation" means *Pinon et al. v. Mercedes-Benz USA, LLC et al.*, Case No. 18-CV-03984-MHC (N.D. Ga.), pending in the United States District Court for the Northern District of Georgia.

1.19    "Litigation Claims" means the claims asserted by Plaintiffs in this Litigation alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat.

1.20    "Mediator" means the Honorable James Holderman (Ret.).

1.21    "Notice Date" means the date on which Class Notice is sent to the Settlement Class.

1.22    "Notice Plan" means the plan for disseminating Class Notice to the Settlement Class as required by this Court, Fed. R. Civ. P. 23(c)(2)(B), and the Class Action Fairness Act (28 U.S.C. § 1715), as described in Section 8 below.

1.23    "Person" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, and assignees.

1.24    "Plaintiffs" means Emily Pinon, Gary C. Klein, Kim Brown, Joshua Frankum, Dinez Webster, and Todd Bryan.

1.25    "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the settlement and directing that Class Notice be provided to the Settlement Class.  The Settling Parties will submit an agreed-upon proposed Preliminary Approval Order to the Court along with the motion for preliminary approval.

4

1.26    "Qualified Future Repair" means a repair performed in accordance with LI98.00-P-058914, at an Authorized Service Center on or after the Effective Date, after the requirements of Sections 4.B and 9.B have been met and upon confirmation that bubbling, peeling or flaking of the exterior clear coat is present and that such conditions are not caused by external influences such as automobile accidents, scratches, or road debris.  Qualified Future Repairs shall be limited to refinishing of affected areas only, in accordance with LI98.00-P-058914.

1.27    "Qualified Past Repair" means a repair that occurred before the Effective Date related to repainting any non-plastic exterior surface of a Subject Vehicle because of bubbling, peeling or flaking of the exterior clear coat and not caused by external influences such as automobile accidents, scratches, or road debris.  Qualified Past Repairs shall be limited to refinishing of affected areas only, in accordance with LI98.00-P-058914.

1.28    "Reimbursement Claim Form" means the Court-approved claim form that must be timely completed and submitted for a Settlement Class Member to be eligible for reimbursement for Qualified Past Repair(s) as set forth in Section 9.A of this Agreement.  A copy of the Reimbursement Claim Form that Class Members can download will be available on the settlement website, and there will also be an electronic version of the Reimbursement Claim Form that can be completed online and that allows for uploading of any required documentation to support a Claim. Together with the Settlement Administrator, the Settling Parties will cooperate to develop a proposed plain-English and user-friendly Reimbursement Claim Form to submit to the Court for its approval with the motion for preliminary approval.

1.29    "Settlement Administrator" means the qualified third-party appointed by the Court to administer the settlement, including implementation of the Notice Plan and claims administration.

1.30    "Settlement Class" means all current owners, former owners, current lessees, and former lessees of Subject Vehicles who purchased or leased their Subject Vehicle in the United States.  Excluded from the Settlement Class are:

a)      Persons who have settled with, released, or otherwise had claims adjudicated on the merits against Defendants that are substantially similar to the Litigation Claims related to the Symptoms Alleged (*i.e.*, alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat);

b)      Defendants and their officers, directors and employees, as well as their corporate affiliates and the corporate affiliates' officers, directors and employees;

c)      Counsel to any of the parties; and

d)      The Honorable Mark H. Cohen, the Honorable James Holderman (Ret.), and members of their respective immediate families.

1.31    "Settlement Class Member" means any Person who falls within the definition of the Settlement Class who has not timely and properly elected to opt out pursuant to Section 8.12 below.

1.32    "Settling Parties" means, collectively, Plaintiffs, all Settlement Class Members, and Defendants but excludes those Class Members that timely opt out of the Settlement.

1.33    "Symptoms Alleged" means what has been alleged and described as peeling, flaking, bubbling, fading, discoloration, and/or poor adhesion of a Subject Vehicle's original 590 Mars Red paint or original clearcoat.

6

1.34    "Third-Party Neutral" means the mutually acceptable neutral who shall be responsible for adjudicating disputes over Settlement claims, as described in Section 9.7 below.

1.35    "Subject Vehicle" means any Mercedes-Benz originally painted with 590 Mars Red paint and purchased or leased in the United States.  590 Mars Red paint was offered as an option for the following Mercedes-Benz vehicle types in the United States: C-Class (model years 2004-2015); GLK-Class (model years 2010-2015); CLS-Class (model years 2006-2007, 2009, 2014); CLK-Class (model years 2004-2009); S-Class (model years 2008, 2015, 2017); SL-Class (model years 2004-2009, 2011-2017); CL-Class (model years 2005-2006, 2013-2014); SLS-Class (model years 2014-2015); E-Class (model years 2005-2006, 2010-2017); G-Class (model years 2005, 2011-2017); GT-Class (model years 2016-2018); SLC-Class (model years 2017); SLK-Class (model years 2005-2016); and Maybach 57 (model year 2008).

## 2.    DENIAL OF ANY WRONGDOING AND LIABILITY

2.1    Defendants deny the material factual allegations and legal claims asserted by the Plaintiffs and Settlement Class Members in the Litigation, including, but not limited to, any and all charges of wrongdoing or liability, or allegations of defect, arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.

## 3.    BACKGROUND

3.1    A class action complaint, *Pinon, et al. v. Mercedes-Benz USA, LLC et al.*, was filed by plaintiff, Emily Pinon  against Daimler AG and MBUSA on August 21, 2018, in the United States District Court for the Northern District of Georgia alleging, on behalf of a putative nationwide class (and a proposed putative state subclass) that certain models of Mercedes-Benz vehicles contain defective 590 Mars Red paint in that they cause the Symptoms Alleged.

3.2    On October 24, 2018, Plaintiffs filed a First Amended Complaint adding plaintiff

7

Gary C. Klein and an additional proposed putative state subclass and related claims.

3.3     On January 31, 2019, Plaintiffs filed a Second Amended Complaint that, among other things, added Plaintiffs Kim Brown, Joshua Frankum, Nancy Pearsall, LaCresha Earley, and Todd Bryan, and claims arising under the laws of four additional states and additional proposed putative state subclasses.

3.4     On June 16, 2019, plaintiff Pearsall voluntarily dismissed her claims without prejudice.

3.5     On May 1, 2019, Defendants filed a motion to dismiss the Second Amended Complaint.  Plaintiffs opposed the motion on June 17, 2019.  Defendants filed a reply brief on July 17, 2019.

3.6     On November 4, 2019, the Court issued an order denying-in-part and granting-in-part Defendants' motion to dismiss.  In that order, the Court dismissed Plaintiffs' claims for breach of express warranty, breach of implied warranty, except for plaintiff Lacresha Earley's claim; equitable and injunctive relief; violation of the Magnuson-Moss Warranty Act, except for plaintiff Lacresha Earley's implied warranty claim; unjust enrichment; fraud and suppression as to plaintiff Gary C. Klein and the fraudulent concealment claims of Plaintiffs Emily Pinon, Kim Brown, Todd Bryan, and Joshua Frankum; and the Arkansas Deceptive Trade Practices Act claim) with respect to fraudulent concealment.  The Defendants' motion to dismiss as to all other Litigation Claims was denied.

3.7     On June 5, 2020, Plaintiffs filed an unopposed motion to substitute Plaintiff Dinez Webster in place of Plaintiff LaCresha Earley to represent the putative Louisiana Class. The court granted Plaintiffs' motion on June 22, 2020.  That same day, Plaintiffs filed the Third Amended Complaint, which was the same as the Second Amended Complaint except for the new allegations

related to Plaintiff Webster.

3.8     During the course of the Litigation, the Settling Parties and their counsel have litigated dispositive motions and conducted discovery, including written discovery, document productions, and vehicle inspections.  The parties have litigated their respective positions in connection with all aspects of the Litigation.

3.9     As a result of the Litigation, the Settling Parties and their counsel are thoroughly familiar with the factual and legal issues presented by their respective claims and defenses and recognize the uncertainties as to the ultimate outcome of the Litigation, and that any final result would require years of further complex litigation and substantial expense.

3.10    The Settling Parties agreed to mediate the case with the Honorable James Holderman (Ret.).  After mediation, the parties reached agreement on the material terms of a class action settlement, other than attorneys' fees, costs, and class representative service awards.  After a separate, further mediation session, the parties reached an agreement on attorneys' fees, costs and other expenses and class representative service awards, all subject to Court approval.  After further negotiations, these agreements were reduced to this writing.

3.11    This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended to or will be construed as an admission by Defendants that the Litigation Claims have merit or that Defendants bear any liability to Plaintiffs or the Settlement Class on those claims or any other claims, or as an admission by Plaintiffs that Defendants' defenses in the Litigation have merit.

4.      **CONSIDERATION TO THE CLASS**

A.      **Reimbursement for Qualified Past Repairs**

4.1     Settlement Class Members shall be entitled to submit claims for reimbursement of

9

out-of-pocket costs paid by them for Qualified Past Repairs to their Subject Vehicles, subject to the applicable requirements of Section 9.A below and the following limitations:

a) For a Subject Vehicle that received a Qualified Past Repair fewer than 7 years (84 months) or 105,000 miles from the Subject Vehicle's original In-Service Date, whichever occurred first, a Settlement Class Member making a qualifying claim shall, subject to the additional limitations governing repairs performed by Independent Service Centers set forth in Section 4.2, receive reimbursement of 100% of the cost incurred to perform the Qualified Past Repair;

b) For a Subject Vehicle that received a Qualified Past Repair that does not fall within category 4.1(a) and that is fewer than 10 years (120 months) or 150,000 miles from the Subject Vehicle's original In-Service Date, whichever occurred first, a Settlement Class Member making a qualifying claim shall, subject to the additional limitations governing repairs performed by Independent Service Centers set forth in Section 4.2, receive reimbursement of 50% of the cost incurred to perform the Qualified Past Repair;

c) For a Subject Vehicle that received a Qualified Past Repair that does not fall within category 4.1(a) or 4.1(b) and that is fewer than 15 years (180 months) or 150,000 miles from the Subject Vehicle's original In-Service Date, whichever occurred first, a Settlement Class Member making a qualifying claim shall, subject to the additional limitations governing repairs performed by Independent Service Centers set forth in Section 4.2, receive

10

reimbursement of 25% of the cost incurred to perform the Qualified Past Repair; and

d)      For a Subject Vehicle that received a Qualified Past Repair more than 15 years (180 months) or 150,000 miles from the Subject Vehicle's original In-Service Date, whichever occurred first, Defendants shall not be required to offer any reimbursement.

4.2      Claims for reimbursement of Qualified Past Repairs performed by Independent Service Centers shall be subject to Sections 4.1 above and 9.A below and the reasonable repair cost to be reimbursed shall not exceed 10% of what the same repair would have cost if it were performed at an Authorized Service Center; provided that, if there is any dispute concerning reimbursement related to an Independent Service Center repair, such dispute shall be resolved per Section 9.7.

4.3      There shall be no double recovery under the settlement.  Thus, if a Settlement Class Member is eligible for, or previously received, goodwill, extended warranty coverage, insurance, indemnity, or any other form of coverage for the repair, the total amount of any reimbursement due to the Settlement Class Member shall be offset against prior amounts given, and shall not exceed the limits set forth in this Section 4.A (*e.g.*, if the repair occurred at 8 years and 110,000 miles and was performed at an Authorized Service Center, but 30% of the repair was previously covered by goodwill or something else, the claiming Settlement Class Member may recover only up to 20% of the repair cost assuming other qualifications are met).

**B.      Coverage for Qualified Future Repairs**

4.4      For current owners and lessees, commencing on the Effective Date, Defendants will provide coverage of all or part of the cost of Qualified Future Repairs, subject to the requirements

11

of Section 9.B below and the following limitations:

    a)    For a Subject Vehicle needing a Qualified Future Repair fewer than 7 years (84 months) or 105,000 miles from the Subject Vehicle's original In-Service Date, whichever occurs first, a Settlement Class Member presenting his or her Subject Vehicle at an Authorized Service Center with a qualifying claim will be covered for 100% of the cost to perform the repair defined in LI98.00-P058914;

    b)    For a Subject Vehicle needing a Qualified Future Repair that does not fall within Section 4.4(a) and that is fewer than 10 years (120 months) or 150,000 miles after the Subject Vehicle's original In-Service Date, whichever occurs first, a Settlement Class Member presenting his or her vehicle at an Authorized Service Center with a qualifying claim will be covered for 50% of the cost to perform the repair defined in LI98.00-P058914;

    c)    For a Subject Vehicle needing a Qualified Future Repair that does not fall within Sections 4.4(a) or 4.4(b) and that is fewer than 15 years (180 months) or 150,000 miles after the Subject Vehicle's original In-Service Date, whichever occurs first, a Settlement Class Member presenting his or her vehicle at an Authorized Service Center with a qualifying claim will be covered for 25% of the cost to perform the repair defined in LI98.00-P058914;

    d)    For a Subject Vehicle needing a Qualified Future Repair that, at the time of the Settlement Notice Date, is more than 15 years (180 months) or 150,000 miles after the Subject Vehicle's original In-Service Date, whichever occurs

12

first, a Settlement Class Member may submit documentary evidence showing that (i) he or she presented the Subject Vehicle to an Authorized Service Center for a qualifying repair or provided notice to Defendants at a time when the vehicle had less than 15 years (180 months) and 150,000 or fewer miles (the "Presentment Date"), and (ii) that he or she was denied warranty or goodwill coverage for such repair at the time.  Such Settlement Class Member shall be entitled to submit to the Settlement Administrator by mail or through electronic version on the settlement website a completed and signed Qualified Future Repair Claim Form with supporting documentation to determine future coverage eligibility within the Claims Period set forth in Section 9.4, using the mileage and years in service (from the In-Service Date) the Subject Vehicle had on the Presentment Date.  In the event such claim is approved, the Settlement Class Member shall arrange for a Qualified Future Repair to be performed within 90 days of said approval, subject to the Requirements of Section 9.B.  The percentage of coverage provided by Defendants shall be determined by the age and mileage of the Subject Vehicle at the time it was originally presented for the qualifying repair or notice was given to Defendants as shown by the documentary evidence submitted by the Settlement Class Member, using the sliding scale set forth in Section 4.4(a), 4.4(b) and 4.4(c).

e)     For a Subject Vehicle needing a Qualified Future Repair that does not fall within Section 4.4(d) and that is more than 15 years (180 months) or 150,000 miles after the Subject Vehicle's original In-Service Date,

13

whichever occurs first, Defendants shall not be required to offer any coverage.

4.5     All repairs described in Section 4.B must be performed by an Authorized Service Center, and shall be limited to refinishing of affected areas only, in accordance with LI98.00-P-058914.

4.6     All claims covered by Section 4.B. will be processed through MBUSA's standard payment processes with its dealers.

5.     **PAYMENTS BY DEFENDANTS**

5.1     **To Settlement Class Members Submitting Claims:**     Defendants agree to reimburse Settlement Class Members for their out-of-pocket costs paid for Qualified Past Repairs as detailed in Section 4.A above—and pursuant to the claims procedures set out in Section 9. Settlement Class Members may elect to receive payment by check or by electronic payment (*e.g.*, Venmo or Paypal) in a form agreed to by the Settling Parties.

5.2     **To Plaintiffs:**  Plaintiffs, through Class Counsel, will request Class Representative Service Awards totaling no more than $30,000 (or a maximum of $5,000 per class representative). Payments made pursuant to this Section shall be made within twenty (20) business days of the Effective Date, care of Class Counsel.  Plaintiffs, Class Counsel, and Defendants negotiated and agreed to the amount of Class Representative Service Award, by and through the Mediator, only after reaching agreement in principle on the material terms of consideration for the Settlement Class.

5.3     **To Class Counsel:**  Plaintiffs, through Class Counsel, will request, and Defendants agree not to object to, and, if Class Counsel's request is granted by the Court, to pay up to $4,750,000 in reasonable Attorneys' Fees for work performed by Class Counsel in connection with

14

this Litigation.  In addition, Plaintiffs will also request, and Defendants agree not to object to, and, if Class Counsel's request is granted by the Court, to pay an amount for reimbursement of reasonable costs and other expenses incurred in connection with the Litigation of up to $100,000. Class Counsel shall file their motion requesting an award of Attorneys' Fees, Costs and All Other Expenses no later than thirty (30) days after the Court enters an order granting preliminary approval of this Settlement.  Plaintiffs, Class Counsel, and Defendants negotiated and agreed to the issue of Attorneys' Fees, Costs, and All Other Expenses, by and through the Mediator, only after reaching agreement in principle on the material terms of consideration for the Settlement Class.

5.4     Plaintiffs and Class Counsel will not seek in excess of the sums specified in Sections 5.1, 5.2 and 5.3, and in any event, Plaintiffs and Class Counsel agree that Defendants shall not pay, nor be obligated to pay, any sum in excess of the cap amounts specified in Sections 5.1, 5.2 and 5.3.  Plaintiffs, Class Counsel, and Defendants agreed to the amount of Attorneys' Fees, Costs, and All Other Expenses with assistance of the Mediator and only after reaching agreement upon all other material terms of this Agreement.

5.5     The Settling Parties agree the amounts in Sections 5.1, 5.2, and 5.3 represent Defendants' all-inclusive, full payment for all fees, costs, and all other expenses, including but not limited to fees, costs, and any other expenses incurred by any counsel in any related class action or any other related cases, whether known or unknown to Defendants, as well as any objectors, intervenors, or later-appearing counsel.  The amounts described in Sections 5.1, 5.2, and 5.3 shall constitute full satisfaction of Defendants' obligation to pay any person, attorney or law firm for attorneys' fees, costs, and all other expenses.

5.6     At the election of Class Counsel, Attorneys' Fees, Costs, and All Other Expenses

15

awarded by the Court to Class Counsel shall be paid by Defendants prior to the Effective Date if the terms and conditions set forth in Paragraphs 5.7 and 5.8 are met.

5.7    Class Counsel may, at any time within sixty (60) days after the entry of the Final Order and Judgment by the Court approving the Settlement, notify Defense Counsel that Class Counsel elects to receive payment of Attorneys' Fees, Costs, and All Other Expenses prior to the Effective Date (and, if so, the amount sought to be paid under that Paragraph). If Class Counsel elect to receive payment of Attorneys' Fees, Costs, and All Other Expenses (in full or in part) prior to the Effective Date, and provided they comply with the security requirements set forth in Paragraph 5.7, Defendants shall make the payment via electronic wire within seven (7) business days of receipt of Class Counsel's notice. If, and to the extent, Class Counsel (i) do not timely elect to receive full payment of Attorneys' Fees, Costs, and All Other Expenses prior to the Effective Date, or (ii) do not otherwise meet the requirements of Paragraph 5.7, Attorneys' Fees, Costs, and All Other Expenses shall be paid no later than seven (7) business days from the Effective Date of the Settlement.

5.8    Payment of Attorneys' Fees, Costs, and All Other Expenses to Class Counsel prior to the Effective Date is expressly conditioned upon Class Counsel agreeing to a stipulated undertaking that, in the event that Final Order and Judgment is reversed or modified on appeal, or in the event that any award of attorneys' fees and expenses is modified or vacated on appeal, Class Counsel shall remit to Defendants all attorneys' fees and expenses paid by Defendants under the Settlement Agreement, as set forth in the Stipulated Undertaking between the Parties, the form of which is attached hereto as Exhibit B.  This provision will survive this Agreement and may be enforced regardless whether the Settlement becomes effective or is otherwise terminated.

5.9    In furtherance of the Agreement in Section 5, in the event of any objections to the

16

Settlement or appeal from any order of the Court granting final approval, Class Counsel agree that they will be solely responsible for responding to objectors and intervenors, and defending the Court's Final Order and Judgment on appeal, if any, at their own cost. Defendants reserve the right to respond to objectors and intervenors, and to join in the defense of the Final Order and Judgment. Defendants agree not to appeal, or otherwise support any appeal, of an order or judgment entered by the Court that is consistent with this provision and the terms of the Settlement. Any costs incurred by Class Counsel in such appeals, including costs incurred to settle any claims by objectors or intervenors, are the sole responsibility of Class Counsel.

6.    **RELEASE**

6.1    Upon the entry of the Final Order and Judgment, Plaintiffs and each Settlement Class Member, on behalf of themselves and their current and former/predecessor agents, heirs, executors and administrators, successors, assigns, insurers, attorneys, representatives, shareholders, and any and all persons who in the future seek to claim through or in the name or right of any of them (the "Releasing Parties"), release and forever discharge (as by an instrument under seal without further act by any person, and upon good and sufficient consideration), Defendants and each of their current or former administrators, insurers, reinsurers, agents, firms, parent companies/corporations, sister companies/corporations, subsidiaries and affiliates (including without limitation Mercedes-Benz US International), and all other entities, including without limitation manufacturers, suppliers, and distributors (including wholesale and retail distributors), and affiliated dealerships, and all of the foregoing persons' or entities' respective predecessors, successors, assigns and present and former officers, directors, shareholders, employees, agents, attorneys, representatives, as well as their insurers (collectively, the "Released Parties") from each and every claim of liability, on any legal or equitable ground whatsoever,

010-9145-8317/2/AMERICAS

whether known or unknown, including relief under federal law or the laws of any state, that was or could have been made relating to, connected with, or resulting from the Litigation Claims and the Symptoms Alleged, including any claim that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat (the "Released Claims").

6.2     The releases provided for herein are as a result of membership as a Settlement Class Member or status as a Person with a legal right to assert claims of a Settlement Class Member, the Court's approval process herein, and occurrence of the Effective Date, and are not conditional on receipt of payment by any particular Settlement Class Member.  Persons who, after the date of the Preliminary Approval Order, acquire legal rights to assert claims within the scope of this Agreement that belong initially to a Settlement Class Member shall take such rights subject to all of the terms, time periods, releases, caps, prohibitions against overlapping or double recoveries, and other provisions contained herein.

6.3     The release provided by this Agreement shall include the release of all damages, burdens, obligations of liability of any sort, including, without limitation, penalties, punitive damages, exemplary damages, statutory damages, damages based upon a multiplication of compensatory damages, court costs, or attorneys' fees or expenses, which might otherwise have been made in connection with any Released Claims.

6.4     The release includes all claims that the Releasing Parties have or may hereafter discover including, without limitation, claims, injuries, damages, or facts in addition to or different from those now known or believed to be true with respect to any matter disposed of by this Settlement.  The Releasing Parties have fully, finally, and forever settled and released any and all such claims, injuries, damages, or facts, whether known or unknown, suspected or unsuspected,

18

contingent or non-contingent, past or future, whether or not concealed or hidden, which exist, could exist in the future, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future related to matters arising from or in any way related to, connected with, or resulting from the Litigation Claims and the Symptoms Alleged (*i.e.*, alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat), including, but not limited to, conduct which is negligent, reckless, willful, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

6.5    The Releasing Parties shall be deemed by operation of the Final Order and Judgment in the Litigation to have acknowledged that the foregoing release was separately bargained for and a key element of this Settlement of which the releases herein are a part.  The Releasing Parties expressly and intentionally release any and all rights and benefits which they now have or in the future may have under the terms of the law (whether statutory, common law, regulation, or otherwise) of any other state or territory of the United States within the scope of the Released Claims.

6.6    Class Counsel shall cooperate with Released Parties to ensure that the releases set forth in the Final Approval Order are given their full force and effect (including by seeking the inclusion of the releases in the Final Order and Judgment and the Reimbursement Claims Forms) and to ensure that Releasing Parties comply with their obligations set forth in this Agreement.

6.7    In the event that any Releasing Party seeks to invoke California Civil Code § 1542, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT
> THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR
> SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF

19

EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(or any other like provision or principle of law of any jurisdiction) in connection with claims related to the Litigation Claims and the Symptoms Alleged (*i.e.*, alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat), the Releasing Parties and each of them expressly waive the provision of California Civil Code § 1542 (or any other like provision or principle of law of any jurisdiction) to the full extent that these provisions may be applicable to this release. Each of the Releasing Parties hereby does, and shall be deemed to, have considered the possibility that the number or magnitude of all claims may not currently be known; nevertheless, each of the Releasing Parties assumes the risk that claims and facts additional, different, or contrary to the claims and facts that each believes or understands to exist may now exist or may be discovered after the settlement becomes effective. Each of the Releasing Parties agrees that any such additional, different, or contrary claims and facts shall in no way limit, waive, or reduce the foregoing release, which shall remain in full force and effect. Nothing in this paragraph shall be construed as modifying or limiting the other provisions of the settlement concerning the potential availability of claims.

6.8     No Releasing Party shall recover, directly or indirectly, any sums for Released Claims from the Released Parties, other than consideration and sums received under this Agreement and that the Released Parties shall have no obligation to make any payments to any non-parties for liability arising out of the Released Claims, other than as set forth in this Settlement.

## 7.     APPROVAL OF THE SETTLEMENT; JUDGMENT AS TO DEFENDANTS

7.1     Plaintiffs will file, and Defendants will not oppose, a motion consistent with the terms of this Agreement seeking an order conditionally certifying the Settlement Class, granting

preliminary approval of this Settlement, approving the notice to be provided the Settlement Class and the procedures for providing such notice, setting a briefing schedule and hearing for final approval and a briefing schedule for a motion for an award of Attorneys' Fees, Costs and All Other Expenses, and otherwise staying, pursuant to the All Writs Act, this Litigation and all current or future parallel proceedings addressing the same subject matter.

7.2     Should the Court decline to conditionally certify the Settlement Class or to approve any material aspect of the Settlement (including but not limited to the scope of the release or the binding effect of the Settlement), and the Settling Parties, despite their best efforts, are unable to agree upon revisions to the Agreement that alleviate the Court's concerns, or the Agreement is otherwise terminated or fails to become effective in accordance with the terms of this Agreement, the Settling Parties will be restored to their respective positions in the Litigation as of November 9, 2020.   In such event, the terms and provisions of this Agreement will have no further force and effect and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, *nunc pro tunc*.

7.3     No order of the Court or modification or reversal on appeal of any order of the Court concerning any award of Attorneys' Fees, Costs, and All Other Expenses to Class Counsel will constitute grounds for cancellation or termination of this Agreement, unless the order substantially changes a material term of the settlement.

8.    **SETTLEMENT ADMINISTRATION AND NOTICE**

8.1     **Appointment of Settlement Administrator.** The Parties will ask the Court to appoint a qualified administrator, to serve as the Settlement Administrator, subject to the Court's approval.   As a condition of appointment, the Settlement Administrator will agree to be bound by

21

this Agreement with respect to the performance of its duties and its compensation.

8.2     **Duties of the Settlement Administrator.** The Settlement Administrator's duties will include sending the Class Notice to all Members of the Settlement Class; sending CAFA notice; creating, maintaining, and monitoring a settlement website; receiving and administering claims for Qualified Past Repair reimbursements; receiving and determining validity of opt-out notices and objections; providing the Settling Parties with periodic status reports about the delivery of the notices, claims administration status, and receipt of objections to and requests to opt out; and otherwise administering the Settlement pursuant to this Agreement. Along with the motion for preliminary approval, the proposed Settlement Administrator shall file a declaration describing in detail the Notice Plan.

8.3     As a condition of its retention, the Settlement Administrator must agree that (a) it will fulfill all responsibilities and duties assigned to the Settlement Administrator under the terms of this Agreement, and (b) the Settling Parties and their Counsel, as well as the Released Parties, reserve all claims and rights for any failure by the Settlement Administrator to fulfill its responsibilities and duties.  In no event shall the Settling Parties or their Counsel have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrator, the Third-Party Neutral, or their agents.

8.4     **Protection of Personal Information.**  The Settlement Administrator shall:

a)     Use personal information acquired as a result of this Agreement solely for purposes of evaluating and paying claims under this Agreement; and

b)     Assign a manager to oversee the protection and appropriate management of personal information and review its internal system to manage the protection of personal information to ensure consistent performance and

22

constant improvement; and

c)     Take security countermeasures to prevent unauthorized access to personal information, and loss, destruction, falsification, and leakage of personal information; and

d)     If outsourcing the handling of personal information, determine that outsourced companies take steps to ensure appropriate management of the information to prevent leaks of personal or confidential information, and prohibit re-use of information for other purposes; and

e)     Respond immediately with appropriate measures then necessary to disclose, correct, stop using, or eliminate contents of information; and

f)     Once all timely, valid claims have been paid, and in compliance with applicable retention law, destroy all personal information obtained in connection with this Settlement in a manner most likely to guarantee that such information not be obtained by unauthorized persons.

8.5     **CAFA Notice.** Within ten (10) days after this Agreement is filed in Court, the Settlement Administrator will cause a notice of the proposed settlement consisting of the materials required by the Class Action Fairness Act (28 U.S.C. § 1715) ("CAFA") to be served upon the appropriate state official in each state of the United States as well as the appropriate federal officials.  Within fifteen (15) days after the Notice Date, the Settlement Administrator shall provide declarations to the Court, with a copy to Class Counsel and Defense Counsel, attesting to the measures undertaken to provide notice as directed by CAFA.

8.6     **Notice to Settlement Class Members.** The Settlement Administrator shall send the Court-approved Class Notice via postcard to all Settlement Class Members who have addresses

23

identified through the sources specified in the Notice Plan within thirty five (35) days of the entry of the Preliminary Approval Order. The Settlement Administrator shall also provide a copy of the Class Notice to any Settlement Class Member who requests the Class Notice.

8.7     **Information to Settlement Administrator.** As soon as possible, and in no event later than five (5) court days after Plaintiffs have filed the motion for preliminary approval of this Settlement, Defendants shall provide a list of applicable Vehicle Identification Numbers ("VINs") to the Settlement Administrator, so that it may obtain contact information of owners and lessees associated with each VIN.

8.8     **Settlement Website.** As part of its duties, the Settlement Administrator shall reserve, create, maintain, and monitor a website on which the Class Notice and this Agreement shall be posted.  The website shall also include a link to download a copy of the Reimbursement Claim Form and will have an electronic version of the Reimbursement Claim Form online that allows Claims to be submitted electronically and any required documentation to be uploaded electronically to the settlement website.  Claims shall be submitted by mail or online through the electronic Reimbursement Claim Form on the settlement website.  The settlement website will be made available ("go live") no later than the date the Notice is mailed to Settlement Class Members as set forth in Section 8.6.  The settlement website shall be active until all valid claims submitted under the claims process set forth in Section 9 have been paid.  Thereafter, Class Counsel shall have the option of maintaining the website live through December 31, 2034 as an informational website at Class Counsel's expense, provided that Class Counsel and Defendants mutually agree on the content of the website and any future changes thereto.  The settlement website shall list contact information (telephone number and email address) of the Settlement Administrator up until the time all valid claims submitted under the claims process have been paid.

8.9   **Weekly Report.** As part of its duties, the Settlement Administrator shall provide Class Counsel and Defense Counsel with a weekly status report that tracks the notices that have been mailed and requests to opt out that the Settlement Administrator receives.

8.10   **Returned Notices.** Unless the Settlement Administrator receives a Notice returned from the United States Postal Service for reasons discussed below in this paragraph, the Notice shall be deemed mailed and received by the Settlement Class Member to whom it was sent three (3) days after mailing.  In the event that subsequent to the first mailing of the Notice, the Notice is returned to the Settlement Administrator by the United States Postal Service within twenty-eight (28) days of the original mailing of the Notice, with a forwarding address for the recipient, the Settlement Administrator shall re-mail the Notice to that address, and the forwarding address shall be deemed the updated address for that Settlement Class Member.  In the event that subsequent to the first mailing of the Notice, the Notice is returned to the Settlement Administrator by the United States Postal Service within twenty-eight (28) days of the original mailing of the Notice because the address of the recipient is no longer valid, and the name of the Settlement Class member is known, the Settlement Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will promptly re-send the Notice.  If no updated address is obtained for that Settlement Class Member, the Notice shall be sent again to the last known address.

8.11   **Final Report.** Not later than ten (10) court days after the deadline for submission of requests to opt out, the Settlement Administrator shall provide the Parties a declaration of due diligence setting forth its compliance with its obligations under this Agreement to be filed in conjunction with a motion for final approval.  The declaration shall identify those individuals who

25

have submitted a valid and timely request to opt out.  Prior to the hearing on the motion for final approval, the Settlement Administrator will supplement its declaration of due diligence if any material changes occur from the date of the filing of its prior declaration.

8.12 **Request to Opt Out.** Persons falling within the definition of the Settlement Class may exclude themselves from the Settlement by notifying the Settlement Administrator of their intent to opt out not later than sixty (60) days after the Notice Date.  Such notice must be made in writing and contain (1) the Person's name, (2) his or her current address and telephone number, (3) his or her Subject Vehicle Identification Number and the dates of ownership or lease for such Subject Vehicle; (4) a dated, handwritten signature; and (5) a written statement that such Person has reviewed the Class Notice and wishes to be excluded from the Settlement.  If a question is raised about the authenticity of a request to opt out, the Settlement Administrator will have the right to demand additional proof of the individual's identity and intent.  Anyone who has submitted a valid request to opt out will not participate in or be bound by the Settlement or the Final Order and Judgment and may not file an Objection.  Any Person falling within the definition of the Settlement Class who does not complete and submit a valid request to opt out in the manner and by the deadline specified above will automatically become a Settlement Class Member and be bound by all terms and conditions of the Settlement and the Final Order and Judgment entered by the Court, including the release of claims set forth in Section 6.

8.13 **Objections to the Settlement.** Any Settlement Class Member who intends to object to the Settlement must do so by filing the objection with the Court (and serving it on Class Counsel and Defense Counsel) not later than sixty (60) days after the Notice Date.  The objection must be in writing and include (1) the Settlement Class Member's full name, current address, and telephone number; (2) the Subject Vehicle Identification Number associated with the vehicle

26

giving rise to standing to make an Objection, and the dates of ownership or leasing of said vehicle; (3) a statement that the objector has reviewed the Settlement Class definition and understands that he/she is a Settlement Class Member, and has not opted out and does not plan to opt out of the Settlement Class; (4) a complete statement of all legal and factual bases for any Objection that the objector wishes to assert; (5) a statement of whether the Settlement Class Member intends to appear at the final approval hearing, (6) copies of any documents or witnesses that support the Objection, and (7) a dated, handwritten signature.  Only Settlement Class Members may object to the Settlement.  A Settlement Class Member who does not submit a written Objection in the manner and by the deadline specified in this Section will be deemed to have waived any objections and will be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement.  A Settlement Class Member who does not timely submit a notice of intent to appear at the final approval hearing in accordance with all of the requirements of this Section shall not be allowed to appear at the hearing (whether individually or through separate counsel).

9. **CLAIMS ADMINISTRATION AND CLAIMS PROCEDURE**

9.1     Only Settlement Class Members shall be eligible to make a claim for reimbursement of Qualified Past Repair(s) or coverage of Qualified Future Repair(s).

A. **Reimbursement Claims for Qualified Past Repairs.**

9.2     Any Settlement Class Member who wishes to make a reimbursement claim for a Qualified Past Repair(s) must submit a completed and signed Reimbursement Claim Form and the following items of proof within the deadlines set forth in Paragraph 9.4:

a)      Itemized repair order or invoice or other documentation showing that the Subject Vehicle received a qualified repair (e.g., the repair invoice must show that part of the vehicle has been repainted) and the cost of the qualified

repair.  A repair shall not qualify for reimbursement if the reason for the repair described in any related repair order is for repairs due to an automobile accident, scratches, road debris, or other external influence that is clearly unrelated to the alleged 590 Mars Red Paint defect (e.g., chemical burn, tree sap, or bird droppings);

b)      Proof of documentation of the Settlement Class Member's payment for the repair (e.g., credit card statement, invoice showing zero balance, receipt showing payment, etc.); and

c)      Proof of the Settlement Class Member's ownership or leasing of the Subject Vehicle at the time of the repair.

9.3     Any Settlement Class Member who wishes to make a claim must timely submit a properly completed Reimbursement Claim Form attesting that s/he is a Settlement Class Member and that the information in the completed Reimbursement Claim Form is true and correct under penalty of perjury.  Claims must include the information required by this Settlement and be mailed to the Settlement Administrator or submitted online through the electronic version of Reimbursement Claim Form on the settlement website within the Claims Period specified in Section 9.4 of this Agreement.

9.4     **Reimbursement Claims Submission Deadlines.** For a Qualified Past Repair that occurred prior to the Notice Date, a Reimbursement Claim Form must be submitted to the Settlement Administrator postmarked or submitted electronically within sixty (60) days of the Notice Date. For a Qualified Past Repair that occurred after the Notice Date, but before the Effective Date, the Reimbursement Claim Form must be submitted to the Settlement Administrator postmarked or submitted electronically within sixty (60) days of the date of repair. No

28

Reimbursement Claim Forms can be submitted for repairs occurring on or after the Effective Date; rather, in such circumstances, Settlement Class Members must seek to have those repairs covered as Qualified Future Repairs pursuant to Section 4.B and Section 9.B.

9.5     Upon receipt, the Settlement Administrator shall review all claims on a uniform and non-arbitrary basis.  The Settlement Administrator will notify Settlement Class Members who submit deficient claims by first-class mail and or email (to the extent such email address is provided at the time any Class Member submits a claim through the electronic version of the Reimbursement Claim Form on the settlement website).  A Settlement Class Member receiving such notice will be allowed thirty (30) days from the postmarked date on the notice to submit materials to cure the deficiencies.

9.6     For completed claims timely submitted within the Claims Period before the Effective Date, the Settlement Administrator shall perform any review of the claim within ninety (90) days of the Effective Date; otherwise, such review shall be made within ninety (90) days of receipt of the completed claim.

9.7     In the event the Settlement Administrator reviews and evaluates a Reimbursement Claim Form and determines the claim is ineligible for reimbursement or is not entitled to the full amount being sought, the Settlement Administrator will inform the Settlement Class Member via first-class mail and will also inform Defense Counsel and Class Counsel by email.  The Settlement Class Member shall have thirty (30) days to dispute the Settlement Administrator's evaluation that the Settlement Class Member is ineligible or is not entitled to the full amount being sought, measured from the date the notice of ineligibility to the Settlement Class Member was postmarked. If the Settlement Class Member does not timely dispute the Settlement Administrator's determination, the Settlement Administrator's determination shall stand.  If the Settlement Class

29

Member timely disputes the Settlement Administrator's evaluation—including where the claim is rejected because the alleged bubbling, peeling or flaking was determined to have been caused by external influences such as automobile accidents, scratches, or road debris—the dispute will be adjudicated by the Third-Party Neutral who shall independently determine the validity of the claim. The Settlement Class Member, Class Counsel, Defense Counsel, and Defendants will have a reasonable opportunity to present two-page statements to the Third-Party Neutral setting forth their positions about the eligibility of the claim for reimbursement and the proper reimbursement amount, if any, but there shall be no formal hearing or trial. The Settlement Class Member must submit its position statement with its notice that it is disputing the Settlement Administrator's determination. The Settlement Administrator shall provide that statement to Class Counsel, Defense Counsel, and Defendants, which shall each have thirty (30) days to submit their responsive position statements. The Third-Party neutral shall review the position papers submitted and make a final determination of eligibility and reimbursement amount. The decisions of the Third-Party Neutral pursuant to this Agreement shall be final and binding on the Settlement Class Member and all the Settling Parties.

9.8    Settlement Class Members may elect to receive payment of their claims via electronic payment (*e.g.* Venmo or PayPal) in a form agreed to by the Settling Parties, or by written check. In the event a Settlement Class Member elects to receive payment by written check, the check will be valid for 180 days from the date of issue, and will be sent via first-class United States mail to the address shown on the Settlement Class Member's Reimbursement Claim Form, which check shall be mailed to each such Settlement Class Member with an approved claim within thirty (30) days of the final decision regarding the claim. If the check issued to a Settlement Class Member under the terms of this Agreement is not cashed within the 180 day period, there shall be

no further obligation to make payment to such Settlement Class Member.

**B.      Coverage Claims for Qualified Future Repairs.**

9.9      Any Settlement Class Member who wishes to receive a Qualified Future Repair pursuant to Sections 4.4(a), 4.4(b) or 4.4(c) or who has an approved claim for a Qualified Future Repair pursuant to Section 4.4(d) must bring their Subject Vehicle to an Authorized Service Center.

9.10     In order to determine that a Subject Vehicle needs a Qualified Future Repair, a service technician at the Authorized Service Center where coverage is requested must confirm that the exterior clearcoat on a panel is  bubbling, peeling or flaking and that such conditions are not caused by external influences such as automobile accidents, scratches, road debris, chemical burn, tree sap, or bird droppings.

9.11     In the event a Settlement Class Member informs Defendants that he or she brought his or her Subject Vehicle to an Authorized Service Center to request coverage for a Qualified Future Repair and was, in the opinion of the Settlement Class Member, wrongfully denied coverage by the Authorized Service Center, Defendants will inform the Settlement Class Member that Class Counsel will contact him or her regarding the concern. Defendants will then provide Class Counsel with the name and contact information of such Settlement Class Member so that Class Counsel may contact him or her.  Class Counsel, Defendants, and Defense Counsel shall make good faith efforts to resolve the alleged wrongful denial, and if Class Counsel, Defendants, and Defense Counsel cannot resolve the concern, they may submit the dispute to a Third-Party Neutral, who will be jointly selected by the Settling Parties and who will decide the coverage issue, which will be a final and non-appealable decision.

9.12     No Person shall have any claim against the Settling Parties, their respective counsel, or the Settlement Administrator arising from or related to determinations or payments made in

31

accordance with this Settlement Agreement.

10. **DISPUTE RESOLUTION**

10.1 **Court's Continuing Jurisdiction.** The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and Plaintiffs, Defendants, and their respective counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the Settlement Agreement and all orders and judgments entered in connection therewith, except that the Court shall not have authority under the Settlement Agreement to increase Defendants' payment obligations hereunder.

10.2 **Dispute Resolution Procedure.** Except as otherwise set forth herein, all disputes concerning the interpretation, calculation, or payment of settlement claims, or other disputes regarding compliance with this Settlement Agreement, shall be resolved as follows:

a) If Plaintiffs or Class Counsel, on the one hand, or Defendants, on the other hand, at any time believes the other party has materially breached the Settlement Agreement, that party shall notify the other party in writing of the alleged violation.

b) Upon receiving notice of the alleged violation or dispute, the responding party shall have twenty (20) days to correct the alleged violation and/or respond in writing to the initiating party with the reasons why the party disputes all or part of the allegation.

c) If the response does not address the alleged violation to the initiating party's satisfaction, Plaintiffs, Class Counsel, and Defendants shall negotiate in good faith for up to twenty (20) days to resolve their differences.

32

d)      If Plaintiffs, Class Counsel, and Defendants are unable to resolve their differences after twenty (20) days, either party may file an appropriate motion to enforce the Settlement Agreement with the Court.

## 11.    TAXES

11.1     Neither Class Counsel nor Defense Counsel intends anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such.  The tax issues for each Settlement Class Member may be unique, and each Settlement Class Member is advised to obtain tax advice from his or her own tax advisor with respect to any payments resulting from this Agreement.  Each Settlement Class Member will be responsible for paying all applicable state, local, and federal income taxes on all amounts the Settlement Class Member receives pursuant to this Settlement Agreement.

11.2     No person shall have any claim against the Settling Parties, their respective counsel, or the Settlement Administrator based on the mailings, distributions, and payments made in accordance with or pursuant to this Settlement Agreement.

## 12.    MISCELLANEOUS TERMS

12.1     **Integrated Agreement.** After this Agreement is signed and delivered by Plaintiffs, Defendants and their respective counsel, this Agreement and its exhibits will constitute the entire agreement between Plaintiffs and Defendants relating to the Settlement, and it will then be deemed that no oral representations, warranties, covenants, or inducements have been made by Plaintiffs and/or Defendants concerning this Agreement or its exhibits other than the representations, warranties, covenants, and inducements expressly stated in this Agreement and its exhibits.

12.2     **Attorney Authorization.** Class Counsel and Defense Counsel warrant and represent that they are authorized by Plaintiffs and Defendants, respectively, to take all appropriate

33

action required or permitted to be taken pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  Plaintiffs, Defendants and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.  In the event Plaintiffs and Defendants are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, Plaintiffs and Defendants will seek the assistance of the Court, and in all cases all such documents, supplemental provisions and assistance of the court will be consistent with this Agreement.

12.3   **Modification of Agreement.** This Agreement, and any and all parts of it, may be amended, modified, changed, or waived in writing by Plaintiffs' or Defendants' counsel with each party's consent.

12.4   **Agreement Binding on Successors.** This Agreement will be binding upon, and inure to the benefit of, the successors of each of Plaintiffs, Defendants, and the Settlement Administrator.

12.5   **Applicable Law.** All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of Georgia, without giving effect to any conflict of law principles or choice of law principles.

12.6   **Cooperation in Drafting.** Plaintiffs and Defendants have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any party on the basis that the party was the drafter or participated in the drafting.

12.7   **Fair Settlement.** Plaintiffs, Defendants, and their respective counsel believe and warrant that this Agreement reflects a fair, reasonable, and adequate settlement of the claims

34

against Defendants and have arrived at this Agreement through arms-length negotiations, taking into account all relevant factors, current and potential.

12.8   **Stay of Proceedings.** The Settling Parties hereby agree and stipulate to stay all proceedings in this Litigation until the approval of this Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, declarations, and other matters necessary to the approval of this Agreement.  The Settling Parties also agree and stipulate that a stay, pursuant to the All Writs Act, in any other current or future parallel proceedings involving the same subject matter—including but not limited to *Ponzio, et al. v. Mercedes-Benz USA, LLC, et al.*, Case No. 1:18-CV-12544 (D.N.J.)—will conserve the parties' and courts' resources, minimize interference with the Court's ability to rule on the proposed Settlement, avoid the risk of conflicting results, and preserve the Settlement for a short period of time while class members receive notice and evaluate their options.  The Settling Parties agree and stipulate the Settlement provides substantial benefits to Plaintiffs and the Class that will be jeopardized by ongoing competing cases covering overlapping subclasses; maintaining the status quo protects the integrity of the Settlement, while the Court evaluates whether it is fair, reasonable and adequate. A standstill of litigation will be efficient, promotes the public policy favoring settlement and aids resolution of claims on a nationwide basis, which is in the public interest.

12.9   **Dismissal of the Litigation.**   Upon the Effective Date of the Settlement, the Settling Parties shall stipulate to voluntarily dismiss with prejudice the Litigation pursuant to Federal Rule of Civil Procedure 41(a)(1)A)(ii).

12.10   Defendants or any Authorized Service Center may continue to effect or implement any goodwill policy, program, or procedure during the pendency of the settlement approval proceedings.

12.11   **Headings.** The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

12.12   **Notice.** All notices, demands or other communications given under this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, addressed as follows:

*To Plaintiff and the Class:*                 *To Defendants:*

HENINGER GARRISON DAVIS, LLC     SQUIRE PATTON BOGGS (US) LLP
W. Lewis Garrison, Jr.                          Troy M. Yoshino
2224 1st Avenue North                        275 Battery Street, Suite 2600
Birmingham, AL 35203                        San Francisco, CA 94111
Tel:    (205) 326-3336                          Tel:    (415) 954-0200
Fax:    (205) 326-3332                          Fax:    (415) 393-9887

12.13   **Execution in Counterparts.** This Agreement may be executed in one or more counterparts and may be delivered by facsimile or electronic scan, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and Agreement, provided that counsel for Plaintiffs and Defendants will exchange between themselves original signed counterparts.  Plaintiffs and Defendants further agree to accept a digital image, printout, facsimile or photocopy of this Agreement, as executed, as a true and correct original and admissible as best evidence for the purposes of state law, California Evidence Code 1520, Federal Rule of Evidence 1002, and like statutes and regulations.

Dated: _12/20/20_          _____
                                          EMILY PINON

Dated: _____          _____
                                          GARY C. KLEIN

Dated: _____          _____
                                          KIM BROWN

Dated: _____          _____
                                          JOSHUA FRANKUM

36

12.11  **Headings.** The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

12.12  **Notice.** All notices, demands or other communications given under this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, addressed as follows:

*To Plaintiff and the Class:*                    *To Defendants:*

HENINGER GARRISON DAVIS, LLC           SQUIRE PATTON BOGGS (US) LLP
W. Lewis Garrison, Jr.                              Troy M. Yoshino
2224 1st Avenue North                              275 Battery Street, Suite 2600
Birmingham, AL 35203                              San Francisco, CA 94111
Tel:   (205) 326-3336                              Tel:   (415) 954-0200
Fax:   (205) 326-3332                              Fax:   (415) 393-9887

12.13  **Execution in Counterparts.** This Agreement may be executed in one or more counterparts and may be delivered by facsimile or electronic scan, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and Agreement, provided that counsel for Plaintiffs and Defendants will exchange between themselves original signed counterparts. Plaintiffs and Defendants further agree to accept a digital image, printout, facsimile or photocopy of this Agreement, as executed, as a true and correct original and admissible as best evidence for the purposes of state law, California Evidence Code 1520, Federal Rule of Evidence 1002, and like statutes and regulations.

Dated: _____         _____
                              EMILY PINON

Dated: 12/19/2020            _____
                              GARY C. KLEIN

Dated: _____         _____
                              KIM BROWN

Dated: _____         _____
                              JOSHUA FRANKUM

36

12.11  **Headings.** The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

12.12  **Notice.** All notices, demands or other communications given under this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, addressed as follows:

| *To Plaintiff and the Class:* | *To Defendants:* |
|---|---|
| HENINGER GARRISON DAVIS, LLC | SQUIRE PATTON BOGGS (US) LLP |
| W. Lewis Garrison, Jr. | Troy M. Yoshino |
| 2224 1st Avenue North | 275 Battery Street, Suite 2600 |
| Birmingham, AL 35203 | San Francisco, CA 94111 |
| Tel:    (205) 326-3336 | Tel:    (415) 954-0200 |
| Fax:    (205) 326-3332 | Fax:    (415) 393-9887 |

12.13  **Execution in Counterparts.** This Agreement may be executed in one or more counterparts and may be delivered by facsimile or electronic scan, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and Agreement, provided that counsel for Plaintiffs and Defendants will exchange between themselves original signed counterparts.  Plaintiffs and Defendants further agree to accept a digital image, printout, facsimile or photocopy of this Agreement, as executed, as a true and correct original and admissible as best evidence for the purposes of state law, California Evidence Code 1520, Federal Rule of Evidence 1002, and like statutes and regulations.

Dated: _____        _____
                              EMILY PINON

Dated: _____        _____
                              GARY C. KLEIN

Dated: 12/20/20               _____
                              KIM BROWN

Dated: _____        _____
                              JOSHUA FRANKUM

12.11 **Headings.** The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

12.12 **Notice.** All notices, demands or other communications given under this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, addressed as follows:

*To Plaintiff and the Class:*                    *To Defendants:*

HENINGER GARRISON DAVIS, LLC        SQUIRE PATTON BOGGS (US) LLP
W. Lewis Garrison, Jr.                          Troy M. Yoshino
2224 1st Avenue North                          275 Battery Street, Suite 2600
Birmingham, AL 35203                          San Francisco, CA 94111
Tel:   (205) 326-3336                          Tel:   (415) 954-0200
Fax:   (205) 326-3332                          Fax:   (415) 393-9887

12.13 **Execution in Counterparts.** This Agreement may be executed in one or more counterparts and may be delivered by facsimile or electronic scan, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute but one and the same instrument and Agreement, provided that counsel for Plaintiffs and Defendants will exchange between themselves original signed counterparts.  Plaintiffs and Defendants further agree to accept a digital image, printout, facsimile or photocopy of this Agreement, as executed, as a true and correct original and admissible as best evidence for the purposes of state law, California Evidence Code 1520, Federal Rule of Evidence 1002, and like statutes and regulations.

Dated: _____          _____
                                EMILY PINON

Dated: _____          _____
                                GARY C. KLEIN

Dated: _____          _____
                                KIM BROWN

Dated: _Dec 19 2020_            _____
                                JOSHUA FRANKUM

36

Dated:  12/21/20

DINEZ WEBSTER

Dated: _____

TODD BRYAN

37

Dated: _____

DINEZ WEBSTER

Dated: 10/19/2020

TODD BRYAN

37

010-9145-8317/2/AMERICAS

Dated: 12/20/2020

HENINGER GARRISON DAVIS, LLC

By: _____

W. Lewis Garrison, Jr.
Attorneys for Plaintiff

Dated: _____

DAIMLER AG

By: _____

Paul Hecht
Senior Counsel, Head of Global Litigation
Daimler AG

Dated: _____

DAIMLER AG

By: _____

Dieter Scheunert
Head of Product Analysis and Product Safety
Daimler AG

Dated: _____

MERCEDES-BENZ USA, LLC

By: _____

Audra Dial
Assistant General Counsel – Litigation
Mercedes-Benz USA, LLC

Dated: _____

MERCEDES-BENZ USA, LLC

By: _____

Lillian N. Caudle
Corporate Counsel – Litigation
Mercedes-Benz USA, LLC

38

Dated: _____        HENINGER GARRISON DAVIS, LLC


                            By: _____
                                W. Lewis Garrison, Jr.
                                Attorneys for Plaintiff


Dated: _____        DAIMLER AG


                            By: _____
                                Paul Hecht
                                Senior Counsel, Head of Global Litigation
                                Daimler AG


Dated: 2020/12/18           DAIMLER AG


                            By: _____
                                Dieter Scheunert
                                Head of Product Analysis and Product Safety
                                Daimler AG


Dated: _____        MERCEDES-BENZ USA, LLC


                            By: _____
                                Audra Dial
                                Assistant General Counsel – Litigation
                                Mercedes-Benz USA, LLC


Dated: _____        MERCEDES-BENZ USA, LLC


                            By: _____
                                Lillian N. Caudle
                                Corporate Counsel – Litigation
                                Mercedes-Benz USA, LLC


38

Dated: _____        HENINGER GARRISON DAVIS, LLC


                              By: _____
                                  W. Lewis Garrison, Jr.
                                  Attorneys for Plaintiff


Dated: _____        DAIMLER AG


                              By: _____
                                  Paul Hecht
                                  Senior Counsel, Head of Global Litigation
                                  Daimler AG


Dated: _____        DAIMLER AG


                              By: _____
                                  Dieter Scheunert
                                  Head of Product Analysis and Product Safety
                                  Daimler AG


Dated:  December 18, 2020     MERCEDES-BENZ USA, LLC


                              By: _____
                                  Audra Dial
                                  Assistant General Counsel – Litigation
                                  Mercedes-Benz USA, LLC


Dated:  December 18, 2020     MERCEDES-BENZ USA, LLC


                              By: _____
                                  Lillian N. Caudle
                                  Corporate Counsel – Litigation
                                  Mercedes-Benz USA, LLC

Dated: DEC. 18, 2020      SQUIRE PATTON BOGGS (US) LLP

By: _____

          Troy M. Yoshino
          Attorneys for Daimler AG and MBUSA


Dated: 12/18/2020      KING & SPALDING LLP

By: _____

          Stephen B. Devereaux
          Attorneys for Daimler AG and MBUSA

39

# EXHIBIT A

**TO CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

XENTRY TIPS

# Clearcoat peeling / flaking / bubbling

| | |
|---|---|
| Topic number | LI98.00-P-058914 |
| Version | 10 |
| Function group | 98.00 General |
| Date | 05-23-2018 |
| Validity | All vehicles with 590 - Mars Red |
| Reason for change | Added PTSS feedback |
| Reason for block | |

## Complaint:

Exterior clearcoat finish is peeling, flaking, or exhibits bubbles under the surface

| Attachments | |
|---|---|
| File | Description |
| Peeling clearcoat.jpg | Clearcoat peeling |
| Clearcoat flaking.jpg | Clearcoat flaking |
| White flaking.jpg | White Flaking |
| Clearcoat bubbles.jpg | Clearcoat bubbles |

## Cause:

Improper adhesion of clearcoat. Exposure factors like humidity or solar radiation may cause adhesion problems between base coat and clearcoat.

## Remedy:

Refinish affected areas only, according to WIS and approved paint manufacturer instructions.

.

Note 1: The paint on the whole part has to be grinded down to the filler coat, but the cathodic immersion coat (e-coat) should not be damaged. Only areas that are exposed to UV radiation are affected, i.e. hidden surfaces, e.g. door entry, folds or back sides, are not affected.

Note 2: Affected components like fenders, hoods, doors, trunk lids and rear doors will be painted while installed on the vehicle.

Note 3: Unaffected plastic parts (bumpers) must only be loosened and remain attached to the vehicle. Other plastic exterior components such as bumpers, rocker panels, and trim are not affected, and repairs to these parts (for similar clearcoat complaints) will not be covered under warranty.

Note 4: Any transition where there is new painting will be masked off so no visible paint edges occur.

Note 5: The windshield, the rear window and the side windows must not be removed for the painting process and remain on the vehicle.

.

Repair steps:

© Copyright Daimler AG

# XENTRY TIPS

1.) The paint on the affected panels has to be completely ground down to the filler coat.

NOTE for the dry sanding process: The removal of the clear coat is carried out with a 5-7 mm range eccentric grinder, recommended sandpaper is P180. The removal of the base coat is carried out with a 5-7 mm range eccentric grinder, recommended sandpaper is P240.

2.) Completely prime the affected panel. The primer layer serves as a separation layer for the new paintwork structure.

3.) Carry out the paint application process, according to WIS and approved paint manufacturer instructions. Do not paint hidden edges.

.

NOTE: If technical feedback is requested, open a PTSS case with:

1. photos of affected areas

2. paint thickness measurements according to WIS forms OF98.00-P-3000-03_

If the labor required is greater than 30hrs - Warranty policy requires an Information Only PTSS case with:

1. photos of affected areas

2. paint thickness measurements according to WIS forms OF98.00-P-3000-03_

Please also refer to the Warranty Policy and Procedures manual, section 10.12

.

Please use damage code 98292 01

| Symptoms |
| --- |
| Overall vehicle / Paint/corrosion / Paintwork Fault / Poor grip |
| Overall vehicle / Paint/corrosion / Paint damage / Swelling |

| Operation numbers/damage codes | | | | |
| --- | --- | --- | --- | --- |
| Op. no. | Operation text | Time | Damage code | Note |
| | | | 98292 01 | |

# EXHIBIT B

## TO CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EMILY PINON, GARY C. KLEIN, KIM BROWN, JOSHUA FRANKUM, LACRESHA EARLEY, and TODD BRYAN, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and DAIMLER AG,<br><br>  Defendants. | Case No. 1:18-cv-03984-MHC |

## STIPULATED UNDERTAKING REGARDING ATTORNEYS' FEES, COSTS AND EXPENSES

Plaintiffs Emily Pinon, Gary C. Klein, Kim Brown, Joshua Frankum, Dinez Webster, and Todd Bryan ("Plaintiffs") and Defendants Daimler AG and Mercedes-Benz USA, LLC (collectively, "Defendants"), by and through their undersigned counsel, stipulate and agree as follows:

WHEREAS, Class Counsel (as defined in the underlying Settlement Agreement) and their respective law firm(s) desire to give an undertaking for repayment of their award of attorney fees, costs and expenses ("Undertaking"), as is required by the Settlement Agreement,

NOW, THEREFORE, each of the undersigned Class Counsel, on behalf of themselves as individuals and as agents for their respective law firms, hereby

submit themselves and their respective law firms to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

The obligations of Class Counsel and their respective law firms are joint and several.

In the event that the Final Order and Judgment is reversed on appeal, in whole or in part, Class Counsel shall, within ten (10) business days after the order reversing the Final Order and Judgment, in whole or in part, becomes final, repay to Defendants the full amount of the attorneys' fees, costs and expenses paid by Defendants to Class Counsel, including any accrued interest.

In the event the Final Order and Judgment is not reversed on appeal, in whole or in part, but the attorneys' fees, costs and expenses awarded by the Court are vacated or modified on appeal, Class Counsel shall, within ten (10) business days after the order vacating or modifying the award of attorneys' fees, costs and expenses becomes final, repay to Defendants the attorneys' fees, costs and expenses paid by Defendants to Class Counsel in the amount vacated or modified, including any accrued interest.

In the event that the Final Order and Judgment is reversed or modified on appeal, in whole or in part, any action that may be required thereafter may be addressed to this Court on shortened notice not less than five (5) business days.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Order and Judgment.

In the event Class Counsel fails to repay to Defendants any of attorneys' fees, costs and/or expenses that are owed to it pursuant to this Stipulated Undertaking, the Court shall, upon application of Defendants and notice to Class Counsel, summarily issue orders including, but not limited to, judgments and attachment orders against Class Counsel, and each of them, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant and represent that they are equity partners in their respective law firm(s) and have both actual and apparent authority to enter into this stipulation, agreement and undertaking on behalf of their respective law firm(s).

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the State of Georgia and the United States that they have read and understand the foregoing and that it is true and correct.

**IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:**

Dated: __12/20/2020__          HENINGER GARRISON DAVIS, LLC

By: _____

W. Lewis Garrison, Jr.
Attorneys for Plaintiff

*SIGNATURES CONTINUED ON NEXT PAGE*

3

Dated: _____     DAIMLER AG

By:   p.p.a. PHECHT   Digital unterschrieben von PHECHT
Datum: 2020.12.18
20:47:46 +01'00'
_____
    Paul Hecht
    Senior Counsel, Head of Global Litigation
    Daimler AG

Dated: __2020/12/18__     DAIMLER AG

p.p.a.
By: _____
    Dieter Scheunert
    Head of Product Analysis and Product
    Safety
    Daimler AG

Dated: _____     MERCEDES-BENZ USA, LLC

By: _____
    Matthew J. Everitt
    General Counsel, Mercedes-Benz USA,
    LLC

Dated: _____     SQUIRE PATTON BOGGS (US) LLP

By: _____
    Troy M. Yoshino
    Attorneys for Daimler AG and MBUSA

*SIGNATURES CONTINUED ON NEXT PAGE.*

4

Dated: _____     DAIMLER AG

By: _____
    Paul Hecht
    Senior Counsel, Head of Global Litigation
    Daimler AG

Dated: _____     DAIMLER AG

By: _____
    Dieter Scheunert
    Head of Product Analysis and Product
    Safety
    Daimler AG

Dated: December 18, 2020     MERCEDES-BENZ USA, LLC

By: _____
    Audra Dial
    Assistant General Counsel – Litigation
    Mercedes-Benz USA, LLC

Dated: December 18, 2020     MERCEDES-BENZ USA, LLC

By: _____
    Lillian N. Caudle
    Corporate Counsel – Litigation
    Mercedes-Benz USA, LLC

Dated: Dec. 18, 2020     SQUIRE PATTON BOGGS (US) LLP

By: _____
    Troy M. Yoshino
    Attorneys for Daimler AG and MBUSA

*SIGNATURES CONTINUED ON NEXT PAGE.*

4

Dated:  12/18/2020          KING & SPALDING LLP


By: _____

Stephen B. Devereaux
Attorneys for Daimler AG and MBUSA

5