## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **EMILY PINON, GARY C. KLEIN, KIM BROWN, JOSHUA FRANKUM, DINEZ WEBSTER, and TODD BRYAN, on behalf of themselves and all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**MERCEDES-BENZ USA, LLC, and DAIMLER AG,**<br>Defendants. | Case No. 1:18-CV-03984-MHC<br><br><br>**DECLARATION OF JENNIFER M. KEOUGH REGARDING PROPOSED NOTICE PLAN** |

I, Jennifer M. Keough, declare and state as follows:

### INTRODUCTION

1.      I am Chief Executive Officer of JND Class Action Administration ("JND").  This Declaration is based on my personal knowledge, as well as upon information provided to me by experienced JND employees and Counsel for the Plaintiffs and Defendants ("Counsel"), and if called upon to do so, I could and would testify competently thereto.

2.      I have more than 20 years of legal experience creating and supervising Notice and Claims Administration programs and have personally

overseen well over 500 matters.  A comprehensive description of my experience is attached as Exhibit A.

3.     JND is a legal administration services provider with headquarters located in Seattle, Washington.  JND has extensive experience with all aspects of legal administration and has administered hundreds of class action settlements.  JND was chosen as the Settlement Administrator in this case after going through a competitive bidding process.

4.     As CEO, I am involved in all facets of JND's operation, including monitoring the implementation of our notice and claims administration programs.

5.     I submit this Declaration  at the request of Counsel in the above-referenced litigation to describe the proposed Notice Plan for Class Members and address why this comprehensive proposed Notice Plan is consistent with other best practicable court-approved notice programs and the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Federal Judicial Center ("FJC") guidelines for Best Practicable Due Process notice.

## RELEVANT EXPERIENCE

6.      JND is one of the leading legal administration firms in the country. JND's class action and lien resolution divisions provide all services necessary for the effective implementation of class action settlements, including: (1) all facets of legal notice, such as outbound mailing, email notification, and the design and implementation of media programs, including through digital and social media

platforms; (2) website design and deployment, including online claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) lien verification, negotiation, and resolution; (7) calculation design and programming; (8) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (9) qualified settlement fund tax reporting; and (11) all other functions related to the secure and accurate administration of class action settlements.  JND is an approved vendor for the United States Securities and Exchange Commission ("SEC") as well as for the Federal Trade Commission ("FTC").  We also have Master Services Agreements with various law firms, corporations, banks, and other government agencies, which were only awarded after JND underwent rigorous reviews of our systems, privacy policies, and procedures.  JND has also been certified as SOC 2 compliant by noted accounting firm Moss Adams.  Finally, JND has been recognized by various publications, including the National Law Journal, the Legal Times, and, most recently, the New York Law Journal, for excellence in class action administration.

7.     The principals of JND, including myself, collectively have over 75 years of experience in class action legal and administrative fields. We have personally overseen some of the most complex administration programs, including: $20 billion Gulf Coast Claims Facility, $10 billion Deepwater Horizon BP Settlement, $6.15 billion WorldCom Securities Settlement, $3.4 billion Cobell

Indian Trust Settlement (the largest U.S. government class action ever), and $3.05 billion VisaCheck/MasterMoney Antitrust Settlement.

8.     In the past several months alone, JND has been appointed Notice Expert in the following matters: *Linneman, et al. v. Vita-Mix Corp.*, Case No. 15-cv-748 (S.D. Ohio); *In re Intuit Data Litigation*, Case No. 15-cv-1778 (N.D. Cal.); *In re Broiler Chicken Antitrust Litigation*, Case No. 16-cv-8637 (N.D. Ill.); *McWilliams v. City of Long Beach*, Case No. BC361469 (Cal. Super. Ct.); *Granados v. County of Los Angeles*, Case No. BC361470 (Cal. Super. Ct.); *Finerman v. Marriott Ownership Resorts, Inc.*, Case No. 14-cv-1154 (M.D. Fla.); *Huntzinger, et al. v. Suunto Oy, et al.*, Case No. 37-2018-00027159-CU-BT-CTL (Cal. Super. Ct.); and *Dover v. British Airways, PLC (UK)*, Case No. 12-cv-5567 (E.D.N.Y.).  I have also been appointed as the Independent Claims Administrator ("ICA") by the United States District Court for the Northern District of California in *Allagas v. BP Solar Int'l, Inc.*, Case No. 14-cv-560.

9.     JND's Legal Notice Team, which operates under my direct supervision, researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and relevant state court rules.  Our notice campaigns, which are regularly approved by courts throughout the United States, use a variety of media, including newspapers, press releases, magazines, trade journals, radio, television, social media, and the internet, depending on the circumstances and allegations of the case, the

demographics of the class, and habits of its members, as reported by various research and analytics tools. During my career, I have submitted several hundred affidavits to courts throughout the country attesting to our role in the creation and launch of various media programs.

## NOTICE PLAN SUMMARY

10.     This section summarizes all elements of the Notice Plan that will be part of this settlement. The proposed Notice Plan is designed to inform Class Members of the proposed class action settlement between Plaintiffs and Defendants Daimler AG and Mercedes-Benz USA, LLC ("MBUSA"). In the Settlement Agreement, the Settlement Class is defined as "all current owners, former owners, current lessees, and former lessees of Subject Vehicles who purchased or leased their Subject Vehicle in the United States. Excluded from the Settlement Class are: (a) Persons who have settled with, released, or otherwise had claims adjudicated on the merits against Defendants that are substantially similar to the Litigation Claims related to the Symptoms Alleged (*i.e.*, alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat); (b) Defendants and their officers, directors and employees, as well as their corporate affiliates and the corporate affiliates' officers, directors and employees; (c) Counsel to any of the parties; and (d) The Honorable Mark H. Cohen, the Honorable James Holderman (Ret.), and members of their respective immediate families."

5

11.     The Notice Plan described and detailed below has been designed to reach the Class through direct mail.  Specifically, the proposed Notice Plan includes the following components: CAFA Notice, Direct Mail Notice, Notice via Settlement Website, Settlement Administrator Email Address, and a Toll-free Information Line.

## NOTICE DESIGN AND CONTENT

12.     The Notice Documents are written in plain language and comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure.  I have reviewed the Notice Documents and believe each complies with these requirements as well as the FJC Class Action Notice and Plain Language Guide.

13.     JND has designed the Postcard Notice to attract the attention of the recipient so they are encouraged to read the contents and take additional action to learn more about the Settlement.  The Postcard Notice includes "call-out" language to signal the recipient that the mailing is not junk mail and is Court-ordered.  The actual content of the Notice included bolded language to draw the recipient's attention to read on to find out if they are included in the Class, how they can get Settlement Benefits, what their options are under the Settlement, and how to get more information.  The Postcard Notice includes plain and easy-to-read summaries of the Settlement and directs Class Members to the Settlement Website for more information, including an online Reimbursement Claim Form and Qualified Future Repair Claim Form and important case documents.

14.     In addition, to the extent a portion of the Class may speak Spanish as their primary language, the Postcard Notice and Long Form Notice include a direction to visit the Settlement Website to view the Notices in Spanish.  Spanish-speaking Class Members who call the toll-free information line during business hours may also speak with call center agents who are fluent in Spanish.  The proposed Postcard Notice and Long Form Notice are attached as Exhibits B and C, respectively.

## **NOTICE PLAN DETAILS**

15.     **CAFA Notice**: JND will provide notice of the proposed Settlement under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(b) no later than 10 days after the proposed Settlement Agreement is filed with the Court.  JND will provide such notice to the appropriate state and federal government officials.

16.     **Direct Mail Notice**: An adequate notice program must satisfy "due process" when reaching a class.  The United States Supreme Court, in the seminal case of *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974), clearly stated that direct notice (when possible) is the preferred method for reaching a class.  In addition, Rule 23(c)(2) of the Federal Rules of Civil Procedure requires that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."

17.     For this settlement, JND estimates that the direct notice component will include mail notice to approximately 100,000 potential Class Members, using the contact information to be collected using the following advanced address research strategies.

18.     As soon as practicable following the filing of the motion for preliminary approval, and in no event later than five (5) court days after the motion is filed, Defendants will provide a list of applicable Vehicle Identification Numbers ("VINs") to JND.  JND will work with Departments of Motor Vehicles ("DMVs") to gather addresses for potential class members by sending Vehicle Identification Numbers ("VINs") for Class Vehicles to the DMVs.  The DMVs will cross-check the VINs for vehicle transactions and will return the related mailing addresses and contact information to JND.  The contact information gained using this process is considered particularly reliable because owners and lessees must maintain accurate and up-to-date contact information in order to pay vehicle registration fees and keep driver licenses and voter registrations current.  The DMVs will provide multiple points of information, including make, model and model year of the vehicle, names and addresses of the purchasers, the inferred date of purchase, whether the vehicle was new or used, and whether the vehicle was leased.

19.     Following the return of contact information from the DMVs, JND will promptly load the information into a unique database for the Settlement.  A unique identification number will be assigned to each Class Member to identify them

throughout the administration process.  To increase deliverability, JND will review the data provided to identify any undeliverable addresses and duplicate records based on name and address.

20.     Prior to mailing notice, JND will update all addresses using the United States Postal Service's National Change of Address ("NCOA") database.[1]  JND will then mail to all unique Class Members identified through DMV records a Postcard Notice, substantially similar to the proposed Postcard Notice agreed upon by the Parties and submitted to the Court.  A copy of the Reimbursement Claim Form and the Qualified Future Repair Claim Form that Class Members can download will be available on the settlement website, and there will also be an electronic version of the Reimbursement Claim Form and Qualified Future Repair Claim Form that can be completed online and that allows for uploading of any required documentation to support a Claim.  The proposed Reimbursement Claim Form and Qualified Future Repair Claim Form are attached as Exhibits D and E, respectively. The proposed Long Form Notice will be available for download on the Settlement Website, and Class Members may also request that a copy be mailed to them by calling or emailing the Settlement Administrator.

---

[1] The NCOA database is the official United States Postal Service ("USPS") technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the stream.  This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained on the database for 48 months.

21.  **Settlement Website**: JND will develop and deploy an informational and interactive, case-specific Settlement Website on which the Postcard Notice, Long Form Notice, Settlement Agreement, a downloadable Reimbursement Claim Form and Qualified Future Repair Claim Form, and other important case documents will be posted.  The website will host an online Reimbursement Claim Form and Qualified Future Repair Claim Form, permit upload of supporting documentation for Class Members who mailed their Reimbursement Claim Forms and Qualified Future Repair Claim Forms, provide answers to frequently asked questions, and include contact information for the Settlement Administrator.

22.  The Website will have an easy-to-navigate design and will be formatted to emphasize important information and deadlines.  Other available features will include an email contact form, a page with answers to frequently asked questions, links to important case documents including the Motion for Attorneys' Fees once it is filed, and an online Reimbursement Claim Form and Qualified Future Repair Claim Form.  The Website will be optimized for mobile visitors so that information loads quickly on mobile devices and will also be designed to maximize search engine optimization through Google and other search engines.  Keywords and natural language search terms will be included in the site's metadata to maximize search engine rankings.

23.  **Settlement Administrator Email Address**: JND will establish a dedicated email address to receive and respond to Class Member inquiries.  JND will generate email responses from scripted FAQs that will also be used by our call center

personnel.  Depending on call volume and availability, we will use some of the same members on each team for efficiency and to establish uniformity of messaging.

24.    **Toll-free Information Line**: JND will make available its scalable call center resources to develop and manage the incoming telephone calls received in response to the Notice Plan.  JND will establish and maintain a 24-hour, toll-free telephone line that Class Members may call to obtain information about the Settlement. During business hours, JND's call center will be staffed with live operators who are trained to answer questions about the Settlement.

## CONCLUSION

25.    In JND's opinion, the Notice Plan as described herein, as well as the exhibits attached hereto, provide the best notice practicable under the circumstances, are consistent with the requirements of Rule 23 of the Federal Rules of Civil Procedure and all applicable court rules, and are consistent with, and exceed, other similar court-approved best notice practicable notice programs.  The Notice Plan is designed to reach as many Class Members as possible and provide them with the opportunity to review a plain language notice with the ability to easily take the next step to learn more about the Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on December 21, 2020, in Seattle, Washington.


_____
Jennifer M. Keough

# EXHIBIT A

**TO KEOUGH DECLARATION**

# JENNIFER KEOUGH

## CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





## I.

# INTRODUCTION

Jennifer Keough is Chief Executive Officer and a Founder of JND Legal Administration ("JND"). She is the only judicially recognized expert in all facets of class action administration - from notice through distribution. With more than 20 years of legal experience, Ms. Keough has directly worked on hundreds of high-profile and complex administration engagements, including such landmark matters as the $20 billion Gulf Coast Claims Facility, $10 billion BP Deepwater Horizon Settlement, $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever), $3.05 billion VisaCheck/MasterMoney Antitrust Settlement, $1.3 billion Equifax Data Breach Settlement, $1 billion Stryker Modular Hip Settlement, $600 million Engle Smokers Trust Fund, $215 million USC Student Health Center Settlement, and countless other high-profile matters. She has been appointed notice expert in many notable cases and has testified on settlement matters in numerous courts and before the Senate Committee for Indian Affairs.

The only female CEO in the field, Ms. Keough oversees more than 200 employees at JND's Seattle headquarters, as well as other office locations around the country. She manages all aspects of JND's class action business from day-to-day processes to high-level strategies. Her comprehensive expertise with noticing, claims processing,

Systems and IT work, call center logistics, data analytics, recovery calculations, check distribution, and reporting gained her the reputation with attorneys on both sides of the aisle as the most dependable consultant for all legal administration needs. Ms. Keough also applies her knowledge and skills to other divisions of JND, including mass tort, lien resolution, government services, and eDiscovery. Given her extensive experience, Ms. Keough is often called upon to consult with parties prior to settlement, is frequently invited to speak on class action issues, and has authored numerous articles in her multiple areas of expertise.

Ms. Keough launched JND with her partners in early 2016. Just a few months later, Ms. Keough was named as the Independent Claims Administrator ("ICA") in a complex BP Solar Panel Settlement. Ms. Keough also started receiving numerous appointments as notice expert and in 2017 was chosen to oversee a restitution program in Canada where every adult in the country was eligible to participate. Also, in 2017, Ms. Keough was named a female entrepreneur of the year finalist in the 14th Annual Stevie Awards for Women in Business. In 2015 and 2017, she was recognized as a "Woman Worth Watching" by Profiles in Diversity Journal.

Since JND's launch, Mrs. Keough has also been featured in numerous news sources. In 2019, she was highlighted in an Authority Magazine article, "5 Things I wish someone told me before I became a CEO," and a Moneyish article, "This is exactly how rampant 'imposter syndrome' is in the workforce." In 2018, she was featured in several Fierce CEO articles, "JND Legal Administration CEO Jennifer Keough aids law firms in complicated settlements," "Special Report—Women CEOs offer advice on defying preconceptions and blazing a trail to the top," and "Companies stand out with organizational excellence," as well as a Puget Sound Business Journal article, "JND Legal CEO Jennifer Keough handles law firms' big business." In 2013, Ms. Keough appeared in a CNN article, "What Changes with Women in the Boardroom."

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest legal administration firms in the country, where she oversaw operations in several offices across the country and was responsible for all large and critical projects. Previously, Ms. Keough worked as a class action

business analyst at Perkins Coie, one of the country's premier defense firms, where she managed complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms. While at Perkins she managed, among other matters, the administration of over $100 million in the claims-made Weyerhaeuser siding case, one of the largest building product class action settlements ever. In her role, she established a reputation as being fair in her ability to see both sides of a settlement program.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.



# II.

# LANDMARK CASES

Jennifer Keough has the distinction of personally overseeing the administration of more large class action programs than any other notice expert in the field. Some of her largest engagements include the following:

## 1.   *Allagas v. BP Solar Int'l, Inc.*

### No. 14-cv-00560 (N.D. Cal.)

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with online claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court regarding the progress of the case's administration. In addition to her role as ICA, Ms. Keough also acted as mediator for those claimants who opted out of the settlement to pursue their claims individually against BP. Honorable Susan Illston, recognized the complexity of the settlement when appointing Ms. Keough the ICA (December 22, 2016):

> *The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the merits...The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.*

### 2.  *Careathers v. Red Bull North America, Inc.*

**No. 13-cv-0369 (KPF) (S.D.N.Y.)**

Due to the nature of this case, direct notice was impossible. Therefore, Ms. Keough assisted in the design of a publication notice and claims administration program intended to reach the greatest number of affected individuals. Due to the success of the notice program, the informational website designed by Ms. Keough and her team received an unprecedented 67 million hits in less than 24 hours. The Claims Administration program received over 2 million claim forms submitted through the three available filing options: online, mail, and email. Judge Katherine Polk Failla approved the notice program (May 12, 2015) finding:

> ...that the Notice to the Settlement Class... was collectively the best notice practicable under the circumstances of these proceedings of the matters set forth therein, and fully satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, due process, and any other applicable laws.

### 3.  *Chester v. The TJX Cos.*

**No. 15-cv-01437 (C.D. Cal.)**

As the notice expert, Ms. Keough proposed a multi-faceted notice plan designed to reach over eight million class members. Where class member information was available, direct notice was sent via email and via postcard when an email was returned as undeliverable or for which there was no email address provided. Additionally, to reach the unknown class members, Ms. Keough's plan included a summary notice in eight publications directed toward the California class and a tear-away notice posted in all TJ Maxx locations in California. The notice effort also included an informational and interactive website with online claim filing and a toll-free number that provided information 24 hours a day. Additionally, associates were available to answer class member questions in both English and Spanish during business hours. Honorable Otis D. Wright, II approved the plan (May 14, 2018):

*...the Court finds and determines that the Notice to Class Members was complete and constitutionally sound, because individual notices were mailed and/or emailed to all Class Members whose identities and addresses are reasonably known to the Parties, and Notice was published in accordance with this Court's Preliminary Approval Order, and such notice was the best notice practicable.*

## 4.  Cobell v. Salazar

**No. 96 CV 1285 (TFH) (D. D.C.)**

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision, the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of one percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay... the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

*...that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class.... Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual*

> *notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).*

## 5.   *Gulf Coast Claims Facility (GCCF)*

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, Ms. Keough and her team coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

## 6.   *Hernandez v. Experian Info. Solutions, Inc.*

**No. 05-cv-1070 (C.D. Cal.)**

This case asserts claims in violation of the Fair Credit Reporting Act. The litigation dates back to 2005, when José Hernandez filed his original Class Action Complaint in *Hernandez v. Equifax Info. Services, LLC*, No. 05-cv-03996 (N.D. Cal.), which was later transferred to C.D. Cal. and consolidated with several other related cases. In April 2009, a settlement agreement between Defendants and some Plaintiffs was reached that would provide payments of damage awards from a $45 million settlement fund. However, after being granted final approval by the Court, the agreement was vacated on appeal by the United States Circuit Court of Appeals for the Ninth Circuit. The parties resumed negotiations and reached an agreement in April 2017. The settlement provided both significant monetary (approximately $38.7 million in non-reversionary cash) and non-monetary benefits. Ms. Keough oversaw the notice and administration efforts for the entire litigation. In approving the settlement and responding to objections about notice and administration expenses, Honorable David O. Carter, stated (April 6, 2018):

*The Court finds, however, that the notice had significant value for the Class, resulting in over 200,000 newly approved claims—a 28% increase in the number of Class members who will receive claimed benefits—not including the almost 100,000 Class members who have visited the CCRA section of the Settlement Website thus far and the further 100,000 estimated visits expected through the end of 2019. (Dkt. 1114-1 at 3, 6). Furthermore, the notice and claims process is being conducted efficiently at a total cost of approximately $6 million, or $2.5 million less than the projected 2009 Proposed Settlement notice and claims process, despite intervening increases in postage rates and general inflation. In addition, the Court finds that the notice conducted in connection with the 2009 Proposed Settlement has significant ongoing value to this Class, first in notifying in 2009 over 15 million Class members of their rights under the Fair Credit Reporting Act (the ignorance of which for most Class members was one area on which Class Counsel and White Objectors' counsel were in agreement), and because of the hundreds of thousands of claims submitted in response to that notice, and processed and validated by the claims administrator, which will be honored in this Settlement.*

### 7.   *In re Air Cargo Shipping Servs. Antitrust Litig.*

**No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)**

This antitrust settlement involved five separate settlements. As a result, many class members were affected by more than one of the settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed affected class members the ability to compare the claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency notification process included mailing of deficiency letters, making follow-up phone calls, and sending emails to class members to help them complete their claim. To ensure accuracy throughout the claims process for each of the settlements, Ms. Keough created a process which audited many of the claims that were eligible for payment.

### 8.  *In re Blue Cross Blue Shield Antitrust Litig.*

**Master File No.: 2:13-CV-20000-RDP (N.D. Ala.)**

JND was recently appointed as the notice and claims administrator in the $2.67 billion Blue Cross Blue Shield proposed settlement. In approving the notice plan designed by Jennifer Keough, United States District Court Judge R. David Proctor, wrote: "JND has a proven track record and extensive experience in large, complex matters."

### 9.  *In re Classmates.com*

**No. C09-45RAJ (W.D. Wash.)**

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was re-sent up to three times in an attempt to provide notice to the entire class. Additionally, Ms. Keough implemented a claims administration program which received over 699,000 claim forms and maintained three email addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> *The Court finds that the form of electronic notice… together with the published notice in the Wall Street Journal, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process…*

### 10.  *In re Equifax Inc. Customer Data Sec. Breach Litig.*

**No. 17-md-2800-TWT (N.D. Ga.)**

JND was appointed settlement administrator, under Ms. Keough's direction, for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. Ms. Keough and her team oversaw all aspects

of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls. Ms. Keough and her team also worked closely with the Notice Provider to ensure that each element of the media campaign was executed in the time and manner as set forth in the Notice Plan.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

> *JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional supplemental email notice campaigns. (Id., ¶ 57)...JND has also developed specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently...The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.*

## 11. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

<u>GM Ignition Switch Compensation Claims Resolution Facility</u>

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

## 12. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

Ms. Keough was also recently appointed the class action settlement administrator for the $120 million GM Ignition Switch settlement. On April 27, 2020, Honorable Jesse M. Furman approved the notice program designed by Ms. Keough and her team and the notice documents they drafted with the parties:

> *The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.*

> *The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator...*

Under Ms. Keough's direction, JND has already mailed notice to nearly 30 million potential class members.

### 13. *In re Mercedes-Benz Emissions Litig.*

**No. 16-cv-881 (D.N.J.)**

JND Legal Administration was recently appointed as the Settlement Administrator in this $700 million plus settlement wherein Daimler AG and its subsidiary Mercedes-Benz USA reached an agreement to settle a consumer class action alleging that the automotive companies unlawfully misled consumers into purchasing certain diesel type vehicles by misrepresenting the environmental impact of these vehicles during on-road driving. As part of its appointment, the Court approved Jennifer Keough's proposed notice plan and authorized JND Legal Administration to provide notice and claims administration services.

> *The Court finds that the content, format, and method of disseminating notice, as set forth in the Motion, Declaration of JND Legal Administration, the Class Action Agreement, and the proposed Long Form Notice, Short Form Notice, and Supplemental Notice of Class Benefits (collectively, the "Class Notice Documents") – including direct First Class mailed notice to all known members of the Class deposited in the mail within the later of (a) 15 business days of the Preliminary Approval Order; or (b) 15 business days after a federal district court enters the US-CA Consent Decree – is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B). The Court approves such notice, and hereby directs that such notice be disseminated in the manner set forth in the Class Action Settlement to the Class under Rule 23(e)(1)…JND Legal Administration is hereby appointed as the Settlement Administrator and shall perform all duties of the Settlement Administrator set forth in the Class Action Settlement.*

### 14. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*

**No. 2179 (MDL) (E.D. La.)**

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administration programs. One of the

programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was the hub of the program. The Hammond center was visited several times by Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

### 15. *In re Stryker Rejuvenate and ABG II Hip Implant Products Liab. Litig.*

**No. 13-2441 (MDL) (D. Minn.)**

Ms. Keough and her team were designated as the escrow agent and claims processor in this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the claims processor, Ms. Keough and her team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. Additionally, she oversaw the creation of a deficiency process to ensure claimants were notified of their deficient submission and provided an opportunity to cure. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

### 16. *In re The Engle Trust Fund*

**No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)**

Ms. Keough played a key role in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

*The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.*

### 17. *In re Washington Mut. Inc., Sec. Litig.*

**No. 08-md-1919 MJP (W.D. Wash.)**

Ms. Keough supervised the notice and claims administration for this securities class action, which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million class members, Ms. Keough managed the claims administration program, including the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, Ms. Keough and her team established a unique database to store the proofs of claim and supporting documentation; trained staff to the particulars of this settlement; created multiple computer programs for the entry of class member's unique information; and developed a program to calculate the recognized loss amounts pursuant to the plan of allocation. The program was designed to allow proofs of claim to be filed by mail or through an online portal. A deficiency process was established in order to reach out to class members who submitted incomplete proof of claims. The deficiency process involved reaching out to claimants via letters, emails, and telephone calls.

### 18. *In re Yahoo! Inc. Sec. Litig.*

**No. 17-cv-373 (N.D. Cal.)**

Ms. Keough oversaw the notice and administration of this $80 million securities settlement. In approving the settlement, Judge Lucy H. Koh, stated (September 7, 2018):

*The Court hereby finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions: met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and 15 U.S.C.*

*§ 78u-4(a)(7) (added to the Exchange Act by the Private Securities Litigation Reform Act of 1995); constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation.*

## 19. *Linneman v. Vita-Mix Corp.*

**No. 15-cv-748 (S.D. Ohio)**

Ms. Keough was hired by Plaintiff Counsel to design a notice program regarding this consumer settlement related to allegedly defective blenders. The Court approved Ms. Keough's plan and designated her as the notice expert for this case. As direct notice to the entire class was impracticable due to the nature of the case, Ms. Keough proposed a multi-faceted notice program. Direct notice was provided by mail or email to those purchasers identified through data obtained from Vita-Mix and third parties, such as retailers, dealers, distributors, or restaurant supply stores. To reach the unknown class members, Ms. Keough oversaw the design of an extensive media plan that included: published notice in *Cooking Light*, *Good Housekeeping*, and *People* magazine and digital notice; placements through Facebook/Instagram, Twitter, and Conversant; and paid search campaign through Google and Bing. In addition, the program included an informational and interactive website where class members could submit claims electronically, and a toll-free number that provided information to class members 24 hours a day. When approving the plan, Honorable Susan J. Dlott stated (May 3, 2018):

*JND Legal Administration, previously appointed to supervise and administer the notice process, as well as oversee the administration of the Settlement, appropriately issued notice to the Class as more fully set forth in the Agreement, which included the creation and operation of the Settlement Website and more than 3.8 million mailed or emailed notices to Class Members. As of March 27, 2018, approximately 300,000 claims have been filed by Class Members, further demonstrating the success of the Court-approved notice program.*

## 20. *Loblaw Card Program*

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program. The program was created as a response to a price-fixing scheme perpetrated by some employees of the company involving bread products. The program offered a $25 gift card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. Ms. Keough and her team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

## 21. *New Orleans Tax Assessor Project*

After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5,000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

## 22. *USC Student Health Ctr. Settlement*

**No. 18-cv-04258-SVW (C.D. Cal.)**

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. Ms. Keough and her team designed a notice effort that included: mailed and email notice to potential Class members; digital notices on Facebook, LinkedIn, and Twitter; an internet search effort; notice placements in USC publications/eNewsletters; and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. Ms. Keough ensured the establishment of an all-female call center, whose operators were fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. She also worked with the JND staff handling lien resolution for this case. Preliminarily approving the settlement, Honorable Stephen V. Wilson stated (June 12, 2019):

> The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.

### 23. *Williams v. Weyerhaeuser Co.*

**Civil Action No. 995787 (Cal. Super. Ct.)**

This landmark consumer fraud litigation against Weyerhaeuser  Co. had over $100 million in claims paid. The action involved exterior hardboard siding installed on homes and other structures throughout the United States from January 1, 1981 to December 31, 1999 that was alleged to be defective and prematurely fail when exposed to normal weather conditions.

Ms. Keough oversaw the administration efforts of this program, both when she was employed by Perkins Coie, who represented defendants, and later when she joined the legal administration firm handling the case. Operating for nine years, the claims program was extensive, subject to varying claims with varying claims deadlines depending on when the class member installed the original Weyerhaeuser siding. The program involved not just payments to class members, but an inspection component where a court-appointed inspector analyzed the particular claimant's siding to determine the eligibility and award level.  Class members received a check for their damages, based upon the total square footage of damaged siding, multiplied by the cost of replacing, or, in some instances, repairing, the siding on their homes.  Ms. Keough oversaw the entirety of the program from start to finish.



# III.

# JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Keough's work as outlined above and by the sampling of judicial comments from JND programs listed below.

## 1.   Judge Jesus G. Bernal

***Noriesta v. Konica Minolta Bus. Solutions U.S.A., Inc.,*** (October 22, 2020)
No. 19-cv-00620 (C.D. Cal.):

*Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement.  Fed. R. Civ. P. 23(e)(1).  In its MPA Order, the Court approved the notice sent to Settlement Class Members.  (MPA Order at 13.)  JND Legal Administration completed notice in accordance with the procedures approved by the Court.  (See Keough Decl.)  The Court therefore finds that notice to the Settlement Class was adequate.*

## 2.   Judge Amy Totenberg

***Amin v. Mercedes-Benz USA, LLC,*** (September 11, 2020)
No. 17-cv-01701-AT (N.D. Ga.):

*Further, the Court finds that notice was given in accordance with the Preliminary Approval Order (Doc. 75), and that the form and content of that Notice, and the procedures for dissemination thereof, afforded adequate protections to Class Members and satisfy the requirements of Rule 23(e) and due process and constitute the best notice practicable under the circumstances.*

### 3.   Judge Fernando M. Olguin

***Gonzalez-Tzita v. City of Los Angeles,*** (August 25, 2020)
No. 16-cv-00194 (C.D. Cal.):

*After undertaking the required examination, the court approved the form of the proposed class notice. Also... the notice program was implemented by JND. Accordingly, based on the record and its prior findings, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement.*

### 4.   Judge Steven W. Wilson

***Amador v Baca,*** (August 11, 2020)
No. 10-cv-1649 (C.D. Cal.):

*Class Counsel, in conjunction with JND, have also facilitated substantial notice and outreach to the relatively disparate and sometimes difficult to contact class of more than 94,000 individuals, which has resulted in a relatively high claims rate of between 33% and 40%, pending final verification of deficient claims forms. Their conduct both during litigation and after settlement was reached was adequate in all respects, and supports approval of the Settlement Agreement.*

### 5.   Judge Gary A. Fenner

***In re Pre-Filled Propane Tank Antitrust Litig.,*** (June 18, 2020)
No. 14-md-02567 (W.D. Mo.):

*In short, court-appointed claims administrator JND provided actual notice where possible to each Settlement Class Member. As explained above, the Notice was sent by first-class regular mail directly to all 50,485 Settlement Class Members. Where Notice was returned as undeliverable to certain Settlement Class Members, JND made reasonable attempts to obtain updated addresses for all such Settlement*

*Class Members and to provide additional direct notice to such Settlement Class Members. JND also established a settlement-specific website, toll free telephone number, and fax number through which Settlement Class Members could obtain information about the action, the Settlement Agreements, the Plan of Allocation, and their rights with respect to the Settlement Agreements.*

### 6.   Judge Susan R. Bolton

**In re Banner Health Data Breach Litig.,** (April 21, 2020)
No. 16-cv-02696 (D. Ariz.):

*Prior to the Final Approval Hearing, Class Counsel filed the original and supplemental Declaration of Jennifer M. Keough Regarding Notice Administration, confirming that the Notice Program was completed in accordance with the Parties' instructions and the Preliminary Approval Order. Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the Final Approval Hearing in support of, or in opposition to, the proposed Settlement, the award of attorneys' fees, costs, and expenses, and the payment of Service Awards to the Class Representatives.*

### 7.   Judge Stephanie M. Rose

**Swinton v. SquareTrade, Inc.,** (April 14, 2020)
No. 18-CV-00144-SMR-SBJ (S.D. Iowa):

*This publication notice appears to have been effective.  The digital ads were linked to the Settlement Website, and Google Analytics and other measures indicate that, during the Publication Notice Period, traffic to the Settlement Website was at its peak.*

### 8.   Honorable Virginia A. Phillips

*Sonner v. Schwabe North America, Inc.,* (April 7, 2020)
No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*The Court orders the appointment of JND Legal Administration to implement and administrate the dissemination of class notice and administer opt-out requests pursuant to the proposed notice dissemination plan attached as Exhibit D to the Stipulation.*

### 9.   Honorable John Ruhl

*Folweiler v. Am. Family Ins. Co.,* (February 19, 2020)
No. 16-2-16112-0 (Wash. Super. Ct.):

*Through the retention of a class action settlement administrator, JND Legal Administration (JND), the parties have now complied with the notice plan set forth in the Court's Order granting preliminary approval. See, Declaration of Jennifer M. Keough submitted in support of motion for final approval...Moreover, as set forth information provided by JND, the individual mailed Class Notice reached approximately 88.5% of the Settlement Class.*

### 10.  Judge Joan B. Gottschall

*In re Navistar MaxxForce Engines Mktg., Sales Practices and Products,* (January 3, 2020)
No. 14-cv-10318 (N.D. Ill.):

*In accordance with PTO 29 and subsequent orders, the settlement administrator, a corporation for which Jennifer Keough ("Keough" or "settlement administrator") speaks, filed several declarations updating the court on the notice, opt-out, and claims process... the court finds that the settlement is fair, reasonable, and adequate.*

## 11. Judge Fernando M. Olguin

**Ahmed v. HSBC Bank USA, NA,** (December 30, 2019)
No. 15-cv-2057-FMO-SPx (N.D. Ill.):

*On June 21, 2019, the court granted preliminary approval of the settlement, appointed JND Legal Administration ("JND") as settlement administrator... the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement... the reaction of the class has been very positive.*

## 12. Honorable Steven I. Locke

**Donnenfield v. Petro, Inc.,** (December 4, 2019)
No. 17-cv-02310 (E.D.N.Y.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

## 13. Judge Steven W. Wilson

**Amador v Baca,** (November 7, 2019)
No. 10-cv-1649 (C.D. Cal.):

*The Court approves the retention of JND Legal Administration ("JND") as Class Administrator, to administer the distribution of the Class and Settlement Notice and publication of the Class and Settlement Notice, and to distribute the proceeds of the settlement to all eligible Class Members pursuant to the Plan set out in the Settlement Agreement (Exhibit A) should the Court grant final approval. Exhibit E (the Class Administrator bid) includes the qualifications of JND, which establishes to the Court's satisfaction the qualifications of JND to act as the Class Administrator.*

## 14.  Honorable Amy D. Hogue

***Trepte v. Bionaire, Inc.,*** (November 5, 2019)

No. BC540110 (Cal. Super. Ct.):

*The Court appoints JND Legal Administration as the Class Administrator... The Court finds that the forms of notice to the Settlement Class regarding the pendency of the action and of this settlement, and the methods of giving notice to members of the Settlement Class... constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class. They comply fully with the requirements of California Code of Civil Procedure section 382, California Civil Code section 1781, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.*

## 15.  Judge Sarah D. Morrison

***Blasi v. United Debt Serv., LLC,*** (November 5, 2019)

No. 14-cv-0083 (S.D. Ohio):

*JND Class Action Administration ("JND"), the claims administrator, mailed 166,597 notices to the class and had 10,377 notices returned as undeliverable. Id. at 6. Of those, JND re-mailed 2,306 to updated addresses. Id. 7. In addition, the website hosted 3,606 users who registered 10,170 page views. Id. As of August 14, 2019, JND had received 11,178 claim forms that remained under review. Id. Not one objection was lodged, and no one sought exclusion. Id... Through the postcard mailing and the website, the Court finds that the Class Representatives have utilized the best possible yet reasonable means to effectuate notice. Consequently, the Court holds that the Settlement Notice is sufficient.*

## 16.  Judge Cormac J. Carney

***In re ConAgra Foods Inc.,*** (October 8, 2019)

No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*Following the Court's preliminary approval, JND used a multi-pronged notice campaign to reach people who purchased Wesson Oils...As of September 19, 2019,*

*only one class member requested to opt out of the settlement class, with another class member objecting to the settlement. The reaction of the class has thus been overwhelmingly positive, and this factor favors final approval.*

## 17.   Judge Teri L. Jackson

**Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.,** (August 30, 2019)
No. CGC-15-547520 (Cal. Super. Ct.):

*On April, 16, 2019, the Court issued Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, in which the Court did the following...appointed JND Legal Administration as the Settlement Administrator...The manner and form of notice...was the best notice practicable under the circumstances, was valid, due, and sufficient notice to all members of the Settlement Class, and complied fully with California law and due process.*

## 18.   Judge Barbara Jacobs Rothstein

**Wright v. Lyft, Inc.,** (May 29, 2019)
No. 17-cv-23307-MGC 14-cv-00421-BJR (W.D. Wash.):

*The Court also finds that the proposed method of distributing relief to the class is effective. JND Legal Administration ("JND"), an experienced claims administrator, undertook a robust notice program that was approved by this Court...*

## 19.   Judge J. Walton McLeod

**Boskie v. Backgroundchecks.com,** (May 17, 2019)
No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator...The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

## 20. Honorable James Donato

***In re Resistors Antitrust Litig.,*** (May 2, 2019)
No. 15-cv-03820-JD (N.D. Cal.):

*The Court approves as to form and content the proposed notice forms, including the long form notice and summary notice, attached as Exhibits B and D to the Second Supplemental Declaration of Jennifer M. Keough Regarding Proposed Notice Program (ECF No. 534-3). The Court further finds that the proposed plan of notice – including Class Counsel's agreement at the preliminary approval hearing for the KOA Settlement that direct notice would be effectuated through both U.S. mail and electronic mail to the extent electronic mail addresses can be identified following a reasonable search – and the proposed contents of these notices, meet the requirements of Rule 23 and due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.The Court appoints the firm of JND Legal Administration LLC as the Settlement Administrator.*

## 21. Honorable Leigh Martin May

***Bankhead v. First Advantage Background Serv. Corp.,*** (April 30, 2019)
No. 17-cv-02910-LMM-CCB (N.D. Ga.):

*The Court appoints JND Legal Administration as Settlement Administrator... The Court approves the notice plans for the Class as set forth in the declaration of the JND Legal Administration. The Court finds that class notice fully satisfies the requirements of due process of the Federal Rules of Civil Procedure. The notice plan constitutes the best notice practicable under the circumstances of the Class.*

## 22. Honorable P. Kevin Castel

***Hanks v. Lincoln Life & Annuity Co. of New York,*** (April 23, 2019)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form Notice and Long-Form Notice (collectively, the "Notices") attached as Exhibits A and B, respectively, to the*

*Declaration of Jennifer M. Keough, filed on April 2, 2019, at Docket No. 120...The form and content of the notices, as well as the manner of dissemination described below, therefore meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto...the Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 23. Judge Cormac J. Carney

***In re ConAgra Foods Inc,*** (April 4, 2019)
No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*The bids were submitted to Judge McCormick, who ultimately chose JND Legal Administration to propose to the Court to serve as the settlement administrator. (Id. ¶ 65.) In addition to being selected by a neutral third party, JND Legal Administration appears to be well qualified to administer the claims in this case... The Court appoints JND Legal Administration as Settlement Administrator... JND Legal Administration will reach class members through a consumer media campaign, including a national print effort in People magazine, a digital effort targeting consumers in the relevant states through Google Display Network and Facebook, newspaper notice placements in the Los Angeles Daily News, and an internet search effort on Google. (Keough Decl. ¶ 14.) JND Legal Administration will also distribute press releases to media outlets nationwide and establish a settlement website and toll-free phone number. (Id.) The print and digital media effort is designed to reach 70% of the potential class members. (Id.) The newspaper notice placements, internet search effort, and press release distribution are intended to enhance the notice's reach beyond the estimated 70%. (Id.)*

### 24. Honorable William J. McGovern, III, J.S.C.

***Atl. Ambulance Corp. v. Cullum and Hitti,*** (March 29, 2019)
No. MRS-L-264-12 (N.J. Super. Ct.):

*The Court finds that the manner and form of notice set forth in the Settlement Agreement (Class Notice) was provided to the Settlement Class Members and*

*Settlement Sub-class Members by JND Legal Administration, the Court-appointed Administrator of the Settlement…The Class Notice satisfied the requirements of due process and R. 4:32-2 and constitutes the best practicable notice under the circumstances.*

## 25. Judge Edward M. Chen

***In re MyFord Touch Consumer Litig.,*** (March 28, 2019)
No. 13-cv-3072 (EMC) (N.D. Ca.):

*The parties have justified their choice of JND as Settlement Administrator… And the Court finds that the language of the class notice is appropriate and that the means of notice is the "best notice…practicable under the circumstances."*

## 26. Judge Jonathan Goodman

***Belanger v. RoundPoint Mortgage Servicing,*** (March 28, 2019)
No. 17-cv-23307-MGC (S.D. Fla.):

*Class Counsel has filed with the Court a declaration from Jennifer M. Keough, Chief Executive Officer at JND Legal Administration, the independent third-party Settlement Administrator for the Settlement, establishing that the Mail Notice, Claim Form, and Claim Form Instructions were mailed to Noticed Class Members on December 12, 2018; the Settlement Website and IVR toll-free telephone number system were established on December 12, 2018; internet advertising was published beginning December 14, 2018; and the Publication Notice was published on January 7, 2019. Adequate Class Notice was given to the Noticed Class Members in compliance with the Settlement Agreement and the Preliminary Approval Order.*

## 27. Judge Steven P. Shreder

***Chieftain Royalty Co. v. Marathon Oil Co.,*** (March 8, 2019)
No. 17-cv-334 (E.D. Okla.):

*The Court also approves the efforts and activities of the Settlement Administrator, JND Legal Administration, and the Escrow Agent, Signature Bank, in assisting with*

*certain aspects of the administration of the Settlement, and directs them to continue to assist Class Representatives in completing the administration and distribution of the Settlement in accordance with the Settlement Agreement, this Judgment, any Plan of Allocation approved by the Court, and the Court's other orders.*

### 28. Judge Thomas S. Zilly

***Connolly v. Umpqua Bank,*** (February 28, 2019)
No. C15-517 (TSZ) (W.D. Wash.):

*Notice of the proposed class action settlement and of the final approval hearing scheduled for February 21, 2019, was sent to all members of the Class in the manner described in the Declaration of Jennifer M. Keough, the Chief Executive Officer of JND Legal Administration, which is the Settlement Administrator for this matter... the methods of transmitting notices to class members, along with the maintenance of a dedicated website, were the best notice practicable under the circumstances and comported with Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution.*

### 29. Judge Kathleen M. Daily

***Podawiltz v. Swisher Int'l, Inc.,*** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator...The Court finds that the notice plan is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

### 30. Honorable Robert W. Lehrburger

***Hines v. CBS Television Studios,*** (February 5, 2019)
No. 17-cv-7882 (PGG) (S.D.N.Y.):

*Class Members were provided with the best notice practicable under the circumstances. The Court further finds that the Notice and its distribution comported*

*with all constitutional requirements, including those of due process. No Cass Member opted out of or objected to the Settlement. Moreover, approximately 57% of Class Members returned the Claim form, which represents a substantial response from the Settlement Class...On August 24, 2018 the Court preliminary appointed JND as the Settlement Claims Administrator in this action. JND is an experienced administrator of Class Action settlements nationwide.*

### 31. Judge Kimberly E. West

***Reirdon v. Cimarex Energy Co.,*** (December 18, 2018)
No. 16-CIV-113 (KEW) (E.D. Okla.):

*The Court further finds that due and proper notice, by means of the Notice and Summary Notice, was given to the Settlement Class in conformity with the Settlement Agreement and Preliminary Approval Order...The Court also approves the efforts and activities of the Settlement Administrator, JND Legal Administration, and the Escrow Agent, Signature Bank, in assisting with certain aspects of the administration of the Settlement, and directs them to continue to assist Class Representative in completing the administration and distribution of the Settlement in accordance with the Settlement Agreement, this Judgment, any Plan of Allocation approved by the Court, and the Court's other orders.*

### 32. Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

## 33.  Judge Mark H. Cohen

***Liotta v. Wolford Boutiques, LLC,*** (November 30, 2018)

No. 16-cv-4634 (N.D. Ga.):

*The Notice Program included written mail notice via post-card pursuant to addresses determined from a look-up on the telephone numbers using a historic look-up process designed to identify the owner of the relevant telephone numbers on July 7, 2016 and September 2, 2016. Keough Decl. ¶¶ 3-4. The Claims Administrator used multiple databases to determine addresses and names of the cellular telephone owners at the time the text messages were sent. Keough Decl. ¶ 3. The Parties' filed evidence that the Claims Administrator provided notice in conformance with the Notice Program approved by the Court. Id. ¶ 4 & Ex. A; Settlement Agreement § C.4; Prelim. Approval Order at 16-17. This notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreement and the fairness hearing. The notice constituted due and sufficient notice for all other purposes to all persons entitled to receive notice.*

## 34.  Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (November 16, 2018)

No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

### 35.  Judge Maren E. Nelson

**Granados v. County of Los Angeles,** (October 30, 2018)
No. BC361470 (Cal. Super. Ct.):

*JND's Media Notice plan is estimated to have reached 83% of the Class. The overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 36.  Judge Maren E. Nelson

**McWilliams v. City of Long Beach,** (October 30, 2018)
No. BC361469 (Cal. Super. Ct.):

*It is estimated that JND's Media Notice plan reached 88% of the Class and the overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 37.  Judge Cheryl L. Pollak

**Dover v. British Airways, PLC (UK),** (October 9, 2018)
No. 12-cv-5567 (E.D.N.Y.), in response to two objections:

*JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms...the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate, and reasonable.*

### 38. Judge Edward J. Davila

***In re Intuit Data Litig.,*** (October 4, 2018)
No. 15-CV-1778-EJD (N.D. Cal.):

*The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator...The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed forms of notice, is reasonable and appropriate and satisfies any applicable due process and other requirements, and is the only notice to the Class Members of the Settlement that is required.*

### 39. Judge Michael H. Watson

***O'Donnell v. Fin. American Life Ins. Co.,*** (August 24, 2018)
No. 14-cv-01071 (S.D. Ohio):

*The Court finds that the Class Notice and the notice methodology implemented pursuant to this Settlement Agreement (as evidenced by the Declaration of Settlement Administrator Keough, JND Legal Administration): (1) constituted the best practicable notice; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the terms of the Proposed Settlement, the available relief, the release of claims, their right to object or exclude themselves from the proposed Settlement, and their right to appear at the fairness hearing; (3) were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

### 40. Judge Timothy J. Corrigan

*Finerman v. Marriott Ownership Resorts, Inc.,* (August 15, 2018)
No. 14-cv-1154-J-32MCR (M.D. Fla.):

*Notice was given by Mail in accordance with the Settlement Agreement and the Preliminary Approval Order. The Class Notice, Claim Form, Preliminary Approval Order, Petition for Attorney's Fees, and Settlement Agreement (without exhibits) were also posted on the Settlement Website at www.cruisefaresettlement.com. These forms of class notice fully complied with the requirements of Rule 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and were due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.*

### 41. Judge Federico A. Moreno

*Brna v. Isle of Capri Casinos and Interblock USA, LLC,* (February 20, 2018)
No. 17-cv-60144 (FAM) (S.D. Fla.):

*Class Counsel has filed with the Court a Declaration from JND Legal Administration, the independent third-party Settlement Administrator for the Settlement, establishing the Settlement Notice and Claim Form were delivered by email and mail to the class members on November 27, 2017 and December 4, 2017, the Settlement website was established on November 27, 2017, and Claim Forms were also available electronically on the website. Adequate notice was given to the Settlement Class Members in compliance with the Settlement Agreement and the preliminary approval order.*

### 42. Honorable Percy Anderson

*Nozzi v. Housing Authority for the City of Los Angeles,* (February 15, 2018)
No. CV 07-380 PA (FFMx) (C.D. Cal.):

*The notice given in this case was reasonably calculated to reach the Damages Class… Finally, a notice was published in the L.A. Times for three consecutive weeks on August 18, 2017, August 25, 2017, and September 1, 2017, and a 30-day internet*

advertising campaign was launched on Facebook, Instagram, and Twitter to inform Class Members about the settlement. (Keough Decl. ¶ 12.) The Court therefore concludes that the notice procedures satisfied the requirements of Due Process and Federal Rule of Civil Procedure 23(e).

## 43. Judge Ann D. Montgomery

*In re Wholesale Grocery Prod. Antitrust Litig.,* (November 16, 2017)
No. 9-md-2090 (ADM) (TNL) (D. Minn.):

Notice provider and claims administrator JND Legal Administration LLC provided proof that mailing conformed to the Preliminary Approval Order in a declaration filed contemporaneously with the Motion for Final Approval of Class Settlement. This notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements of due process, is the best notice practicable under the circumstances, and constituted due and adequate notice to the Class of the Settlement, Final Approval Hearing and other matters referred to in the Notice.

## 44. Honorable Philip S. Gutierrez

*Harris v. Amgen, Inc.,* (April 4, 2017)
No. CV 07-5442 PSG (PLAx) (C.D. Cal.):

Class counsel retained JND to provide notice and administration services for this litigation. See generally Keough Decl. JND mailed 13,344 class action notices to class members by first-class mail on January 14, 2017. See Keough Decl., ¶ 6. If the mailings returned undeliverable, JND used skip tracing to identify the most updated addresses for class members. Id. To date, JND reports than only 179 notices are undeliverable. Id. ¶ 7. Moreover, as of March 21, 2017, the deadline for filing objections, JND had received no objections to the final settlement agreement. The lack of objections is an indicator that class members find the settlement to be fair, reasonable, and adequate.



# IV.  CASE EXPERIENCE

Ms. Keough has played an important role in hundreds of matters throughout her career. A partial listing of her notice and claims administration case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Abrams v. Peppermill Casinos* | CV16-00578 | D. Nev. |
| *Achziger v. IDS Prop. Cas. Ins.* | 14-cv-5445 | W.D. Wa. |
| *Adair v. Michigan Pain Specialist, PLLC* | 14-28156-NO | Mich. Cir. |
| *Adkins v. EQT Prod. Co.* | 10-cv-00037-JPJ-PMS | W.D. Va. |
| *Adzhikosyan v. Denver Mgmt.* | BC648100 | Cal. Super. Ct. |
| *Ahmed v. HSBC Bank USA, NA* | 15-cv-2057-FMO-SPx | N.D. Ill. |
| *Allagas v. BP Solar Int'l, Inc.* | 14-cv-00560 (SI) | N.D. Cal. |
| *Amador v. Baca* | 10-cv-1649 | C.D. Cal. |
| *Amin v. Mercedes-Benz USA, LLC* | 17-cv-01701-AT | N.D. Ga. |
| *Andreas-Moses v. Hartford Fire Ins. Co.* | 17-cv-2019-Orl-37KRS | M.D. Fla. |
| *Anger v. Accretive Health* | 14-cv-12864 | E.D. Mich. |
| *Arthur v. Sallie Mae, Inc.* | 10-cv-00198-JLR | W.D. Wash. |
| *Atkins v. Nat'l. Gen. Ins. Co.* | 16-2-04728-4 | Wash. Super. Ct. |
| *Atl. Ambulance Corp. v. Cullum & Hitti* | MRS-L-264-12 | N.J. Super. Ct. |
| *Avila v. LifeLock Inc.* | 15-cv-01398-SRB | D. Ariz. |
| *Backer Law Firm, LLC v. Costco Wholesale Corp.* | 15-cv-327 (SRB) | W.D. Mo. |
| *Baker v. Equity Residential Mgmt., LLC* | 18-cv-11175 | D. Mass. |
| *Bankhead v. First Advantage Background Services Corp.* | 17-cv-02910-LMM-CCB | N.D. Ga. |
| *Barclays Dark Pool Sec. Litig.* | 14-cv-5797 (VM) | S.D.N.Y. |
| *Barrett v. Nestle USA, Inc.* | 18-cv-167-DPM | E.D. Ark. |
| *Belanger v. RoundPoint Mortgage Servicing* | 17-cv-23307-MGC | S.D. Fla. |
| *Beltran v. InterExchange, Inc.* | 14-cv-3074 | D. Colo. |
| *Bergman v. Thelen LLP* | 08-cv-05322-LB | N.D. Cal. |
| *Bey v. Encore Health Res.* | 19-cv-00060 | E.D. Tex. |
| *BlackRock Core Bond Portfolio v. Wells Fargo* | 65687/2016 | N.Y. Super. Ct. |
| *Blasi v. United Debt Serv., LLC* | 14-cv-0083 | S.D. Ohio |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Blocher v. Landry's Inc.* | 14-cv-03213-MSS-JSS | M.D. Fla. |
| *Bobo v. LM Wind Power Blades (ND), Inc.* | 18-cv-230-DPM | E.D. Ark. |
| *Bollenbach Enters. Ltd. P'ship. v. Oklahoma Energy Acquisitions* | 17-cv-134 | W.D. Okla. |
| *Boskie v. Backgroundchecks.com* | 2019CP3200824 | S.C. C.P. |
| *Boyd v. RREM Inc., d/b/a Winston* | 2019-CH-02321 | Ill. Cir. Ct. |
| *Bradley v. Honecker Cowling LLP* | 18-cv-01929-CL | D. Or. |
| *Briones v. Patelco Credit Union* | RG 16805680 | Cal. Super. Ct. |
| *Brna v. Isle of Capri Casinos* | 17-cv-60144 (FAM) | S.D. Fla. |
| *Broussard v. Stein Mart, Inc.* | 16-cv-03247 | S.D. Tex. |
| *Browning v. Yahoo!* | C04-01463 HRL | N.D. Cal. |
| *Call v. Shutterstock* | SCV-262841 | Cal. Super. Ct. |
| *Calvert v. Xcel Energy* | 17-cv-02458-RBJ | D. Colo. |
| *Cambridge v. Sheetz, Inc.* | 17-cv-01649-JEJ | M.D. Pa. |
| *Careathers v. Red Bull North America, Inc.* | 13-cv-369 (KPF) | S.D.N.Y. |
| *Carmack v. Amaya Inc.* | 16-cv-1884 | D.N.J. |
| *Carson v. Cheers* | 17-2-29644-9 | Wash. Super. Ct. |
| *Castro v. Cont'l Airlines, Inc.* | 14-cv-00169 | C.D. Cal. |
| *Cecil v. BP America Prod. Co.* | 16-cv-410 (RAW) | E.D. Okla. |
| *Chamblee v. TerraForm Power, Inc.* | 16 MD 2742 (PKC)(AJP) | S.D.N.Y. |
| *Chanve c. E.I. Du Pont De Nemours* | 16-cv-00376-MAC-ZJH | E.D. Tex. |
| *Chavez v. Our Lady of Lourdes Hosp.* | 12-2-50575-9 | Wash. Super. Ct. |
| *Chavez v. Temperature Equip. Corp.* | 2019-CHS-02538 | Ill. Cir. Ct. |
| *Chester v. TJX Cos.* | 15-cv-1437 (ODW) (DTB) | C.D. Cal. |
| *Chieftain Royalty Co. v. Marathon Oil Co.* | 17-cv-334 | E.D. Okla. |
| *Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc.* | 17-cv-00336-KEW | E.D. Okla. |
| *Chieftain Royalty Co. v. XTO Energy, Inc.* | 11-cv-00029-KEW | E.D. Okla. |
| *City of Los Angeles v. Bankrate, Inc.* | 14-cv-81323 (DMM) | S.D. Fla. |
| *Cline v Sunoco, Inc.* | 17-cv-313-JAG | E.D. Okla. |
| *Cline v. TouchTunes Music Corp.* | 14-CIV-4744 (LAK) | S.D.N.Y. |
| *Cobell v. Salazar* | 96-cv-1285 (TFH) | D.D.C. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Common Ground Healthcare Coop. v. United States* | 17-877C | F.C.C. |
| *Connolly v. Umpqua Bank* | C15-517 (TSZ) | W.D. Wash. |
| *Corona v. Sony Pictures Entm't Inc.* | 14–CV–09600–RGK–E | C.D. Cal. |
| *Courtney v. Avid Tech., Inc.* | 13-cv-10686-WGY | D. Mass. |
| *DASA Inv., Inc. v. EnerVest Operating LLC* | 18-cv-00083-SPS | E.D. Okla. |
| *Davis v. Carfax, Inc.* | CJ-04-1316L | D. Okla. |
| *Davis v. State Farm Ins.* | 19-cv-466 | W.D. Ky. |
| *Davis v. Yelp Inc.* | 18-cv-00400-EMC | N.D. Cal. |
| *De Santiago v. California Respite Care, Inc.* | CIVDS1807688 | Cal. Super. Ct. |
| *Dearth v. Hartford Fire Ins. Co.* | 16-cv-1603-Orl-37LRH | M.D. Fla. |
| *DeFrees v. Kirkland and U.S. Aerospace, Inc.* | CV 11-04574 | C.D. Cal. |
| *del Toro Lopez v. Uber Techs., Inc.* | 14-cv-6255 | N.D. Cal. |
| *Delgado v. America's Auto Auction* | 2019-CH-04164 | Ill. Cir. Ct. |
| *Delkener v. Cottage Health Sys.* | 30-2016-847934 (CU) (NP) (CXC) | Cal. Super. Ct. |
| *DeMarco v. AvalonBay Communities, Inc.* | 15-cv-00628-JLL-JAD | D.N.J. |
| *Deora v Nanthealth* | 17-cv-01825-TJH-MRWx | C.D. Cal. |
| *De Santiago v. California Respite Care, Inc.* | CIVDS1807688 | Cal. Super. Ct. |
| *Diaz v. Lost Dog Pizza, LLC* | 17-cv-02228-WJM-NYW | D. Colo. |
| *Diel v Salal Credit Union* | 19-2-10266-7 KNT | Wash. Super. Ct. |
| *Dixon v. Grunt Style, LLC* | 2019 CH 01981 | Ill. Cir. Ct. |
| *Dixon v. Zabka* | 11-cv-982 | D. Conn. |
| *Djoric v. Justin Brands, Inc.* | BC574927 | Cal. Super. Ct. |
| *Doan v. CORT Furniture Rental Corp.* | 30-2017-00904345-CU-BT-CXC | Cal. Super. Ct. |
| *Doan v. State Farm Gen. Ins. Co.* | 1-08-cv-129264 | Cal. Super. Ct. |
| *Donnenfield v. Petro, Inc.* | 17-cv-02310 | E.D.N.Y. |
| *Dougherty v. Barrett Bus. Serv., Inc.* | 17-2-05619-1 | Wash. Super. Ct. |
| *Doughtery v. QuickSIUS, LLC* | 15-cv-06432-JHS | E.D. Pa. |
| *Dover v. British Airways, PLC (UK)* | 12-cv-5567 | E.D.N.Y. |
| *Dozier v. Club Ventures Invs. LLC* | 17BK10060 | S.D.N.Y. |
| *Duran v. DirecTV* | 4850 (1-14-CV-274709) | Cal. Super. Ct. |
| *Dwyer v. Snap Fitness, Inc.* | 17-cv-00455-MRB | S.D. Ohio |
| *Easley v. The Reserves Network, Inc.* | 16-cv-544 | N.D. Ohio |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Edwards v. Arkansas Cancer Clinic, P.A.* | 35CV-18-1171 | Ark. Cir. Ct. |
| *Edwards v. Hearst Commc'ns., Inc.* | 15-cv-9279 (AT) (JLC) | S.D.N.Y. |
| *EEOC v. Patterson-UTI Drilling Co. LLC* | 5-cv-600 (WYD) (CBS) | D. Colo. |
| *Erica P. John Fund, Inc. v. Halliburton Co.* | 02-cv-1152 | N.D. Tex. |
| *Espenshade v. Wilcox & Wilcox* | BC647489 | Cal. Super. Ct. |
| *Essex v. The Children's Place, Inc.* | 15-cv-5621 | D.N.J. |
| *Expedia Hotel Taxes & Fees Litig.* | 05-2-02060-1 (SEA) | Wash. Super. Ct. |
| *Family Med. Pharmacy LLC v. Impax Labs., Inc.* | 17-cv-53 | S.D. Ala. |
| *Family Med. Pharmacy LLC v. Trxade Group Inc.* | 15-cv-00590-KD-B | S.D. Ala. |
| *Fanelli v. Total Renal Care, Inc.* | 19-2-10835-5 SEA | Wash. Super. Ct. |
| *Farmer v. Bank of Am.* | 11-cv-00935-OLG | W.D. Tex. |
| *Felix v. WM. Bolthouse Farms, Inc.* | 19-cv-00312-AWI-JLT | E.D. Cal. |
| *Fielder v. Mechanics Bank* | BC721391 | Cal. Super. Ct. |
| *Finerman v. Marriott Ownership Resorts, Inc.* | 14-cv-1154-J-32MCR | M.D. Fla. |
| *Fitzgerald v. Lime Rock Res.* | CJ-2017-31 | Okla. Dist. Ct. |
| *Folweiler v. Am. Family Ins. Co.* | 16-2-16112-0 | Wash. Super. Ct. |
| *Fosbrink v. Area Wide Protective, Inc.* | 17-cv-1154-T-30CPT | M.D. Fla. |
| *Fresno County Employees Ret. Assoc. v. comScore Inc.* | 16-cv-1820 (JGK) | S.D.N.Y. |
| *Frost v. LG Elec. MobileComm U.S.A., Inc.* | 37-2012-00098755-CU-PL-CTL | Cal. Super. Ct. |
| *FTC v. Consumerinfo.com* | SACV05-801 AHS (MLGx) | C.D. Cal. |
| *Gazda v. Serve U Brands, Inc.* | E2019009233 | N.Y. Super. Ct. |
| *Gehrich v. Howe* | 37-2018-00041295-CU-SL-CTL | N.D. Ga. |
| *Gervasio v. Wawa, Inc.* | 17-cv-245 (PGS) (DEA) | D.N.J. |
| *Gonzalez-Tzita v. City of Los Angeles* | 16-cv-00194 | C.D. Cal. |
| *Gormley v. magicJack Vocaltec Ltd.* | 16-cv-1869 | S.D.N.Y. |
| *Gragg v. Orange Cab Co.* | C12-0576RSL | W.D. Wash. |
| *Granados v. County of Los Angeles* | BC361470 | Cal. Super., Ct. |
| *Grant v. Ballard Mgmt, Inc.* | 18-2-54890-0 SEA | Wash. Super. Ct. |
| *Hahn v. Hanil Dev., Inc.* | BC468669 | Cal. Super. Ct. |
| *Hall v. Dominion Energy* | 18-cv-00321-JAG | E.D. Va. |
| *Halperin v. YouFit Health Clubs* | 18-cv-61722-WPD | S.D. Fla. |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| *Hanks v. Lincoln Life & Annuity Co. of New York* | 16-cv-6399 PKC | S.D.N.Y. |
| *Harris v. Amgen, Inc.* | CV 07-5442 PSG (PLAx) | C.D. Cal. |
| *Harris v. Chevron U.S.A., Inc.* | 15-cv-00094 | W.D. Okla. |
| *Harrison v. Strategic Experiential Group* | RG16 807555 | Cal. Super. Ct. |
| *Hayes v. Saddle Creek Corp.* | 19-cv-01143-SMY | S.D. Ill. |
| *Health Republic Ins. Co. v. United States* | 16-259C | F.C.C. |
| *Hernandez v. Experian Info. Solutions, Inc.* | 05-cv-1070 (DOC) (MLGx) | C.D. Cal. |
| *Hernandez v. Great Western Pacific Inc.* | 18-2-08788-1 SEA | Wash. Super. Ct. |
| *Hernandez v. United States Cold Storage of California, Inc.* | S-1500-CV-282297-SPC | Cal. Super. Ct. |
| *Hernandez v. Wells Fargo Bank, N.A.* | 18-cv-07354 | N.D. Cal. |
| *Hines v. CBS Television Studios* | 17-cv-7882 (PGG) | S.D.N.Y. |
| *Holt v. Murphy Oil USA, Inc.* | 17-cv-911 | N.D. Fla. |
| *Hopwood v. Nuance Commc'n, Inc.* | 4:13-cv-02132-YGR | N.D. Cal. |
| *Horton v. Cavalry Portfolio Serv., LLC and Krejci v. Cavalry Portfolio Serv., LLC* | 13-cv-0307-JAH-WVG and 16-cv-00211-JAH-WVG | C.D. Cal. |
| *Howard v. Southwest Gas Corp.* | 18-cv-01035-JAD-VCF | D. Nev. |
| *Howell v. Checkr, Inc.* | 17-cv-4305 | N.D. Cal. |
| *Hufford v. Maxim Inc.* | 19-cv-04452-ALC-RWL | S.D.N.Y. |
| *Huntzinger v. Suunto Oy* | 37-2018-27159 (CU) (BT) (CTL) | Cal. Super. Ct. |
| *Ilano v. Wells Fargo* | 30-2019-0199146-CU-OE-CXC | Cal. Super. Ct. |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* | 06-md-1775 (JG) (VVP) | E.D.N.Y. |
| *In re Akorn, Inc. Sec. Litig.* | 15-c-1944 | N.D. Ill. |
| *In re Am. Express Fin. Advisors Sec. Litig.* | 04 Civ. 1773 (DAB) | S.D.N.Y. |
| *In re AMR Corp. (American Airlines Bankr.)* | 1-15463 (SHL) | S.D.N.Y. |
| *In re Auction Houses Antitrust Litig.* | 00-648 (LAK) | S.D.N.Y. |
| *In re AudioEye, Inc. Sec. Litig.* | 15-cv-163 (DCB) | D. Ariz. |
| *In re Banner Health Data Breach Litig.* | 16-cv-02696 | D. Ariz. |
| *In re Blue Cross Blue Shield Antitrust Litig.* | 2:13-CV-20000-RDP | N.D. Ala. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Classmates.com* | C09-45RAJ | W.D. Wash. |
| *In re ConAgra Foods Inc.* | 11-cv-05379-CJC-AGR | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re CRM Holdings, Ltd. Sec. Litig.* | 10-cv-00975-RPP | S.D.N.Y. |
| *In re Equifax Inc. Customer Data Sec. Breach Litig.* | 17-md-2800-TWT | N.D. Ga. |
| *In re Equifax Inc. Sec. Litig.* | 17-cv-03463-TWT | N.D. Ga. |
| *In re General Motors LLC Ignition Switch Litig.* | 2543 (MDL) | S.D.N.Y. |
| *In re Global Tel*Link Corp. Litig.* | 14-CV-5275 | W.D. Ark. |
| *In re GoPro, Inc. Shareholder Litig.* | CIV537077 | Cal. Super. Ct. |
| *In re Guess Outlet Store Pricing* | JCCP No. 4833 | Cal. Super. Ct. |
| *In re Initial Pub. Offering Sec. Litig. (IPO Sec. Litig.)* | No. 21-MC-92 | S.D.N.Y. |
| *In re Intuit Data Litig.* | 15-CV-1778-EJD | N.D. Cal. |
| *In re J.P. Morgan Stable Value Fund ERISA Litig.* | 12-cv-02548-VSB | S.D.N.Y. |
| *In re Legacy Reserves LP Preferred Unitholder Litig.* | 2018-225 (JTL) | Del. Ch. |
| *In re LIBOR-Based Fin. Instruments Antitrust Litig.* | 11-md-2262 (NRB) | S.D.N.Y. |
| *In re Mercedes-Benz Emissions Litig.* | 16-cv-881 (KM) (ESK) | D.N.J. |
| *In re MyFord Touch Consumer Litig.* | 13-cv-3072 (EMC) | N.D. Cal. |
| *In re Navistar MaxxForce Engines Mktg., Sales Practices and Products* | 14-cv-10318 | N.D. Ill. |
| *In re Novo Nordisk Sec. Litig.* | 17-cv-00209-BRM-LHG | D.N.J. |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* | 2179 (MDL) | E.D. La. |
| *In re PHH Lender Placed Ins. Litig.* | 12-cv-1117 (NLH) (KMW) | D.N.J. |
| *In re Pokémon Go Nuisance Litig.* | 16-cv-04300 | N.D. Cal. |
| *In re Polyurethane Foam Antitrust Litig.* | 10-md-196 (JZ) | N.D. Ohio |
| *In re Pre-Filled Propane Tank Antitrust Litig.* | 14-md-02567 | W.D. Mo. |
| *In re Processed Egg Prod. Antitrust Litig.* | 08-MD-02002 | E.D. Pa. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Resonant Inc. Sec. Litig.* | 15-cv-1970 (SJO) (MRW) | C.D. Cal. |
| *In re Rockwell Med. Inc. Stockholder Derivative Litig.* | 19-cv-02373 | E.D. N.Y. |
| *In re Sheridan Holding Co. I, LLC* | 20-31884 (DRJ) | Bankr. S.D. Tex. |
| *In re Signet Jewelers Ltd, Sec. Litig.* | 16-cv-06728-CM-SDA | S.D.N.Y. |
| *In re Stericycle, Inc. Sec. Litig.* | 16-cv-07145 | N.D. Ill. |
| *In re Stryker Rejuvenate and ABG II Hip Implant Products Liab. Litig.* | 13-md-2441 | D. Minn. |
| *In re SunTrust Banks, Inc. ERISA Litig.* | 08-cv-03384-RWS | N.D. Ga. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Tenet Healthcare Corp. Sec.* | CV-02-8462-RSWL (Rzx) | C.D. Cal. |
| *In re The Engle Trust Fund* | 94-08273 CA 22 | Fla. 11th Cir. Ct. |
| *In re Ubiquiti Networks Sec. Litig.* | 18-cv-01620 (VM) | S.D.N.Y. |
| *In re Unilife Corp. Sec. Litig.* | 16-cv-3976 (RA) | S.D.N.Y. |
| *In re Vale S.A. Sec. Litig.* | 15 Civ. 09539 (GHW) | S.D.N.Y. |
| *In re Washington Mut. Inc. Sec. Litig.* | 8-md-1919 (MJP) | W.D. Wash. |
| *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.* | 06-11620-JLT | D. Mass. |
| *In re Wholesale Grocery Prod. Antitrust Litig.* | 9-md-2090 (ADM) (TNL) | D. Minn. |
| *In re Williams Sec. Litig.* | 02-CV-72-SPF (FHM) | N.D. Okla. |
| *In re Yahoo! Inc. Sec. Litig.* | 17-cv-373 | N.D. Cal. |
| *Ivery v. RMH Illinois, LLC and RMH Franchise Holdings, Inc.* | 17-CIV-1619 | N.D. Ill. |
| *Jerome v. Elan 99, LLC* | 2018-02263 | Tx. Dist. Ct. |
| *Jeter v. Bullseye Energy, Inc.* | 12-cv-411 (TCK) (PJC) | N.D. Okla. |
| *Johnson v. MGM Holdings, Inc.* | 17-cv-00541 | W.D. Wash. |
| *Johnson v. Tractor Supply Co.* | 19-2-01975-1-KNT | Wash. Super. Ct. |
| *Jones v. Encore Health Res.* | 19-cv-03298 | S.D. Tex. |
| *Jordan v. Things Remembered, Inc.* | 114CV272045 | Cal. Super. Ct. |
| *Kellgren v. Petco Animal Supplies, Inc.* | 13-cv-644 (L) (KSC) | S.D. Cal. |
| *Kent v. R.L. Vallee, Inc.* | 617-6-15 | D. Vt. |
| *Kissel v. Code 42 Software Inc.* | 15-1936 (JLS) (KES) | C.D. Cal. |
| *Kokoszki v. Playboy Enter., Inc.* | 19-cv-10302 | E.D. Mich. |
| *Komesar v. City of Pasadena* | BC 677632 | Cal. Super. Ct. |
| *Konecky v Allstate* | CV-17-10-M-DWM | D. Mont. |
| *Kramer v. DuPont, USA* | 17L2 | Ill. Cir. Ct. |
| *Krueger v. Ameriprise Fin., Inc.* | 11-cv-02781 (SRN/JSM) | D. Minn. |
| *Langan v. Johnson & Johnson Consumer Co.* | 13-cv-01471 | D. Conn. |
| *Larson v. Allina Health Sys.* | 17-cv-03835 | D. Minn. |
| *Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.* | CGC-15-547520 | Cal. Super. Ct. |
| *Linderman v. City of Los Angeles* | BC650785 | Cal. Super. Ct. |
| *Lindsay v. Cutter Wireline Serv., Inc.* | 7-cv-01445 (PAB) (KLM) | D. Colo. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Linneman v. Vita-Mix Corp.* | 15-cv-748 | S.D. Ohio |
| *Lion Biotechnologies Sec. Litig.* | 17-cv-02086-SI | N.D. Cal. |
| *Liotta v. Wolford Boutiques, LLC* | 16-cv-4634 | N.D. Ga. |
| *Lippert v. Baldwin* | 10-cv-4603 | N.D. Ill. |
| *Lloyd v. CVB Fin. Corp.* | 10-cv-6256 (CAS) | C.D. Cal. |
| *Loblaw Card Program* | Remediation Program | |
| *Mabrey v. Autovest* | CGC-18-566617 | Cal. Super. Ct. |
| *Machado v. Endurance Int'l Grp. Holdings Inc.* | 15-cv-11775-GAO | D. Mass. |
| *Malin v. Ambry Genetics Corp.* | 30-2018-00994841-CU-SL-CXC | Cal. Super. Ct. |
| *Martinez v. Rial de Minas, Inc.* | 16-cv-01947 | D. Colo. |
| *McClellan v. Chase Home Fin.* | 12-cv-01331-JGB-JEM | C.D. Cal. |
| *McClintock v. Continuum Producer Serv., LLC* | 17-cv-00259-JAG | E.D. Okla. |
| *McFarland v. Swedish Med. Ctr.* | 18-2-02948-1 SEA | Wash. Super. Ct. |
| *McGann v. Schnuck Markets Inc.* | 1322-CC00800 | Mo. Cir. Ct. |
| *McKeon v. Integrity Pizza LLC* | 18-cv-932 | D. Colo. |
| *McKibben v. McMahon* | 14-2171 (JGB) (SP) | C.D. Cal. |
| *McKnight Realty Co. v. Bravo Arkoma, LLC* | 17-CIV-308 (KEW) | E.D. Okla. |
| *McNeal v. AccentCare, Inc.* | 4:15cv03304 | N.D. Cal. |
| *McNeill v. Citation Oil & Gas Corp.* | 17-CIV-121 (KEW) | E.D. Okla. |
| *McWilliams v. City of Long Beach* | BC361469 | Cal. Super. Ct. |
| *Mild v. PPG Indus., Inc.* | 18-cv-04231 | C.D. Cal. |
| *Miller v. Carrington Mortgage Serv., LLC* | 19-cv-00016-JDL | D. Me. |
| *Millien v. Madison Square Garden* | 17-cv-04000 | S.D.N.Y. |
| *Milstead v. Robert Fiance Beauty Sch., Inc.* | CAM-L-328-16 | N.J. Super. Ct. |
| *Moeller v. Advance Magazine Publishers, Inc.* | 15-cv-05671 (NRB) | S.D.N.Y. |
| *Mohamed v. SkyHop Global LLC* | 18-2-54565-0-KNT | Wash. Super. Ct. |
| *Mojica v. Securus Techs., Inc.* | 14-cv-5258 | W.D. Ark. |
| *Molnar v. 1-800-Flowers Retail, Inc.* | BC 382828 | Cal. Super. Ct. |
| *Monteleone v. Nutro Co.* | 14-cv-00801-ES-JAD | D.N.J. |
| *Moodie v. Maxim HealthCare Servs.* | 14-cv-03471-FMO-AS | C.D. Cal. |
| *Morel v. Lions Gate Entm't Inc.* | 16-cv-1407 (JFC) | S.D.N.Y. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Moss v. United Airlines | 16-cv-08496 | N.D. Ill. |
| Muir v. Early Warning Services, LLC | 16-cv-00521 | D.N.J. |
| Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. | 12-3824 | E.D. Pa. |
| Nasseri v. Cytosport, Inc. | BC439181 | Cal. Super. Ct. |
| Nesbitt v. Postmates, Inc. | CGC-15-547146 | Cal. Super. Ct. |
| New Orleans Tax Assessor Project | Tax Assessment Program | |
| New York v. Steven Croman | 450545/2016 | N.Y. Super. Ct. |
| NMPA Late Fee Program Groups I-IVA | Remediation Program | CRB |
| Noland-Moore v. City of Cleveland | 18-cv-2730 | N.D. Ohio |
| Noriesta v. Konica Minolta Bus. Solutions U.S.A., Inc. | 19-cv-00620 | C.D. Cal. |
| Nozzi v. Housing Authority of the City of Los Angeles | CV 07-0380 PA (FFMx) | C.D. Cal. |
| Nwabueza v. AT&T | C 09-01529 SI | N.D. Cal. |
| Nwauzor v. GEO Group, Inc. | 17-cv-05769 | W.D. Wash. |
| Ortega v. Borton & Sons, Inc. | 17-2-03005-39 | Wash. Super. Ct. |
| O'Donnell v. Fin. American Life Ins. Co. | 14-cv-01071 | S.D. Ohio |
| Ortez v. United Parcel Serv., Inc. | 17-cv-01202 (CMA) (SKC) | D. Colo. |
| Paetzold v. Metro. Dist. Comm'n | X07-HHD-CV-18-6090558-S | Conn. Super. Ct. |
| Paggos v. Resonant, Inc. | 15-cv-01970-SJO | C.D. Cal. |
| Palazzolo v. Fiat Chrysler Auto. NV | 16-cv-12803 | E.D. Mich. |
| Palmateer v. Les Schwab | 17CV22189 | Or. Cir. Ct. |
| Parker v. Time Warner Entm't Co. | 239 F.R.D. 318 | E.D.N.Y. |
| Parker v. Universal Pictures | 16-cv-1193-CEM-DCI | M.D. Fla. |
| Parmelee v. Santander Consumer USA Holdings Inc. | 16-cv-783-K | N.D. Tex. |
| Pauley v. CF Ent. | 13-CV-08011-RGK-CW | C.D. Cal. |
| Pemberton v. Nationstar Mortgage LLC | 14-cv-1024-BAS (MSB) | S.D. Cal. |
| Perez v. DIRECTV | 8:16-cv-01440-JLS-DFM | C.D. Cal. |
| Perrigo Sec. Litig. | 20-cv-00710-BJR | W.D. Wash. |
| Petersen v. Costco Wholesale Co. | 13-cv-01292-DOC-JCG | C.D. Cal. |
| Peterson v. Apria Healthcare Group, Inc. | 19-cv-00856 | M.D. Fla. |
| Pickett v. Simos Insourcing Solutions Corp. | 1:17-cv-01013 | N.D. Ill. |
| Pierce v Anthem Ins. Cos. | 15-cv-00562-TWP-TAB | S. D. Ind. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Podawiltz v. Swisher Int'l, Inc.* | 16CV27621 | Or. Cir. Ct. |
| *Press v. J. Crew Group, Inc.* | 56-2018-512503 (CU) (BT) (VTA) | Cal. Super. Ct. |
| *Presson v. Recovery Connections Cmty.* | 18-cv-466 | E.D.N.C. |
| *Purcell v. United Propane Gas, Inc.* | 14-CI-729 | Ky. 2nd Cir. |
| *Ralph v. Get Fresh Produce, Inc.* | 2019-CH-02324 | Ill. Cir. Ct. |
| *Ramos v. Hopele of Fort Lauderdale, LLC* | 17-cv-62100 | S.D. Fla. |
| *Reirdon v. Cimarex Energy Co.* | 16-CIV-113 (KEW) | E.D. Okla. |
| *Rhea v. Apache Corp.* | 14-cv-00433-JH | E.D. Okla. |
| *Rice v. Insync* | 30-2014-00701147-CU-NP-CJC | Cal. Super. Ct. |
| *Rice-Redding v. Nationwide Mut. Ins. Co.* | 18-cv-01203 | N.D. Ga. |
| *Rich v. EOS Fitness Brands, LLC* | RIC1508918 | Cal. Super. Ct. |
| *Rodrigues v WCP Constr. Corp.* | 19-cv-10409-DJC | D. Mass. |
| *Rollo v. Universal Prop. & Cas. Ins.* | 2018-027720-CA-01 | Fla. Cir. Ct. |
| *Roman v. Antelope Valley Newspapers, Inc.* | BC382639 | Cal. Super. Ct. |
| *Rotatori v. TGI Fridays* | 14-0081-B | Mass. Super. Ct. |
| *Roth v. Bellevue Club* | 19-2-07780-8 | Wash. Super. Ct. |
| *Routh v. SEIU Healthcare 775NW* | 14-cv-00200 | W.D. Wash. |
| *Rozeboom v. Dietz & Watson* | 17-cv-01266-RAJ | W.D. Wash. |
| *Ruppel v. Consumers Union of United States, Inc.* | 16-cv-2444 (KMK) | S.D.N.Y. |
| *Russett v. Nw. Mut. Life Ins. Co.,* | 19-cv-07414-KMK | S.D.N.Y. |
| *Saccoccio v. JP Morgan Chase* | 13-cv-21107 | S.D. Fla. |
| *San Antonio Fire & Police Pension Fund v. Dole Food Co.* | 15-cv-1140 (LPS) | E.D. Del. |
| *Sanchez v. Centene Corp.* | 17-cv-00806-AGF | E.D. Mo. |
| *Sanders v. Global Research Acquisition, LLC* | 18-cv-00555 | M.D. Fla. |
| *Sanders v The CJS Solutions Group, LLC* | 17-cv-03809 | S.D.N.Y. |
| *Schlesinger v. Ticketmaster* | BC304565 | Cal. Super. Ct. |
| *Schourup v. Private Label Nutraceuticals, LLC* | 2015cv01026 | C.D. Cal. |
| *Schwartz v. Intimacy in New York, LLC* | 13-cv-5735 (PGG) | S.D.N.Y. |
| *Schwartz v. Opus Bank* | 16-cv-7991 (AB) (JPR) | C.D. Cal. |
| *SEB Inv. Mgmt. AB v. Endo Int'l PLC* | 17-cv-3711-TJS | E.D. Pa. |
| *Seegert v. P.F. Chang's China Bistro* | 37-2017-00016131-CU-MC-CTL | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Shah v Zimmer Biomet Holdings, Inc.* | 16-cv-00815-PPS-MGG | N.D. Ind. |
| *Soderstrom v. MSP Crossroads Apartments LLC* | 16-cv-233 (ADM) (KMM) | D. Minn. |
| *Solano v. Amazon Studios LLC* | 17-cv-01587 (LGS) | S.D.N.Y. |
| *Sonner v. Schwabe North America, Inc.* | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| *Soto v. Diakon Logistics (Delaware), Inc.* | 08-cv-33-L(WMC) | S.D. Cal. |
| *Speed v. JMA Energy Co., LLC* | CJ-2016-59 | Okla. Dist. Ct. |
| *Stanley v. Capri Training Ctr.* | ESX-L-1182-16 | N.J. Super. Ct. |
| *Steele v. PayPal, Inc.* | 05-CV-01720 (ILG) (VVP) | E.D.N.Y. |
| *Stewart v. Early Warning Serv., LLC* | 18-cv-3277 | D.N.J. |
| *Stillman v. Clermont York Assocs. LLC* | 603557/09E | N.Y. Super. Ct. |
| *Stretch v. Montana* | DV-04-713 (A) | Mont. 11th Dist. Ct. |
| *Strickland v. Carrington Mortgage Services, LLC* | 16-cv-25237 | S.D. Fla. |
| *Strougo v. Lannett Co.* | 18-cv-3635 | E.D. Pa. |
| *Stuart v. State Farm Fire & Cas. Co.* | 14-cv-04001 | W.D. Ark. |
| *Sudunagunta v. NantKwest, Inc.* | 16-cv-01947-MWF-JEM | C.D. Cal. |
| *Sullivan v Wenner Media LLC* | 16–cv–00960–JTN–ESC | W.D. Mich. |
| *Swinton v. SquareTrade, Inc.* | 18-CV-00144-SMR-SBJ | S.D. Iowa |
| *Szafarz v. United Parcel Serv., Inc.* | SUCV2016-2094-BLS2 | Mass. Super. Ct. |
| *Terrell v. Costco Wholesale Corp.* | 16-2-19140-1-SEA | Wash. Super. Ct. |
| *Thomas v. KIK Custom Products, Inc.* | 2019CH02471 | Ill. Cir. Ct. |
| *Tile Shop Stockholders Litig.* | 2019-0892-SG | Del. Chancery |
| *Timberlake v. Fusione, Inc.* | BC 616783 | Cal. Super. Ct. |
| *Tkachyk v. Traveler's Ins.* | 16-28-m (DLC) | D. Mont. |
| *T-Mobile Remediation Program* | Remediation Program | |
| *Tolliver v. Avvo, Inc.* | 16-2-5904-0 (SEA) | Wash. Super. Ct. |
| *Townes, IV v. Trans Union, LLC* | 04-1488-JJF | D. Del. |
| *Townsend v. G2 Secure Staff* | 18STCV04429 | Cal. Super. Ct. |
| *Trepte v. Bionaire, Inc.* | BC540110 | Cal. Super. Ct. |
| *Tschosik v. Diamond Freight Sys.* | 16-2-01247-1 | Wash. Super. Ct. |
| *Tyus v. Gen. Info. Solutions LLC* | 2017CP3201389 | S.C. C.P. |
| *United States v. City of Austin* | 14-cv-00533-LY | W.D. Tex. |
| *United States v. City of Chicago* | 16-c-1969 | N.D. Ill. |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| *United States v. Consol. City of Jacksonville* | 170-17M-393 | U.S. D.O.J. |
| *United States v. Greyhound Lines, Inc.* | 16-67-RGA | D. Del. |
| *USC Student Health Ctr. Settlement* | 18-cv-04258-SVW | C.D. Cal. |
| *Vasquez v. Libre by Nexus, Inc.* | 17-cv-00755-CW | N.D. Cal. |
| *Vasquez v. Rainier Hospitality LLC* | 19-2-14813-6 SEA | Wash. Super. Ct. |
| *Viesse v. Saar's Inc.* | 17-2-7783-6 (SEA) | Wash. Super. Ct. |
| *Wahl v. Yahoo! Inc.* | 17-cv-2745 (BLF) | N.D. Cal. |
| *Walton v. AT&T Servs., Inc.* | 15-cv-3653 (VC) | N.D. Cal. |
| *Weber v. KASA Delivery LLC* | 16-2-13761-0 SEA | Wash. Super. Ct. |
| *WellCare Sec. Litig.* | 07-cv-01940-VMC-EAJ | M.D. Fla. |
| *Williams v. Children's Mercy Hosp.* | 1816-CV 17350 | Mo. Cir. Ct. |
| *Williams v. Naples Hotel Group, LLC* | 18-cv-422-Orl-37-DCI | M.D. Fla. |
| *Williams v. Weyerhaeuser Co.* | 995787 | Cal. Super. Ct. |
| *Wills v. Starbucks Corp.* | 17-cv-03654 | N.D. Ga. |
| *Wilson v. LSB Indus., Inc.* | 15-cv-07614-RA-GWG | S.D.N.Y. |
| *Wood v. AmeriHealth Caritas Serv.* | 19-2194 | E.D. Pa. |
| *Wornicki v. Brokerpriceopinion.com, Inc.* | 13-cv-03258 (PAB) (KMT) | D. Colo. |
| *Wright v. Lyft, Inc.* | 14-cv-00421-BJR | W.D. Wash. |
| *Yates v. Checkers* | 17-cv-09219 | N.D. Ill. |
| *Yeske v. Macoupin Energy* | 2017-L-24 | Ill. Cir. Ct. |
| *Yi v. Kroger Co.* | 14-2-19935-0 SEA | Wash. Super. Ct. |
| *Yoakum v. ABB Motors and Mech., Inc.* | 20-cv-23-JJV | E.D. Ark. |
| *Young v. World Wide Tech., LLC* | 2019-L-001728 | Ill. 13th Cir. Ct. |

# EXHIBIT B

## TO KEOUGH DECLARATION

**LEGAL NOTICE BY ORDER OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF GEORGIA**

**If you have purchased or leased in the United States a Mercedes-Benz vehicle originally painted with "590 Mars Red" paint, you could get benefits from a class action settlement.**

*Para una notificación en español, visite www.[settlementwebsite].com*

Mercedes Mars Red Settlement
c/o [SETTLEMENT ADMIN.]
[ADDRESS]
[ADDRESS]

[QR/printedID]

[MAILING BARCODE]
[NAME]
[ADDRESS1]
[ADDRESS2]
[CITY], [STATE], [ZIP]

A proposed settlement has been reached in a class action lawsuit known as *Pizzo et al. v. Mercedes-Benz USA, LLC et al.*, U.S.D.C., N.D. Ga. Case No. 18-CV-03984, claiming that Mercedes-Benz vehicles with Mars Red or Fire Opal (collectively, "590 Mars Red") paint may experience peeling, flaking, or bubbling of the exterior clearcoat.  Defendants deny any wrongdoing.  The Settlement resolves the case and provides benefits to Class Members. **This notice is a summary. For more information, visit [www.[settlementwebsite].com](http://www.[settlementwebsite].com)**.

**WHO IS INCLUDED:** All current owners, former owners, current lessees, and former lessees of Mercedes-Benz vehicles purchased or leased in the United States originally painted 590 Mars Red.

**SETTLEMENT BENEFITS:** The Settlement provides two types of benefits: reimbursement for Qualified Past Repairs and coverage for Qualified Future Repairs relating to bubbling, peeling or flaking of the exterior clearcoat. The amount of reimbursement and coverage depends on how many miles or years have passed since the vehicle's in-service date. Subject to restrictions, coverage is up to 15 years or 150,000 miles, whichever comes first. To get Qualified Future Repairs, simply take your vehicle to a Mercedes Authorized Repair Center.  If your vehicle already is 15 years old or more or has 150,000 miles or more and meets certain conditions, you should file a claim to seek Qualified Future Repairs. If you have already paid for a qualifying repair or need a qualifying repair now (and get the qualifying repair made), you need to file a claim for Qualified Past Repairs.   Details and terms and conditions are at www.[settlementwebsite].com.

**YOUR OPTIONS:** You can exclude yourself ("opt out"), object to the Settlement, file a claim, or do nothing. The deadline to opt out or object is [Month Day], 2021.  If you do not opt out, and the Court approves the Settlement, you will release your claims against Defendants. The Court will hold a hearing on [Month Day], 2021 to decide whether to approve the Settlement. You may attend.

**MORE INFORMATION:** Read the detailed Notice, Motions for Approval and Attorneys' Fees, and Settlement Agreement at www.[settlementwebsite].com.

# EXHIBIT C

## TO KEOUGH DECLARATION

<u>UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA</u>

# If you have purchased or leased in the United States a Mercedes-Benz vehicle originally painted "590 Mars Red," you could get benefits from a class action settlement

*A federal court authorized this notice.  It is not a solicitation from a lawyer.*

- The Settlement will provide current owners, former owners, current lessees, and former lessees of Mercedes-Benz vehicles purchased or leased in the United States originally painted Mars Red or Fire Opal (collectively, "590 Mars Red") with reimbursement for Qualified Past Repairs and coverage for Qualified Future Repairs addressing peeling, flaking, or bubbling of the vehicle's paint or clearcoat not caused by external influences such as automobile accidents, scratches, or road debris.[1]

- Your legal rights are affected whether you act or do not act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM** | Submitting a claim is the only way to get reimbursed for Qualified Past Repairs. For repairs that occurred before [NOTICE DATE], your claim must be submitted by mail and postmarked by [DATE] or by submitting the completed electronic Reimbursement Claim Form online at [www.settlementwebsite].com by [DATE]. For repairs that occur between [NOTICE DATE] and the Effective Date of this Settlement, your claim must be submitted by mail and postmarked or submitted electronically at [www.settlementwebsite].com within 60 days of the repair.  *See* page ___. <br><br> Submitting a claim is also the only way to receive a Qualified Future Repair if your vehicle has 150,000 miles or more or is 15 years or more from the original in-service date as of [NOTICE DATE], and you were previously denied warranty or goodwill coverage for a qualifying repair at a time the vehicle had both fewer than 15 years from the original in-service date and fewer than 150,000 miles.  Your claim must be submitted postmarked by [DATE].  *See* page ___. |
| **OBTAIN COVERAGE FOR FUTURE REPAIRS** | If you need a Qualified Future Repair after the Effective Date of the Settlement and your vehicle both is fewer than 15 years from the original in-service date and has fewer than 150,000 miles, simply take your vehicle to an authorized dealer.  You do not need to do anything right now to ensure coverage under the extended warranty.  *See* page ___. |
| **EXCLUDE YOURSELF (OPT OUT)** | Choosing this option is the only way to ever be a part of any other lawsuit against Defendants about the legal claims in this case.  However, it means you will not receive any repair or payment as part of this Settlement. Requests for exclusion must be postmarked by [DATE]. |
| **OBJECT** | |

---

[1] All capitalized terms shall have the same meaning ascribed to them in the Class Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement").

| | Write to the Court about why you do not like the Settlement.  The deadline to file an objection is [DATE]. |
|---|---|
| **GO TO A HEARING** | Ask to speak in Court about why you do or do not support the proposed Settlement or any of its provisions.  The Fairness Hearing will be held on [DATE]. |
| **DO NOTHING** | If you do nothing, you will not be entitled to receive a payment for reimbursement of Qualified Past Repairs, but you may still qualify for coverage of Qualified Future Repairs. You will give up rights to sue Defendants about the legal claims in this case. |

**QUESTIONS? Read on or visit www.[settlementwebsite].com.**

**Para una notificación en español, visite www.[settlementwebsite].com**

010-9145-8967/2/AMERICAS

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ..............................................................................................3
   1.  Why did I receive a notice?
   2.  What is this lawsuit about?
   3.  What is a class action?
   4.  Why is there a Settlement?

WHO IS IN THE SETTLEMENT ....................................................................................3
   5.  How do I know if I am part of the Settlement?
   6.  Which vehicles are included?
   7.  I am still not sure if I am included.

THE SETTLEMENT BENEFITS—WHAT YOU GET ....................................................4
   8.  What does the Settlement provide?
   9.  How do I get reimbursed for Qualified Past Repairs?
   10. How do I get coverage for Qualified Future Repairs?
   11. When would I get my payment or be able to have my vehicle repaired?
   12. What am I giving up to stay in the Class?

EXCLUDING YOURSELF FROM THE SETTLEMENT ....................................................6
   13. How do I get out of the Settlement?
   14. If I do not exclude myself, can I sue Defendants for the same thing later?
   15. If I exclude myself, can I get money from the Settlement?

THE LAWYERS REPRESENTING YOU ........................................................................7
   16. Do I have a lawyer in the case?
   17. How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT ............................................................................7
   18. How do I tell the Court that I do not like the Settlement?
   19. What is the difference between objecting and excluding?

THE COURT'S FAIRNESS HEARING ..........................................................................8
   20. When and where will the Court decide whether to approve the Settlement?
   21. Do I have to come to the hearing?

IF YOU DO NOTHING .............................................................................................8
   22. What happens if I do nothing at all?

GETTING MORE INFORMATION ...............................................................................9
   23. Are there more details about the Settlement?
   24. How do I get more information?

010-9145-8967/2/AMERICAS

## BASIC INFORMATION

### 1. Why did I receive a notice?

You have been identified as a potential Class Member who may own or lease or may have owned or leased a Subject Vehicle that is covered by this Settlement.  You have legal rights and options that you may exercise before the Court decides whether to approve the Settlement.  This notice has been approved by the Court and summarizes the proposed Settlement.  For the precise terms and conditions of the Settlement, please review the Settlement Agreement, available at www.[settlementwebsite].com.  The lawsuit is known as *Pinon et al. v. Mercedes-Benz USA, LLC and Daimler AG*, United States District Court for the Northern District of Georgia, Case No. 18-CV-03984-MHC.

### 2. What is this lawsuit about?

The Plaintiffs allege that the "590 Mars Red" paint available as an original, exterior color option for certain models of Mercedes-Benz vehicles is defective in that it may experience peeling, flaking, or bubbling of the exterior paint or clearcoat.  Defendants Daimler AG and Mercedes-Benz USA, LLC deny the allegations in the lawsuit and deny they acted improperly or did anything wrong.

### 3. What is a class action?

In a class action lawsuit, one or more people called class representatives sue on behalf of other people alleged to have similar claims.  If the court certifies a class, the people together are a Class or Class Members.  The people who sued—and all the Class Members like them—are called the Plaintiffs.  The companies they sued are called the Defendants.  One court resolves the issues for everyone in the Class, except for those people who choose to exclude themselves from the Class.

### 4. Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or Defendants.  Instead, both sides agreed to a Settlement they believe is fair, reasonable, and adequate, after considering the risks and costs of continued litigation.  The Plaintiffs and Class Counsel believe the proposed Settlement confers substantial benefits on the Class and have determined that the Settlement is in the best interest of the Class and represents a fair, reasonable, and adequate resolution of the lawsuit.

Defendants deny the claims in the lawsuit; deny all allegations of wrongdoing, fault, liability, or damage to the named Plaintiffs and the Class; deny that the Subject Vehicles' 590 Mars Red paint is defective; and deny that they acted improperly or wrongfully in any way.  Defendants nevertheless value their relationship with their customers and recognize the expense and time that would be required to defend the lawsuit through trial and have taken this into account in agreeing to this Settlement.

## WHO IS IN THE SETTLEMENT

To see if you will get benefits from the Settlement, you first must determine if you are a Class Member.

### 5. How do I know if I am part of the Settlement?

If the Court approves the Settlement, everyone who fits the following description and has not opted out of the Settlement will be a Class Member: *All current owners, former owners, current lessees, and former lessees of any Mercedes-Benz vehicle originally painted with 590 Mars Red paint and purchased or leased in the United States*.

010-9145-8967/2/AMERICAS

Excluded from the Class are: (a) persons who have settled with, released, or otherwise had claims adjudicated on the merits against Defendants that are substantially similar to the Litigation Claims (*i.e.*, alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat); (b) Defendants and their officers, directors and employees, as well as their corporate affiliates and the corporate affiliates' officers, directors and employees; (c) counsel to any of the parties; and (d) the Honorable Mark H. Cohen, the Honorable James Holderman (ret.), and members of their respective immediate families.

| **6. Which vehicles are included?** |
| --- |

A Subject Vehicle is defined as any Mercedes-Benz originally painted with 590 Mars Red paint and purchased or leased in the United States. 590 Mars Red paint was offered as an original, exterior color option for the following Mercedes-Benz vehicle types in the United States: C-Class (model years 2004-2015); GLK-Class (model years 2010-2015); CLS-Class (model years 2006-2007, 2009, 2014); CLK-Class (model years 2004-2009); S-Class (model years 2008, 2015, 2017); SL-Class (model years 2004-2009, 2011-2017); CL-Class (model years 2005-2006, 2013-2014); SLS-Class (model years 2014-2015); E-Class (model years 2005-2006, 2010-2017); G-Class (model years 2005, 2011-2017); GT-Class (model years 2016-2018); SLC-Class (model years 2017); SLK-Class (model years 2005-2016) and Maybach 57 (model year 2008).

| **7. I am still not sure if I'm included.** |
| --- |

If you are still unsure whether you are included, you can email the Settlement Administrator at info@[settlementwebsite].com.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

| **8. What does the Settlement provide?** |
| --- |

The Settlement provides two benefits to Class Members: reimbursement for Qualified Past Repairs and coverage for Qualified Future Repairs to address peeling, flaking, or bubbling of the Subject Vehicle's exterior paint or clearcoat.  To find out how much of the cost for repairs will be reimbursed or covered, the following time and mileage periods apply.

*Period One* is defined as the time period during which the Subject Vehicle has or had fewer than seven years (84 months) or 105,000 miles from the Subject Vehicle's original in-service date, whichever occurred first. Qualifying Past Repairs that occurred during Period One will be reimbursed at 100% of the out-of-pocket cost paid subject to certain limitations in the Settlement Agreement, and the cost of Qualifying Future Repairs during Period One will be covered for 100% of the cost of the repair defined in the Settlement Agreement.

*Period Two* is defined as the time period from the end of Period One until the Subject Vehicle has or had fewer than ten years (120 months) or 150,000 miles from the Subject Vehicle's original in-service date, whichever occurred first.  Qualifying Past Repairs that occurred during Period Two will be reimbursed at 50% of the out-of-pocket cost paid subject to certain limitations in the Settlement Agreement, and the cost of Qualifying Future Repairs during Period Two will be covered for 50% of the cost of the repair defined in the Settlement Agreement.

*Period Three* is defined as the time period from the end of Period Two until the Subject Vehicle has or had fewer than fifteen years (180 months) or 150,000 miles from the Subject Vehicle's original in-service date, whichever occurred first.  Qualifying Past Repairs that occurred during Period Three will be reimbursed at 25% of the out-of-pocket cost paid subject to certain limitations in the Settlement Agreement, and the cost of

010-9145-8967/2/AMERICAS

Qualifying Future Repairs during Period Three will be covered for 25% of the cost of the repair defined in the Settlement Agreement.

The cost for past repairs occurring after the end of Period Three will not be reimbursed.

The cost for future repairs occurring after the end of Period Three will not be covered unless you presented the Subject Vehicle to an authorized Mercedes-Benz dealer or body repair facility or provided notice to Defendants and were denied warranty or goodwill coverage for a qualifying repair at a time the vehicle had both fewer than 15 years and fewer than 150,000 miles, whichever occurred first ("Presentment Date"). In such case, the Presentment Date will be used for purposes of calculating whether your Subject Vehicle qualifies in Period One, Period Two, or Period Three.

**Qualified Past Repairs**: A Qualified Past Repair means a repair that occurred before the Effective Date of the Settlement related to repainting any non-plastic exterior surface of a Subject Vehicle because of peeling, flaking, or bubbling of the exterior clearcoat not caused by external influences such as automobile accidents, scratches, or road debris. Qualified Past Repairs shall be limited to refinishing of affected areas only, in accordance with Defendants' Technical Service Bulletin, LI98.00-P-058914 (viewable at www.[settlementwebsite].com).

To qualify for reimbursement of Qualified Past Repairs, you must submit a Reimbursement Claim Form. For information on how to make a claim for Qualified Past Repairs, including the limitations and proof requirements that apply, see question 9.

**Qualified Future Repairs**: A Qualified Future Repair means a repair performed in accordance with Defendants' Technical Service Bulletin, LI98.00-P-058914 (viewable at www.[settlementwebsite].com and attached to the Settlement Agreement as Exhibit A), by an Authorized Service Center after the Effective Date of the Settlement to repaint any non-plastic exterior surface of a Subject Vehicle because of peeling, flaking, or bubbling of the exterior clearcoat not caused by external influences such as automobile accidents, scratches, or road debris. Coverage for Qualified Future Repairs applies only to current owners and lessees. Qualified Future Repairs shall be limited to refinishing of affected areas only, in accordance with Defendants' Technical Service Bulletin, LI98.00-P-058914.

A Qualified Future Repair Claim Form is not required for coverage of Qualified Future Repairs if the Subject Vehicle is, as of the Effective Date, both fewer than 15 years from the original in-service date and fewer than 150,000 miles.

If your vehicle has more than 15 years from the original in-service date or more than 150,000 miles and you were denied warranty or goodwill coverage for a qualifying repair at a time the vehicle had both fewer than 15 years and fewer than 150,000 miles, and you wish to receive a Qualified Future Repair, you must submit a Qualified Future Repair Claim Form and meet all claim requirements.

If your vehicle needs a qualifying repair after [NOTICE DATE] but prior to the Effective Date, please take your vehicle to be repaired, retain your payment receipts for any qualifying repair performed, and make a claim for reimbursement as a Qualified Past Repair within 60 days of the repair.

For further details regarding Qualified Future Repairs and how you can receive coverage for them, including the limitations and proof requirements that apply, see question 10.

| **9.   How do I get reimbursed for Qualified Past Repairs?** |

Any Class Member who wishes to make a reimbursement claim for a Qualified Past Repair must submit a completed and hand-written or electronically signed Reimbursement Claim Form (available at www.[settlementwebsite].com[/claimform], along with the following items of proof:

010-9145-8967/2/AMERICAS

(a) Itemized repair order or invoice or other documentation showing that the Subject Vehicle received a qualified repair (*e.g.*, the repair invoice must show that part of the vehicle has been repainted) and the cost of the qualified repair.  A repair shall not qualify for reimbursement if the reason for the repair described in any related repair order is for repairs due to an automobile accident, scratches, road debris, or other external influence that is clearly unrelated to the alleged defect in the 590 Mars Red paint and the Symptoms Alleged (*e.g.*, chemical burn, tree sap, bird droppings, etc.);

(b) Proof of your payment for the repair, which could include a credit card statement, an invoice showing a zero balance, a receipt showing payment, or other such proof; and

(c) Proof of your ownership or leasing of the Subject Vehicle at the time of the repair.

The amount of reimbursement you may receive for Qualified Past Repairs varies depending on the time period during which the Qualified Past Repair occurred, as outlined in question 8, and you cannot make a claim for reimbursement of an expense if you have already been reimbursed for it.

If a Qualified Past Repair was performed by an Independent Service Provider, the reasonable repair cost shall not exceed 10% of what the same repair would have cost if it were performed at an Authorized Service Center.

**You must submit a Reimbursement Claim Form** to qualify for reimbursement for Qualified Past Repairs.

For a Qualified Past Repair that occurred prior to [NOTICE DATE], a Reimbursement Claim Form must be submitted to the Settlement Administrator postmarked by [DATE] or submitted online at [www.settlementwebsite].com by completing the electronic Reimbursement Claim Form by [DATE].  For repairs that occur after [NOTICE DATE] but before the Effective Date of this Settlement, you must submit a Reimbursement Claim Form postmarked or online at [www.settlementwebsite].com within 60 days of the date of the repair.

You may download a Reimbursement Claim Form from the website or contact the Settlement Administrator at info@[settlementwebsite].com to request that a Reimbursement Claim Form be mailed to you.  You may also access the online Reimbursement Claim Form at [www.settlementwebsite].com[/claimform].  You may be asked for additional information.  Follow all instructions on the Reimbursement Claim Form and make sure to inform the Settlement Administrator of any changes in your address after you have submitted your Reimbursement Claim Form.

## 10. How do I get coverage for Qualified Future Repairs?

Any Class Member with a Subject Vehicle that, at the Effective Date of the Settlement, is both fewer than 15 years from the original in-service date and fewer than 150,000 miles and who wishes to have a Qualified Future Repair covered by the Settlement must bring their Subject Vehicle to an Authorized Service Center.  To determine coverage, a technician will confirm that the vehicle meets the age and mileage requirements; that the exterior clearcoat on a panel is peeling, flaking or exhibiting bubbles under the surface; and that such conditions are not caused by external influences such as automobile accidents, scratches, road debris, chemical burn, tree sap, bird droppings, etc.

For a Subject Vehicle needing a Qualified Future Repair that, as of [NOTICE DATE], is 15 years (180 months) or more from the Subject Vehicle's original in-service date or has 150,000 miles or more, whichever occurs first, a Class Member wishing to receive such a repair must submit a Qualified Future Repair Claim Form accompanied by documentary evidence showing that (i) he or she presented the Subject Vehicle to an authorized Mercedes-Benz dealer or body repair facility for a qualifying repair or provided notice to Defendants at a time when the vehicle had fewer than 15 years (180 months) and 150,000 or fewer miles, and (ii) that he or she was denied warranty or goodwill coverage for such repair at the time.  The Qualified Future Repair Claim Form and required documentation must be submitted to the Settlement Administrator by mail postmarked by [DATE] or online at [www.settlementwebsite].com by [DATE].  If the claim is

approved, the Class Member shall arrange for a Qualified Future Repair to be performed within 90 days of notice of said approval. The percentage of coverage provided by Defendants shall be determined by the age and mileage of the Subject Vehicle at the time it was originally presented for the qualifying repair or notice was given to Defendants, using the coverage periods set forth in Question 8.

| **11. When would I get my payment or be able to have my vehicle repaired?** |
| --- |

**Qualified Past Repairs.** Reimbursements for Qualified Past Repairs will be paid only if the Court approves the Settlement and that approval becomes final (the Effective Date). The Effective Date is 75 days after the date of the Court's final approval of the Settlement, or, if there are appeals of the Settlement approval, 14 days after all appellate rights with respect to that Final Order and Judgment have expired or have been exhausted in a manner that conclusively affirms the Final Order and Judgment. Under the Settlement, the deadline for the Settlement Administrator to determine the validity of a reimbursement claim is 90 days after the Effective Date. If the Settlement Administrator approves your claim, payment will be made within 30 days of the approval decision. If the Settlement Administrator denies your claim or a portion of your claim, you will have 30 days to dispute such denial (measured from the postmark date of the denial notice). Such a dispute will be decided by the Third-Party Neutral selected pursuant to the Settlement, who will independently determine the validity of the claim. If the Third-Party Neutral approves your claim, payment will be made within 30 days of notice of the decision approving your claim.

**Qualified Future Repairs.** Subject Vehicles will be eligible for Qualified Future Repairs beginning on the Effective Date, after which you can simply bring your Subject Vehicle to an Authorized Service Center for repair. If you need a qualifying repair prior to the Effective Date, please take your Subject Vehicle to be repaired, retain your payment receipts for any qualifying repair performed, and make a claim for reimbursement as a Qualified Past Repair.

If you are required to submit a claim form to qualify for a Qualifying Future Repair for the reasons described in Question 10 and the Settlement Administrator denies your claim, you will have 30 days to dispute such denial (measured from the postmark date of the denial notice). Such a dispute will be decided by the Third-Party Neutral selected pursuant to the Settlement, who will independently determine the validity of the claim. If the claim is approved, the Class Member shall arrange for a Qualified Future Repair to be performed within 90 days of notice of said approval. The decision of the Third-Party Neutral is final and non-appealable.

If an Authorized Service Center denies your request for a Qualified Future Repair, you may dispute such denial by informing Class Counsel or Defendants of the alleged wrongful denial within 30 days of the denial. Class Counsel, Defense Counsel, and Defendants shall work in good faith and make best efforts to resolve any such dispute. If they cannot resolve the dispute, the dispute may be submitted to a Third-Party Neutral for a decision, who will independently determine the validity of the claim. If the Third-Party Neutral approves your repair request, the Authorized Service Center will make the repair. The decision of the Third-Party Neutral is final and non-appealable.

| **12. What am I giving up to stay in the Class?** |
| --- |

If the Court approves the Settlement and you have not excluded yourself, you are staying in the Class, and that means you will release and forever discharge Defendants and other entities described in the Settlement Agreement from each and every claim of liability that was or could have been made relating to the Litigation Claims alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat. It also means that all of the Court's orders will apply to you and legally bind you. If you sign a Reimbursement Claim Form or Qualified Future Repair Claim Form, you will agree to a Release of claims that describes exactly the legal claims that you give up if you get Settlement benefits. For the precise terms of the Release, please review the Settlement Agreement, which is available at www.[settlementwebsite].com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

Questions? Visit www.[settlementwebsite].com.

If you do not want a payment from this Settlement, but you want to keep the right to sue or continue to sue Defendants, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself, sometimes referred to as "opting out" of the Settlement Class.

## 13. How do I get out of the Settlement?

Any Class Member who wants to be excluded from the Class must submit a written request for exclusion to the Settlement Administrator at the address provided below. Your request must be postmarked on or before [DATE] and must include: (1) the Class Member's full name, current address, and telephone number; (2) the Subject Vehicle Identification Number (VIN) and dates of ownership or lease for the Subject Vehicle; (3) a dated, handwritten signature; and (4) a written statement that the Class Member has reviewed the Class Notice and wishes to be excluded from the Settlement.

> Mercedes Mars Red Settlement
> c/o [NAME OF SETTLEMENT ADMIN.]
> [ADDRESS]
> [ADDRESS]

## 14. If I do not exclude myself, can I sue Defendants for the same thing later?

No. Unless you exclude yourself, you will be bound by the Final Order and Judgment, and you give up the right to sue Defendants for the claims that this Settlement resolves. If you have a pending lawsuit, you must exclude yourself from this class to continue your own lawsuit.

## 15. If I exclude myself, can I get money from the Settlement?

No. If you exclude yourself, you cannot receive any payments or covered future repairs, but you retain the right to bring, maintain, or be part of a different lawsuit against Defendants.

# THE LAWYERS REPRESENTING YOU

## 16. Do I have a lawyer in the case?

The Court has appointed W. Lewis Garrison, Jr., Taylor C. Bartlett, James F. McDonough, III, and K. Steven Jackson of Heninger Garrison Davis, LLC to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees up to $4,750,000, up to $100,000 for expenses, and an amount not to exceed $30,000 total for Class Representative Service Awards. The Court may award less than these amounts. The fees and expenses that the Court approves will be paid by Defendants. Defendants have agreed not to oppose fees and expenses up to the specified amounts. The costs to administer the Settlement will also be paid by Defendants. Class Counsel's Motion for Attorneys' Fees and Costs will be available on the Settlement Website once it has been filed.

# OBJECTING TO THE SETTLEMENT

Questions? Visit www.[settlementwebsite].com.

You can tell the Court that you do not agree with the Settlement or some part of it.

## 18. How do I tell the Court that I do not like the Settlement?

If you are a Class Member, you can object to the Settlement if you don't like any part of it. You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no Settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you must object.

All objections must be in writing and must be filed with the Court at:

> Clerk of the Court
> United States Courthouse
> 75 Ted Turner Drive, NW
> Suite 2211
> Atlanta, Georgia 30303

Your objection must be filed not later than [DATE], or it will not be considered. Any objection to the proposed Settlement must include the following:

- The Class Member's full name, current address, and telephone number;
- The Subject Vehicle Identification Number (VIN) and the dates of ownership or lease of the Subject Vehicle;
- A statement that the objector has reviewed the Settlement Class definition and understands that s/he is a Class Member and has not opted out of the Settlement Class;
- A complete statement of all legal and factual bases for any objection that the objector wishes to assert;
- A statement of whether the Settlement Class Member intends to appear at the final approval hearing;
- Copies of any documents or witnesses that support the objection; and
- A dated, handwritten signature.

If you file a timely, written objection, you may, but are not required to, appear at the final approval hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

Any Class Member who does not file a timely written objection to the Settlement or who otherwise fails to comply with these requirements shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

## 19. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to.

## 20. When and where will the Court decide whether to approve the Settlement?

010-9145-8967/2/AMERICAS

The Court will hold a Fairness Hearing at [TIME] on [DATE], at the United States District Court for the Northern District of Georgia, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303 or through remote means such as video teleconferencing or telephone conferencing.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing.  The Court may also decide how much to pay Class Counsel.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

## 21. Do I have to come to the hearing?

No.  Class Counsel will answer any questions Judge Cohen may have, but you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you submitted your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary for your objection to be considered.

# IF YOU DO NOTHING

## 22. What happens if I do nothing at all?

If you do nothing, you will get no money from the Settlement. And, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the legal issues in this case ever again.

However, if you do nothing, you may still qualify for coverage for Qualified Future Repairs.  For details regarding Qualified Future Repairs, see questions 8 and 10 or visit www.[settlementwebsite].com.

# GETTING MORE INFORMATION

## 23. Are there more details about the Settlement?

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement and other important case documents, at www.[settlementwebsite].com.

## 24. How do I get more information?

This notice provides a summary of the basic terms of the Settlement.  For the complete terms and conditions, please consult the Settlement Agreement.  You can access the Settlement Agreement, other important case documents, answers to frequently asked questions, and online Reimbursement and Qualified Future Repair Claim Forms at www.[settlementwebsite].com.  You may email the Settlement Administrator at xxxxxxxxxxxxx or call them at xxxxxxxxxxxxxxx.  You should check that website regularly for updates on the case.

You may also contact one of the following attorneys appointed by the Court to serve as Class Counsel:

> K. Steven Jackson
> W. Lewis Garrison, Jr.
> Taylor C. Bartlett
> James F. McDonough, III
> Heninger Garrison Davis, LLC
> 2224 1st Avenue North
> Birmingham, AL 35203

Questions? Visit www.[settlementwebsite].com.

11

Tel:      (205) 326-3336

**PLEASE DO NOT CONTACT THE COURT OR COUNSEL FOR THE DEFENDANTS REGARDING THIS NOTICE.**

010-9145-8967/2/AMERICAS

# **<u>EXHIBIT D</u>**

## **TO KEOUGH DECLARATION**

*Pinon et al. v. Mercedes-Benz USA, LLC and Daimler AG,*
United States District Court for the Northern District of Georgia, Case No. (18-CV-03984)

## Mercedes Mars Red Settlement:
## Instructions for Claiming Reimbursement for Qualified Past Repairs

**To submit a Reimbursement Claim Form for reimbursement of Qualified Past Repairs, please carefully review and follow the below instructions.  Please take note that this Claim Form must be accompanied by certain required items of proof described below.  Please only fill out and submit a Claim Form if you meet the requirements for reimbursement described below.**

### WHO:

You may only file a claim if you are a Class Member. You are a Class Member if you fit the following description and do not opt out of the Settlement: *You are a current owner, former owner, current lessee, or former lessee of a Mercedes-Benz vehicle purchased or leased in the United States and originally painted Mars Red or Fire Opal (collectively, "590 Mars Red").*

Excluded from the Class are: (a) persons who have settled with, released, or otherwise had claims adjudicated on the merits against Defendants that are substantially similar to the Litigation Claims (*i.e.*, alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat); (b) Defendants and their officers, directors and employees, as well as their corporate affiliates and the corporate affiliates' officers, directors and employees; (c) counsel to any of the parties; and (d) the Honorable Mark H. Cohen, the Honorable James Holderman, and members of their respective immediate families.

### WHAT:

Only Qualified Past Repairs are eligible for reimbursement: A Qualified Past Repair is a repair that occurred before the Effective Date of the Settlement related to repainting any non-plastic exterior surface of a Subject Vehicle because of peeling, flaking, or bubbling of the exterior clearcoat not caused by external influences such as automobile accidents, scratches, or road debris. Qualified Past Repairs are limited to refinishing of affected areas only, in accordance with Defendants' Technical Service Bulleting, LI98.00-P-058914 (viewable at www.[settlementwebsite].com and attached to the Settlement Agreement as Exhibit A).

### WHEN:

To request reimbursement for Qualified Past Repairs that occurred before [NOTICE DATE], you must submit a Reimbursement Claim Form postmarked by [DATE] or submit the completed electronic Reimbursement Claim Form online at [www.settlementwebsite] by [DATE].

To request reimbursement for Qualified Past Repairs that occurred after [NOTICE DATE] but before the Effective Date of the Settlement, you must submit a Reimbursement Claim Form postmarked within 60 days of the date of repair or submit the completed electronic Reimbursement Claim Form online at [www.settlementwebsite].com.

*\* If the vehicle had more than 150,000 miles or was more than fifteen years past its original in-service date when the repair was made, the repair does not qualify for reimbursement.*

The Effective Date is 75 days after the date of the Court's final approval of the Settlement, or, if there are appeals of the Settlement approval, 14 days after the date on which any appeals of the approval of the Settlement have been resolved in favor of the Settlement.

**HOW:**

Any Class Member who wishes to request reimbursement for a Qualified Past Repair must submit a completed and signed Reimbursement Claim Form via mail or by completing the electronic Reimbursement Claim Form at [www.settlementwebsite].com, along with the items of proof listed below in this section.

You may submit a claim by mailing this Reimbursement Claim Form to the Settlement Administrator at the address printed below:

> Mercedes Mars Red Settlement
> c/o [SETTLEMENT ADMIN.]
> [ADDRESS]
> [ADDRESS]

If you wish to make claims for repairs to more than one vehicle, please use a separate Reimbursement Claim Form for each vehicle.

If you wish to make claims for more than one repair/service to the same vehicle, please attach additional pages and answer all the questions in Section II for each claimed repair/service.

Your reimbursement claim for a Qualified Past Repair must include a completed and hand-written or electronically signed Reimbursement Claim Form and the following items of proof:

(a) An itemized repair order, invoice, or other documentation showing that the Subject Vehicle received a qualified repair (e.g., the repair invoice must show that part of the vehicle has been repainted) and the cost of the qualified repair.  A repair shall not qualify for reimbursement if the reason for the repair described in any related repair order is for repairs due to an automobile accident, scratches, road debris, or other external influence that is unrelated to the alleged Mars Red paint defect (e.g., chemical burn, tree sap, or bird droppings);

(b) Proof of your payment for the repair, which could include a credit card receipt or statement, an invoice showing a payment, a receipt showing cash or other form of payment, or other such proof; and

(c) Proof of your ownership or leasing of the Subject Vehicle at the time of the repair.

**HOW MUCH:**

The amount of reimbursement you may receive for Qualified Past Repairs varies depending on the coverage period during which the Qualified Past Repair occurred, as shown below.

***Period One*** is defined as the time period during which the Subject Vehicle has or had fewer than seven years (84 months) or 105,000 miles from the Subject Vehicle's original in-service date, whichever occurred first.  Qualifying Past Repairs that occurred during Period One will be reimbursed at 100% of the out-of-pocket cost paid subject to certain limitations in the Settlement Agreement.

2

**Period Two** is defined as the time period from the end of Period One until the Subject Vehicle has or had fewer than ten years (120 months) or 150,000 miles from the Subject Vehicle's original in-service date, whichever occurred first.  Qualifying Past Repairs that occurred during Period Two will be reimbursed at 50% of the out-of-pocket cost paid subject to certain limitations in the Settlement Agreement.

**Period Three** is defined as the time period from the end of Period Two until the Subject Vehicle has or had fewer than fifteen years (180 months) or 150,000 miles from the Subject Vehicle's original in-service date, whichever occurred first.  Qualifying Past Repairs that occurred during Period Three will be reimbursed at 25% of the out-of-pocket cost paid subject to certain limitations in the Settlement Agreement.

If the vehicle had more than 150,000 miles or was more than fifteen years past its in-service date when the repair was made, the repair does not qualify for reimbursement under the Settlement.

If the repair was performed by an Independent Service Center, the reasonable repair cost shall not exceed 10% of what the same repair would have cost if it were performed at an Authorized Service Center.

You are only eligible to be reimbursed for actual out-of-pocket costs.  If any part of your repair cost was covered by MBUSA, an Authorized Mercedes-Benz Service Center, or any other form of coverage such as insurance or an extended warranty, you will not be reimbursed for the portion of the cost you did not pay out-of-pocket.

*          *          *

If you believe your claim for a Qualifying Past Repair is wrongfully denied or should have been approved for a greater amount, you may notify the Settlement Administrator that you believe your claim was wrongfully decided and you will be afforded an opportunity to present your reasons to a Third Party Neutral, who will make a final and non-appealable decision as to whether your claim should have been approved or decided differently.

If you have questions about how to complete your claim, contact the Settlement Administrator at info@[settlementwebsite].com.

You may be asked for additional information. Follow all instructions on the Reimbursement Claim Form and make sure to inform the Settlement Administrator of any changes in your address after you submit your Reimbursement Claim Form.

010-9145-8949/2/AMERICAS

# Mercedes Mars Red Settlement:
# Reimbursement Claim Form for Reimbursement of Qualified Past Repairs

## I. CONTACT INFORMATION

Full Name

Mailing Address – Line 1

Mailing Address – Line 2 (If Applicable)

City                                      State                    Zip Code

Telephone Number                          Email Address

## II. VEHICLE INFORMATION

Vehicle Identification Number (VIN)

Vehicle Model                             Vehicle Model Year

Dates you owned/leased the Vehicle (start/end)     Date of service*

_

Mileage at time of service*               Amount paid for repairs

Was any part of the cost covered (e.g., in the form of warranty or extended warranty coverage, insurance, "goodwill" from the dealership, or other payment assistance)?

☐ YES        ☐ NO

If you answered "yes" to the previous question, list the source(s) of payment and amount(s) received:

_____

_____

4

Was the repair made by an Authorized Mercedes-Benz Service Center?
(See https://www.mbusa.com/en/owners/service-maintenance/schedule-service for a list)

☐ **YES**          ☐ **NO**

Name & Address of Service Provider

Please list and describe the documents you are attaching to support your claim:

## III.  **CERTIFICATION**

By signing this form, I swear under penalty of perjury that:

1.  I am a Settlement Class Member and the current owner, former owner, current lessee, or former lessee of the vehicle identified above and am the rightful owner of the claim described in this Reimbursement Claim Form.

2.  The documents I have submitted in support of this claim are true and accurate copies.

3.  The information provided in this Reimbursement Claim Form is true and correct to the best of my knowledge.

By signing this form, I also confirm my agreement to the Release detailed in Section 6 of the Settlement Agreement and consent to the dismissal of any pre-existing action or proceeding relating to the "Mars Red" paint in Subject Vehicles, whether brought by me or by others on my behalf.

*If more than one person has rights to the claims asserted, the Reimbursement Claim Form must be signed by all persons.*

Signature: _____          Date: _____

Signature: _____          Date: _____

5

Signature: _____     Date: _____

# EXHIBIT E

## TO KEOUGH DECLARATION

*Pinon et al. v. Mercedes-Benz USA, LLC and Daimler AG,*
United States District Court for the Northern District of Georgia, Case No. (18-CV-03984)

## <u>Mercedes Mars Red Settlement</u><br><u>Instructions for Seeking Qualified Future Repairs</u>

**To submit a Qualified Future Repair Claim Form to request a Qualified Future Repair, please carefully review and follow the below instructions.  Please take note that this Qualified Future Repair Claim Form <u>must</u> be accompanied by certain required items of proof described below.  Please only fill out and submit a Qualified Future Repair Claim Form if you meet the requirements described below.**

If you are a Class Member and your Subject Vehicle has 150,000 miles or more or is 15 years or more from the original in-service date as of [NOTICE DATE], you will only be eligible for a Qualified Future Repair if you were denied warranty or goodwill coverage for a qualifying repair when your Subject Vehicle had fewer than 15 years and fewer than 150,000 miles.  To request a Qualified Future Repair in such circumstance, you must submit a Qualified Future Repair Claim Form.

If you are a Class Member and your Subject Vehicle needs a Qualified Future Repair after the Effective Date of the Settlement and both is fewer than 15 years from the original in-service date and has fewer than 150,000 miles at the time such repair is needed, you do not need to submit a Qualified Future Repair Claim Form. You can bring your Subject Vehicle to an Authorized Service Center to request a Qualified Future Repair.  (*See* https://www.mbusa.com/en/owners/service-maintenance/schedule-service for a list.)

The deadline to file a claim is _____.

If you are a Class Member and your Subject Vehicle needs a qualifying repair after [NOTICE DATE] but prior to the Effective Date and both is fewer than 15 years from the original in-service date and has fewer than 150,000 miles at the time a qualifying repair is made, please take your Subject Vehicle to be repaired, retain your payment receipts, and make a claim for reimbursement as a Qualified Past Repair.  The deadline to file such a claim is 60 days from the date of repair.

## <u>WHO:</u>

You may only file a claim if you are a Class Member. You are a Class Member if you fit the following description and do not opt out of the Settlement: *You are a current owner, former owner, current lessee, or former lessee of a Mercedes-Benz vehicle purchased or leased in the United States originally painted Mars Red or Fire Opal (collectively, "590 Mars Red").*

Excluded from the Class are: (a) persons who have settled with, released, or otherwise had claims adjudicated on the merits against Defendants that are substantially similar to the Litigation Claims (*i.e.*, alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or defective, due to peeling, flaking, bubbling, fading, discoloration, or poor adhesion of the paint or clearcoat); (b) Defendants and their officers, directors and employees, as well as their corporate affiliates and the corporate affiliates' officers, directors and employees; (c) counsel to any of the parties; and (d) the Honorable Mark H. Cohen, the Honorable James Holderman, and members of their respective immediate families.

**WHAT:**

Only Qualified Future Repairs are covered by the extended warranty:  A Qualified Future Repair is a repair that will occur after the Effective Date of the Settlement related to repainting any non-plastic exterior surface of a Subject Vehicle because of peeling, flaking, or bubbling of the exterior clearcoat not caused by external influences such as automobile accidents, scratches, or road debris. Qualified Future Repairs are limited to refinishing of affected areas only, in accordance with Defendants' Technical Service Bulletin, LI98.00-P-058914 (viewable at www.[settlementwebsite].com and attached to the Settlement Agreement as Exhibit A).

Qualified Future Repair Claim Form and Documentation Required:  If your Subject Vehicle needs a Qualified Future Repair but, as of [NOTICE DATE], is more than 15 years (180 months) after the Subject Vehicle's original in-service date or has more than 150,000 miles, whichever occurs first, you may submit a claim in order to seek a Qualified Future Repair.  To do so, you must submit a completed Qualified Future Repair Claim Form accompanied by documentary evidence showing that (i) you presented the Subject Vehicle to an authorized Mercedes-Benz dealer or body repair facility for a qualifying repair or provided notice to Defendants Mercedes-Benz USA, LLC or Daimler AG ("Defendants") of the need for such a repair at a time when the vehicle had less than 15 years (180 months) and 150,000 or fewer miles, and (ii) you were denied warranty or goodwill coverage for such repair at the time.[*]

If your Subject Vehicle needs a qualifying repair after [NOTICE DATE] but prior to the Effective Date, please take your Subject Vehicle to be repaired, retain your payment receipts for any qualifying repair performed, and make a claim for reimbursement as a Qualified Past Repair within 60 days of the repair.

No Qualified Future Repair Claim Form or Documentation Required:  If your vehicle needs a Qualified Future Repair after the Effective Date of the Settlement and both is fewer than 15 years from the original in-service date and has fewer than 150,000 miles at the time such repair is needed, you do not need to submit a Qualified Future Repair Claim Form. You can bring your Subject Vehicle to an Authorized Service Center to request a Qualified Future Repair.  (*See* https://www.mbusa.com/en/owners/service-maintenance/schedule-service for a list.)

The Effective Date is 75 days after the date of the Court's final approval of the Settlement, or, if there are appeals of the Settlement approval, 14 days after the date on which any appeals of the approval of the Settlement have been resolved in favor of the Settlement.


**WHEN:**

The Qualified Future Repair Claim Form and requisite documentation must be submitted to the Settlement Administrator postmarked by [DATE]or submitted online at [www.settlementwebsite].com by completing the electronic Qualified Future Repair Claim Form by [DATE].

If your claim is approved, you must arrange for a Qualified Future Repair to be performed at an Authorized Service Provider within 90 days of notice of said approval.

---

[*] *If the vehicle had more than 150,000 miles or was more than fifteen years past its original in-service date when first presented to an authorized Mercedes-Benz dealer or body repair facility for a qualifying repair or when Defendants were first notified of the need for such a repair, the vehicle does not qualify for a future repair.*

**HOW:**

To submit a claim for a Qualified Future Repair, you must either submit your claim using the electronic Qualified Future Repair Claim Form at [www.settlementwebsite].com or mail a completed and signed Qualified Future Repair Claim Form and accompanying documentation to the Settlement Administrator at the address printed below:

> Mercedes Mars Red Settlement
> c/o [SETTLEMENT ADMIN.]
> [ADDRESS]
> [ADDRESS]

Your claim for a Qualified Future Repair must include a completed and hand-written or electronically signed Qualified Future Repair Claim Form and the following items of proof:

(a) Documentary evidence showing that you presented the Subject Vehicle to an authorized Mercedes-Benz dealer or body repair facility for a qualifying repair or provided notice to Defendants at a time when the vehicle had less than 15 years (180 months) and 150,000 or fewer miles; and

(b) Documentary evidence showing that you were denied warranty or goodwill coverage for such repair at the time.

If you wish to make a claim for more than one vehicle, please use a separate Qualified Future Repair Claim Form for each vehicle.

**HOW MUCH:**

If your claim is approved, the percentage of coverage you may receive for your Qualified Future Repair will be based on the age and mileage of the Subject Vehicle on the date you were originally denied warranty or goodwill coverage for the repair, as shown below.

*Period One* is defined as the time period during which the Subject Vehicle has or had fewer than seven years (84 months) or 105,000 miles from the Subject Vehicle's original in-service date, whichever occurred first.  If you presented your Subject Vehicle for the qualifying repair or provided Defendants notice of the need for such repair during Period One, the Qualifying Future Repair will be covered at 100% of the cost of the repair defined in the Settlement Agreement.

*Period Two* is defined as the time period from the end of Period One until the Subject Vehicle has or had fewer than ten years (120 months) or 150,000 miles from the Subject Vehicle's original in-service date, whichever occurred first.  If you presented your Subject Vehicle for the qualifying repair or provided Defendants notice of the need for such repair during Period Two, the Qualifying Future Repair will be covered at 50% of the cost of the repair defined in the Settlement Agreement.

*Period Three* is defined as the time period from the end of Period Two until the Subject Vehicle has or had fewer than fifteen years (180 months) or 150,000 miles from the Subject Vehicle's original in-service date, whichever occurred first.  If you presented your Subject Vehicle for the qualifying repair or provided Defendants notice of the need for

such repair during Period Three, the Qualifying Future Repair will be covered at 25% of the cost of the repair defined in the Settlement Agreement.

*                    *                    *

If you are required to submit a Qualified Future Repair Claim Form to qualify for a Qualifying Future Repair as described above and you believe your claim is wrongfully denied by the Settlement Administrator, you may notify the Settlement Administrator that you believe your claim was wrongfully denied.

If you bring your Subject Vehicle to an Authorized Service Center to request coverage for a future repair after the Effective Date of the Settlement and are, in your opinion, wrongfully denied coverage by the Authorized Service Center, you can contact Class Counsel or Defendants for further assistance concerning your dispute.

Class Counsel, Defense Counsel, and Defendants shall work in good faith and make best efforts to resolve any such dispute.   If they cannot resolve the dispute, the dispute may be submitted to a Third-Party Neutral for a decision, who will independently determine the validity of the claim.  If the Third-Party Neutral approves your repair request, the Authorized Service Center will make the repair.  The decision of the Third-Party Neutral is final and non-appealable.

If you have questions about how to complete your claim, contact the Settlement Administrator at info@[settlementwebsite].com.

You may be asked for additional information. Follow all instructions on the Qualified Future Repair Claim Form and make sure to inform the Settlement Administrator of any changes in your address after you submit your Qualified Future Repair Claim Form.

# Mercedes Mars Red Settlement:
# Qualified Future Repair Claim Form for Seeking Qualified Future Repairs[†]

## I. CONTACT INFORMATION

Full Name

Mailing Address – Line 1

Mailing Address – Line 2 (If Applicable)

City

State

Zip Code

Telephone Number

Email Address

## II. VEHICLE INFORMATION

Vehicle Identification Number (VIN)

Vehicle Model

Vehicle Model Year

Date you purchased or leased the Vehicle

Did you present your vehicle to an authorized Mercedes-Benz dealer or body repair facility for a qualifying repair or provide notice to Mercedes-Benz USA, LLC or Daimler AG of the need for

---

[†] If you are a Class Member and your Subject Vehicle needs a Qualified Future Repair after the Effective Date of the Settlement and both is fewer than 15 years from the original in-service date and has fewer than 150,000 miles at the time such repair is needed, you do not need to submit a Claim Form. You can bring your Subject Vehicle to an Authorized Service Center to request a Qualified Future Repair. (*See* https://www.mbusa.com/en/owners/service-maintenance/schedule-service for a list.)

If your vehicle needs a qualifying repair after [NOTICE DATE] but prior to the Effective Date, please take your vehicle to be repaired, retain your payment receipts for any qualifying repair performed, and make a claim for reimbursement as a Qualified Past Repair within 45 days of the repair.

such a repair at a time when the vehicle had both less than 15 years (180 months) and 150,000 or fewer miles?

☐ **YES**          ☐ **NO**

Name & address of Mercedes-Benz dealer or body repair facility (if applicable)

Were you denied warranty or goodwill coverage for a qualifying repair when you presented your vehicle to an authorized Mercedes-Benz dealer or body repair facility or notified Mercedes-Benz USA, LLC or Daimler AG of the need for a qualifying repair?

☐ **YES**          ☐ **NO**

If your answer to both of the above questions is "Yes," please provide (i) the date you presented your vehicle to an authorized Mercedes-Benz dealer or body repair facility or notified Mercedes-Benz USA, LLC or Daimler AG of the need for a qualifying repair, (ii) the mileage of your vehicle at such time:

Please list and describe the documents you are attaching to support your claim:

## III.  <u>CERTIFICATION</u>

By signing this form, I swear under penalty of perjury that:

1. I am a Settlement Class Member and the current owner, former owner, current lessee, or former lessee of the vehicle identified above and am the rightful owner of the claim described in this Qualified Future Repair Claim Form.

2. The documents I have submitted in support of this claim are true and accurate copies.

3. The information provided in this Qualified Future Repair Claim Form is true and correct to the best of my knowledge.

By signing this form, I also confirm my agreement to the Release detailed in Section 6 of the Settlement Agreement and consent to the dismissal of any pre-existing action or proceeding relating to the "590 Mars Red" paint in Subject Vehicles, whether brought by me or by others on my behalf.

*If more than one person has rights to the claims asserted, the Qualified Future Repair Claim Form must be signed by all persons.*

Signature: _____       Date: _____

Signature: _____       Date: _____

Signature: _____       Date: _____