UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EMILY PINON, GARY C. KLEIN,  )
KIM BROWN, JOSHUA FRANKUM,  )
NANCY PEARSALL, LACRESHA  )
EARLEY, and TODD BRYAN  )
on Behalf of All Others Similarly  )
Situated,  )
     )
               Plaintiffs,  )   Civil Action No. 1:18-CV-03984-MHC
     )
   vs.  )
     )
MERCEDES-BENZ USA, LLC, and  )
DAIMLER AG  )
     )
               Defendants.  )
     )

**PONZIO PLAINTIFFS' MOTION TO INTERVENE AND CONTINUE
HEARING DATE FOR MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

I.   FACTUAL AND PROCEDURAL BACKGROUND ...................................6

II.   ARGUMENT ...........................................................................................10

    A.   The Court Should Allow the *Ponzio* Plaintiffs' Intervention as of Right ................................................................................................12

        1.   The Motion to Intervene Is Timely ...........................................12

        2.   The *Ponzio* Plaintiffs Have a Substantial Legal Interest in the Subject Matter of This Case .................................................14

        3.   The Proposed Settlement Will Impair or Impede the *Ponzio* Plaintiffs' Ability to Protect Their Interests .................16

        4.   The *Ponzio* Plaintiffs' Interests Are Not Adequately Represented by the *Pinon* Plaintiffs .........................................17

    B.   The Court Should Allow Permissive Intervention in the Alternative ..............................................................................................24

III.   CONCLUSION ........................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bedwell v. Braztech Int'l, L.C.*,
No. 17-Civ-22335-TORRES, 2018 WL 830073 (S.D. Fla. Feb. 9, 2018)...14, 16

*Borup v. CJS Sols. Grp., LLC*,
No. 18-1647, 2019 WL 2137369 (D. Minn. May 16, 2019) ........................18, 19

*Burrow v. Forjas Taurus S.A.*,
No. 16-Civ-21606-TORRES, 2018 WL 809439 (S.D. Fla. Feb. 9, 2018).........16

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) ..........................................................................24

*Crawford v. Equifax Payment Servs., Inc.*,
201 F.3d 877 (7th Cir. 2000) ..............................................................................12

*Dickstein v. Able Telcom Holding Corp.*,
192 F.R.D. 331 (N.D. Ga. 2000) ........................................................................14

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
983 F.2d 211 (11th Cir. 1993) ............................................................................11

*First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*,
No. 1:11-CV-2087-ODE, 2011 WL 13221046 (N.D. Ga. Nov. 1, 2011) ..........11

*In re Bayshore Ford Trucks Sales, Inc.*,
471 F.3d 1233 (11th Cir. 2006) ..........................................................................24

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) ........................................................................11, 15

*In re Estelle*,
516 F.2d 480 (5th Cir. 1975) ..............................................................................25

*MacQueen v. Lambert*,
348 F. Supp. 1334 (M.D. Fla. 1972)...................................................................24

# TABLE OF AUTHORITIES

**Page**

*Meek v. Metro. Dade Cnty., Fla.*,
   985 F.2d 1471 (11th Cir. 1993) ...........................................................13

*Ponzio v. Mercedes-Benz USA, LLC*,
   447 F. Supp. 3d 194 (D.N.J. 2020) .......................................................1

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) .................................................................4

*Ross v. Convergent Outsourcing, Inc.*,
   323 F.R.D. 656 (D. Colo. 2018) ..........................................................19

*Smith v. Cobb Cnty. Bd. of Elections & Registrations*,
   314 F. Supp. 2d 1274 (N.D. Ga. 2002) ................................................12

*Stallworth v. Monsanto Co.*,
   558 F.2d 257 (5th Cir. 1977) ...............................................................12

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013)..............................................................................17

*Stone v. First Union Corp.*,
   371 F.3d 1305 (11th Cir. 2004) ...........................................................11

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
   874 F.3d 692 (11th Cir. 2017) ..........................................15, 16, 17, 18

*United States v. Carpenter*,
   298 F.3d 1122 (9th Cir. 2002) .............................................................13

*United States v. Georgia*,
   19 F.3d 1388 (11th Cir. 1994) .............................................................11

*Zone 4, Inc. v. Brown*,
   No. 1:19-CV-00676-LMM, 2019 WL 7833901 (N.D. Ga. Aug. 6, 2019).........14

## TABLE OF AUTHORITIES

**Page**

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure

Rule 23 ................................................................................11, 15, 16
Rule 23(g) ...........................................................................1, 2, 8, 19
Rule 24 ................................................................................1, 11, 17
Rule 24(a)............................................................................11, 12, 14, 24
Rule 24(a)(2) .......................................................................10, 16, 24
Rule 24(b) ...........................................................................24
Rule 24(b)(1).......................................................................11
Rule 24(b)(1)(B) ..................................................................24
Rule 26 ................................................................................8

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Robert Ponzio, Karina Kloczko, Jessica Irene Miller, Alex Acuna, Brian Madsen, Vanessa M. Montgomery, Robert Mull, Hadiya Nelthrope, and Samuel Salgado, plaintiffs in the first-filed and related case of *Ponzio v. Mercedes-Benz USA, LLC*, 1:18-cv-12544-JHR-JS (D.N.J.) ("*Ponzio* Plaintiffs"), seek to intervene in this case to protect their rights and the interests of aggrieved Class members on whose behalf they have been litigating and whom they represent under Rule 23(g).

While it is not entirely unheard of for two overlapping class actions to proceed simultaneously in two different districts, the circumstances which gave rise to the proposed settlement before the Court are *sui generis*. First, the *Pinon* litigation – *i.e.*, this case – is a copycat class action. Defendants – who are represented by the same counsel as they are here – have never disputed this fact, and the Court in the first-filed *Ponzio* action labelled this case as such when denying Defendants' motion to transfer venue of the case before it to this Court. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 221 (D.N.J. 2020). That is an important fact – *Ponzio*'s counsel initiated the case that encompasses the wrongs alleged here, and its work product is at the root of each pleading filed by counsel in this case. It is equally critical that *Ponzio*'s counsel does not come to this Court a stranger. Rather, counsel in *Ponzio* was appointed

under Rule 23(g) to represent the very same classes *Pinon*'s counsel now seek to represent.

Second, the actions of *Pinon*'s counsel cannot be squared with either the New Jersey Court's determination that this is a copy-cat class action and its appointment of *Ponzio*'s counsel to represent the putative classes under Rule 23(g) or – *more importantly* – this Court's Order that required *Pinon's* counsel to coordinate with *Ponzio*'s counsel.  Indeed, this Court specifically required *Pinon*'s counsel to do so. ECF No. 49 at 5 ("Interim Lead Counsel . . . shall be charged with coordinating with Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. who have been appointed Interim Lead Counsel in the matter of" *Ponzio*).  And the *Pinon* Plaintiffs assured this Court that they would coordinate this action with *Ponzio* on at least two occasions [ECF Nos. 48-1 at 4, 16, 22; 62 at 5] ("HGD is committed to this litigation, including working together with counsel for the *Ponzio* Action to effectively and efficiently pursue this litigation.") and (". . . granting the requested extension w[ould] also help align the schedule in this case with the schedule of *Ponzio*, thereby enhancing coordination as the case progresses.").  Despite those assurances, the *Pinon* Plaintiffs did not provide any notice to *Ponzio*'s counsel of the fact of settlement negotiations before, during, or even after the mediation that lead to the proposed settlement.  The *Pinon* Plaintiffs'

concealment of their settlement negotiations contravened this Court's coordination mandate.[1]

Instead, the *Pinon* Plaintiffs and their counsel entered into secret settlement negotiations with Defendants without any notice whatsoever to either the *Ponzio* Plaintiffs, the *Ponzio* Court, or this Court. *Ponzio* counsel first learned of this proposed settlement when Defendants informed counsel of their intention to move for a stay on December 21. As such, the proposed settlement is not the product of "earnest settlement discussions" [ECF No. 70 at 5], but rather a product of counsel for the *Pinon* Plaintiffs' violation of this Court's Order of appointment and the *Pinon* parties' active concealment from both the *Ponzio* Plaintiffs and this Court of those secret settlement negotiations over the course of the past three months.[2]

---

[1]   To be sure, prior to the Court's order, counsel had various exchanges in an effort to come to a global agreement as to how to prosecute the two cases in tandem. While no global agreement was struck, it was determined that counsel would press the defendant on two fronts and coordinate as best as possible. What is crystal clear is that *Ponzio* counsel was never informed of, or invited to participate in, the mediation which led to the proposed settlement. And it is no defense to this fact that this Court's order also directs *Pinon* counsel to coordinate on discovery. It makes little sense to coordinate discovery but to reserve to *Pinon* counsel the sole authority to mediate and negotiate a purported global settlement. It is also no defense that prior to the Court's order the parties did not agree on a formal structure for the global prosecution of these cases. *Pinon* counsel repeatedly emphasized to this Court their willingness to coordinate these cases but then failed to inform *Ponzio* counsel of these most critical events in the case. At the very best, this violates the spirit of the Court's order.

[2]   Counsel for Defendants also actively concealed the settlement negotiations occurring

- 3 -

Perhaps not surprisingly, the mediation resulted in a proposed settlement that bears *indicia* of a "reverse auction"[3] that, if approved, would be felt across the entire Class.  Most troublingly, the proposed settlement would release the primary economic loss suffered by Class members for diminution in value of their vehicles *without any*

---

in *Pinon*.  Indeed, the parties in *Ponzio* attended a discovery hearing before Magistrate Judge Joel Schneider on November 10, 2020 [ECF No. 104] – ***the day after Defendants reached their settlement with the Pinon Plaintiffs***.  At the end of the hearing, Judge Schneider expressed his hope for "more of a spirit of cooperation" so the Court could "focus on the merits of the case." *Ponzio* Discovery Hearing Tr. 47: 12-15 (Nov. 10, 2020).  Before concluding the hearing, Judge Schneider asked: "Anything else, Counsel?" *Id.* at 49:19.  Nothing was mentioned from counsel for Defendants regarding the secret settlement that had been reached with the *Pinon* Plaintiffs the previous day.

[3]   A reverse auction is a defendant's attempt to reach a low-value class deal with a plaintiff on tenuous footing with the goal of precluding other representative claims that are being litigated from a position of greater strength. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (Posner, J.) (defining a reverse auction as "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant"); 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS §13:60 (5th ed. 2020) (explaining the primary "problem in the reverse auction situation is that the class's interests have been sold out, and class members will get less than the full value of their claims"); STANDARDS AND GUIDELINES FOR LITIGATING AND SETTLING CONSUMER CLASS ACTIONS, 299 F.R.D. 160 (3d ed. 2014) ("[In a reverse auction] a defendant proposes a cheap settlement and shops around among plaintiffs' counsel until the defendant finds a lawyer willing to settle on its terms.  The potential for collusion and abuse is obvious if a lawyer agrees to a bad deal in order to secure fees.").  Approval of "reverse auction" settlements creates perverse incentives in representative cases.  It "signals to the unscrupulous plaintiffs' attorney that by filing a parallel, shadow action . . . , [he or she] can underbid the original plaintiffs' attorney team that researched, prepared and filed the action." John C. Coffee, Jr., CLASS WARS: THE DILEMMA OF THE MASS TORT CLASS ACTION, 95 Colum. L. Rev. 1343, 1371 (1995) (exploring the issue).

*compensation whatsoever*.  These damages are rather self-evident - a repainted luxury vehicle is worth significantly less after it has been repainted (no matter the quality of the repainting) than a vehicle with original factory paint.  While all settlements require careful consideration and balance, there is no question that these valuable claims, which were included in the *Pinon* Plaintiffs' complaint (ECF No. 1, ¶41) and First Amended Complaint (ECF No. 7, ¶¶ 39, 42), would be released without any recovery if the proposed settlement were effectuated.  So whatever its procedural shortcomings, the substance of the *Pinon* Plaintiffs' settlement provides no relief whatsoever for the Class's primary economic loss.

The unusual circumstances giving rise to the purported settlement in this case were taken up by the New Jersey District Court on December 29, 2020 in a telephone conference during which the Honorable Joel Schneider directed the *Ponzio* Plaintiffs to provide Defendants with a proposed settlement term sheet that would cure the deficiencies of the settlement proposed here.  By Judge Schneider's order, that term sheet is to be served on January 5, 2021.  Judge Schneider also requested that counsel provide a copy of his text order to this Court and scheduled an additional telephone conference for January 12, 2021.  Declaration of Caroline F. Bartlett ("Bartlett Decl."), ¶8, Ex. A.  In addition, Judge Schneider asked *Ponzio* counsel to meet and confer with *Pinon* counsel in an effort to forge a unified solution to the issues caused by the *Pinon*

Plaintiffs' inadequate, secretly negotiated settlement.  To date, *Ponzio*'s counsel's offer to meet and confer has not been responded to.

In light of these facts and developments, the *Ponzio* Plaintiffs respectfully request that their motion to intervene be granted and that this Court hold consideration of the fairness of the proposed settlement in abeyance, pending efforts by *Ponzio*'s counsel to improve the proposed settlement so that it is not subject to meritorious objections.  To be sure this request is not for the purpose of delay, Ponzio's counsel is available to mediate within the next 30 days or on a more expeditious schedule ordered by this Court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2018, the *Ponzio* Plaintiffs filed their Class Action Complaint [ECF No. 1] ("*Ponzio* Complaint").  Two weeks later, on August 21, 2018, the *Pinon* Plaintiffs filed their Class Action Complaint [ECF No. 1], copying many of the allegations set forth in the *Ponzio* Complaint.  Bartlett Decl., ¶4.

On October 15, 2018, Mercedes-Benz USA, LLC ("MBUSA") moved to dismiss the *Ponzio* Complaint and transfer the *Ponzio* action to this Court.  ECF No. 22.  On October 24, 2018, the *Pinon* Plaintiffs filed their First Amended Class Action Complaint [ECF No. 7], lifting even more of the *Ponzio* Complaint.  Bartlett Decl., ¶4.

On January 15, 2019, Daimler AG moved to dismiss and transfer *Ponzio* to this Court.  ECF No. 38.  That same day, counsel for the *Pinon* Plaintiffs, in a purported

attempt to "coordinate" the two actions, contacted counsel for the *Ponzio* Plaintiffs and proposed that the *Ponzio* Plaintiffs dismiss their case and refile it in this Court so it could be consolidated with this action.  Bartlett Decl., ¶5.  Counsel for the *Pinon* Plaintiffs ended those discussions when counsel for the *Ponzio* Plaintiffs declined the offer.  *Id.*  Two weeks later, the *Pinon* Plaintiffs filed their Second Amended Class Action Complaint [ECF No. 15], which copied the majority of the *Ponzio* Complaint virtually verbatim.  Bartlett Decl., ¶4.

Three months later, on May 1, 2019, Defendants filed their motion to dismiss in this action.  ECF No. 18.  On May 20, 2019, Defendants' pending motions in *Ponzio* were set for oral argument [ECF No. 43], which took place on September 17, 2019 [ECF No. 46].  On November 4, 2019, while Defendants' motions in *Ponzio* were still pending, this Court entered its Order on Defendants' motion to dismiss in this case [ECF No. 25], and discovery commenced thereafter [ECF No. 32].

Following this Court's adjudication of Defendants' motions to dismiss and the commencement of discovery in that matter, counsel for Plaintiffs contacted counsel for Defendants to request that they be included in discovery-related activities so that discovery between the two matters could be coordinated.  Bartlett Decl., ¶6.  Counsel for Defendants refused counsel for Plaintiffs' request, stating that Defendants would not engage in any discovery-related activities while their motions to dismiss and transfer

were pending.  *Id*.

On March 11, 2020, the *Ponzio* Court entered its order denying, in part, Defendants' motions to dismiss.  ECF No. 51.  On March 13, 2020, the *Ponzio* Court entered an order setting an initial conference [ECF No. 52], and on March 19, 2020, the parties conducted their Rule 26 conference [ECF No. 53].

On March 23, 2020, upon a motion by the *Ponzio* Plaintiffs pursuant to Rule 23(g), the *Ponzio* Court appointed James E. Cecchi, Caroline F. Bartlett, Jason H. Alperstein, and Steven G. Calamusa as Interim Lead Class Counsel on behalf of Plaintiffs and the putative Classes, including those from New Jersey, New York, California, Kansas, Florida, and North Carolina.  ECF No. 57.

Two weeks later, on April 6, 2020, the *Pinon* Plaintiffs moved, unopposed by Defendants, for appointment in this action to represent Plaintiffs and putative classes in Florida, Alabama, Tennessee, Louisiana, Arkansas, and North Carolina.  ECF No. 48-1 at 17.  In doing so, counsel for the *Pinon* Plaintiffs represented to this Court that an "order [of appointment] must be entered to ensure cross-litigation coordination" [*id*. at 16] and that they would be "committed to . . . working together with counsel for the *Ponzio* Action" [*id*. at 22].  On April 28, 2020, the Court appointed counsel for the *Pinon* Plaintiffs' Interim Lead Counsel [ECF No. 49], and specifically charged counsel with the duty of coordinating this action with counsel for the *Ponzio* Plaintiffs. ("Interim Lead

Counsel . . . shall be charged with coordinating with" Carella, Byrne).

On May 20, 2020, the Court held its initial status conference in *Ponzio* and discovery commenced.  [ECF No. 67.]  From the beginning, discovery was punctuated with hotly contested disputes over appropriate search terms, the need for hit reports, the number and identification of custodians and ESI sources, and prohibiting redactions pursuant to German law of relevant (and critical) names, emails, and other professional identifiers from Defendants documents – all disputes upon which *Ponzio* Plaintiffs prevailed.  ECF Nos. 81, 95, 103.

On June 22, 2020, *Pinon* Plaintiffs filed the Third Amended Complaint which essentially copied the previous complaint.  [ECF No. 55.]  On August 7, 2020, *Pinon* Plaintiffs and Defendants moved to extend the discovery schedule.  [ECF No. 62.]  In doing so, the *Pinon* Plaintiffs acknowledged that their counsel was "required to coordinate with the interim lead counsel in the *Ponzio* action" and both the *Pinon* Plaintiffs and Defendants stated that "granting the requested extension w[ould] also help align the schedule in this case with the schedule of *Ponzio*, thereby enhancing coordination as the case progresses."  ECF No. 62 at 5.

In September 2020, Defendants agreed to explore early resolution with the *Pinon* Plaintiffs but gave no notice of this undertaking to *Ponzio* counsel.  To the contrary, they did the exact opposite – they collectively stalled the progress of the New Jersey case

while they mediated in secret here.  Indeed, the first mediation session took place on November 9, 2020, a day before a scheduled discovery hearing in *Ponzio*.  At the conclusion of the discovery hearing, the Magistrate Judge asked if there was anything else to discuss, and Defendants, who mediated the day before, remained silent.  *Ponzio* Discovery Hearing Tr. 49:19.

On December 20, 2020, the *Pinon* Plaintiffs and Defendants revealed the fruits of their secret activities and on December 21, 2020, they filed their Motion for Preliminary Approval in this Court [ECF No. 70] and a Motion to Stay in the *Ponzio* Court [ECF No. 119].

## II.   ARGUMENT

Rule 24(a)(2) provides for intervention as a matter of right where anyone, here the *Ponzio* Plaintiffs, timely "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  The Eleventh Circuit has laid out a four-part test for parties seeking intervention as a matter of right:

> (1)    [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

- 10 -

*Stone v. First Union Corp*., 371 F.3d 1305, 1308-09 (11th Cir. 2004).[4]  The *Ponzio* Plaintiffs have a right to intervene in this action to protect their rights and interests and those of the Class members they represent.  *In re Cmty. Bank of N. Va*., 418 F.3d 277, 314 (3d Cir. 2005) (when class members "seek intervention as a matter of right," the "interest" and "impairment" requirements of Rule 24 "are satisfied by the very nature of Rule 23 representative litigation.").

Courts construe Rule 24(a) liberally for the benefit of movants and "any doubt concerning the propriety of allowing intervention should be resolved in [their] favor." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist*., 983 F.2d 211, 216 (11th Cir. 1993); *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, No. 1:11-CV-2087-ODE, 2011 WL 13221046, at *2 (N.D. Ga. Nov. 1, 2011) ("Rule 24 is to be given a liberal construction in favor of applicants for intervention.").  If a movant "establishes all the prerequisites to intervention, the district court has no discretion to deny the motion." *United States v. Georgia*, 19 F.3d 1388, 1393 (11th Cir. 1994).

Rule 24(b)(1) also vests the Court with discretion to permit intervention.  "On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."

---

[4]  Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

The *Ponzio* Plaintiffs meet the four-part test for intervention as a matter of right, and therefore must be allowed to intervene under Rule 24(a). Alternatively, the Court should grant the *Ponzio* Plaintiffs discretionary permission to intervene and grant their request to continue the hearing on the *Pinon* Plaintiffs' Motion for Preliminary Approval so the proposed settlement can be improved and/or file an opposition to Motion for Preliminary Approval detailing the settlement's inadequacies.

### A. The Court Should Allow the *Ponzio* Plaintiffs' Intervention as of Right

#### 1. The Motion to Intervene Is Timely

The *Ponzio* Plaintiffs' application is plainly timely, thereby satisfying the first element of Rule 24(a). "Timeliness is to be determined from all the circumstances of the case, including such factors as the length of time during which the would-be intervenor knew or should have known of his interest in the case, the extent of prejudice the parties might have suffered as a result of any delay in filing the motion to intervene, and the existence of unusual circumstances." *Smith v. Cobb Cnty. Bd. of Elections & Registrations*, 314 F. Supp. 2d 1274, 1310 (N.D. Ga. 2002) (Carnes, J.).

Timeliness should be measured from the date when the *Ponzio* Plaintiffs learned that the proposed settlement was contrary to their interest.[5] *See Crawford v. Equifax*

---

[5] Importantly, "the time that the [*Ponzio* Plaintiffs] first became aware of the pendency of thi[s] case is not relevant to the issue of whether his application was timely."

*Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) ("Only when the class members suspect that the representative is not acting in their best interests is there a need to intervene. This means that delay must be measured from the time the would-be intervenors learned (or should have known) of the representative's shortcomings."). Here, the *Ponzio* Plaintiffs learned that the proposed settlement was contrary to their interest on December 21, 2020 – when the *Pinon* Plaintiffs moved for preliminary approval of the proposed settlement. Thus, mere days after they first learned of the proposed settlement and became aware of its objectionable terms, the *Ponzio* Plaintiffs seek to intervene so the motion is timely.

Intervention now also avoids prejudice. The Eleventh Circuit has made clear that Courts "must focus on additional prejudice arising from the applicant's delay in seeking intervention." *Meek v. Metro. Dade Cnty., Fla*., 985 F.2d 1471, 1477 (11th Cir. 1993), abrogated on other grounds by *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). Because preliminary approval has not been granted, and notice has not been sent to the Class members, this is the best time to allow the *Ponzio* Plaintiffs to intervene

---

*Stallworth v. Monsanto Co*., 558 F.2d 257, 264 (5th Cir. 1977). Rather, it is how long the *Ponzio* Plaintiffs knew of the settlement before moving to intervene. *See United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (motion to intervene timely where filed as soon as settlement terms "contrary to their interests" that were agreed to through confidential mediation became public).

- 13 -

to protect their interests and to do so without prejudice to the parties to this action through additional investment of time and money in the notice process and likely denial of final approval.  *See Zone 4, Inc. v. Brown*, No. 1:19-CV-00676-LMM, 2019 WL 7833901, at *3 (N.D. Ga. Aug. 6, 2019) (Rule 24(a) "is not concerned with whether allowing intervention will delay the progress of the case[,]" as "delay in determining the rights of existing parties is ***not*** a relevant consideration when analyzing prejudice to existing parties.").

Here, the *Ponzio* Plaintiffs' promptly moved to intervene mere days after learning that the proposed settlement was contrary to their interest.  Accordingly, there is no prejudice, which is "the only significant consideration when the proposed intervenor seeks intervention of right."  *Id.*

### 2.    The *Ponzio* Plaintiffs Have a Substantial Legal Interest in the Subject Matter of This Case

The *Ponzio* Plaintiffs also have a substantial interest in the claims potentially being released through this settlement and easily satisfy the second prong of Rule 24(a) because *Ponzio* and *Pinon* "are competing class actions," and neither "have been certified."  *Dickstein v. Able Telcom Holding Corp.*, 192 F.R.D. 331, 334 (N.D. Ga. 2000); *see also Bedwell v. Braztech Int'l, L.C.*, No. 17-Civ-22335-TORRES, 2018 WL 830073 (S.D. Fla. Feb. 9, 2018) (same).  "This is sufficient to show an interest relating to the property or transaction which is the subject of the action."  *Dickstein*, 192 F.R.D.

at 334.

Courts have found that, when class members "seek intervention as a matter of right," the "interest" requirement is "satisfied by the very nature of Rule 23 representative litigation." *In re Cmty. Bank of N. Va.*, 418 F.3d at 314, *quoted with approval by Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017). Here, the *Ponzio* Plaintiffs "have an interest in this case because, as class members, they will be bound by the terms of the settlement if it is approved and judgment is entered." *Tech. Training*, 874 F.3d at 696.[6] They also have an interest in this case because the *Pinon* Plaintiffs have requested that this Court preliminarily enjoin *Ponzio* [ECF No. 70 at 53-57], and Defendants have similarly moved to stay *Ponzio* pending this Court's approval of the proposed settlement [ECF No. 119]. Judge Schneider granted Defendants' application on December 29 in connection with his order directing Plaintiffs to provide Defendants with a settlement proposal that would ameliorate the deficiencies of the proposed settlement.

The *Ponzio* Plaintiffs' interest is all the more substantial because they are

---

[6] Defendants made this clear when they recently moved to temporarily stay the *Ponzio* action and emphasized that the proposed settlement in *Pinon* "will resolve all claims related to the allegedly defective 590 Mars Red Paint, including the claims asserted in [*Ponzio*]," and that the proposed settlement will also "be binding on the [*Ponzio*] Plaintiffs and putative class members[.]" (*Ponzio* ECF 119-1, at 1).

represented by counsel who has been appointed Interim Lead Counsel in the first-filed *Ponzio* action for classes and plaintiffs the *Pinon* plaintiffs do not yet represent and were not appointed to represent by this Court in its original April 27 Order.  Accordingly, the second prong is satisfied.

### 3.     The Proposed Settlement Will Impair or Impede the *Ponzio* Plaintiffs' Ability to Protect Their Interests

The "third prong[] of the Rule 24(a)(2) inquiry" is "satisfied by the very nature of Rule 23 representative litigation."  *Tech. Training*, 874 F.3d at 697.  *Ponzio* Plaintiffs interests will be impaired if the *Pinon* settlement is approved because it could "definitively determine the class members' substantive rights."  *Id*. at 696; *see also Bedwell*, 2018 WL 830073, at * 4 (finding "the third factor under Rule 24(a)(2)" satisfied "because a resolution in *Bedwell* could bind a proposed class in Burrow and negatively impact other proposed class members."); *Burrow v. Forjas Taurus S.A.*, No. 16-Civ-21606-TORRES, 2018 WL 809439, at *4 (S.D. Fla. Feb. 9, 2018) (same).  Indeed, the Eleventh Circuit recognizes the risk the *Ponzio* Plaintiffs face of being "bound by an unsatisfactory class action settlement satisfies Rule 24(a)(2)'s third prong."  *Tech. Training*, 874 F.3d at 696.[7]

---

[7]   In so holding, the Eleventh Circuit made clear that Rule 23's procedural protections – such as the right to object at a "fairness hearing," and the ability to award attorney's fees out of the settlement fund to intervenor's counsel – have no bearing on Rule 24(a)(2)'s third-prong analysis because, "under that logic[,] class members could never

Further highlighting the importance of allowing intervention now, the Supreme Court recognizes that "[m]embers of a class have a right to intervene if their interests are not adequately represented by existing parties." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594, (2013) (quoting 5 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS §16:7, at 154 (4th ed. 2002)).  The "advisory committee notes to the 1966 amendment to Rule 24" also explain "that a class member 'should, as a general rule, be entitled to intervene in the action,' unless the current parties adequately represent him."

Here, the potential impairment of the *Ponzio* Plaintiffs' rights are clear, and consequently the third prong is satisfied.

### 4. The *Ponzio* Plaintiffs' Interests Are Not Adequately Represented by the *Pinon* Plaintiffs

The "burden of showing" inadequacy of representation is "minimal."  *Tech. Training*, 874 F.3d at 697.  As the Eleventh Circuit has explained, "a representative party's greater willingness to compromise can impede [it] from adequately representing the interests of a nonparty."  *Id*.  In light of the procedural background, disregard for this Court's April 27 Order requiring coordination, signs of a reverse auction, and absence

---

intervene in a class action because they would always have recourse to Rule 23 procedural protections and would therefore always fail to satisfy the third prong."  *Id*. at 696.

of input from *Ponzio's* counsel in the mediation or the typically unopposed settlement approval motion process, the *Pinon* Plaintiffs have not, and will not, adequately represent the *Ponzio* Plaintiffs' interests (or the interests of the putative Class members they hope to represent).

First, the timing and secrecy of the proposed settlement in *Pinon* raises a red flag as to whether it was the product of a collusive "reverse auction."  In a reverse auction, "a defendant picks out a plaintiff with weaker claims and weaker counsel in an effort to negotiate a more favorable settlement." *Id.* at 695.  In other words, "[a] reverse auction occurs when a defendant, seeing competing class cases, cherry-picks the attorneys willing to accept the lowest class recovery." *Borup v. CJS Sols. Grp.*, *LLC*, No. 18-1647 (PAM/DTS), 2019 WL 2137369 (D. Minn. May 16, 2019).  This case represents the prototypical reverse auction scenario.

The hallmarks of a reverse auction include:

> the presence of overlapping class actions involving similar claims against the same defendant; settlement discussions initiated by the defendant; settlement bargaining limited to one of the competing groups of plaintiffs' attorneys; settlement with the group of attorneys who present a less substantial threat of carrying the case forward to trial; [and] lack of an extended process of settlement bargaining.

Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J Legal Anal. 167, 191 (2009).

Other *indicia* of a "reverse auction" include: when a proposed settlement provides

for the release of similar claims in numerous pending class actions, all to defendants' benefit; when the settlement value for class members is low; when the defendants take steps to "cabin off" the parallel litigations from each other; and sweeping separate cases into the settlement without involving plaintiffs' counsel in those cases. *See, e.g., Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 660-61 (D. Colo. 2018); *Borup*, 2019 WL 2137369, at*1.

Several reverse auction characteristics are present in this case. *Ponzio* and *Pinon* are overlapping class actions, counsel for the *Ponzio* Plaintiffs had no involvement with the negotiations leading to the proposed settlement in *Pinon* – which could release the *Ponzio* Plaintiffs' claims – and Defendants "cabined off" the parallel actions by precluding the undersigned counsel from providing any input into the discovery protocols and agreements reached in *Pinon*, thereby ensuring *Pinon* would outpace *Ponzio*.

While the *Pinon* parties will undoubtedly argue there is no evidence of a reverse auction having taken place, they cannot dispute the fact that their settlement negotiations were conducted in secret and intentionally excluded the *Ponzio* Plaintiffs and their counsel. Nor can the *Pinon* Plaintiffs and their counsel dispute that their secret negotiations with Defendants were contrary to representations they made to this Court when seeking appointment under Rule 23(g) [ECF No. 48-1 at 4, 16, 22], not to mention

the duties imposed upon their counsel by the Court when they were appointed in such a capacity [ECF No. 49 at 5].[8]  In fact, on August 7, 2020, when the *Pinon* Plaintiffs moved this Court to extend the deadlines in this case, the *Pinon* Plaintiffs acknowledged that their counsel was "required to coordinate with the interim lead counsel in the *Ponzio* action" and both the *Pinon* Plaintiffs and Defendants stated that "granting the requested extension w[ould] also help align the schedule in this case with the schedule of *Ponzio*, thereby enhancing coordination as the case progresses."  ECF No. 62 at 5.  Yet, the first of the *Pinon* Plaintiffs' secret settlement negotiations took place approximately one month later without the knowledge or involvement of the *Ponzio* Plaintiffs or their counsel.

Although the *Pinon* Plaintiffs suggest that the proposed settlement was a product of this action being "intensely litigated from its inception" [ECF 70 at 8], the settlement, without question, resulted from the *Pinon* Plaintiffs presenting a far less substantial threat of carrying the case forward to trial.  Indeed, in their race to outpace the *Ponzio* Plaintiffs, the *Pinon* Plaintiffs appear to have simply agreed to improper discovery limitations and limited ESI productions Defendants sought to impose on the *Ponzio* Plaintiffs when discovery in that action commenced.

---

[8]   Defendants made similar representations of coordination to both the *Ponzio* Plaintiffs and the *Ponzio* Court in *Ponzio*.  Bartlett Decl., ¶6.

The *Ponzio* Plaintiffs, on the other hand, objected to Defendants' prejudicial proposals for discovery, and through their efforts obtained orders from the *Ponzio* Court: (1) requiring Defendants to use the terms "Mars Red" and "Fire Opal" as stand-alone terms when searching for responsive ESI and produce hit reports for the search terms they had proposed; (2) prohibiting Defendants from redacting information from relevant documents they unilaterally deemed to be irrelevant; (3) prohibiting Defendants from redacting from their document production the current or former employee names, positions, job titles, and other professional contact information; (4) rejecting Defendants' request to limit discovery to the states where the *Ponzio* Plaintiffs reside; and (5) finding Defendants' custodial designations to be inadequate.  ECF Nos. 81, 95, 103.  Following the *Ponzio* Court's observation, Defendants increased the number of custodians from the five agreed to by the *Pinon* Plaintiffs, to 30 – 15 custodians for each Defendant.  The discovery disputes brought by the *Ponzio* Plaintiffs' were clearly not a "waste of time and effort[,]" as the *Pinon* Plaintiffs dubiously suggest in their Motion for Preliminary Approval.  ECF No. 70 at 11 n.5.  This claim, alone, should raise the specter of impropriety as to the circumstances under which the proposed settlement was negotiated.  Indeed, *Ponzio*'s counsel has litigated for years automotive class actions against the world's largest foreign automotive manufacturers including Mercedes and Volkswagen.  To suggest that efforts to overcome these manufacturers' standard tactics

- 21 -

relating to limiting custodians and interposing meritless objections based upon German Privacy law, is not only silly, but evidences a clear lack of familiarity with these critical issues.

Second, and perhaps most significant, the proposed settlement provides no recovery for one of the largest components of damage – the loss in value of a repainted Mercedes Benz vehicle.  Even with the best paint job, a repainting automatically devalues Class members' luxury vehicles and a fair and adequate settlement should obviously provide compensation for this loss.  Plaintiffs in the first-filed *Ponzio* action recognized this significant loss in their Complaint, which included ten detailed paragraphs as to the inadequacy of repainting Class members' vehicles as a remedy for the alleged paint defect for this very reason.  *See* ECF No. 1, ¶¶166-175.  The *Pinon* Plaintiffs similarly recognized that repainting "would depreciate the value of the[ir] vehicle[s] by a minimum of $2,000" in the Complaint (ECF No. 1, ¶41) and First Amended Complaint (ECF No. 7, ¶¶ 39, 42).  *See also id*., ¶456 ("While Mercedes has agreed to repaint Klein's car, the remedy is insufficient . . . [because] repainting a car substantially decreases its value[.]").  In fact, the plaintiffs in *Pinon* felt so strongly about the resulting diminution in value caused by repainting their vehicles that that they virtually copied and pasted all ten of the aforementioned paragraphs from the *Ponzio* Complaint in their Third Amended Class Action Complaint.  *See Pinon*, ECF No. 55,

¶¶202-211.

Accordingly, the *Pinon* Plaintiffs agree with the *Ponzio* Plaintiffs that repainting does not compensate Class members for the economic damage resulting from Defendants' alleged misconduct:

> As evidenced by the repair instructions in the TSB, as well as the experiences of Plaintiffs and the estimates they have received after their Class Vehicles have been repainted, repainting the Class Vehicles, even if done properly, does not cure the Paint Defect and does not remedy the diminution of value that occurs as a result of the repainting.

> *Pinon* Complaint, ¶202 (copying *Ponzio* Complaint, ¶166).  *See also Pinon*

Complaint, ¶¶203-204 (copying *Ponzio* Complaint, ¶¶167-168).   And the *Pinon*

Plaintiffs agree with the *Ponzio* Plaintiffs exactly why that is the case:

> Even if the Class Vehicles were properly repainted, their values would still be diminished, as repainted newer vehicles are worth less than vehicles with original paint.  Indeed, there is a stigma associated with a repainted vehicle, especially from a luxury brand like Mercedes, and the fact that a vehicle has been repainted is often used by a potential buyer as a bargaining chip to lower the price.

*Pinon* Complaint, ¶205 (copying *Ponzio* Complaint, ¶169).  *See also Pinon* Complaint,

¶¶205-211) (copying *Ponzio* Complaint, ¶¶169-175).

In other words, the *Pinon* Plaintiffs have already confirmed the inadequacy of their proposed settlement, demonstrating why it is essential that any settlement that purports to release these claims must include compensation to Class members for this loss.  Additionally, the proposed settlement provides no relief to any Class member who

sold their vehicle with the manifestation of the paint defect, without having it repainted, and consequently were forced to discount the sale price. Accordingly, the *Ponzio* Plaintiffs have met their "minimal" burden to show that absent intervention, neither their interests, nor those of the Class members they represent, will be adequately protected.

### B.     The Court Should Allow Permissive Intervention in the Alternative

The Court may permit the *Ponzio* Plaintiffs to intervene if they have "a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Parties seeking to intervene in a class action pursuant to Rule 24(b) must show both of the following: "(1) [their] application to intervene is timely; and (2) [their] claim or defense and the main action have a question of law or fact in common." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).

For the reasons articulated earlier, the *Ponzio* Plaintiffs' application to intervene was timely.  *See MacQueen v. Lambert*, 348 F. Supp. 1334, 1335 (M.D. Fla. 1972) ("The same 'timeliness' requirement [in Rule 24(a)] applies to permissive intervention."). Likewise, as demonstrated above, no undue delay or prejudice will result from the limited intervention requested by the *Ponzio* Plaintiffs.

The second prong, like Rule 24(a)(2), simply requires "the intervenor's interest to be based on the action pending before the court."  *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006).  "The 'claim or defense' portion of the rule

has been construed liberally, and indeed the Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'" *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975).

Here, there is no question that the *Ponzio* Plaintiffs meet the permissive intervention standard.  The first-filed *Ponzio* action and later-filed *Pinon* action arise out of the same course of alleged conduct against the same Defendants involving the same Mercedes-Benz vehicles with the same inherent paint defect.  Both cases also allege similar claims under the consumer fraud statutes of Florida and North Carolina, among others.

## III.   CONCLUSION

For the foregoing reasons, the *Ponzio* Plaintiffs respectfully request that the Court enter an Order granting their Motion to Intervene and continuing the hearing on the Motion for Preliminary Approval to allow for the *Ponzio* Plaintiffs and their counsel to improve the inadequate settlement through their involvement in continued settlement negotiations, or in the alternative, permitting the *Ponzio* Plaintiffs to file an opposition to the Motion for Preliminary Approval detailing the settlement's inadequacies.

DATED:  December 31, 2020          CAPLAN COBB LLP

                                            *s/ Michael A. Caplan*
                                    ────────────────────────────
                                      MICHAEL A. CAPLAN (Bar No. 601039)

                                   T. BRANDON WADDELL (Bar No. 252639)
                                   75 Fourteenth Street, NE, Suite 2750
                                   Atlanta, GA  30309
                                   Telephone:  404/596-5600
                                   E-mail: mcaplan@caplancobb.com
                                            bwaddell@caplancobb.com

                                   *Local Counsel*

                                   CARELLA, BYRNE, CECCHI, OLSTEIN,
                                         BRODY & AGNELLO, P.C.
                                   JAMES E. CECCHI
                                   CAROLINE F. BARTLETT
                                   5 Becker Farm Road
                                   Roseland, NJ  07068
                                   Telephone:  973/994-1700
                                   973/994-1744 (fax)
                                   E-mail:  jcecchi@carellabyrne.com
                                            cbartlett@carellabyrne.com

                                   ROBBINS GELLER RUDMAN
                                     & DOWD LLP
                                   MARK J. DEARMAN
                                   120 East Palmetto Park Road, Suite 500
                                   Boca Raton, FL  33432
                                   Telephone:  561/750-3000
                                   561/750-3364 (fax)
                                   E-mail:  mdearman@rgrdlaw.com

                                   GORDON & PARTNERS, P.A.
                                   STEVEN G. CALAMUSA
                                   ROBERT E. GORDON
                                   DANIEL G. WILLIAMS
                                   4114 Northlake Blvd., Suite 200

- 26 -

Palm Beach Gardens, FL  33410
Telephone:  561/799-5070
561/799-4050 (fax)
E-mail:  scalamusa@fortheinjured.com
      rgordon@fortheinjured.com
      dwilliams@fortheinjured.com

*Interim Co-Lead Class Counsel for Plaintiffs
and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 31st day of December, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

*s/ Michael A. Caplan*
MICHAEL A. CAPLAN