## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**EMILY PINON, GARY C. KLEIN,
KIM BROWN, JOSHUA
FRANKUM, DINEZ WEBSTER,
and TODD BRYAN, on behalf of
themselves and all others similarly
situated,**

     **Plaintiffs,**

**v.**

**DAIMLER AG and
MERCEDES BENZ USA, LLC,**

     **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:18-CV-3984-MHC**

## <u>ORDER</u>

This litigation arises out of a class action brought by Plaintiffs on August 21, 2018, alleging that Daimler AG ("Daimler") and Mercedes Benz USA, LLC ("Mercedes") (collectively, "Defendants") sold vehicles originally painted in 590 Mars Red paint, which suffered a latent defect causing the exterior surface of the vehicles (the "Subject Vehicles") to microblister, peel, and bubble.[1] Class Action

---

[1] 590 Mars Red paint was offered as an exterior color option for the following types of Mercedes-Benz vehicle types in the United States: C Class (model years 2004-2015), CLS Class (model years 2006-2007, 2009, 2014), CLK Class (model

Compl. ("Pinon Compl.") [Doc. 1].[2]  Plaintiffs allege that the sale of the Subject

Vehicles violated, *inter alia*, federal and state statutes and implied and express

warranties.  Plaintiffs and Defendants (collectively, the "Settling Parties") have

negotiated a settlement to resolve all claims.  The terms of the settlement are set

out in the Class Action Settlement Agreement and Release (the "Settlement

Agreement") [Doc. 70-1] executed by the Settling Parties on December 20, 2020.

Before the Court for purposes of this Order[3] is the Motion to Intervene and

Continue Hearing Date for Motion for Preliminary Approval of Settlement ("Mot.

to Intervene") [Doc. 72] filed by a group of plaintiffs (hereinafter referred to as

"Movants") who brought a parallel class action related to the same 590 Mars Red

paint defect in the United States District Court for the District of New Jersey,

---

years 2004-2009), S Class (model years 2008, 2015, 2017), SL Class (model
years 2004-2009, 2011-2017), GLK Class (model years 2010-2015), CL Class
(model years 2005-2006, 2013-2014), SLS Class (model years 2014-2015), E
Class (model years 2005-2006, 2010-2017),GT (model years 2016-2018), G Class
(model years 2005, 2011-2017), SLC Class (modelyear 2017), SLK Class (model
years 2005-2016), and Maybach 57 (model year 2008).

[2] The Pinon Complaint was amended on October 24, 2018 [Doc. 7] and amended
again on January 31, 2019 [Doc. 16].  The Second Amended Complaint is the
operative complaint in this case.

[3] The Court will rule on the Settling Parties' Unopposed Motion for Preliminary
Approval of Proposed Class Action Settlement Agreement and Preliminary
Certification of Nationwide Settlement Class ("Mot. for Prelim. Approval") [Doc.
70] in a separate order.

Ponzio v. Mercedes-Benz USA, LLC, 1:18-cv-12544-JHR-JS (D.N.J. filed Aug. 8, 2018) ("Ponzio Compl.") [ECF 1].

## I.     BACKGROUND

After investigating potential claims related to the 590 Mars Red paint defect, Plaintiffs' Counsel (W. Lewis Garrison, Jr., James F. McDonough, III, and Taylor C. Bartlett of Heninger Garrison Davis, LLC, see Apr. 28, 2020, Order [Doc. 49] appointing interim lead class counsel), filed the Pinon Complaint on August 21, 2018.  See Pinon Compl.; see also Decl. of James F. McDonough ("McDonough Decl.") [Doc. 76-3] ¶¶ 8-11.  Less than two weeks prior to the filing of the Pinon Complaint, Movants filed the Ponzio Complaint.  In the Pinon action, the parties engaged in motions practice and discovery, and on April 6, 2020, Plaintiffs moved to appoint Plaintiffs' Counsel as Interim Lead Class Counsel for the Plaintiffs and putative classes they purport to represent.  Unopposed Motion for Appointment of Interim Class Counsel [Doc. 48].  This Court granted that motion on April 28, 2020 [Doc. 49].  It is undisputed that the Pinon action and the Ponzio action, although brought by different individual members of the Class, are parallel class actions seeking to address the same alleged defect with 590 Mars Red paint.  See Pinon Compl.; Ponzio Compl.

In April 2020, both Movants and Plaintiffs tentatively agreed to coordinate

litigation between the two class actions but subsequently stopped communicating about such coordination.  See McDonough Decl. ¶ 42.  The last communication on the topic in the record is an email from Movants to Plaintiffs in May of 2020.  See E-mail from James Cecchi to James F. McDonough, III (May 8, 2020) [Doc. 76-17 at 2].  Movants maintain that, despite Plaintiffs' failure to answer Movants' proposal that Plaintiffs dismiss the Pinon action entirely, they had an "inchoate agreement to coordinate and press the litigation on two fronts" which necessitated involving Movants in settlement discussions.  Decl. of James E. Cecchi ("Cecchi Decl.") [Doc. 81-3] ¶ 9.  But Movants also admit that "no global agreement was struck."  Mot. to Intervene at 2-3.

As litigation in the Pinon case continued, the Settling Parties broached the topic of settlement, and eventually engaged in mediation.  Mot. for Prelim. Approval at 5.  The mediation was conducted by former U.S. District Judge James F. Holderman over the course of two days.  Id.  On November 9, 2020, the Settling Parties reached the proposed nationwide class action settlement and, on November 12, 2020, reached a proposed agreement as to attorneys' fees, litigation costs, class representative fees, and administrative costs.  Id. at 5-6.  The attorneys' fees and costs were negotiated separately and will not reduce benefits to the class.  Id.

4

## II.    LEGAL STANDARD[4]

Rule 24 of the Federal Rules of Civil Procedure governs intervention, and

provides for two methods upon which intervention may be granted: invention as of

right and permissive intervention.  FED. R. CIV. P. 24.  A party may intervene as a

matter of right if that party "claims an interest relating to the property or

transaction that is the subject of the action, and is so situated that disposing of the

action may as a practical matter impair or impede the movant's ability to protect its

interest, unless existing parties adequately represent that interest."  FED. R. CIV. P.

24(a)(2).  The Eleventh Circuit has articulated a four-part test for intervention by

right under Rule 24, requiring a movant to (1) timely file an application to

---

[4] Also before the Court is Plaintiffs' Motion for Leave to File a Sur-Reply
("Plaintiffs' Motion for Sur-Reply") [Doc. 82], which seeks to respond to
arguments made for the first time in Movants' Reply Memorandum in Support of
Motion to Intervene ("Movants' Reply") [Doc. 81].  Federal courts, as a general
rule, do not consider arguments raised for the first time in a reply brief.  Herring v.
Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005).  Accordingly, to the
extent that Movants' Reply raises new arguments, the Court will not consider
them.  See Rindfleisch v. Gentiva Health Servs., Inc., 22 F. Supp. 3d 1295, 1301
(N.D. Ga. 2014).  Thus, Plaintiffs' Motion for Sur-Reply is **DENIED AS MOOT**.

In addition, the Court has granted motions for leave to file excess pages for filings
by both Movants and the Settling Parties, and the issues before the Court have been
thoroughly briefed.  See Dec. 21, 2020, Order [Doc. 71]; Jan. 21, 2021, Order
[Doc. 79].  The Court does not find that oral argument would further aid the Court
in resolving the disputes.  Therefore, Movants' Motion for Oral Argument [Doc.
85] is **DENIED**.

intervene; (2) have an interest relating to the property or transaction which is the subject of the pending litigation; (3) be so situated that disposition of the action, as a practical matter, may impede or impair the movant's ability to protect that interest; and (4) demonstrate that movant's interest is not represented adequately by the existing parties to the suit.  Worlds v. Dep't of Health & Rehabilitative Servs., 929 F.2d 591, 593 (11th Cir. 1991) (citation omitted); see also Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing Athens Lumber Co., Inc. v. Fed. Election Comm'n, 690 F.2d 1364, 1366 (11th Cir. 1982) (same)).

As to permissive intervention, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b)(1).  Additionally, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  FED. R. CIV. P. 24(b)(3). Permissive intervention "lies within the discretion of the district court."  Athens Lumber Co. v. Fed. Election Comm'n, 690 F.2d 1364, 1367 (11th Cir. 1982); see also Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989) ("The district court has the discretion to deny intervention even if both of those requirements [for permissive intervention] are met[.]").

## III.   DISCUSSION

### A.   Intervention as a Matter of Right

A district court must grant a motion to intervene under Rule 24(a) only if the moving party can show that it meets all four criteria. Gumm v. Jacobs, 817 F. App'x 847, 850 (11th Cir. 2020) (citing Worlds, 929 F.2d at 595). The Court will address whether Movants have satisfied each element individually.

### 1.   Whether the Motion to Intervene is Timely

In the Eleventh Circuit, there are clearly established criteria governing consideration of the timeliness of a motion to intervene:

> Courts consider four factors in assessing timeliness: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness. Mere knowledge that an action is pending, without appreciation of the potential adverse effect an adjudication of that action may have on one's interests, does not preclude intervention.

Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC, 918 F.3d 1161, 1171 (11th Cir. 2019) (citation omitted). "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene."

7

McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970)[5] (emphasis

added and citations omitted).  Thus, the first determination this Court must make in

assessing Movants' timeliness is at what point Movants knew or should have

known of their interest in the case.

Movants assert that their motion to intervene is timely and that timeliness

"should be measured from the date when the Ponzio Plaintiffs learned that the

proposed settlement was contrary to their interest," which was on November 9,

2020.  Mot. to Intervene at 12-13 (citing Crawford v. Equifax Payment Servs., Inc.,

201 F.3d 877, 880 (7th Cir. 2000) ("[D]elay must be measured from the time the

would-be intervenors learned (or should have known) of the representative's

shortcomings.")).  However, Plaintiffs contend that, according to Movants' own

version of events, Movants were aware of alleged shortcomings much earlier.  Pls.'

Opp'n to Mot. to Intervene [Doc. 76] ("Pls.' Opp'n") at 15-18.  This Court agrees.

In their motion, Movants assert that Plaintiffs were deficient in their litigation of

the case months before settlement negotiations began.  See Mot. to Intervene at 20-

22 (arguing that "Plaintiffs appear to have simply agreed to improper discovery

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh
Circuit adopted as binding precedent all decisions of the former Fifth Circuit
issued before October 1, 1981.

limitations and limited ESI productions," which occurred in June 2020, and that

Plaintiffs' argument in support of this conduct "evidences a clear lack of

familiarity with these critical issues.").[6] Moreover, it appears that, as early as April

2020, Movants approached Plaintiffs about intervening in this action. McDonough

Decl. ¶ 40. Movants opted to coordinate with Plaintiffs instead of intervening, but

the coordination of discovery was minimal, and the communications about such

coordination broke down in May of 2020. See id. ¶¶ 40-44. Movants provide no

explanation for why they declined to move to intervene earlier when

communication regarding coordination between the two suits came to a halt.

Movants question the competency of Plaintiffs' class counsel based on

known conduct in May and June of 2020, but in the same motion Movants argue

that they had no knowledge of improper conduct until the Settlement Agreement

was announced several months later. Such contradictory assertions belie Movants'

position. The Court finds that Movants knew or should have known of their

interest in the case from at least June 2020, when they allege deficiencies in

---

[6] In fact, Movants acknowledged their disagreement with stipulations made by
Plaintiffs' Counsel while litigating their own discovery disputes. See Br. in Supp.
of Pls.' Mot. to Compel, Ponzio v. Mercedes-Benz USA, LLC, 1:18-cv-12544-
JHR-JS (D.N.J. filed June 15, 2020) [ECF 71-1] at 10-11 n.3.

Plaintiffs' litigation strategy.  Accordingly, the Court will assess any delay in timeliness from this date.[7]

The Court finds that the factors for assessing timeliness weigh against granting the Motion to Intervene.  First, as discussed above, Movants delayed filing a motion to intervene for at least six months prior to its actual filing. Second, and most importantly, is the prejudice to the Settling Parties which would be caused by the delay.  See McDonald, 430 F.2d at 1073.  While intervention in May or June of 2020 before settlement negotiations began in earnest would have had minimal impact on the litigation, allowing Movants to intervene now would devalue all of the time and effort put forth by the Settling Parties in reaching the proposed settlement.  In fact, it is precisely the unraveling of the proposed settlement that Movants seek.  See Mot. to Intervene at 17-24.  However, as argued by Defendants, "[Movants] do not persuasively explain how they could improve on [the Settlement Agreement] for putative class members, and their request for recovery of diminished vehicle value is both a non-starter for Defendants and

_____

[7] The Court notes that it is not required to determine a precise point in time at which Movants should have moved to intervene.  See Chiles, 865 F.2d at 1213 (quoting McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1074 (5th Cir. 1970)) ("We must also keep in mind that '[t]imeliness is not a word of exactitude or of precisely measurable dimensions.  The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice.'").

unsupported by case law." Defs.' Br. in Opp'n to Mot. To Intervene [Doc. 77]

("Defs.' Opp'n") at 8. At best, granting the Motion to Intervene would restart

settlement negotiations and delay resolution of the case. At worst, it could drag the

litigation out for years of discovery, motions practice, and trial, and Plaintiffs'

recovery, if any, would be delayed while Defendants' expenses would continue to

rise. Thus, the Settling Parties would be significantly prejudiced by granting the

motion to intervene now.

Any prejudice to Movants, on the other hand, is minimal. Even if Movants

are not permitted to intervene, they maintain their rights to opt-out or object to the

Settlement Agreement pursuant to the protections of Rule 23. See FED. R. CIV. P.

23(e). And if Movants decline to exercise those rights or their objections are

overruled, they would still be entitled to the benefits of the Settlement Agreement

just like any other class member. Finally, there are no unusual circumstances

present which bear on this Court's assessment of timeliness.

Considering the four factors of timeliness as described above, the Court

finds that the Motion to Intervene was not timely. "When a party fails to establish

one of the prerequisites for intervention as of right, it is unnecessary to analyze any

of the remaining prerequisites." Gumm, 817 F. App'x at 850 (citing Worlds, 929

F.2d at 595)). Nevertheless, assuming *arguendo* that the Motion to Intervene is

timely, the Court will address the remaining prerequisites for granting a motion to intervene as of right.

## 2.   Whether Movants Have an Interest Relating to the Subject of the Action

A party engaged in a competing class action has an interest relating to the subject of the action.  Dickstein v. Able Telcom Holding Corp., 192 F.R.D. 331, 334 (N.D. Ga. 2000).  Here, the Ponzio case and the Pinon case have in common: (1) the same putative class, (2) the same products, (3) the same defendants, and (4) the same alleged defects; thus the two actions appear to be "competing class actions, neither of which ha[s] been certified."  Burrow v. Forjas Taurus S.A., No. 16-CIV-21606, 2018 WL 809439, at *4 (S.D. Fla. Feb. 9, 2018) (quotation omitted); see also Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship, 874 F.3d 692, 696 (11th Cir. 2017) (citation omitted) (holding that representatives of a parallel class action seeking to intervene "have an interest in this case because, as class members, they will be bound by the terms of the settlement if it is approved and judgment is entered.").  In addition, neither Plaintiffs nor Defendants argue that Movants have not satisfied the second prong of intervention as of right.  See generally Pls.' Opp'n; Defs.' Opp'n; see also Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is

unopposed"). Accordingly, the Court finds that Movants have shown that they have an interest relating to the subject of the action.

### 3.   Whether Movants Are So Situated that Disposition of the Action May Impair Their Ability to Protect Their Interest

As demonstrated by the Settlement Agreement itself, disposition of this action would likely impair Movants' ability to protect their interest. See Settlement Agreement § 6. The Court notes that Rule 23 grants Movants the right to object to the Settlement Agreement if this Court preliminarily approves it. FED. R. CIV. P. 23(e). However, while this right may mitigate potential prejudice to Movants from a denial of their motion to intervene, the Eleventh Circuit Court of Appeals has held that the right to object alone is not dispositive as to the third prong of intervention as of right. Tech. Training, 874 F.3d at 696–97; see also In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation. Therefore, when absent class members seek intervention as a matter of right, the gravamen of a court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation."). In addition, neither Plaintiffs nor Defendants contest this factor. Thus, the Court finds that Movants have shown that they are so situated that disposition of the action may impair their ability to protect their interest.

4.     **Whether Movants' Interest is Adequately Represented by the Existing Parties to the Suit**

On consideration of a motion to intervene, "[w]e presume adequate representation when an existing party seeks the same objectives as the would-be interveners." Clark v. Putnam Cnty., 168 F.3d 458, 461 (11th Cir. 1999) (citations omitted).  However, "the presumption is weak" and only requires that the proposed intervenors produce "some evidence to the contrary." Id.; see also Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 910 (11th Cir. 2007) (internal punctuation and citation omitted) ("[w]hile this presumption is weak, it nonetheless imposes upon the applicant for intervention the burden of coming forward with some evidence to the contrary.").  If the proposed intervenors can provide any such evidence, "the court must examine the adequacy of the representation . . . ." Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 215 (11th Cir. 1993). Representation is adequate if: (1) there is no collusion between the representative and an opposing party, (2) the representative has no interest adverse to the proposed intervenor, and (3) the representative does not fail to fulfill his duty. Falls Chase, 983 F.2d at 215.  "[C]ourts routinely deny intervention on an adequacy-of-representation ground when there is a convergence of interest." Boyd v. Koch Foods of Ala., LLC, No. 2:11CV748-MHT, 2012 WL 72708, at *2 (M.D. Ala. Jan. 10, 2012) (citing United States v. City of Miami, 1174, 1178-79 (11th

14

Cir. 2002); <u>Athens Lumber Co.</u>, 690 F.2d at 1367)). "This court will presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." <u>Falls Chase</u>, 983 F.2d at 215; <u>see also</u> <u>Chiles</u>, 865 F.2d at 1215 (holding that a proposed intervenor with an interest identical to named parties is presumed to have adequate representation, and accordingly denying the motion to intervene); <u>Int'l Tank Terminals, Ltd. v. M/V Acadia Forest</u>, 579 F.2d 964, 967 (5th Cir. 1978) (quoting <u>Commonwealth of Va. v. Westinghouse Elec. Corp.</u>, 542 F.2d, 214, 216 (4th Cir. 1976)) ("When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.").

In support of their assertion that Plaintiffs do not adequately represent their interests, Movants argue that (1) the Settlement Agreement appears to be the product of a collusive "reverse auction" and (2) the Settlement Agreement is inadequate because it does not provide recovery for diminution in the value of the Class Vehicles.  Mot. to Intervene at 17-24.  The Settling Parties, on the other hand, contend that the Settlement Agreement was reached after hard-fought, good-faith litigation and that the Settlement Agreement provides adequate compensation

for the class members given the breadth of the warranty extension. Pls.' Opp'n at

20-25; Defs.' Opp'n at 4-16.

### a.    Allegations of Collusion

The Court does not find any evidence in the record that indicates the events

leading up to the Settlement Agreement in this case are indicative of collusion.

Although a "collusive reverse auction would satisfy the inadequate representation

requirement," there is no evidence that a reverse auction took place here. Swinton

v. SquareTrade, Inc., 960 F.3d 1001, 1006 (8th Cir. 2020). In Swinton, the Eighth

Circuit affirmed the denial of a motion to intervene where the proposed intervenors

in a class action suit made arguments strikingly similar to Movants':

> As the district court ruled, Starke has insufficient evidence of a reverse
> auction. He points to four facts: Swinton copied his complaint; Swinton
> settled before conducting discovery; Swinton did not include Starke in
> settlement discussions; and Starke defeated the motion to compel
> arbitration in New York. None of these facts suggests collusion,
> mendacity, or underhanded activity. First, Swinton approached counsel
> about SquareTrade's allegedly deceptive practices before Swinton's
> counsel copied Starke's complaint, a public record. Second, the Federal
> Rules do not require that litigation advance to a specific stage before
> settlement, nor that settlement discussions involve class members.
> Third, the district court ruled that the settlement provided whole and
> adequate relief, as required by Federal Rule 23. Fourth, the attorneys'
> fees ($25,000, plus 15% of refunds) are not "extremely generous."

Id. (citations omitted). Movants, like the proposed intervenors in Swinton, make

much of the similarities between the Ponzio and Pinon complaints; however, this

Court, like the Eighth Circuit, does not find the similarities probative of any bad behavior when the evidence shows that Plaintiffs began investigating their claims before the complaint in <u>Ponzio</u> was filed.  <u>See</u> McDonough Decl. ¶¶ 8-11.  In addition, although the parties were not obligated to reach a certain point in litigation prior to settlement, the litigation here went further than that in <u>Swinton</u> because Plaintiffs and Defendants engaged in extensive discovery prior to the Settlement Agreement.  <u>Id.</u> ¶¶ 24-35.  Similarly, the Settlement Agreement, as will be discussed in the Court's separate order granting preliminary approval of the settlement, the Settlement Agreement provides adequate relief to the class.[8]

Although Movants claim that the "timing and secrecy of the proposed settlement . . . raises a red flag" as to collusive conduct, Mot. to Intervene at 18, there is nothing about either the Settlement Agreement or the negotiations leading up to it that implies collusion.  First, the negotiations process, contrary to Movants' assertions, was extended.  Settlement negotiations did not begin until February of

---

[8] The Court notes that Plaintiffs have not submitted their specific proposed attorneys' fees at this point, but the Settlement Agreement advises that negotiations over fees and costs occurred only after "all the material terms of the Settlement were agreed upon in principle" and that "none of the Settlement benefits will be reduced to pay any Court-awarded attorneys' fees or costs to Class Counsel." Settlement Agreement at 35.  Therefore, there is no indication of inflated attorneys' fees or that the Settlement Agreement was in anyway influenced by attorneys' fees.

17

2020, eighteen months after the initiation of litigation in the case.  Decl. of William

Lewis Garrison, Jr. ("Garrison Decl.") [Doc. 70-5] ¶¶ 30-31.  Even then, no

substantial progress towards settlement was made until approximately seven

months later in September of 2020.  Id.  An agreement only was reached after

multiple mediation sessions conducted months later in November of 2020.

Mediator's Decl. of Retired Federal Judge James F. Holderman [Doc. 70-3] at 2-4.

Second, the negotiations remained confidential for reasons that should be

obvious to Movants.  Namely, the Pinon discovery and litigation process, including

settlement discussions, was covered by a protective order.  See Feb. 14, 2020,

Order [Doc. 35] (adopting the Settling Parties' Stipulated Protective Order [Doc.

34-1] as the order of the Court).  In fact, Plaintiffs advised Movants of the

protective order via email.  See McDonough Decl. ¶ 41.  Plaintiffs even proposed

including Movants under the Pinon protective order for the purpose of sharing

information before communications between Movants and Plaintiffs broke down.

Id.  As Plaintiffs point out, the publicly available protective order explicitly

prohibited them from sharing information about settlement discussions, and

Movants do not argue that sharing information about the negotiations with them

was in any way exempted.  Pls.' Opp'n. at 21; see also McDonough Decl. ¶ 44.

Other factors which would potentially indicate a reverse auction also are absent here. For example, in contrast to the expectation that defendants in a reverse auction scenario shop around and select the best plaintiffs, Defendants here point out that settlement negotiations were initiated by Plaintiffs. Defs' Opp'n at 5-6. Moreover, there is no evidence that Plaintiffs presented a notably reduced threat to Defendants as compared to Movants. Plaintiffs' litigation strategy may have differed significantly from that of Movants; however, this difference alone does not show that Plaintiffs' case was weaker. See Daker v. Owens, 806 F. App'x 881, 883 (11th Cir. 2020) (denying a motion to intervene because differences in litigation strategies alone do not demonstrate inadequate representation). In addition, none of the evidence in the record suggests that there were weaknesses or flaws unique to Plaintiffs' case. While Movants consistently assert that Plaintiffs' discovery strategy was flawed rather than efficient, Movants fail to support such an assertion. Rather, Movants continually point to the Settlement Agreement as evidence of a weak case but the Settlement Agreement, as addressed in the order preliminarily approving it, is reasonable. See, e.g., Movants' Reply Mem. in Supp. of Mot. to Intervene ("Movants' Reply") [Doc. 81] at 21-25. In fact, while a reasonable settlement has been reached in this case, there is no indication that Movants have any prospect of reaching a similar or better settlement in their

19

action.  Movants' belief that additional damages potentially could have been recovered does not demonstrate a failure of Plaintiffs to effectively litigate the case.

Movants also contend that discovery proceedings in <u>Ponzio</u> compared to those in <u>Pinon</u> show that Plaintiffs do not adequately represent the class's interests. For example, Movants state: "in their race to outpace the <u>Ponzio</u> Plaintiffs, the <u>Pinon</u> Plaintiffs appear to have simply agreed to improper discovery limitations and limited ESI productions Defendants sought to impose on the <u>Ponzio</u> Plaintiffs when discovery in that action commenced."  Mot. to Intervene at 20.  However, the contention that Plaintiffs' counsel failed to conduct adequate discovery is refuted by the record which explicitly discusses extensive pre-filing investigation.  <u>See</u> McDonough Decl. ¶¶ 24-35 (describing decision-making regarding protective order terms, production of documents, negotiations of search terms, issuance of subpoenas, service of requests for production, interviewing and retention of experts, negotiation of vehicle inspection protocols, and other discovery exchanges between the Settling Parties).  In addition, Movants have not shown that the broader discovery they obtained substantially strengthens their claims relevant to Plaintiffs' claims.  <u>See</u> Movants' Reply at 21-25; Mot. to Intervene at 21-22.

In support of their contention that the Settling Parties' actions implicate collusion, Movants also cite to Tech. Training, but that case is distinguishable on several grounds.  First, the district court's holding in that case was premised upon the class members' ability to protect their interest through Rule 23 objections to the settlement, and it did not address the fourth prong of intervention as of right.  Tech. Training, 874 F.3d at 696; see also Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship, No. 8:16-CV-1622-T-AEP, 2017 WL 2889739, at *20 (M.D. Fla. Mar. 31, 2017), rev'd in part, 874 F.3d 692 (11th Cir. 2017).  In addition, the intervening movants in Tech. Training had been litigating on behalf of the putative class for several years while the attorneys for the non-movants, one of which had previously represented the putative class in the movants' suit, had explicitly discussed seeking to settle the case at a value lower than what movants sought.  Tech. Training, 874 F.3d at 695.  Finally, the non-movants in Tech. Training had claims which were substantially weakened by a statute of limitations dispute which would potentially motivate them to settle the case where the movants had no similar impediments. Id. at 697.  None of these issues are present in Pinon.

### b.    Allegations that the Settlement Is Inadequate

Because the value of a settlement alone is not a basis for finding inadequate representation, this Court cannot find that the Settlement Agreement compels

granting the Motion to Intervene unless it is so low as to indicate a failure of Plaintiffs to fulfill their duty as representatives of the class.  See Falls Chase, 983 F.2d at 215 (holding that representation is presumed to be adequate absent a showing of collusion between parties, an adverse interest, or a failure to fulfill one's duty as a representative).  Movants have not shown this to be the case.

The Court finds that the Settlement Agreement is a reasonable compromise between the Settling Parties.  While Movants are correct in noting that the standard for approval of a settlement under Rule 23 is not the same as the standard for finding inadequate representation, Movants' Reply at 22, whether the Settlement Agreement is reasonable is indicative of whether Plaintiffs fulfilled their duty to the class.  Federal courts have repeatedly approved class action settlements comparable to the proposed settlement here.  See, e.g., Eisen v. Porsche Cars N. Am., Inc., No. 2:11-CV-09405-CAS, 2014 WL 439006, at *8 (C.D. Cal. Jan. 30, 2014) (collecting cases); see also Yaeger v. Subaru of Am., Inc., No. 114CV4490JBSKMW, 2016 WL 4541861, at *15 (D.N.J. Aug. 31, 2016) (explaining the difficulty in establishing damages for diminished value for an entire class of vehicles given the multiple variables involved).  Further, none of the cases cited by Movants establish that a representative is deficient when obtaining a reasonable settlement.

Movants argue at length that the Settlement Agreement is insufficient because it does not include damages for diminution in value, but they fail to cite any authority showing that the absence of this type of damages makes the settlement inherently unreasonable.  In support of this argument, they provide an expert witness's affidavit explaining how Movants potentially could recover such damages.  Decl. of Richard J. Eichmann [Doc. 81-4].  However, this affidavit hedges the expert's purported conclusions and fails to provide evidence that class members would be harmed by the exclusion of such damages from the settlement.  See, e.g., id. ¶ 26 ("an actual and/or quantifiable element of damages (specifically, diminution in value) may exist . . . and that, as a result it could negatively effect . . . all Class members.") (emphasis added).  While it is arguable whether Movants could, if given the chance, obtain a settlement or verdict for the class that includes damages for diminution in value, complete failure with no recovery for the class is equally possible.  Thus, Movants have not shown that the Settlement Agreement is deficient to the extent that it demonstrates a failure of Plaintiffs to adequately represent the class.

The Court finds that there is neither evidence of collusion between the Settling Parties nor evidence that Plaintiffs have failed to fulfill their duties as representatives of the class.  Thus, Movants' Motion to Intervene also fails because

Movants' interests are adequately represented by the existing parties. Movants'

motion to intervene as of right is **DENIED**.

### B.    Permissive Intervention

Courts have discretion to permit intervention under Rule 24 "[o]n timely

motion" if there is a "common question of law or fact" between a movant's claim

or defense and the main action. FED. R. CIV. P. 24(b). "In exercising its discretion,

the court must consider whether the intervention will unduly delay or prejudice the

adjudication of the original parties' rights." Id.

> If there is no right to intervene as of right under Rule 24(a), it is wholly
> discretionary with the court whether to allow intervention under Rule
> 24(b) and even though there is a common question of law or fact, or the
> requirements of Rule 24(b) are otherwise satisfied, the court may refuse
> to allow intervention. . . . When asked to review a denial of permissive
> intervention, our task is not to determine whether the factors of Rule
> 24(b) were present, but is rather to determine whether the trial court
> committed a clear abuse of discretion in denying the motion.

Worlds, 929 F.2d at 595 (citation and internal punctuation omitted). For the

reasons discussed above, the Motion to Intervene here is not timely and, even if it

were, it would delay or prejudice the Settling Parties' rights. Thus, this Court will

not exercise its discretion to grant permissive intervention.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Movants' Motion to

Intervene and Continue Hearing Date for Motion for Preliminary Approval of

Settlement [Doc. 72] and Motion for Oral Argument [Doc. 85] are **DENIED**, and

Plaintiffs' Motion for Leave to File a Sur-Reply [Doc. 82] is **DENIED AS**

**MOOT**.

**IT IS SO ORDERED** this *29th* day of March, 2021.

_____

MARK H. COHEN
United States District Judge