**HIGHLY CONFIDENTIAL**



EMILY PINON, on behalf of
herself and all others similarly
situated,

**Plaintiff**

v.

DAIMLER AG and MERCEDES
BENZ USA, LLC

**Defendants**


**Declaration of Richard J. Eichmann**

**HIGHLY CONFIDENTIAL**

## Table of Contents

I.    Qualifications .................................................................................3

II.   Assignment..................................................................................4

III.  Summary of Conclusions.................................................................4

IV.  Review of Bowron Declaration .........................................................5

V.   Bowron Fails to Derive the "Value of the Settlement" as Alleged and the Proposed Settlement Fails to Provide a Benefit to the Settlement Class Members ..8

VI.  Bowron Fails to Recognize that the Costs to be Incurred by the Class Members are _Greater_ than the Benefit They will Likely Receive, according to the Settlement Proposed by *Pinon* Counsel.................................................................10

    A.   Proposed Costs to Class Members ........................................10
    B.   Possible Benefit to Class Members ........................................11

**HIGHLY CONFIDENTIAL**

## I.    Qualifications

1.  I am the same Richard Eichmann that filed a Declaration in this matter on January 27, 2021.  I am a Managing Director for NERA Economic Consulting. I have over 25 years of experience working as an economic consultant. During my career I have served as a consultant to both public and private companies in a variety of industries and have performed numerous quantitative forecasts, econometric models, valuations, and statistical and damages model analyses. I began working in litigation consulting in 1998, as a damages expert. Prior to that I worked as an economic analyst with J.D. Power and Associates, tasked with examining a variety of pricing and valuation options within the automotive industry, via the use of survey and econometric analyses, and other statistical analyses. Since 1998, working in litigation consulting, I have filed expert reports on the application of statistical methods, sampling, survey design, business valuation, and econometrics as they pertain to the calculation of damages and lost profits and diminution in value. I have taught and presented at conferences on the topic of valuation and damages as they relate to such matters. My current resume is attached within **Appendix 1** to this Declaration. NERA is being compensated for my services at an hourly rate of $675. I have also been assisted by NERA staff members who are billed at tiered rates depending on their experience and qualifications. Neither my, nor NERA's, compensation is dependent on the outcome of this matter.

**HIGHLY CONFIDENTIAL**

## II.   Assignment

2.   In this Declaration, I have been retained by *Ponzio's* counsel to review the opinion put forth by Lee M. Bowron, submitted in connection with his alleged analysis to calculate the "value of the settlement."[1]

## III.   Summary of Conclusions

- Review of the Bowron Declaration.

    o Mr. Bowron fails to provide his workpapers and proper citations within his documentation, rendering it impossible to replicate his analysis.

    o Mr. Bowron's analysis is internally inconsistent, as his narrative is at odds with the figures in his schedules.

    o Mr. Bowron arbitrarily selects ad hoc inputs to his model with no basis but for *ipse dixit*.

    o Subsequently, all of Mr. Bowron's calculations are arbitrary and meaningless from an economic and valuation standpoint.

- Economically speaking, the alleged settlement values presented by Mr. Bowron, at best, represent the estimated costs to Mercedes to repaint the Class Vehicles.  However, an estimated cost to Mercedes to repaint the Class Vehicles is not a measure of the estimated relief to the Class Members.  This

---

[1] See Lee M. Bowron Declaration, filed April 27, 2021 ("Bowron Declaration").

4

HIGHLY CONFIDENTIAL

estimated cost to Mercedes is not a proxy for the *value* of the settlement to the Class Members. Those two concepts (cost incurred by Mercedes and supposed value-add to Class members) are not a measure of one another. Said differently, what Mercedes may estimate as a contingent liability for purposes of the proposed *Pinon* settlement is not a proxy for "the value of the relief provided to the Class."[2] From an economic standpoint, the Class does not benefit from the estimated cost imposed on Mercedes.

- The average estimated minimum out-of-pocket costs to the Class Members is greater than the average alleged benefit to Class Members under the *Pinon* settlement, rendering it economically irrational.

## IV.  Review of Bowron Declaration

3.  I address data limitations first. Within his Declaration, Mr. Bowron notes that "[in] performing this analysis, [they] relied on data and other information provided to [them] by [*Pinon* counsel] and Daimler AG (Mercedes), as well as industry sources of data."[3] However, neither Mr. Bowron nor *Pinon* counsel have provided any of the underlying data utilized by Mr. Bowron in his analysis. As such, I am limited in my review to the .pdf file of his final report only, which is limited in describing the details of his analysis, as I will explain below. Mr. Bowron notes for example that "numbers in [his] exhibits are generally shown to more significant digits than their accuracy suggests,"[4] which, therefore, renders

---

[2] See *Plaintiffs' Unopposed Motion for Award of Attorney's Fees, Expenses, and Class Representative Service Awards, and Incorporated Memorandum of Law*, filed April 28, 2021, p. 8.
[3] Bowron Declaration, ¶34.
[4] Bowron Declaration, ¶35.

HIGHLY CONFIDENTIAL

an exact replication of his analyses impossible without his underlying work papers.

4. Second, the failure to provide his work papers is not the only limitation. Mr. Bowron's analysis is internally inconsistent. That is, the narrative of his Declaration contradicts the schedules of his analysis. As an example, Mr. Bowron writes that he makes the assumption that the estimated miles driven per month are divided into five groups, or 550, 900, 1150, 1400, and 2100, respectively, with "20% of vehicles in each group."[5] Then in his Exhibit I.A. of his Declaration, Mr. Bowron lists a vehicle population for model year 2007 vehicles of 4,433 (presumably this figure comes from data provided to him from Mercedes). If one fifth of those 4,433 vehicles (or 887 vehicles) are assumed to average 550 miles per month, then as of September 2019 you would expect the maximum of 79,200 miles (550 miles times 12 months times 12 years) on those 887 vehicles. Similarly, if one fifth of those 4,433 vehicles (or 887 vehicles) are assumed to average 900 miles per month, then as of September 2019 you would expect the maximum of 129,600 miles (900 miles times 12 months times 12 years) on those 887 vehicles. I would then expect to see that two fifths of 4,433 vehicles (or 1,774 vehicles) would be listed as the figure in column 3 of Mr. Bowron's Exhibit I.A. under the heading "exposures limited by miles," but instead I observe Mr. Bowron enters 209 vehicles instead. In short, there is no way to reconcile Mr. Bowron's figures without his underlying work papers, and his summary exhibits appear to contradict the narrative of his Declaration. Subsequently, the figures under column 3 of his Exhibit I.A., titled "exposures

---

[5] Bowron Declaration, ¶19.

HIGHLY CONFIDENTIAL

limited by miles," are inconsistent with the narrative described within his analysis itself.

5.  As a further example, Mr. Bowron reports a series of estimated "claiming rates for reimbursement (percent of class members who have qualifying reimbursements who make claims)" in Exhibit VII of his Declaration.  There he estimates claim rates of 31%, 32%, and 34% for model year 2004, 2005, and 2006 Class Vehicles, respectively.  Yet, in Exhibit I.A of his Declaration, Mr. Bowron reports "Future Losses" for model year 2004, 2005, and 2006 Class Vehicles, respectively, as zero for each year.  Alleging that 31% of Class Members possessing model year 2004 Class Vehicles will make claims under the Settlement and then reporting zero expected "future losses" for that year are internally inconsistent statements.

6.  Third, even if one were to assume that column 3 of Mr. Bowron's Exhibit I.B. is correct, albeit it cannot be verified or replicated at present as described above, Mr. Bowron then inexplicably and arbitrarily adds various mark-ups to his analysis without any basis but for *ipse dixit*.  I discuss this below.

    - Mr. Bowron inexplicably and arbitrarily adds a 10% mark-up for "insurance costs" for which he only says "the amount selected was 2.5% for premium taxes, 4% for profit, and 3.5% for other expenses."[6] He fails to describe what type of "profit" he is referring to (e.g., gross, net, incremental).  He has no description of what he means by "other expenses."  Indeed, there is not one citation for any of these figures resulting in an arbitrary 10% mark-up but for *ipse dixit*.

---

[6] Bowron Declaration, ¶26.

- With regard to administrative costs, Mr. Bowron again cites no references as to why he assumes an additional 15% mark-up, which he claims is "likely the low end of the range."[7]  He fails to cite the basis for this "range" let alone why is it "likely the low end of it."

- Mr. Bowron continues.  For he then adds these two 10% and 15% arbitrary mark-ups and (again without basis or citation) doubles them, as well as doubling the unexplained values in his column 3 of his Exhibit I.A.  Doing so gives him an alleged "point estimate" of approximately $33.5 million, according to Mr. Bowron.

- These three add-ons, with no citation and no basis, serve to arbitrarily increase his estimate of "current loss" to "point estimate" by over 121% (i.e., $33.5 million divided by $15.2 million less 1).

- This 121% arbitrary increase is then further arbitrarily said to vary plus or minus 20%; again, without citation or basis but for *ipse dixit*.

7.  In short, all of Mr. Bowron's calculations are arbitrary and meaningless from an economic and valuation standpoint.

## V.  Bowron Fails to Derive the "Value of the Settlement" as Alleged and the Proposed Settlement Fails to Provide a Benefit to the Settlement Class Members

8.  Mr. Bowron states that he was tasked with calculating "a range of the economic impact of a proposed settlement of Pinon v. Daimler, AG, MBUSA."[8] He claims

---

[7] Bowron Declaration, ¶28.
[8] Bowron Declaration, ¶6.

**HIGHLY CONFIDENTIAL**

that the "total settlement value is the sum of the retail price of the service contract and the reimbursement of past claims"[9] which, he concludes, is between approximately $32 million to $56 million.[10] Mr. Bowron claims that this range provides an estimate "of the total economic value of the settlement."[11]  It does not, irrespective of the actual figure.  *Pinon* counsel is, therefore, incorrect when they claim that Mr. Bowron's analysis provides "an estimate of the value of the relief provided to the Class." It does not.  Moreover, *Pinon* counsel incorrectly claims that their efforts provide "an exceptional benefit to the Settlement Class Members."[12]  They do not.

9.   Instead, what Mr. Bowron's analysis represents, at best, albeit problematic for other reasons described above, is the estimated *cost* of the settlement for a Class Member to go to a hypothetical insurance carrier and get such a policy, added with the cost Mercedes estimates they may incur to repaint the Class Vehicles. This cost is not a proxy for the *value* of the settlement to the Class.  Those two concepts are mutually exclusive from one another.  Said differently, what Mercedes may estimate as a contingent liability for purposes of the proposed *Pinon* settlement is not a proxy for "the value of the relief provided to the Class."[13]  From an economic standpoint, the Class does not benefit from the estimated cost imposed on Mercedes.  Even Mr. Bowron labels these costs as precisely that – losses to Mercedes. Column 2 of Exhibit I.A of his Declaration is labeled "Current Loss."  A loss (or cost) to Mercedes does not translate into a

---

[9] Bowron Declaration, ¶12.

[10] Bowron Declaration, ¶8.

[11] Bowron Declaration, ¶12.

[12] See *Plaintiffs' Unopposed Motion for Award of Attorney's Fees, Expenses, and Class Representative Service Awards, and Incorporated Memorandum of Law*, filed April 28, 2021, p. 8.

[13] *Ibid*.

HIGHLY CONFIDENTIAL

relief provided to the Class.  As the scientific analysis presented by Dr. Glasgow quantitatively shows, with statistical significance, consumers devalue a Class Vehicle that has been repainted, lowering their willingness to pay (WTP) for a defective Class Vehicle by approximately $8,148.[14]   The cost to Mercedes associated with repainting these vehicles fails to represent, therefore, the diminution in value associated with Class Vehicles affected by the paint defect.

## VI.  Bowron Fails to Recognize that the Costs to be Incurred by the Class Members are _Greater_ than the Benefit They will Likely Receive, according to the Settlement Proposed by *Pinon* Counsel

10. As mentioned above, Mr. Bowron reports a series of estimated "claiming rates for reimbursement (percent of class members who have qualifying reimbursements who make claims)" (i.e., claim rates) in Exhibit VII of his Declaration.  There he estimates claim rates varying from 31% to 70% for model years 2004 to 2020 Class Vehicles, respectively.  Said differently, Mr. Bowron expects apparently high claim rates by the Class Members in his opinion.  From an economic perspective, this does not seem possible.  As an economist, I opine that one would need to conduct a basic cost-benefit analysis to assess the economic impact of the proposed settlement.  I conduct a basic cost/benefit analysis below.

### A. Proposed Costs to Class Members

11. I understand, according to the Third Amended Complaint, that the cost to repaint a Class Vehicle is at least $7,000 and as much as $11,300.[15] The terms of the settlement proposed by *Pinon* counsel state that Class Members whose subject

---

[14] Expert Report of Garrett Glasgow, Ph.D., dated July 21, 2021.
[15] Third Amended Complaint, Doc. 55 ¶¶ 53, 93, and 122.

HIGHLY CONFIDENTIAL

Class Vehicles have been in service for more than 84 months, or have over 105,000 miles, would be required to pay 50% of the cost to repaint. That is, those Class Members would pay between $3,500 and $5,650 to repaint their cars (with Mercedes covering the cost of the other half).[16] As for Class Members who possess Class Vehicles between 84 months and 15 years, and whose cars have under 150,000 miles, Class Members would be required to pay for 75% of the cost to repaint. That is, those Class Members would pay between $5,250 and $8,475 to repaint their cars (with Mercedes paying the remaining 25% of the cost).[17] Therefore, Class Members would pay between $3,500 to $8,475 for the cost of repainting according to the proposed *Pinon* settlement. Said differently, the *minimum* cost a Class Member would incur to have their Class Vehicle (that has been in service for more than 84 months) repainted would be $3,500. I next examine the possible benefit Class Members may receive for incurring that cost.

## B. Possible Benefit to Class Members

12. To do so, I gathered publicly available data,[18] via Kelly Blue Book (KBB),[19] relating to the trade-in values of Class Vehicles[20] in both "good" and "very good"

---

[16] Doc. 70-1 at pg. 10.

[17] Doc. 70-1 at pgs. 10-11 ("For a Subject Vehicle that received a Qualified Past Repair that does not fall within category 4.1(a) or 4.1(b) and that is fewer than 15 years (180 months) or 150,000 miles from the Subject Vehicle's original In-Service Date, whichever occurred first, a Settlement Class Member making a qualifying claim shall, subject to the additional limitations governing repairs performed by Independent Service Centers set forth in Section 4.2, receive reimbursement of 25% of the cost incurred to perform the Qualified Past Repair...").

[18] See workpaper file "Eichmann Schedule FINAL.xlsx". Note, for sake of consistency, I collected data for Class Vehicles with the assumption that they held 100,000 miles and had standard equipment options.

[19] Kelly Blue Book is a vehicle valuation and automotive research company that is recognized by both consumers and the automotive industry. See www.kbb.com.

[20] I understand Class Vehicles to include C-Class (model years 2004-2015); GLK-Class (model years 2010-2015); CLS-Class (model years 2006-2007, 2009, 2014); CLK-Class (model years 2004-2009); S-Class (model years 2008, 2015, 2017); SL-Class (model years 2004-2009, 2011-2017); CL-Class (model years 2005-2006, 2013-2014); SLS-Class (model years 2014-2015); E-

**HIGHLY CONFIDENTIAL**

conditions. According to KBB, "the KBB® Trade-in Value is Kelly Blue Book's estimate of what a consumer can expect to receive from a dealer for a trade-in vehicle assuming an accurate appraisal of condition."[21] Moreover, KBB considers a vehicle to be in "good" condition if the vehicle "has some repairable cosmetic defects and is free of major mechanical problems."[22] In addition, KBB considers a vehicle to be in "very good" condition if the vehicle "has minor cosmetic defects and is in excellent mechanical condition."[23] Assuming repainting the Class Vehicles converts them from being classified as "good" (i.e., a vehicle with a 'reparable cosmetic defect') to "very good" (i.e., a repainted vehicle with a now 'minor cosmetic defect'), then the difference represents the increase in value a Class Member would receive from repainting their vehicle. The increase in the value of their Class Vehicle after the repaint would represent the monetary benefit a Class Member may receive from the proposed *Pinon* settlement.

13. The data I examined reveals that the average increase in trade-in value for a Class Vehicle for all model years is $1,138.[24] As illustrated in Schedule 1 of this Declaration, the overall increase in trade-in value for Class Vehicles range from $440 to $1,719. That is, should a Class Member choose to have their Class Vehicle repainted, the *maximum* benefit a Class Member could expect to receive, which would come in the form of an increase in their vehicles trade-in value, is

---

Class (model years 2005-2006, 2010-2017); G-Class (model years 2005, 2011-2017); GT-Class (model years 2016-2018); SLC-Class (model years 2017); SLK-Class (model years 2005-2016); and Maybach 57 (model year 2008).

[21] Kelly Blue Book (Definitions of Our Values | Kelley Blue Book B2B (kbb.com), accessed July 15, 2021).

[22] Kelly Blue Book conditions are reflected on their website and found in "KBB Conditions.pdf".

[23] *Ibid*.

[24] See **Schedule 1** of this Declaration.

**HIGHLY CONFIDENTIAL**

capped, on average, at $1,719.  Yet, a Class Member would need to incur a *minimum* out-of-pocket cost of $3,500, which is *greater* than the *maximum* benefit, of $1,719 they would receive in exchange.  From purely an economic cost/benefit perspective, the proposed *Pinon* settlement not only fails to indicate the claim rates Mr. Bowron is estimating in his Exhibit VII, but, more importantly, I opine, is economically irrational and fails to provide relief to the Class Members.

Respectfully submitted**,**

**Richard J. Eichmann**

NERA Economic Consulting
4 Embarcadero Center, Suite 400
San Francisco, CA 94111

July 21, 2021

**Schedule 1**
**Average Trade-In Value Increase by Model Year**
**For Class Vehicles with Standard Equipment and Mileage of 100,000**



Note: "Trade-in Value Increase" represents the difference between the trade-in value of a "Very Good" vehicle vs. a "Good" vehicle. All data were compiled from Kelly Blue Book website between July 14 and 20, 2021. Due to data limitation, the trade-in value for certain class vehicle models and model years is unavailable, including Maybach 57 (2008); G-Class (2016); GT-Class (2016-2019); SL-Class (2016-2017); and SLS-Class (2014-2015).

Source: "My Car's Value," Kelly Blue Book, https://www.kbb.com/whats-my-car-worth, last accessed July 20, 2021.

Richard Eichmann
July 21, 2021

# Appendix 1

Richard Eichmann
July 21, 2021



**Richard J. Eichmann**
Managing Director

National Economic Research Associates, Inc.
4 Embarcadero Center, Suite 400
San Francisco, California 94111-4156
+1 415 291 1000 Fax +1 415 291 1020
Direct +1 415 291 1033 (SF)
Direct +1 213 346 3009 (LA)
richard.eichmann@nera.com
www.nera.com

# Richard J. Eichmann
## Managing Director

Richard Eichmann specializes in the application of applied economic analysis in intellectual property, securities, and other commercial litigation.  His skills include valuation, econometrics, statistics, sampling, and survey research.  He has calculated economic damages in a variety of industries, including the software, drone, encryption, mobile apps, telecommunications, social media, automotive, airline, credit card, financial, energy, gaming and entertainment industries.  He has filed expert reports in Federal court on the application of statistical methods, sampling, survey design, and business valuation, lost profits, and patent damages.  He has over 22 years of experience working in litigation consulting, and has provided arbitration, deposition and trial testimony for both jury and bench trials. He currently leads the High-Tech Subcommittee for the IP Practice for NERA.

Prior to joining NERA, Mr. Eichmann provided economic analysis and dispute advisory services at public and private litigation consulting firms as well as two Big 4 accounting firms.  In addition, he has worked as an analyst in the automotive industry utilizing proprietary survey research data for time series analysis and as a research assistant for the Survey Research Center at the Institute for Social Research in Ann Arbor, Michigan on panel study surveys.

## Select Projects
Representative examples of Mr. Eichmann's engagement experience include:

### Patent and Trademark Litigation

- Patent Infringement (Cryptographic Processing Relating to Routers and Modems) – Rebutted an opposing damages expert's opinion for client *Cisco* regarding a reasonable royalty analysis that examined issues relating to the incremental benefit relating to cryptographic parallel processors.

- Patent Infringement (Standard Essential Patents Relating to DSL Technology) – Rebutted an opposing damages expert's opinion for client *2Wire* regarding FRAND reasonable royalty analysis that examined a modified top-down analysis estimating the benefits attributable to DSL SEP patents.

- Patent Infringement (Unmanned Aerial Vehicles - Drones) – Rebutted an opposing damages expert's opinion for client *Autel* regarding a lost profits and reasonable royalty analysis that examined the alleged incremental profit attributable to the benefits of patented drone technology.

**Richard J. Eichmann**

- Patent Infringement (Thermal Cooling Technology) – Rebutted an opposing damages expert's opinion for client *Civiq* regarding a lost profits and reasonable royalty analysis that examined the alleged infringement of thermal cooling technology.

- Patent Infringement (Smart Phone Protective Screen Covers) – Rebutted an opposing damages expert's opinion for client *Aeveo* regarding a reasonable royalty that examined the incremental profit attributable to the benefits of patented smart phone screen protective covers.

- Patent Infringement (Smart Phone Mobile Camera Features) – Rebutted an opposing damages expert's use of survey studies as an indication of value for client *Motorola Mobility* in a patent infringement suit concerning camera and Wi Fi features.  I provided testimony within a jury trial before Judge Orrick in San Francisco, California.

- Patent Infringement (Social Media) – Provided client *Facebook* with a declaration that utilized statistical analysis to examine the underlying assumptions within the model of an opposing expert in a patent infringement suit.

- Patent Infringement (Enterprise Mobility Management) – Provided client *MobileIron* with an assessment of damages incurred as a result of an alleged patent infringement pertaining to Personal Information Management security. I provided testimony within a jury trial before Judge Grewal in San Jose, California.

- Patent Infringement (Gaming) – Rebutted an opposing damages expert's calculation of reasonable royalty for client *SteelSeries* in a patent infringement suit concerning gaming mice technology.  I provided testimony within a jury trial before Judge Payne in Marshall, Texas.

- Patent Infringement (Farm Equipment) – Hired as an expert to provide statistical analysis of the clinical trials run by an agricultural expert to examine the efficiency and alleged improved benefits of a mechanized corn seed planter.

- Patent Infringement (Mobile App – Video Streaming) – Provided a declaration relating to the economics of damages in support of a motion for an injunctive relief relating to patens associated with mobile streaming technology for *Eko*.

- Trademark Infringement (Hardware Trade Associations) – Assisted with the determination of potential market confusion among consumers and attendees of a national hardware trade association conference.  Calculated the impact on profits for the conference, in terms of damages, given the impact.

- Trademark Infringement (Pharmaceuticals) – Rebutted an opposing expert's damages opinion relating to alleged economic damages sustained by alleged market confusion for client *Fera Pharmaceuticals*.

- Copyright Infringement (Software) – Calculated damages sustained by a software manufacturer, *Quest Software, Inc*.

**Trade Secret Misappropriation**

- Misappropriation of Trade Secrets (Networking and Telecommunications Market Reports) – Determined direct and consequential damages incurred by *Dell'Oro Group* as result of a breach of fiduciary duty by a former employee alleged to misappropriated trade secrets relating to the generation of standardized market reports.

2

Richard J. Eichmann

- Misappropriation of Trade Secrets (Lithium Solid State Batteries) – Valuing seven trade secrets relating to lithium solid state batteries that were alleged to have been misappropriated by former employees of *Quantumscape Corporation*.

- Misappropriation of Trade Secrets (Pharmaceutical Adjudication Services) – Led team in the rebuttal of alleged lost profit and unjust enrichment claims in defense of a leading pharmaceutical adjudication service provider accused of having illegally acquired trade secrets from a former business associate.

- Misappropriation of Trade Secrets (Gene Therapy) – Rebutted an opposing expert's assessment of damages incurred by a former laboratory employee who alleged that a major academic university misappropriated his intellectual capital in the acquisition of a patented gene therapy.

- Misappropriation of Trade Secrets (Value Added Retailer) – Led team in the calculation of compensatory damages and unjust enrichment claims in defense of a value-added retailer in the Florida market accused of having illegally acquired trade secrets from a competitor.

- Misappropriation of Trade Secrets (Trading Models) – Named expert in a case that involved rebutting alleged damages sustained by an investment management company.  The head of the quant group left, along with the core of his group to form a competitor investment management company.  The Plaintiff alleged that when he left he took with him a proprietary trading model.  Damages centered on valuing the worth and subsequent alleged diminution in value of the alleged stolen trading model.

**Antitrust**

- Antitrust (Standard Essential Patents) – Provided consulting assistance to a confidential client regarding possible exposure to allegations on anticompetitive behavior due to its alleged failure to license patents at a fair, reasonable, and non-discriminatory (FRAND) rate that were deemed standard essential patents (SEP).

- Antitrust (Real Estate Markets) – Managed the analyses generated to rebut two expert reports that sought to calculate damages in an alleged price-fixing case.  I provided statistical support in the case with regard to an examination of the validity of the plaintiff's expert's yardstick methodology.

- Antitrust (Construction Commodity) – Designed and managed statistical and econometric analyses to investigate the impact of alleged price-fixing among producers of a construction input commodity.  Federal Sentencing Guideline dictated the estimation of affected commerce. A two-stage regression analysis that sought to isolate whether prices of alleged impacted months was utilized.  The methodology in the case was ultimately described in an article presented at the Western Economic Association International Annual Conference in Vancouver, B.C. on July 1, 2009

- Antitrust (Energy) – Reviewed plaintiff's pricing methodology and presented an alternative mitigated price methodology to the Federal Energy Regulatory Commission (FERC) that was ultimately accepted in the matter of the California energy dispute, concerning the defense of thermal generators against the charges of price fixing and collusion.

- Antitrust (Energy) - Conducted statistical analyses of trader behavior to determine the probability of systematic gaming behavior, in the matter of FERC allegations on natural gas traders, concerning the defense of energy futures trades against the charges of price manipulation.

- Antitrust (Energy) - Managed and led programming analyses of large disparate data sets for determining liability and timing issues, in the matter of an antitrust dispute concerning allegations of collusion in the electric markets.

**Richard J. Eichmann**

- Predatory Pricing Behavior (Pharmaceuticals) – Designed and managed the execution of econometric and statistical analyses of HIV pharmaceutical drugs as they pertained to alleged predatory pricing behavior of a supplier.  Mr. Eichmann generated code to analyze various model specifications, correcting for first-series serial correlation that might indicate what exogenous variables influenced markets and how.

**Breach of Contract**

- Breach of Contract (Non-Compete Provisions / Drayage Services) – Estimated the issue irreparable harm to *Roadrunner* in a breach of contract relating to non-compete provisions in a Stock Purchase Agreement.

- Breach of Contract (Winery) – Calculated damages sustained by *Close LaChance Wines* in a breach of contract allegation litigated before JAMs arbitration.

- Breach of Contract (Intellectual Property / Fraud) – Led team in the calculation of damages for a case where the plaintiff alleged that the defendant had failed to disclose a potential liability with regard to a possible infringement of intellectual property concerning soybean germ plasma prior to their merging of assets. The alleged liability materialized several years later and the plaintiff then sought indemnification under the benefit of the bargain method.

- Breach of Contract (Recreational Vehicles) – Rebutted the statistical validity of an opposing expert's inferences on the use of his survey design in a matter dealing with the impact of sales to a recreational manufacturer as a result of an alleged harm to their reputation due to an interior drywall component.  Within the same, case I wrote a separate report that rebutted the statistical validity of an economic expert's damage calculation that sought to calculate the impact on sales due to an alleged reputational loss.

- Breach of Contract (Furniture) – Calculated lost profit damages alleged in a breach of contract case for *DWS International, Inc.* that involved analyzing management forecasts to estimate the fair market value of a lost opportunity as it related to the patio furniture market. I testified at trial before a jury trial in the Southern District of Ohio.

- Breach of Contract (Breast Pumps) – Calculated loss profit damages alleged in a breach of contract case for *Whittlestone, Inc.* that analyzed margin risk to estimate the fair market value of a lost opportunity as it related to the electric breast pump market.

- Breach of Contract (Agricultural Commodities) – Analyzed the short-term fixed cost structure of a slaughter house operating in a perfectly competitive environment as part of a breach of contract dispute in the agricultural commodities market.

- Breach of Contract (Telecommunications) - Managed the analytical aspects of a complex damage calculation model and prepared and presented our findings to counsel in the matter of a breach of contract dispute between two U.S. telecommunications firms.

- Breach of Contract (Auto Parts) – Calculated lost profits as a result of a breach of contract regarding easement rights and advertisement obstruction.

- Breach of Contract (Hair Coloring Products) – Calculated lost profits for client, *BehindtheChair.com* in an alleged breach of contract regarding profit distributions from a hair-coloring product business.

Richard J. Eichmann

**Valuation Consulting and Litigation**

- Intellectual Property Valuation (Automotive) - Generated a cost-based valuation model for the intellectual property of a European automotive research and development facility as part of a tax minimization strategy for a multinational firm, successfully defended in court.

- Employee Stock Option Valuation (Retail Clothing) – Performed two business valuations for *Robert Talbott, Inc.* to estimate both the exercise current share price of a non-controlling, non-marketable privately-held high-end cloth manufacturer used to estimate the value of an alleged employee stock option held by a former CEO in dispute.

- Business Valuation (e-Commerce Start-Up) – Utilized ARIMA time series techniques to forecast subscription revenues of a charitable social network site, for which I calculated the fair market value of the minority interest.  The income approach relied heavily on the use of historical subscription data that allowed for a range of values within a statistically confident interval.

- Business Valuation (Telecommunications) - Conducted a business valuation of an alleged lost international telecommunications opportunity that took into consideration varying capital structures within financial projections that served to rebut a plaintiff's valuation model.

- Business Valuation (Financial Services) – Assisted with the critique of a business valuation involving a minority interest of an investment management firm arising out of an employment dispute.

**Securities**

- Securities Litigation (IPO) - Adapted 10b-5 securities litigation model to estimate alleged damages of IPO allocations and valuations, in the matter of a class action lawsuit against a consortium of major Wall Street underwriters.

- Breach of Contract (Hedge Funds) – Calculated damages for a case that dealt with breach of an investment contract between a seed financier and a hedge fund for *SGAM Newedge Management, Inc.*  The case involved valuing a hedge fund as a proxy for alleged lost profits.  I testified at a JAMS arbitration in New York.

- Securities Fraud (Stock-Option Back Dating) – Derived statistical models to examine the frequency of stock-option back dating instances and their effect on reported earnings.

- Securities Fraud (Earnings-Smoothing) – Led a team of financial economists to investigate and isolate the prevalence and method in which earnings smoothing impacted share value.

- Mortgage-Backed Securities (Statistical Analysis) – Managed and designed econometric models tasked with analyzing loss causation as it relates to losses across tranches within securitizations.

- Mortgage-Backed Securities (Statistical Analysis) – Named sampling expert in the *Galena Street Fund v. Wells Fargo Bank, N.A.* matter.

- Mortgage-Backed Securities (Statistical Analysis) – Named sampling expert in the *Federal Housing Finance Agency v. J.P. Morgan Securities LLC et al* matter.

- Mortgage-Backed Securities (Statistical Analysis) – Named sampling expert in the *Federal Home Loan Bank of Pittsburgh v. J.P. Morgan Securities LLC et al* matter.

- Mortgage-Backed Securities (Statistical Analysis) – Provided statistical support of a motion to deny class certification of a proposed class of investors that sought restitution from an underwriter for

allegedly not having properly accounted for the risk of the underlying collateral of several securitizations.

- Mortgage-Backed Securities (Statistical Analysis) – Provided statistical and econometric support examining the factors that influence the likelihood of loan default as it pertained to a class action that sought restitution of the alleged wrongdoings of a municipal bond insurance agency.

- Mortgage-Backed Securities (Statistical Analysis) – Provided statistical support in examining the difference of bid and close data provided a municipal bond insurance agency.

- Securities Litigation (10b(5)) – Conducted event studies and loss causation models on a variety of 10b(5) class action case matters.

- Insider Trading – Created an econometric model to analyze the impact and materiality of alleged insider tip investigated by the SEC.

**Commercial Class Action Litigation**

- Class Action (Eyeglasses) – Calculated damages sustained by a class of individuals whose eyeglasses had been sold to them with an alleged false claim of increased precision by *LensCrafters* AccuFit measurements.  I utilized a conjoint analysis producing a Willingness to Pay result from a mixed logit model to run a market simulation to arrive at the premium consumers paid as a result of not knowing about the misrepresentation.

- Class Action (Diesel Engines) – Calculated damages sustained by a class of individuals whose Class 8 trucks had been sold to them with a manufacturer defect relating to *Paccar* MX-13 diesel engines. I utilized a hedonic regression to isolate the effect of the defect on the resale value of the vehicles.

- Class Action (All-Terrain Vehicles) – Calculated damages sustained by a class of individuals whose ATV vehicles had been sold to them with a manufacturer defect.  I utilized a conjoint analysis producing a Willingness to Pay result from a mixed logit model to run a market simulation to arrive at the premium consumers paid as a result of not knowing about the defect.

- Class Action (Automotive) – Calculated damages sustained by a certified class of individuals whose vehicles had been inappropriately seized by a municipality.  The task involved analyzing auction and automotive valuation data to determine both the delta and the float.

- Class Action (Automotive) – Designed and managed the execution of econometric and statistical analyses of secondary market pricing in a particular vehicle segment in defense of price impact allegations due to alleged non-disclosures by *Ford Motor Company*.  We utilized econometrics to demonstrate that a recall did not, as the plaintiffs alleged, negatively impact depreciation rates of vehicles, but rather other market forces explain the sudden drop, such as rising lease terminations, market segment saturation.

- Class Action (Software Auctions) – Addressed class certification issues as they arose in matter dealing with the alleged breach of contract in the use of auctions.  The matter involved analyzing the expected value of an auction.

- Class Action (Gaming) – Hired by the Indiana state lottery commission to provide consulting services in relation to a class action litigation matter, where I designed and managed the execution of an econometric model that generated expected consumer pricing behavior of a scratch-off game. The model determined the 95 percent confidence interval of sales the lottery commission could have expected to receive but for an alleged misstatement of probabilities on their website.

Richard J. Eichmann

Class Action (Breach of Contract / Fraud) – Led team in the calculation of damages for a case where the plaintiff alleged that the defendant willingly failed to pay royalties. The case involved a stratified statistical sampling so as to investigate the liability claims of intent as well as damage implications, if any.

**False Advertising**

- False Advertising (Refresh Rates in Televisions) – Rebutted class action damages for *Vizio* in a matter involving alleged misrepresentation of refresh rates in television monitors.

- False Advertising (Enterprise Resource Planning Software Implementation) – Rebutted alleged economic damages sustained by a global salvage company due to an alleged failed ERP implementation system for *Sparta Consulting, Inc.*

- False Advertising (Credit Cards) – Calculated economic damages sustained by a credit card processing company, *Heartland Payment Systems, Inc.*, due to the alleged false advertising of its competitor regarding pass-through costs to merchants.

- False Advertising (Consumer Products) – Rebutted economic damages for *Philips Oral Healthcare, Inc.,* alleged to have been sustained class as a result of an alleged false claim regarding product quality.

- False Advertising (Trade Association) – Calculated economic damages sustained by a promoter of a trade association trade show that alleged that a competitor trade show was creating consumer confusion due to the use of their trademark infringement and false advertisement.

- False Advertising (Hand Tools) – Calculated economic damages alleged by a class as a result of false advertising, which promoted hand tools sold in the United States as "American made."

- False Advertising ('Sippy' Cups) – Calculated economic damages alleged by a competitor as a result of false advertising, which stated that certain children's 'sippy' cups held certain patents, which they did not.

- False Advertising (Beverages) – Calculated economic damages alleged by a competitor as a result of consumer confusion brought on due to false advertising, which stated that certain beverages held certain ingredients, which they did not

**Labor and Employment Litigation**

- Class Action (Discrimination) – Analyzed the economics relating to the closing of certain call-centers for an airline company alleged of engaging in age discrimination. While initial analyses provided prima facie evidence of possible age discrimination when identifying the statistical differences among call-centers, further analysis indicated that regional influences were in fact greater and more prominent in influencing the company's actions.

- Class Action (Discrimination) – Generated a probit econometric model of the firm's data to model the effects of race, gender, and other attributes and their alleged effect on the probability of an employee being fired as part of an alleged employment discrimination case.

- Class Action (Discrimination) – Analyzed class certification issues as they related to an allegation that defendant chose to close an airline call-center due to the gender and age of its employees. The analysis included both an inquiry of descriptive and inferential statistics as well as cost accounting considerations

7

**Richard J. Eichmann**

- Class Action (Discrimination) – Designed and managed statistical and econometric analyses to investigate the allegation of discriminatory behavior within a major bottling distributor.

- Class Action (Wage/Hour Dispute) – Analyzed class certification issues as they related to a wage-hour dispute of a perfume manufacturer.  Conducted a stratified sampling exercise of hand-written invoices of proposed class members and examined the variability, if any, of their work experiences that would influence whether or not they were improperly classified as independent contractors.

- Class Action (Wage/Hour Dispute) – Analyzed class certification issues as they related to a wage-hour dispute of the *Skywest* airline company.  Examined various influencing factors that played a role in determining the probability of an alleged class member missing his/her lunch break and how the variance revealed from the data among the influencing factors affects commonality among the alleged class members.

### Economic and Statistical Consulting

- Statistical (Gemology) – Designed statistical tests to examine the likelihood of collusion within international grading facilities of various gems, including diamonds.

- Economic (Automotive Markets) – Co-authored the U.S. automotive industry newsletter for J.D. Power and Associates, working directly under the senior economist in executing and managing their syndicated market forecasts and reviews.

- Econometrics (Forecasting) - Created and maintained ARIMA production and sales forecast models for the U.S. and developing markets, including Asia and Latin America.

- Forensic Investigations – Led a FCPA investigation for a U.S. petroleum company with subsidiaries in the Latin America.  The case dealt with utilizing statistical techniques on a large set of general ledger transactions and a series of financial statement analyses that ultimately revealed a complex fraud where funds were being laundered via service contracts to funnel bribes.

Richard J. Eichmann

# Education

| | |
|---|---|
| 2020 | California Institute for Integral Studies, San Francisco, CA<br>**Graduate Student in Philosophy** |
| 2000 | George Mason University, Fairfax, VA<br>**Doctoral Economics Department Coursework** |
| 1996 | University of Michigan, Ann Arbor, MI<br>**M.A. in Applied Economics**<br>Completed Comprehensive Exams<br>Completed Econometrics Field Exam |
| 1995 | University of Michigan, Ann Arbor, MI<br>**BA, Economics**<br>Thesis "*Essays in Stochastic Growth*" |
| 1995 | University of Michigan, Ann Arbor, MI<br>**BA, Philosophy**<br>Thesis: "*An Epistemological Critique of Kantian Objective Reality*" |

# Certifications

| | |
|---|---|
| 2016 | National Association for Certified Valuators and Analysts (NACVA)<br>**Master Analyst in Financial Forensics (MAFF)** - Commercial Damages<br>Credential ID 703 |
| 2009 | National Association for Certified Valuators and Analysts (NACVA)<br>**Certified Valuation Analyst (CVA)**<br>Credential ID 991115 |

# Certificates Completed

| | |
|---|---|
| 2020 | Berkeley Law Executive Program (Online Program)<br>**Certificate in Artificial Intelligence** |
| 2020 | Berkeley Center for Law & Technology (Online Program)<br>**Certificate in China Law, Trade, and IP** |
| 2020 | Indian Institute of Technology (IIT), Bombay (Online Program)<br>**Certificate in Computer Science** |
| 2020 | HarvardX (Online Program)<br>**Certificate in Computer Science and Mobile Apps** |

Richard J. Eichmann

eCornell (Online Program)
2020     **Certificate in 5G Strategy**


# Professional Experience

**NERA Economic Consulting**, San Francisco, CA and Los Angeles, CA
2014 - present   Senior Vice President / Managing Director (2020 – present)
Vice President / Director (2014 – 2019)
Economic Damages / Litigation Consulting

**FTI Consulting, Inc.**, San Francisco, CA (2009 – 2014) and Chicago, IL (2004 – 2009)
2004 - 2014   Managing Director (2009 – 2014)
Director (2006 – 2008)
Manager (2004 – 2006)
Forensic & Litigation Consulting
Economic Damages / Litigation Consulting

**Cornerstone Research**, Washington, D.C.
2001 - 2004   Research Associate (2001 – 2004)
Economic Analysis and Dispute Advisory Services
Economic Damages / Litigation Consulting

**Ernst & Young, LLP**, Washington D.C. and Detroit, MI
2000 - 2001   Senior Consultant (2000 – 2001)
Economic and Quantitative Analysis
Valuation of Intangible Assets for Transfer Pricing Purposes

**KPMG, LLP**, Washington D.C.
1998 - 2000   Consultant (1998 – 2000)
Forensic and Litigation Consulting
Economic Damages / Litigation Consulting

**J.D. Power and Associates**, Troy, MI
1996 - 1998   Analyst (1997 – 1998)
Research Analyst (1996 – 1997)
Forecasting and Economic Analysis
Econometric and Discrete Choice Modeling Survey Analysis

**University of Michigan**, Ann Arbor, MI
1995 - 1996   Researcher, Inter-University Consortium for Political and Social Research
1993 - 1996   Researcher, Institute for Social Research (ISR), Survey Research Center

Richard J. Eichmann

# Teaching Experience

2015 - present
**National Association for Certified Valuators and Analysts (NACVA)**
Teach valuation training courses concerning econometrics and intellectual property damages as part of the Financial Forensics training program

2005 – 2014
**FTI Consulting, Inc.**
Developed and taught a three-day CLE-approved course titled "Calculating Economic Damages in Commercial Litigation" as part of the national training for consultants and senior consultants across all FTI Consulting, Inc. business segments.

1998 - 1999
**Northern Virginia Community College, Alexandria, VA**
Adjunct Lecturer within the Department of Economics, teaching "Microeconomics 101" and "Macroeconomics 102"

1995 - 1996
(summers)
**University of Michigan, Institute for Social Research (ISR), Survey Research Center**
Teaching Assistant for the Summer Institute in Social Research Methods, assigned to assist international graduate students taking courses "Introductory Statistical Methods and Applications for the Social Sciences" as well as "Econometrics"

# Honors and Awards

2014
**National Association of Certified Valuators and Analysts**
Named one of the "40 Under Forty" valuation analysts.

2005 - 2014
**FTI Consulting, Inc.**
Recognized for "Excellent Contributions in Training" for 9 years in a row

# Publications

1. "Forward Citation Analysis as a Means to Apportion Relative Value in Patent Infringement Cases," published by the National Association for Certified Valuators and Analysts (NACVA), QuickRead on February 18, 2016.

2. "An Overview of Methods for Estimating Lost Revenues in Economic Damages," published by the National Association for Certified Valuators and Analysts (NACVA), QuickRead on June 18, 2015.

3. "Use of Two-Stage Linear Regression Models in Identifying the Existence and Extent of Affected Commerce in Price-Fixing Cases," co-author with M. Mercurio, working paper.

4. "Continuing Patent Applications and Performance of the U.S. Patent and Trademark Office – Extended," co-authors C. Quillen and O. Webster, The Federal Circuit Bar Journal, August 2002.

**Richard J. Eichmann**

5.  "Southeast Asian Crisis: Implications in the Asian Automotive Industry," co-author R. Schnorbus, J.D. Power and Associates Syndicated Report, December 1997.

# Presentations

1.  "IP & Antitrust: Considerations for the High-Tech Sector," panelist, hosted by Antitrust West Coast Conference, held on November 17, 2020.

2.  "Lost Profits: Principles, Methods and Strategies to Prove and Defend Damages LIVE Webcast," presenter, hosted by The Knowledge Group, held on October 7, 2019.

3.  "Smallest Saleable Patent-Practicing Unit when Deriving FRAND in Light of Recent Federal Rulings," presenter, hosted by the Damages and Injunction Committee of the IPO, held on June 13, 2019 via a Committee hosted webinar.

4.  "The Concept of Apportionment in Patent Infringement Matters: Methods Considered," presented at the NACVA and CTI's 2019 Annual Consultants' Conference in Salt Lake City, UT on June 6, 2019.

5.  "Overview of Damages in IP Litigation Involving Standard Essential Patents (SEPs)," presented as part of the "Issues in Litigation" section of the Western Economic Association International (WEAI) Conference in Tokyo, Japan on March 22, 2019.  https://weai.org/files/view/26/Prelim-Prog-Tokyo2019.pdf

6.  "Calculating Intellectual Property Damages – How to Prepare for the 2019 Landscape," co-presenter, hosted by The Knowledge Group, held on February 13, 2019 via webinar. https://www.theknowledgegroup.org/webcasts/calculating-intellectual-property-damages/

7.  "IP and Antitrust Developments for the High Tech Sector," panelist, Antitrust West Coast 2019, held on February 12, 2019 in San Francisco, CA, https://law.knect365.com/antitrust-usa-west-coast/.

8.  "An Overview of Damages and the Role of the Damages Expert in Intellectual Property," instructor, Financial Valuation Seminar, hosted by the National Association of Certified Valuators and Analysts (NACVA), held on December 14, 2018 in Ft. Lauderdale, Florida, http://www.nacvanation.com/ftlauderdale/.

9.  "Transnational IP Litigation: Opportunities and Challenges – Focus on US IP Litigation," panelist, Berkeley-Tsinghua Annual Forum of 2018, jointly hosted by the Berkeley and Tsinghua Schools of Law, held on December 4, 2018 in Beijing, China, https://tbsi.berkeley.edu.

10. "Trade Secret Damages: Remedies for Victims of Trade Secret Violations," panelist, hosted by the Daily Journal Professional Education, held on October 30, 2018 in Palo Alto, California, http://legacy.callawyer.com/events/trade-secrets-2018/#event-venue.

11. "Factors to Consider for Injunctive Relief from an Economic Perspective: Irreparable Harm," presenter, hosted by the Damages and Injunction Committee of the IPO, held on October 11, 2018 via a Committee hosted webinar.

**Richard J. Eichmann**

12. "Mock International Arbitration: Toward Early Dispute Resolution of Standard Essential Patents (SEPs) in the 5G Era," presenter, hosted by the Japan Patent Office, the University of Tokyo, and the Rader Foundation, held on June 29, 2018 at the University of Tokyo, Japan, http://www.jpo.go.jp/shoukai_e/soshiki_e/photo_gallery2018062991.html.

13. "Patent Infringement Damages," presented on February 1, 2018, presenter, hosted by The Knowledge Group via a webinar, https://www.theknowledgegroup.org/webcasts/patent-infringement-and-damages.

14. "Trade Secret Damages from the Perspective of a Damages Expert," presented on October 18, 2017, as a guest lecturer for the UC-Davis School of Law course titled "Trade Secrets and Restrictive Covenants, Employee Mobility, Raids, and Corporate Espionage."

15. "Trade Secret Damages and Remedies," co-presenter, hosted on May 19, 2017 by Bridgeport Continuing Education in San Francisco, California, http://bridgeportce.com/bridgeportce/live-programs/trade-secret-and-employee-mobility-san-francisco-2017.html.

16. "A Penny or a Pound: Apportioning Damages in Patent Cases," panel member hosted on May 17, 2017, by the Licensing Executive Society (LES), Silicon Valley Chapter in Palo Alto, California, http://www.lesusacanada.org/event/201705svc.

17. "Raising Start-Up Capital," panel member of a webinar, hosted by Expert Webcast on January 7, 2016, available on demand at http://www.expertwebcast.com/raising-start-up-capital/.

18. "Patent Infringement Reasonable Royalty Damages: Apportion the Increment?," panel member hosted by the Asian Pacific American Bar Association (APABA) in Palo Alto, CA on November 23, 2015.

19. "Calculation of Economic Damages in Patent Litigation Matters," at the Financial Forensics and Expert Witness Conference, hosted by the National Association for Certified Valuators and Analysts (NACVA) in Houston, TX on October 19, 2015.

20. "Ease of Enforcement and Magnitude of Damages Awards as Determinative Factors in Establishing the Market Value of a Patent: Trends in IP Damages Awards," at the Tenth Annual Conference on Best Practices in Patent Monetization, hosted by Law Seminars International in San Francisco, CA on March 26, 2015.

21. "Supreme Court Takes a Middle Path in Reaffirming Fraud on the Market Theory," presented via Thomson Reuters as a national webinar on September 3, 2014 and currently available online via West LegalEdCenter.

22. "Statistical and Technological-Based Fact-Gathering in Wage-and-Hour Cases," at the Annual Wage & Hour Conference presented via Bridgeport Continuing Education in San Francisco, CA on October 10, 2013.

**Richard J. Eichmann**

23. "Business Damages Analysis & Modeling: Litigating and Proving Damages," presented via Bridgeport Continuing Education in San Francisco, CA on May 10, 2013.

24. "New Disclosure Rules and What They Mean For ERISA Class Certification," panel speaker for FTI Consulting ERISA Fiduciary Litigation and Compliance Breakfast Series 2012 in Chicago, IL on April 24, 2012.

25. "Understanding and Proving Damages: Business Damages Analysis and Modeling," presented via Bridgeport Continuing Education in San Francisco, CA on April 12, 2012.

26. "Litigating a Trade Secret Case: Economic Damage Considerations," presented via Bridgeport Continuing Education in San Francisco, CA on December 9, 2010.

27. "Financial Forecasting," presented within the Mergers and Acquisitions section of the American Institute of Certified Public Accountants (AICPA) meeting held in San Francisco, CA on August 4, 2010.

28. "Application of Multivariate Regression Analysis in Identifying Economic Damages," white paper presented under the "Law and Crime" section of the Western Economic Association International Annual Conference in Portland, Oregon on July 1, 2010.

29. "The Use of Regression Analysis as a Means to Better Forecast Sales When Using the DCF Method," presented within the Business Valuation section of the National Association of Certified Valuators and Analysts (NACVA) and Institute of Business Appraisers (IBA), 2010 Annual Consultants' Conference, held in Miami, Florida, on June 4, 2010, now available online as a webinar (https://www.nacva.com/store_product.asp?prodid=120).

30. "Hand Rule as a Basis for Calculating Punitive Damages" paper originally presented at the Southern Economic Association Conference in Washington, DC on November 19, 2005 and again at the Annual Meeting of the World Institute for Research and Publication (WIRP) – Law on May 16, 2010.

31. "Use of Two-Stage Linear Regression Models in Identifying the Existence and Extent of Affected Commerce in Price-Fixing Cases," paper to be co-presented with M. Mercurio under the "Commercial Damages and Antitrust Litigation" section of the Western Economic Association International Annual Conference in Vancouver, B.C. on July 1, 2009.

32. "An Economic Analysis of Punitive Damages" co-presented with Andrew Frey of Mayer, Brown, Rowe & Maw LLP and John Thomas, Office of General Counsel of Ford Motor Company at a conference titled "Managing Risks in High Stakes Litigation" in Chicago, IL on December 2, 2004.

Richard J. Eichmann

# Expert Designations and Testimony

1. *Express Lien, Inc. v. Handle, Inc. et al.*, U.S. District Court, Eastern District of Louisiana, Case No. 2:19-cv-10156-SSV-MBN, Expert Report filed on March 10, 2021, Deposition Testimony given April 30, 2021. (Hon. Jane T. Milazzo).

2. *RingCentral, Inc. v. Nextiva, Inc. et al.*, U.S. District Court, Northern District of California, Case No. 5:19-cv-02626-NMC, Expert Report filed on January 19, 2021, Rebuttal Report filed on February 24, 2021, Deposition Testimony given on March 12, 2021. (Hon. Nathanael M. Cousins)

3. *Robert Ponzio et al. v. Mercedes-Benz USA, LLC and Daimler AG*, U.S. District Court, Northern District of Georgia, Atlanta Division, Case No. 1:18-CV-03984-MHC, Declaration filed on January 27, 2021. (Hon. Joseph H. Rodriguez)

4. *JBF Interlude 2009 LTD – Israel (collectively, "Eko") v. Quibi Holdings, Inc.*, U.S. District Court, Central District of California, Western Division, Civil Action No. 2:20-CV-2299, Declaration filed on April 1, 2020, Reply Declaration filed on April 21, 2020, Declaration filed on October 27, 2020, Deposition Testimony given on December 8, 2020. (Hon. John A. Kronstadt)

5. *Apartment Owners Association of California, Inc. et al. v. City of Los Angeles et al.*, Superior Court of the State of California for the County of Los Angeles, Consolidated Case No. BC709658, Expert Report filed October 21, 2020, Deposition Testimony given on November 23, 2020 (Hon. Maren E. Nelson)

6. *TecSec, Incorporated v. International Business Machines Corporation, SAS Institute, Inc., SAP America, Inc., SAP AG, Cisco Systems, Inc., Oracle America, Inc. (f/k/a Sun Microsystems, Inc.), Sybase, Inc., Software AG, Adobe Systems, Inc., eBay, Inc., Paypal, Inc. and Oracle Corporation*, U.S. District Court, Eastern District of Virginia, Case No. 110-cv-115 LMB/TCB, Expert Report filed August 17, 2020, Deposition Testimony given on September 15, 2020 (Hon. Liam O'Grady)

7. *SZ DJI Technology Co., Ltd. and DJI Europe B.V. v. Autel Robotics USA, LLC and Autel Aerial Technology Co. Ltd.*, U.S. District Court, District of Delaware, Civil Action No. 1:16-CV-00706-LPS-CJB, Expert Report filed on January 19, 2018, Supplemental Report filed on March 7, 2018, Rebuttal Report filed on January 23, 2020, Deposition Testimony given on February 11, 2020, Supplemental Rebuttal Report filed on June 22, 2020, Deposition Testimony given on July 6, 2020. (Hon. Leonard P. Stark)

8. *Ariza et al. v. Luxottica Retail North America, d/b/a, LensCrafters*, United States District Court, Eastern District of New York, Brooklyn Division, Case No. 1:17-cv-05216-PKC-RLM, Expert Report filed on September 10, 2019, Rebuttal Report filed on November 13, 2019, Deposition Testimony given on December 10, 2019, Declaration filed on February 18, 2020.

9. *Quest Software, Inc. v. Nike, Inc.*, United States District Court for the District of Oregon, Portland Division, Case No. 3:18-cv-00721, Expert Report filed on July 19, 2019.

10. *JRV, LLC et al. v. Winery Exchange, Inc.*, JAMS Arbitration – San Francisco Resolution Center,

**Richard J. Eichmann**

Reference Number 1100090897, Expert Report filed on May 15, 2019, Rebuttal Report filed on May 25, 2019, Deposition Testimony given on May 28, 2019, Arbitration Testimony given on June 20, 2019. (Ms. Zela "Zee" G. Claiborne, Esq.)

11. *BK Trucking Co. et al. v. Paccar, Inc. et al.*, United States District Court, District of New Jersey, Case No. 1:15-cv-02282-JPS-AMD, Expert Report filed on January 14, 2019, Supplemental Report filed on April 12, 2019, Rebuttal Report filed on June 7, 2019, Deposition Testimony given on June 19, 2019. (Hon. Jermone B. Simandle)

12. *Roadrunner Intermodal Services, LLC v. T.G.S. Transportation, Inc.*, U.S. District Court Eastern District of California, Case No. 1:17-CV-01056-DAD-BAM, Declaration filed on October 24, 2017, Expert Report filed on March 11, 2019, Deposition Testimony given on April 4, 2019, Supplemental Report filed on April 12, 2019, Deposition Testimony given on April 23, 2019. (Hon. Dale A. Drozd)

13. *Manufacturing Resources International, Inc. v. Civiq Smartscapes, LLC et al.*, United States District Court, District of Delaware, Case No. 1:17-cv-00269-RGA, Expert Report filed on February 19, 2019, Deposition Testimony given on April 2, 2019. (Hon. Richard G. Andrews)

14. *Micrel, LLC v. Ray Zinn*, Superior Court of the State of California For the County of San Mateo, Case No. 538785, Expert Report filed on March 23, 2017, Deposition Testimony given on April 26, 2017, Trial Testimony given on January 10, 2019. (Hon. Richard H. DuBois)

15. *Johannessohn et al. v. Polaris Industries, Inc.*, United States District Court, District of Montana, Case No. 0:16-cv-03348-PJS-LIB, Expert Report filed on November 16, 2018, Deposition Testimony given on January 17, 2019, Expert Report filed on March 21, 2019. (Hon. Nancy Brasel)

16. *TQ Delta, LLC v. 2Wire, Inc.*, United States District Court for the District of Delaware, Case No. 13-cv-1835-RGA, Expert Report filed on November 9, 2018, Expert Report filed on November 29, 2018, Deposition Testimony given on December 17, 2018, Expert Report filed on December 28, 2018, Deposition Testimony given on January 29, 2019. (Hon. Richard G. Andrews)

17. *Dell'Oro Group, Inc. v. 650 Group, LLC et al.*, U.S. District Court, Northern District of California, San Francisco Division, Case No. 3:17-cv-00750-JD, Expert Report filed on August 7, 2018, Declaration filed on September 10, 2018, and Supplemental Expert Report filed on September 20, 2018.

18. *Copart, Inc. v. Sparta Consulting*, U.S. District Court Eastern District of California, Case No. 2:14-CV-0046-KJM-CKD, Affirmative Expert Report regarding Counter-Claims, May 31, 2016, Rebuttal Report regarding Contract Claims filed on November 24, 2016, Rebuttal Report regarding Trade Secret Claims filed on December 16, 2016, Deposition Testimony given on January 17, 2017, Trial Testimony given on May 16, 2018. (Hon. Kimberly J. Mueller)

19. *CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, United States District Court, Middle District of Louisiana, Case No. 3:09-cv-01047, Expert Report filed April 14, 2018. (Hon. Janice Clark)

**Richard J. Eichmann**

20. <u>Quantumscape Corporation</u> v. *Z. Chen & K. Kerman*, Judicial Arbitration and Mediation Services, Inc., Reference Number 1100088671, Deposition Testimony given April 10, 2018.

21. <u>The Parallax Group International, LLC</u> v. *Incstores, LLC*, U.S. District Court Central District of California, The Southern District, Case No. 8:16-cv-929-AG-DFM, Expert Report filed on August 3, 2017, Deposition Testimony given on March 20, 2018. (Hon. Andrew J. Guilford)

22. <u>Polygroup Limited (MCO), (Petitioner)</u> v. *Willis Electric Company, Limited (Patent Owner)*, United States Patent and Trademark Office Before the Patent Trial and Appeal Board, Case Nos. IPR2016-01610; -01612, Declaration filed on August 23, 2017, Deposition Testimony given on September 26, 2017, and, Supplemental Declaration filed on November 13, 2017 and on December 8, 2017.

23. *Evolved Wireless, LLC v. Lenovo Group, Ltd., Lenovo (United States) Inc., and* <u>Motorola Mobility LLC</u>, U.S. District Court District of Delaware, Case No. 1:15-cv-00544-SLR, Expert Report filed on July 17, 2017, Deposition Testimony given on August 15, 2017. (Hon. Sue Lewis Robinson)

24. *The Regents of the University of California v.* <u>St. Jude Medical, Inc.</u>, U.S. District Court Northern District of California, Oakland Division, Case No. 4:16-cv-06210-YGR. (Hon. Yvonne Gonzalez Rogers)

25. <u>BehindtheChair.com</u> v. *D. Christal; Olaplex, LLC; LiQWD, Inc.*, Superior Court of California, County of Los Angeles, LASC Case No. BC 569584, Expert Report filed April 6, 2017, Deposition Testimony given on April 13, 2017. (Hon. Debre K. Weintraub)

26. *Robert Larsen et al. v.* <u>Vizio, Inc.</u>, United States District Court, Central District of California – Southern Division, Case No. 8:14-cv-01865-CJC-JCG, Expert Report completed March 27, 2017. (Hon. Cormac J. Carney)

27. *JoAnna C. Sullivan v.* <u>Stephen A. Finn</u>, United States District Court, California Northern District, Case No. 3:16:cv-01948-WHO, Expert Report filed on March 1, 2017. (Hon. William H. Orrick)

28. <u>Improved Search, LLC</u> v. *AOL, Inc.*, In the United States District For the District of Delaware, Case No. 12-262 (SLR) (SRF). (Hon. Leonard P. Stark)

29. <u>San Francisco News Paper Company LLC</u> v. *Hearst Corporation et al.*, Superior Court of the State of California For the City and County of San Francisco, Case No. CGC-13-532369, Expert Report filed on November 10, 2016; Deposition Testimony given on December 9, 2016; Supplemental Report filed on April 24, 2017; and, Deposition Testimony given on May 23, 2017. (Hon. Curtis E. Karnow)

30. <u>Reily Foods Company, Inc.</u> v. *Schiff Food Products Company, Inc. et al.*, U.S. District Court for the Eastern District of Louisiana, Civil Action No. 16-01505, Expert Report filed on December 6, 2016, Mediation December 7 – 8, 2016. (Hon. Jane Triche Milazzo)

31. *Recovery Village at Umatilla, L.L.C. v.* <u>Humana Health Insurance Company of Florida, Inc. et al.</u>, In the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Complex Litigation Unit, Case No. CACE 15-014725(07), Expert Report completed on December 16, 2016.

17

**Richard J. Eichmann**

32. *FatPipe, Inc. v. Talari Networks, Inc.*, U.S. District Court for the Eastern District of Texas, Tyler Division, Case No. 6:15-cv-00458-RWS. (Hon. Robert W. Schroeder, III)

33. *State of Oregon, the Oregon Health Authority, and the Oregon Department of Human Services; the Oregon Health Insurance Exchange Corporation, dba Cover Oregon v. Oracle America, Inc. et al.*, In the Circuit Court of the State of Oregon, For the County of Marion, No. 14 C 20043.  Case settled on September 15, 2015. (Hon. Anna J. Brown) (http://www.oregonlive.com/politics/index.ssf/2016/09/post_183.html).

34. *Clos LaChance Wines, Inc. v. A.V. Brands, Inc.*, JAMS Arbitration, Expert Report and Deposition Testimony filed and given on February 19, 2016, Arbitration Testimony given on March 8, 2016.

35. *Racing Optics, Inc. v. Aevoe Corporation*, U.S. District Court for the District of Nevada, Civil Action No. 2:15-cv-01774-JCM-VCF. (Hon. Robert C. Jones)

36. *Ferring B.V. v. Fera Pharmaceuticals, LLC, Perrigo Company, Perrigo Company PLC, Perrigo Company of Tennessee, and Perrigo New York, Inc.*, U.S. District Court for the Eastern District of New York, Civil Action No. 2:13-CV-04640, Expert Report, December 11, 2015. (Hon. Sandra J. Feuerstein)

37. *Better Mouse Company, LLC v. SteelSeries APS; and SteelSeries North America Corp.*, U.S. District Court for the Eastern District of Texas, Marshall Division, Case No. 2:14-cv-198, Expert Report, filed on September 24, 2015, Trial Testimony given on January 13, 2016. (Hon. Roy S. Payne) (http://www.nera.com/publications/archive/2016/nera_s-role-in-better-mouse-company--llc-v--steelseries-aps-et-a.html)

38. *Heartland Payment Systems, Inc. v. Mercury Payment Systems*, LLC, U.S. District Court for the Northern District of California, San Francisco Division, Case No. 3:14-cv-00437-JCS. (Hon. Joseph C. Spero)

39. *Emblaze LTD. v. Microsoft Corporation*, U.S. District Court for the Northern District of California, Case No. 3:12-cv-5422 JST. (Hon. Yvonne Gonzalez Rogers)

40. *FormFactor, Inc. v. MarTek, Inc.*, U.S. District Court for the Northern District of California, San Francisco Division, Case No. 3:14-cv-01122, Expert Report May 1, 2015. (Hon. James Donato)

41. *Interstate Fire & Casualty Company and Firemen's Fund Insurance Company v. Apartment Management Consultants, LLC, Sunridge Partners, LLC, and Amber Nicole Lompe*, U.S. District Court for the District of Wyoming, Civil Action No. 13-CV-278 J, Expert Report March 18, 2015, Deposition Testimony, June 8, 2015, and Supplemental Expert Report, August 13, 2015. (Hon. Alan B. Johnson)

42. *Good Technology Corporation and Good Technology Software, Inc. v. MobileIron, Inc.*, U.S. District Court for the Northern District of California, San Jose Division Case No. 12-05826-EDL, Expert Report filed on January 9, 2015 and February 13, 2015; and, Trial Testimony given on July 28, 2015.

**Richard J. Eichmann**

(Hon. Paul Signh Grewal)

43. *Fujifilm Corporation v. <u>Motorola Mobility LLC</u>*, United States District Court Northern District of California San Francisco Division Case No. C 12-03587 RS, Expert Report filed on October 31, 2014 and January 15, 2015; Deposition Testimony given on November 18, 2014; and, January 26, 2015; and, Trial Testimony given on April 28, 2015. (Hon. William H. Orrick)

44. *Coe et al. v. <u>Philips Oral Healthcare, Inc.</u>*, United States District Court Western District of Washington Master Docket No. 2:13-cv-00518-MJP. (Hon. Marsha J. Pechman)

45. *<u>Venture Corporation LTD and Venture Design Services, Inc.</u> v. James Barrett*, U.S. District Court for the Northern District of California Case No. CV-13-03384-PSG (ADR), Expert Report filed on October 6, 2014. (Hon. Paul Singh Grewal)

46. *M. Villanueva et al. v. <u>Fidelity National Title Company, et al.</u>*, Santa Clara County Superior Court Case No. 1-10-CV-173356, Expert Report filed on March 20, 2014, Deposition Testimony given on March 21, 2014; and, Trial Testimony given on May 15, 2014. (Hon. Peter H. Kirwan)

47. *Federal Housing Finance Agency, etc. v. <u>JPMorgan Chase et al.</u>*, U.S. District Court Southern District of New York Case No. 11 Civ. 6188(DLC). (Hon. Denise Kote)

48. *KB Homes v. <u>K&L Gates, LLP (aka Kirkpatrick & Lockhart Preston Gates Ellis LLP) et al</u>*, Los Angeles County Superior Court Case No. BC484090, Rebuttal Declaration filed on May 5, 2014, Expert Report filed on January 17, 2014, and Deposition Testimony given on January 23, 2014. (Hon. William F. Highberger)

49. *Galena Street Fund, L.P. v. <u>Wells Fargo Bank, N.A.</u>*, U.S. District Court for the District of Colorado Case No. 1:12-cv-00587-MSK, Expert Report filed on May 2, 2014. (Hon. Michael J. Wantanabe)

50. *Hyphenated Systems, LLC v. <u>Brukar Nano, Inc. et al</u>*, Santa Ana County Superior Court, Unlimited Jurisdiction Case No. 1-11-CV212650, Expert Report and Deposition Testimony filed and given on October 22, 2013.

51. *<u>Henry A., et al.</u> v. Michael Willden, et al*, U.S. District Court, District of Nevada Case No. 2:10-CV-00528- RCJ-PAL. (Hon. Robert C. Jones)

52. *Uthe Technology Corporation v. <u>Aetrium, Inc., Henry Allen, et al</u>*, U.S. District Court, Northern District of California, San Francisco Division Case No. 3:95-cv-02377-WHA, Expert Report filed on June 14, 2013 and, Deposition Testimony given on June 19, 2013. (Hon. William Alsup) (https://www.law360.com/articles/471175/uthe-s-20-year-racketeering-fight-with-aetrium-ends)

53. *Richard Cohen v. <u>Robert Talbott, Inc.</u>*, American Arbitration Association Case No. 74 116 170 11 DECR.

54. *Wireless Ink Corporation v. <u>Facebook, Inc.</u>, Google, Inc., Youtube, Inc., Youtube LLC, and MySpace, Inc.*, U.S. District Court, Southern District of New York Case No. 10-cv-1841 and 11.cv-1751,

**Richard J. Eichmann**

Declaration on August 6, 2012. (Hon. P. Kevin Castel)

55. *Allied Fellowship Service v. RMD Services I, LLC et al*., Alameda County Superior Court Case No. RG09488702. (Hon. P. Kevin Castel)

56. *Whittlestone, Inc. v. Handi-Craft Company*, U.S. District Court, Northern District of California, Oakland Division Case No. 08-04193 SBA, Expert Report filed on May 14, 2012, and Deposition Testimony given on June 14, 2012. (Hon. Jacqueline Scott Corley) (https://www.law360.com/articles/187910/motions-to-strike-can-t-nix-damages-claims-9th-circ-)

57. *C. Sclimenti v. The Leland Stanford Junior University et al*., U.S. District Court, Southern District of California Case No. 08-cv-01730-W-BLM, Expert Report filed on February 1, 2011, and Deposition Testimony given on May 6, 2011. (Hon. Anthony J. Battaglia)

58. *Cardstore.com, Inc. f/k/a Ink2 Corporation v. Mimeo.com, Inc*., JAMS Arbitration, Expert Report completed on December 21, 2010 (settled date of filing).

59. *DWS International, Inc. dba Marble Dimensions Worldwide v. Meixia Arts and Handcrafts Co. Ltd., Home Casual, LLC, et al*, U.S. District Court, Southern District of Ohio, Case No. 3:09cv458, Expert Report filed on August 16, 2010, Deposition Testimony given on January 21, 2011 and, Trial Testimony given on June 24, 2011. (Hon. Thomas M. Rose)

60. *LBV Asset Management LLP et al. v. SGAM Newedge Management, Inc. et al*, JAMS Arbitration, Expert Report filed on April 28, 2010, Supplemental Expert Report filed on June 2, 2010, and Arbitration Testimony given on June 10, 2010.

61. *Celso Robledo et al. v. City of Chicago et al*., U.S. District Court, Northern District of Illinois, Eastern Division Case No. 05 C 0335, Expert Report filed on November 21, 2008. (Hon. Elaine E. Bucklo)

62. *Coachmen Industries et al. v. Crane Composites, Inc. f/k/a Kemlite*, U.S. District Court, Northern District of Indiana Case No. 3:06-CV-0160-CAN, Expert Report filed on July 1, 2007 and separate Expert Report filed on June 21, 2007 and July 1, 2007. (Hon. Christopher A. Neuchterlein) (https://www.law360.com/articles/97785/crane-to-pay-18m-to-settle-lumpy-rv-suit)

63. *Tiffany Blackwell et al. v. Skywest Airlines, Inc*., U.S. District Court, Southern District of California Case No. 06CV0307, Expert Report filed on June 25, 2007.  (Hon. Dana M. Sabraw) (https://www.law360.com/articles/79187/airline-exempt-from-calif-meal-rest-laws-judge

# Appendix 2

Richard Eichmann
July 21, 2021

**Documents Relied Upon**

**Articles and Websites**

- "Definitions of our Values," Kelly Blue Book, https://b2b.kbb.com/kbb-vehicle-values/definitions-of-our-values, last accessed July 15, 2021.

- "My Car's Value," Kelly Blue Book, https://www.kbb.com/whats-my-car-worth, last accessed July 20, 2021.

- "What is Your Vehicle's Condition?", Kelly Blue Book, https://www.kbb.com/mercedes-benz/c-class/2005/c-230-sport-sedan-4d/options/?intent=trade-in-sell&mileage=100000&optionstype=pricestandard&vehicleid=1194, last accessed July 20, 2021.

**Expert Reports and Materials**

- Expert Report of Garrett Glasgow, Ph.D., dated July 21, 2021.

**Declarations and Legal Filings**

- Lee M. Bowron Declaration, filed April 27, 2021 ("Bowron Declaration").

- Plaintiffs' Unopposed Motion for Award of Attorney's Fees, Expenses, and Class Representative Service Awards, and Incorporated Memorandum of Law, filed April 28, 2021.

- Third Amended Class Action Complaint, Document 55, filed June 22, 2020.

- Document 70-1, filed December 21, 2020.