## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

<table>
<tr>
<td>

**EMILY PINON, GARY C. KLEIN, KIM BROWN, JOSHUA FRANKUM, DINEZ WEBSTER, and TODD BRYAN, on behalf of themselves and all others similarly situated,**

         **Plaintiffs,**

    **v.**

**MERCEDES-BENZ USA, LLC, and DAIMLER AG,**

         **Defendants.**

</td>
<td>

**CASE NO: 1:18-CV-03984-MHC**

</td>
</tr>
</table>

## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................I

MEMORANDUM OF POINTS AND AUTHORITIES .........................................1

I.    INTRODUCTION ...............................................................................1

II.   SETTLEMENT TERMS .....................................................................3

    A.   THE CLASS DEFINITION ...............................................................3

    B.   THE SETTLEMENT'S BENEFITS TO CLASS MEMBERS ..............................3

    C.   ATTORNEYS' FEES WILL BE PAID IN ADDITION TO THE
SETTLEMENT AMOUNT AFTER FINAL APPROVAL ...................................5

    D.   NOTICE TO THE CLASS ...............................................................6

    E.   CLASS REPRESENTATIVE SERVICE AWARDS.........................................7

III.  ARGUMENT.........................................................................................8

    A.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE. .................9

       1.   Rule 23(e)(2)(A): The Class Representatives and Class
Counsel Have Vigorously Represented the Class. .................10

       2.   Rule 23(e)(2)(B): The Settlement Resulted from
Informed Arm's-Length Negotiations. .....................................11

       3.   Rule 23(e)(2)(C): The Relief under the Settlement is
Outstanding. ..............................................................................12

          a.   *Rule 23(e)(2)(C)(i): The relief obtained is
substantial, particularly in light of the costs, risks,
and delay of trial.*............................................................13

          b.   *Rule 23(e)(2)(C)(ii): The Claims process was
effective.* ..........................................................................13

          c.   *Rule 23(e)(2)(C)(iii): The terms of the proposed
award of attorney's fees prioritizes Class
Members.* ..........................................................................14

          d.   *Rule 23(e)(2)(C)(iv): There are no undisclosed
side agreements.* ..............................................................15

# TABLE OF CONTENTS
## (continued)

Page

    4.    Rule 23(e)(2)(D): The Settlement treats Class Members Equitably Relative to Each Other. ...........................................15

B.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS. ....................16

    1.    The Class Meets the Requirements of Rule 23(a). .................17

        a.    *The Class is sufficiently numerous.* ...............................17

        b.    *There are common questions of both law and fact.*........17

        c.    *The Class Representatives' claims are typical.* ..............18

        d.    *The Class Representatives and Class Counsel will fairly and adequately protect the interests of the Class.* ..............................................................................19

    2.    The Class Meets the Requirements of Rule 23(b)(3) ............19

        a.    *Common issues of law and fact predominate.* ...............20

        b.    *Class treatment is superior in this case.*.........................21

C.    PLAINTIFFS HAVE COMPLIED WITH ALL APPROVAL FACTORS .............22

    1.    Plaintiffs Have Provided Adequate Notice under Rule 23(b)(3) and Rule 23(c)(2)(B) ....................................................22

    2.    Only Eleven Class Members Objected to the Settlement.........23

    3.    The Positive Response of Class Members to the Settlement Favors Final Approval. ...........................................24

IV.    CONCLUSION..............................................................................................24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alin v. Honda Motor Co., Ltd.*,
   2012 WL 8751045 (D.N.J. Apr. 13, 2012) .........................................................16

*Carriuolo v. General Motors Co.*,
   823 F.3d 977 (11th Cir. 2016)............................................................................20

*China Agritech, Inc. v. Resh*, 584 U.S. __, 138 S.Ct. 1800, 201 L.Ed.2d 123 (2018)
   ................................................................................................................................8

*In re Checking Account Overdraft Litig.*,
   307 F.R.D. 656 (S.D. Fla. 2015) ........................................................................17

*In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.*,
   2008 WL 11348505 (N.D. Fla. Oct. 1, 2008) .....................................................12

*In re Tri-State Crematory Litig.*,
   215 F.R.D. 660 (N.D. Ga. 2003) ........................................................................18

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................11

*Johnson v. NPAS Solutions, Inc*, 975 F.3d 1244 (11th Cir. 2020) ................. i, 7, 24

*Melanie K. v. Horton*,
   2015 WL 1308368 (N.D. Ga. Mar. 23, 2015).....................................................17

*Mohamed v. Am. Motor Co., LLC*,
   320 F.R.D. 301 (S.D. Fla. 2017) ........................................................................21

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
   2013 WL 9600948 (C.D. Cal. Sept. 25, 2013)....................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .......................................................................................20

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009).........................................................................17

*Wilson v. EverBank*,
   2016 WL 457011 (S.D. Fla. Feb. 3, 2016)........................................................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**Other Authorities**

Fed. R. Civ. P. 23(a)(1)..................................................................................16

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 30, 2021, at 9:30 a.m. Settlement Class Counsel, on behalf of a proposed Settlement Class of owners and lessees of Mercedes-Benz vehicles defined in the proposed Settlement Agreement, will move pursuant to Rule 23 of the Federal Rules of Civil Procedure for an Order:

1.     Granting final approval of the proposed Settlement;

2.     Certifying the Settlement Class;

3.     Finding that Notice to the Class was directed in a reasonable manner;

4.     Granting Plaintiffs' Motion for Attorneys' Fees and Expenses (Dkt. 92), and reserving jurisdiction over the award of Service Awards to the Class Representatives, subject to the Eleventh Circuit's *en banc* review of its decision in *Johnson v. NPAS Solutions, Inc*,  975 F.3d 1244 (11th Cir. 2020) and any further appeals;

5.     Reserving jurisdiction with respect to implementation and enforcement of the terms of the Settlement; and

6.     Appointing Plaintiffs as Class Representatives and W. Lewis Garrison, Jr., James F. McDonough, Taylor Bartlett, and Travis Lynch of Heninger Garrison Davis, LLC and Stephen Jackson of Jackson & Tucker, P.C. as Class Counsel.

This motion is based on the supporting memorandum; the declarations

submitted herewith and referenced below; the pleadings and papers on file in this action, including those submitted by Plaintiffs in support of Plaintiffs' Motion for Preliminary Approval, Dkt. 70, Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Class Representative Service Awards, Dkt. 92, and any further papers filed in support of this motion, as well as arguments of counsel and all records on file in this matter.

Any term in this motion that is not specifically defined herein shall take on that meaning ascribed to it in the proposed Settlement Agreement (Dkt. 70-1) and the Motion for Preliminary Approval (Dkt. 70).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs, by and through Class Counsel, respectfully request the Court enter an order granting final approval of their proposed class action settlement (the "Settlement") with Defendants Mercedes-Benz USA, LLC, and Daimler AG (jointly "Mercedes") to resolve claims that Class Members' vehicles with Mars Red exterior paint is susceptible to the Symptoms Alleged, including peeling, flaking, bubbling, fading, discoloration, or poor adhesion (the "Alleged 590 Mars Red Paint Defect"). The Settlement provides both relief for past costs—in the form of reimbursements to Class Members who filed claims for past out-of-pocket costs— and covers future costs—by establishing an enhanced forward-looking warranty to cover these issues if and as they arise in the future. Critically, Class Counsel's attorneys' fees and expenses will not reduce any of these benefits: they are to be paid by Mercedes on top of, not out of, Class Members' recoveries.

The notice campaign was robust.  Direct notice was mailed to 168,995 Class Members on May 28, 2021. *See* Declaration of Jennifer M. Keough, ¶¶ 10-11, attached ("Keough Decl.").  JND, the settlement administrator, fielded over 2,100 calls and 708 emails, and over 11,373 unique users visited the Settlement website and registered 54,908 page views. *Id.* at ¶¶ 18-20, 21-22.  By the July 27, 2021, claim

- 1 -

deadline, the Settlement's straightforward claim process resulted in 1,532 Claim Forms to reimburse past repair expenses or to claim a future repair for certain past repairs that were previously requested but denied. *Id.* at ¶ 27. Class Members whose vehicles remain within the Settlement's time-and-mileage limitations do not have to file a claim to receive the forward-looking warranty, the total value of which Plaintiffs' expert valued at between $32 and $56 million.

Class Member reaction to the Settlement is overwhelmingly positive. While 1,532 timely claims were filed—and some 70 thousand Class Members benefit from the protections of the extended and enhanced warranty going forward, a total of only 10 Class Members submitted timely and valid opt-outs.[1]  Keough Decl., ¶¶ 23-24, 27.  Also, ***only eleven Class Members objected to the Settlement—and those eleven are represented (or appear to be covertly represented) by counsel in the Ponzio action that unsuccessfully moved to intervene in this case.***  Dkts. 96-99.  Those objections will be addressed no later than fourteen (14) days prior to the Fairness Hearing. *See* Dkt. 90, p. 11.  However, none of them raise serious concerns about the fundamental fairness of the Settlement or warrant denying approval of it.

Plaintiffs and the undersigned submit that this Settlement is fair, reasonable,

---

[1] Opt-out forms were required to be postmarked by July 27, 2021. Accordingly, opt-outs may still be in transit to JND. Class Counsel will update the Court once a final figure is determined.

and adequate, and an outstanding result for the Class. Plaintiffs request that the Court certify the class for settlement purposes, overrule the objections, grant final approval, and enter judgment so Class Members can obtain relief expeditiously.

## II.    SETTLEMENT TERMS

### A.    THE CLASS DEFINITION

The proposed Class is a nationwide class of all current owners, former owners, current lessees, and former lessees of Subject Vehicles who purchased or leased in the United States. Subject Vehicles are defined as any Mercedes-Benz vehicle originally painted with 590 Mars Red paint and purchased or leased in the United States. Defendants offered 590 Mars Red paint as an original, exterior color option for the following vehicle types in the United States:  C Class (2004-15), CLS (2006-07, 2009, 2014), CLK (2004-09), S Class (2008, 2015, 2017), SL Class (2004-09, 2011-17), GLK Class (2010-15), CL (2005-06, 2013-14), SLS (2014-15), E Class (2005-06, 2010-17), GT (2016-18), G Class (2005, 2011-17), SLC (2017), SLK Class (2005-16), and Maybach 57 (2008).

### B.    THE SETTLEMENT'S BENEFITS TO CLASS MEMBERS

The Settlement provides two types of benefits to Class Members: (1) reimbursement for qualified past repairs and (2) an enhanced warranty to cover qualified future repairs through Authorized Service Centers.

The Settlement covers qualified repairs that occur during the first 15 years or 150,000 miles of a Class Vehicle's life. Dkt. 70-1, Class Action Settlement Agreement and Release ("Agmt.") § 4. Repairs occurring before the Effective Date are eligible for reimbursement on a sliding scale as past repairs; repairs after the Effective Date are eligible for coverage on a sliding scale as future repairs. *Id.* This structure ensures that every Class Vehicle is covered for the same amount of time or mileage, regardless of where that vehicle currently is in its life cycle.



The percentage of reimbursement or coverage available for a particular repair is on a sliding scale based on the Vehicle age/mileage, as follows:

| Vehicle Age Time Period | Reimbursement/ Coverage Amount |
|---|---|
| <u>Category 1</u>: 7 years from in-service date or 100,000 miles (3 year/50,000 mile extension from standard warranty coverage, which is the first of 4 years or 50,000 miles) | 100% |
| <u>Category 2</u>: Class Vehicles not within Category 1 to the earlier of 10 years from in-service date or 150,000 miles (6 year/100,000 miles extension from standard coverage) | 50% |

| Category 3: Class Vehicles not within Category 2 to the earlier of 15 years from in-service date or 150,000 miles (11 year/100,000 miles extension from standard coverage) | 25% |
|---|---|

Importantly, there is no limit to the number of claims or amount of total money that Mercedes will pay to reimburse qualified past repairs.[2] *Id.* § 5.1.

The Settlement also provides coverage for qualified future repairs, which functions like an extended warranty that covers each Vehicle up to 15 years or 150,000 miles. Class Members whose vehicles remain within the Settlement's time-and-mileage limitations need not submit a claim or other paperwork to receive a qualified future repair. Instead, Class Members can simply bring their Vehicle to an Authorized Service Center, which will determine eligibility and perform the repairs. *Id.* Plaintiffs' expert has estimated that the future-repairs and value of the service contract components of the Settlement has a value between $37.3 and $55.9 million. *See* Declaration of Lee M. Bowron, Kerper and Bowron LLC, Dkt. 92-2, ¶¶ 8-31.

### C.    ATTORNEYS' FEES WILL BE PAID IN ADDITION TO THE SETTLEMENT AMOUNT AFTER FINAL APPROVAL

Mercedes agreed to pay all attorneys' fees and expenses approved by the

---

[2] There is a per claim cap, however, on repairs done by an Independent Service Provider (as opposed to an Authorized Service Provider). The reimbursable repair cost of a single repair done by an Independent Service Provider shall not exceed by more than 10% what the same repair would have cost had it been performed at an Authorized Service Center. *Id.* § 4.2.

Court separately from and in addition to the benefits paid to Class Members. Agmt.
§ 5.3. Class Member recoveries will not be reduced to pay for attorneys' fees or
costs.   On April 28, 2021, Class Counsel applied for an award of attorneys' fees of
$4,750,000, expenses of $75,671.38, and an aggregate service award of $30,000 to
be distributed among the six Class Representatives. Dkt. 92. Class Members had the
opportunity to review and object to the fee petition as provided for in Fed. R. Civ.
P. 23(h). ***Unsurprisingly, the only Class Members that objected are 8 that are
represented by counsel that previously attempted to intervene, along with three[3]
others who do not claim to be represented by counsel but used forms almost
identical to those used by the Ponzio objectors sent by FedEx through counsel for
the Ponzio objectors***.

### D.    NOTICE TO THE CLASS

On May 28, 2021, JND mailed 168,995 postcard notices in the manner and
form ordered by the Court. Keough Decl. ¶¶ 10-11.[4]  JND also set up a website
(https://www.marsredpaintsettlement.com/), which was identified on the post card
and provided: the ability for Class Members to electronically file claims, information

_____

[3] One of these three sent through counsel for the Ponzio objectors was untimely. *See*
Dkt. 99.

[4] JND identified 178 potential Class Members owning and/or leasing 10 or more
Subject Vehicles. *Id.*, at ¶ 11.  Postcard Notice was sent to these Class Members
with a cover letter identifying the VINs they owned and/or leased. *Id.*

on key dates, links to important documents, a Facts and Questions section with plain language answers to common questions, a VIN lookup tool to confirm membership in the Class, and the short and long-form notices. *Id.* at ¶¶ 14-20.

On July 30, 2021, and pursuant to the Settlement, JND submitted a declaration to be filed with the Court setting forth its due diligence and identifying individuals who submitted a valid and timely request to opt out.  *See* Dkt. 70-1, § 8.11; Keough Decl.  That declaration states that, as of July 28, 2020, JND had received over 2,100 calls and 708 emails, and over 11,373 unique users visited the Settlement website, registering 54,908 page views. Keough Decl., ¶¶ 18-20, 21-22.  Class Counsel also received hundreds of emails and phone calls. As a result, 1,532 claims to reimburse past repair expenses or to claim a future repair for certain past repairs that were previously requested but denied were submitted by the claim deadline.  *Id.* at ¶ 27. The submitted claims have an average claimed repair amount of $2,000 to $3,000, excluding claimed amounts of $20,000 or more. *Id.*  To date, the costs of claims administration and notice paid by Mercedes is approximately $137,000.  *Id.*, at ¶ 3.

### E.    CLASS REPRESENTATIVE SERVICE AWARDS

Class Counsel requested service awards for the *Pinon* Plaintiff Class Representatives, to be paid by Defendants in addition to the compensation they are otherwise entitled to as a member of the Proposed Class.  Class Counsel is aware of

and sensitive to the Eleventh Circuit's recent opinion in *Johnson v. NPAS Solutions, Inc*, which rejected class representative incentive awards. 975 F.3d 1244 (11th Cir. 2020). That remains the law, and unless that changes between now and the Fairness Hearing, the Court cannot approve the requested service awards under *Johnson*.

However, the plaintiff in that case filed a petition for rehearing *en banc*, which has not yet been decided. Whether the initial holding will ultimately stand is unknown, and there is a reasonable likelihood that the case will continue to be challenged even if the Eleventh Circuit upholds the initial ruling. The *Johnson* opinion represents a fundamental change in the law that is absent from any other Circuit in the country. The categorical prohibition on class representative incentive awards is one of great import, particularly given they have been approved in every other Circuit and the U.S. Supreme Court has acknowledged the practice of incentive awards. *See e.g., China Agritech, Inc. v. Resh*, 584 U.S. __, 138 S.Ct. 1800, 1811 n.7 (2018). For this reason, the Plaintiffs respectfully requests that the Court reserve jurisdiction over the requested service awards, subject to the law becoming settled.

## III.    ARGUMENT

To grant final approval of a class action settlement, the Court must determine that the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e)(2). The 2018 amendments to Rule 23 make clear that the Court should focus

"on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23(e)(2), 2018 Adv. Cmt. Notes. Accordingly, Plaintiffs analyze Rule 23(e)(2) and rely on case law interpreting the Eleventh Circuit's *Bennett* factors, which are substantially similar.[5] *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020) ("many [*Bennett*] considerations overlap those found in Rule 23(e)(2)").

Regardless of the factors the Court employs, final approval here is appropriate. As the Court has already recognized, the Settlement Class meets Rule 23(a) and (b)(3)'s requirements and should be certified. Dkt. 90 at pp. 4-5.

## A.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

In addition to the argument below, Plaintiffs incorporate by reference the facts and arguments made in support of their Motion for Preliminary Approval (Dkt. 70) and their Opposition to the Motion to Intervene (Dkts. 76 and 82).

---

[5] The *Bennett* factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).

**1.    Rule 23(e)(2)(A): The Class Representatives and Class Counsel Have Vigorously Represented the Class.**

Rule 23(e)(2)(A) requires a Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Courts consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases," which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." Adv. Cmt. Note R. 23. Here, the same facts and considerations are present that led the Court to "find[] that it will likely be able to approve, under Rule 23(e)(2), the proposed nationwide Settlement Class as defined above[.]" Dkt. 90, at p. 4.

Here, Class Counsel and the Class Representatives prosecuted this action on behalf of the Class with vigor and dedication for almost three years now, beginning in August of 2018. Counsel briefed and defeated a dispositive motion, conducted substantial discovery (party and third party), engaged experts, conducted vehicle inspections, and served the German manufacturer of the paint at issue with a subpoena. Dkt. 70-5, Declaration of W. Lewis Garrison, Jr., at ¶¶ 12-29 (the "Garrison Decl.") Plaintiffs were informed about the strengths (and weaknesses) of their case via discovery and expert consultation. *Id.*

The Class Representatives were likewise actively engaged—providing Class Counsel with information about their Vehicles, submitting to Vehicle inspections,

and providing records about their Vehicle ownership, service, and maintenance.[6] Accordingly, the Settlement meets the considerations of Rule 23(e)(2)(A).

### 2. Rule 23(e)(2)(B): The Settlement Resulted from Informed Arm's-Length Negotiations.

Under Rule 23(e)(2)(B), the Court considers whether the Settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Adv. Cmt. Note R. 23. Additionally, the Court may consider "the treatment of any award of attorneys' fees with respect to both the manner of negotiating the fee award and its terms." *Id.*

Here, the close participation of Judge James F. Holderman (Ret.) in multiple mediations underscores the procedural fairness of the Settlement. *See Wilson v. EverBank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) ("The very fact of [mediator's] involvement—let alone his sworn declaration—weights in favor of approval."); Dkt. 70-3 (Declaration of (Ret.) Judge James F. Holderman).

Further, the parties negotiated attorneys' fees for Class Counsel only after reaching agreement on the terms of relief. Dkt. 70-3 at ¶ 9. This is also indicative of

---

[6] *See* Dkt. 70-4, Declarations of Emily Pinon, Gary C. Klein, Kim Brown, Joshua Frankum, Dinez Webster, and Todd Bryan (collectively, "Class Rep. Decls.").

a fair and arm's-length process. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (finding that settlement not collusive where "the fee was negotiated separately from the rest of the settlement, and only after substantial components of the class settlement had been resolved"); *In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.*, 2008 WL 11348505, at *2 (N.D. Fla. Oct. 1, 2008). On this basis, the Court stated that the "proposed Settlement appears to be the product of intensive, thorough, serious, informed, and non-collusive mediation overseen by the Honorable James F. Holderman (Ret.) of JAMS." Dkt. 90, at p. 6. This remains true. Accordingly, the Settlement satisfies Rule 23(e)(2)(B).

### 3. Rule 23(e)(2)(C): The Relief under the Settlement is Outstanding.

Rule 23(e)(2)(C) requires courts to consider whether the relief provided for the class is adequate by considering the "costs, risk, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims"; "the terms of any proposed award of attorneys' fees, including timing of payment"; and "any agreements to be identified under Rule 23(e)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). Each substantive consideration is satisfied. The Settlement provides substantial relief Class Members, delivered through a clear claims' process for reimbursement, and the Settlement amount is not reduced by attorneys' fees or costs.

     **a.**     ***Rule 23(e)(2)(C)(i): The relief obtained is substantial, particularly in light of the costs, risks, and delay of trial.***

Under Rule 23(e)(2)(C)(1), the Court must consider the "costs, risk, and delay of trial and appeal." Plaintiffs believe their case is strong, but recognize that litigation is uncertain, making compromise of claims in exchange for the Settlement's certain, immediate, and substantial benefits, including long-term extended warranties, an unquestionably reasonable choice.

Here, from the outset, Mercedes chose to fight on each front. After successfully litigating dispositive motions, endless meet and confers over discovery disputes, obtaining discovery on the German paint manufacturer, and vehicle inspections, Plaintiffs would still have needed to certify their class and faced risks that Mercedes would successfully challenge their damages theories. Even if a class were certified, they faced the risk, expense, and delay of trial and a potential appellate process that could have delayed recovery for years. The immediate value of the Settlement is particularly appropriate here, where, upon the Settlement's Effective Date, Class Members will receive coverage for past and future repairs according to a sliding scale based on the age and mileage of their vehicles. The Settlement therefore meets the considerations of Rule 23(e)(2)(C)(i).

     **b.**     ***Rule 23(e)(2)(C)(ii): The Claims process was effective.***

Rule 23(e)(2)(C)(ii) asks whether the methods of distribution and claims

processing are effective. Class Members received direct notice of the Settlement claims process and benefits through the Court-approved notice program. Keough Decl. ¶¶ 5-13. The claims process allowed Class Members to be reimbursed for past out-of-pocket repairs and to claim a future repair for certain past repairs that were previously requested but denied,[7] and its success is evidenced by the significant number of claims and interactions Class Members had with JND. *Id.*, at ¶¶ 16-27. Therefore, the Settlement meets the criteria of Rule 23(e)(2)(C)(ii).

### c.    *Rule 23(e)(2)(C)(iii): The terms of the proposed award of attorney's fees prioritizes Class Members.*

Under Rule 23(e)(2)(c)(iii), the Court must consider whether "the terms of any proposed awards of attorneys' fees, including the time of payment" are reasonable. Here, Mercedes will pay Class Counsel's attorneys' fees and expenses separately, without reducing the amounts that Class Members can recover.

Mercedes agreed to pay, subject to Court approval, attorneys' fees up to $4.75 million. On April 28, 2021, Class Counsel moved for an award of attorneys' fees,

---

[7] Notably, Class Members whose vehicles remain within the Settlement's time-and-mileage limitations are not required to submit any claims for forward-looking repairs. Rather, those costs are covered as part of the Settlement. The only future repairs that require a claim form to be submitted are for class members whose vehicles were beyond the Settlement's time and mileage limitations as of the May 28, 2021 notice date, but who can show that they requested and were denied warranty or goodwill coverage for the Alleged 590 Mars Red Paint Defect when the vehicle had less than 150,000 miles and was less than 15 years old.

expenses, and service awards. Dkt. 92.  Class Members were given the opportunity to review and comment on or object to Class Counsel's motion for attorneys' fees, as provided by Rule 23(h).  *Id.*  ***Notably, the only objections came from the Ponzio objectors and the three individuals who objected in coordination with Ponzio counsel.***

Attorneys' fees may be paid following the Court's Final Approval Order and prior to the Settlement's Effective Date, conditioned on Plaintiffs' Counsel stipulated undertaking that they will remit all attorneys' fees if Final Approval or the fees award is modified or vacated. Agmt. § 5.6-5.7; Ex. A. This procedure has been routinely approved. *See, e.g.*, *Pelzer v. Vassalle*, 644 Fed. Appx. 352, 365 (6th Cir. 2016) (attorneys "must repay that amount if the settlement agreement is rejected").

> **d.** ***Rule 23(e)(2)(C)(iv): No undisclosed side agreements exist.***

Under Rule 23(e)(2)(C)(iv), the Court must consider any agreements identified under Rule 23(e)(3) which requires the parties seeking approval of a class action settlement to "file a statement identifying any agreement made in connection with the proposal." There are no agreements to disclose under Rule 23(e)(3) and the Settlement meets the considerations of Rule 23(e)(2)(C)(iv).

> **4.** **Rule 23(e)(2)(D): The Settlement treats Class Members Equitably Relative to Each Other.**

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats

class members equitably relative to each other." This ensures that there is no "inequitable treatment of some class members vis-à-vis others." Adv. Cmt. Note R. 23. As the Court noted in granting preliminary approval, the Settlement "does not improperly grant preferential treatment to the Class Representatives or segments of the Class." Dkt. 90, at p. 6.

That remains so because the Settlement provides the same durational period of coverage for every Vehicle (15 years or 150,000 miles) and the same sliding scale of reimbursement or coverage percentage based on the Vehicle's age/mileage. Courts have approved similarly structured settlements concerning automobile defects. *See, e.g.*, *Amin v. Mercedes-Benz USA, LLC*, No. 1:17-cv-01701-AT, 2020 U.S. Dist. LEXIS 167395, at *6 (N.D. Ga. Sep. 11, 2020) (approving settlement with "sliding scale of reimbursement or coverage percentage based on the Vehicle's age/mileage"); *Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *6 (C.D. Cal. Sept. 25, 2013) (approving settlement with different eligibility requirements for an extended warranty depending on age of car); *Alin v. Honda Motor Co., Ltd.*, 2012 WL 8751045, at *3 (D.N.J. Apr. 13, 2012) (approving settlement with different coverage for air condition defect depending on time period/mileage of vehicle).

**B.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.**

The Court previously found it would likely be able to certify the Settlement Class. Dkt. 90 at p. 4. Plaintiffs briefly address these elements below.

### 1.    The Class Meets the Requirements of Rule 23(a).

Under Rule 23(a), the proponent of class certification must show that the Class satisfies (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.

### a.    *The Class is sufficiently numerous.*

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1).   A total of 168,995 unique Class Members were notified of the Settlement.   Keough Decl. ¶¶ 10-11. This "meets the numerosity requirement of Rule 23(a)(1)." Dkt. 90, at p. 4; *see also, e.g.*, *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

### b.    *There are common questions of both law and fact.*

Rule 23(a)(2) conditions certification upon a showing that "questions of law or fact are common to the entire class." *Melanie K. v. Horton*, 2015 WL 1308368, at \*4 (N.D. Ga. Mar. 23, 2015). It requires there be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1354 (11th Cir. 2009).

Commonality is "generally satisfied when a plaintiff alleges that Defendants have engaged in a standardized course of conduct that affects all class members." *In*

- 17 -

*re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 668 (S.D. Fla. 2015). Here, the Class's claims are rooted in common questions of fact regarding the Alleged 590 Mars Red Paint Defect in Subject Vehicles and Defendants' alleged representations and omissions regarding the alleged defective nature of Mars Red paint (*see* Dkts. 1, 7, 16, and 55) and the Symptoms Alleged are experienced consistently by Class Members. *See* Dkt. 70-5, ¶ 35. These common questions will, in turn, generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### c.     *The Class Representatives' claims are typical.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is met where the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and his or her claims are based on the same legal theory." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 690 (N.D. Ga. 2003). The same course of conduct underlying Class Representatives' claims underlie other Class Members' claims: each purchased or leased with expectations that their Class Vehicles would be free from the Symptoms Alleged. *See* Dkts. 1, 7, 16, and 55; *see also Rosen*, 270 F.R.D. at 682 (holding plaintiff typical that alleged same car defect as rest of class). Typicality is satisfied.

**d.**    ***The Class Representatives and Class Counsel will fairly and adequately protect the interests of the Class.***

Rule 23(a)(4) requires that the Class Representatives and Class Counsel "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Both readily satisfy the adequacy requirement. The Class Representatives demonstrated their familiarity with the case's facts and that they understand their duties and fiduciary obligations. *See* Dkt. 70-4, at each Class Representative Declaration, ¶ 3-6. No conflicts exist between the Class Representatives and Class. Class Counsel are qualified to act as serve as Class Counsel under Federal Rule 23(g)(1) given their experience in litigating class action and vehicle defect actions and their work, effort, and expense in bringing and litigating these cases. Accordingly, Rule 23(a)(4) is satisfied, and, for the same reasons, the undersigned respectfully request an appointment as Class Counsel under Fed. R. Civ. P. 23(g)(1).

**2.    The Class Meets the Requirements of Rule 23(b)(3)**

After satisfying Rule 23(a)'s prerequisites, the Court must determine if the Settlement satisfies one of Rule 23(b)'s subparts. Under Rule 23(b)(3), the Court must determine if (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. *Common issues of law and fact predominate.*

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). The predominance requirement is satisfied if common issues have a "direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). As the Court previously held, the "Settlement Class meets . . . the predominance requirements of Rule 23 . . . (b)(3)." Dkt. 90, at p. 4.

The Eleventh Circuit favors class treatment of omission and fraud claims stemming from a "common course" of conduct. *Id.* "Predominance is 'a test readily met in certain cases alleging consumer fraud,' particularly where…uniform practices and misrepresentations give rise to the controversy." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Here, questions of law and fact common to the claims of Class Members predominate over any questions affecting only individual members. Specifically, Plaintiffs contend that discovery tended to show that (1) the Class Vehicles' 590 Mars Red paint was defective; (2) that defect is common across Class Vehicles; (3) Mercedes knew this; and (4) Mercedes's

- 20 -

omission of material fact about the defect was likely to deceive a reasonable consumer. *See* Dkt. 70-5, Garrison Decl., ¶ 35; Dkts. 1, 7, 16, and 55. For this reason, the Court's preliminary approval order stated that "the Settlement Class meets the . . . predominance requirement[] of…[Rule 23](b)(3)." Dkt. 90 at p. 4.

**b.**    ***Class treatment is superior in this case.***

Rule 23(b)(3) requires that a class be "superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the Eleventh Circuit's non-exhaustive superiority factors are satisfied. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). First, there is no indication of Class Members seeking to individually control the prosecution of separate actions. Second, the only other lawsuit concerning the alleged defect— *Ponzio, et al. v. Mercedes-Benz USA, LLC et al.*, Case No: 1:18-cv-12544 (D. N.J.) ("*Ponzio*")—is stayed pending final approval here. Third, the Court has been ably handling this litigation and is fully capable of handling actions involving defendants based in this District. Finally, the final factor, manageability, is inapplicable when the certification motion relates to Settlement. *See Amchem Prods.*, 521 U.S. at 620.

Moreover, class resolution is superior from an efficiency and resource perspective. *See Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 317 (S.D. Fla. 2017) ("issues involved in Plaintiff's claim and the allegations he uses to support

same would be, for all intents and purposes, identical to those raised in individual suits brought by any of the members of the modified class."). Superiority and the other requirements of Rule 23 are met, making certification appropriate.

### C.    PLAINTIFFS HAVE COMPLIED WITH ALL APPROVAL FACTORS

#### 1.    Plaintiffs Have Provided Adequate Notice under Rule 23(b)(3) and Rule 23(c)(2)(B)

Rule 23(b)(3) class actions must satisfy the notice provisions of Rule 23(c)(2), and upon settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" The notice program conformed to the mandates of Rule 23 and due process.  Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). "The ultimate goal of giving notice is to enable Class members to make informed decisions about whether to opt out or, in instances where a proposed settlement is involved, to object or make claims."  Adv. Cmt. Note R. 23.

Here, Plaintiffs implemented the notice plan that the Court stated was "the best notice practicable under the circumstances" and satisfies all requirements provided in Rule 23(c)(2)(B) and due process.  Dkt. 90 at pp. 6-7; *see generally* Keough Decl.  Further, the Notices included the information required under Rule 23(c)(2)(B): they informed Class Members of the nature of the action, the class

definition, the class claims, that a Class Member could enter an appearance through an attorney, that the Court will grant timely exclusion requests, the time and manner for requesting exclusion and submitting objections, and the claims being released upon final approval. Dkt. 90 at pp. 6-7; Dkt. 70-7 (Exs. B to E). As noted above, the notice campaign was also substantively successful. *See, supra,* Section II.D. Accordingly, the notice process was adequate under Rule 23(c)(2).

### 2. Only Eleven Class Members Objected to the Settlement.

Objections to proposed class settlements are governed by the procedures set forth in Fed. R. Civ. P. 23(e)(5). Out of some 1,115000 Class Members, only eleven objected. *See* Dkts. 96-99. Those eleven are represented by or acting in coordination with *Ponzio* counsel and will be addressed, as required by the Court.  Needless to say, these objectors largely raise the same meritless arguments that were made in the Motion to Intervene—though more ornately adorned—and their objections should be overruled because, while they may be in the best interest of *Ponzio* counsel, they are "hardly in the best interests of the class." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 305 (N.D. Ga. 1993); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  The objections should be

overruled.

###### 3. The Positive Response of Class Members to the Settlement Favors Final Approval.

The "miniscule number of objectors in comparison to the class size is entitled to significant weight in the final approval analysis." *In re Equifax*, 2020 WL 256132, at *10 (388 objections in 147 million person class). *See also In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (five timely objections out of tens of millions of class members supports approval). Further, 1,532 Class Members made claims to reimburse past repair expenses or to claim a future repair for certain past repairs that were previously requested but denied, and over ten thousand contacted the Settlement Administrator, visited the Settlement website, and are aware of their right to reimbursement going forward. This positive reaction is entitled to significant weight.

## IV.    <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court: (1) overrule the objections and grant final approval of the proposed Settlement; (2) certify the Settlement Class; (3) find that Notice to the Class was directed in a reasonable manner; (4) grant Plaintiffs' Motion for Attorneys' Fees and Expenses (Dkt. 92), and reserve jurisdiction over the award of Service Awards to the Class Representatives, subject to the Eleventh Circuit's *en banc* review of its decision in *Johnson v. NPAS Solutions, Inc.*, 975 F.3d

1244 (11th Cir. 2020) and any further appeals; (5) reserve jurisdiction with respect to implementation and enforcement of the terms of the Settlement; and (6) appoint Plaintiffs as Class Representatives and W. Lewis Garrison, Jr., James F. McDonough, III, Taylor C. Bartlett, and Travis Lynch of Heninger Garrison Davis, LLC and Stephen Jackson of Jackson & Tucker, P.C. as Class Counsel.

Respectfully submitted this the 30th day of July, 2021.

/s/ James F. McDonough, III
James F. McDonough, III (GA Bar No. 117088
Jonathan R. Miller (GA Bar No. 507179)
Travis E. Lynch (GA Bar No. 162373)
**HENINGER GARRISON DAVIS, LLC**
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869,-0863,-0867
Facsimile: (205) 326-5502,-5506,-5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

/s/ W. Lewis Garrison, Jr.
W. Lewis Garrison, Jr. (GA Bar No. 286815)
Taylor C. Bartlett (GA Bar No. 778655)
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 326-3332
Email: lewis@hgdlawfirm.com
Email: taylor@hgdlawfirm.com

/s/ K. Stephen Jackson
K. Stephen Jackson (GA Bar No. 387443)
**JACKSON & TUCKER, PC**
2229 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 252-3535
Facsimile: (205) 252-3536
Email: steve@jacksonandtucker.com

*Counsel for the Pinon Plaintiffs and
Proposed Class Counsel*

- 26 -

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I caused the foregoing document to be electronically-filed with the Clerk of Court using this Court's CM/ECF system, which caused it to be served this day on all counsel of record who have consented to receive electronic service.

Respectfully submitted this the 30th day of July, 2021.

*/s/ James F. McDonough, III*
James F. McDonough, III
(GA Bar No. 117088)

## <u>LOCAL RULE 7.1(D) COMPLIANCE CERTIFICATE</u>

Pursuant to L.R. 7.1(D), this certifies that the foregoing document complies with the font and point selections approved by L.R. 5.1(C). The foregoing document was prepared using Times New Roman font in 14 point.

Respectfully submitted this the 30th day of July, 2021.

*/s/ James F. McDonough, III*
James F. McDonough, III
(GA Bar No. 117088)

- 27 -