IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EMILY PINON, GARY C. KLEIN,
KIM BROWN, JOSHUA
FRANKUM, DINEZ WEBSTER,
and TODD BRYAN, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

v.

DAIMLER AG and
MERCEDES BENZ USA, LLC,

        Defendants.

CIVIL ACTION FILE

NO. 1:18-CV-3984-MHC

## ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND AWARDING ATTORNEYS' FEES AND EXPENSES

On December 20, 2020, Plaintiffs and Defendants reached a proposed class action settlement resolving Plaintiffs' claims. Class Action Settlement Agreement and Release ("Settlement Agreement") [Doc. 70-1]. On March 29, 2021, this Court issued an order for preliminary approval of the Settlement Agreement and directed that notice issue to the settlement class. Mar. 29, 2021, Order [Doc. 90]. This case is before the Court on Plaintiffs' Motion for Final Approval of Class Settlement [Doc. 100] and Plaintiffs' Unopposed Motion for Award of Attorneys'

Fees, Expenses, and Class Representative Service Awards [Doc. 92].  For the

reasons set forth below, and after considering the entire record, the record of the

Fairness Hearing held on August 30, 2021, and the post-hearing supplemental

submissions of the parties and objectors, the Court hereby **GRANTS** the Motion

for Final Approval of Class Settlement, **GRANTS IN PART and DENIES IN**

**PART** the Motion for Award of Attorneys' Fees, Expenses, and Class

Representative Service Awards, and issues its ruling on the pending objections that

have been filed in this case.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This three-year litigation arises out of a class action brought by Plaintiffs

alleging that Defendants Daimler AG ("Daimler") and Mercedes-Benz USA, LLC

("Mercedes-Benz") (collectively, "Defendants") sold vehicles originally painted in

590 Mars Red paint, which suffered a latent defect causing the exterior surface of

the vehicles (the "Subject Vehicles")[1] to microblister, peel, and bubble.  Plaintiff

---

[1] The term "Subject Vehicle" refers to the following Mercedes-Benz vehicle types
purchased or leased in the United States that were painted using 590 Mars Red
paint: C-Class (model years 2004-2015), GLK Class (model years 2010-2015),
CLS-Class (model years 2006-2007, 2009, 2014), CLK-Class (model years 2004-
2009), S-Class (model years 2008, 2015, 2017), SL-Class (model years 2004-2009,
2011-2017), CL-Class (model years 2005-2006, 2013-2014), SLS-Class (model
years 2014-2015), E-Class (model years 2005-2006, 2010-2017), G-Class (model
years 2005, 2011-2017), GT-Class (model years 2016-2018), SLC-Class (model

Emily Pinon originally filed her Complaint on August 21, 2018, on behalf of a nationwide class and a subclass of Alabama residents.[2]  Class Action Compl. [Doc. 1] ¶¶ 2, 82.  The Complaint was amended on October 24, 2018, to add Plaintiff Gary C. Klein and a subclass of Florida residents.  First Am. Class Action Compl. [Doc. 7] ¶¶ 6, 93(c).  The Complaint was amended a second time on January 31, 2019, to add Plaintiffs Kim Brown, Joshua Frankum, Nancy Pearsall,[3] LaCresha Early, and Todd Bryan, as well as subclasses of Arkansas, Tennessee, Louisiana, and North Carolina residents.  Second Am. Class Action Compl. [Doc. 16] ¶¶ 10-14, 214(d-g).

The Second Amended Complaint included claims for breach of express warranty (Count One), breach of implied warranty (Count Two), equitable and injunctive relief (Count Three), violation of the Magnuson-Moss Warranty Act, 15

---

year 2017), SLK-Class (model years 2005-2016), and Maybach 57 (model year 2008).  See Settlement Agreement § 1.35.

[2] Prior to the filing of the Class Action Complaint, counsel for Plaintiff conducted significant pre-suit investigation involving the Mars Red paint defect, including research of consumer complaints, interviews of consumers, and consultations with experts.  Decl. of William Lewis Garrison, Jr. ("Garrison Decl. I") [Doc. 70-5] ¶¶ 6-10.

[3] Plaintiff Nancy Pearsall voluntarily dismissed her claims on June 17, 2019 [Doc. 20].

U.S.C. § 2301 et seq. (Count Four), unjust enrichment (Count Five), fraud and suppression (Count Six), violation of Florida's Unfair and Deceptive Trade Practices Act (Count Seven), violation of the Alabama Deceptive Trade Practices Act (Count Eight), violation of the Tennessee Consumer Protection Act (Count Nine), violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (Count Ten), violation of the Arkansas Deceptive Trade Practices Act (Count Eleven), and violation of the North Carolina Unfair and Deceptive Trade Practices Act (Count Twelve). Id. ¶¶ 217-370. Defendants filed an extensive motion to dismiss the Second Amended Complaint in its entirety [Doc. 18] which was vigorously opposed by Plaintiffs [Doc. 22]. On November 4, 2019, this Court entered a 104-page order granting in part and denying in part Defendants' motion to dismiss, leaving the following claims of the Second Amended Complaint: Plaintiff Earley's claims for breach of implied warranty in Count Two; violation of the Magnuson-Moss Warranty Act in Count Four; claims for fraud and suppression in Count Six; Plaintiffs Pinon's, Brown's, Frankum's, Earley's, and Bryan's claims for fraudulent misrepresentation in Count Six; and the state consumer law claims in Counts Seven through Twelve. Nov. 4, 2019, Order [Doc. 25].

On April 28, 2020, the Court appointed W. Lewis Garrison, Jr., James F. McDonough, III, and Taylor C. Bartlett of Heninger Garrison Davis, LLC as

Interim Lead Class Counsel for the putative classes [Doc. 49]. A Third Amended Class Action Complaint was filed on June 22, 2020, which substituted Plaintiff Dinez Webster for Plaintiff Earley, whose claims were dismissed. June 22, 2020, Order [Doc. 54]; Third Am. Class Action Compl. [Doc. 55]. From the time of the Court's order on Defendants' motion to dismiss until the parties began their settlement discussions in earnest in September 2020, Plaintiffs' attorneys engaged in extensive discovery, including the service of numerous requests for production and of interrogatories on Defendants, subpoenas on non-parties, and responding to Defendants' discovery requests. Garrison Decl. I ¶¶ 22-31. During discovery, Plaintiffs learned that there were over 72,500 Subject Vehicles sold or leased in the United States and "likely over one hundred thousand current and former owners and lessees of Subject Vehicles in the proposed Class[.]" Id. ¶ 26. Plaintiffs' counsel also interviewed and retained experts who assisted with preparing for and attending vehicle inspections. Id. ¶ 27.

After about two months of engaging in settlement negotiations, the parties conducted a mediation with former United States District Judge James F. Holderman from November 9-12, 2020, resulting in an agreement-in-principle on the terms and conditions of the settlement and on attorneys' fees, expenses, and class representative incentives, the latter of which were mediated only after

reaching an agreement-in-principle as to the Class Member settlement. Id. ¶¶ 31-32; Mediator's Decl. of Retired Federal Judge James F. Holderman [Doc. 70-3] ¶¶ 4-9. On December 21, 2020, Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Proposed Class Action Settlement Agreement and Preliminary Certification of Nationwide Settlement Class [Doc. 70], which this Court granted on March 29, 2021 ("Preliminary Approval Order") [Doc. 90].

## II.    TERMS OF THE SETTLEMENT

The following are the material terms of the Settlement Agreement:

### A.    The Settlement Class

The settlement class is defined as follows: all current owners, former owners, current lessees, and former lessees of Subject Vehicles who purchased or leased their Subject Vehicle[4] in the United States. The following entities and individuals are excluded from the settlement class:

    a.    Persons who have settled with, released, or otherwise had claims adjudicated on the merits against Defendants that are substantially similar to the claims asserted in this case (i.e., alleging that 590 Mars Red paint is inadequate, of poor or insufficient quality or design, or

---

[4] See n.1, *supra*.

defective, due to peeling, flaking, bubbling, fading, discoloration, or

poor adhesion of the paint or clearcoat);

b.     Defendants and their officers, directors and employees, as well as their

corporate affiliates and the corporate affiliates' officers, directors, and

employees;

c.     Counsel to any of the parties; and

d.     The Honorable Mark H. Cohen, the Honorable James Holderman

(Ret.), and members of their respective immediate families.

Settlement Agreement § 1.30.

## B.     Class Relief

The Settlement Agreement provides for two types of benefits to Class

Members:  (1) reimbursement for qualified past repairs, and (2) coverage for

qualified future repairs.

### 1.     Reimbursement for Qualified Past Repairs

The Settlement Agreement provides for reimbursement for a Qualified Past

Repair[5] relating to the repainting of a Subject Vehicle because of bubbling,

---

[5] A "Qualified Past Repair" is one that occurred before the Effective Date and performed in accordance with the Defendants' Technical Service Bulletin, L198.00-P-058914, and may have been performed by either an Authorized or Independent Service Center, except the reimbursement for a repair done at an Independent Service Center shall not exceed 10% of what the same repair would

peeling, or flaking of the exterior clear coat on a sliding scale based upon the

Subject Vehicle's age/mileage as follows:

| Vehicle Age/Mileage Periods of Coverage | Reimbursement Amount |
|---|---|
| Category 1: Qualified Past Repair received within 7 years or 105,000 miles from purchase/lease of Subject Vehicle, whichever occurred first | 100% |
| Category 2: Subject Vehicle not within Category 1 and Qualified Past Repair received within 10 years or 150,000 miles from purchase/lease of Subject Vehicle, whichever occurred first | 50% |
| Category 3: Subject Vehicle not within Categories 1 or 2 and Qualified Past Repair received within 15 years or 150,000 miles from purchase/lease of Subject Vehicle, whichever occurred first | 25% |

Settlement Agreement §§ 1.16, 4.1. There is no limit to the number of claims or

total amount of money that Mercedes-Benz will pay to reimburse qualified past

repairs, except for the per claim cap on claims performed by Independent Service

Providers. Id. §§ 4.2, 5.1. Class Members may elect to receive payment by check

or by electronic payment. Id. § 5.1.

---

have cost if performed at an Authorized Service Center. Settlement Agreement
§§ 1.17, 1.27, 4.2. The "Effective Date" is 14 days after the date on which this
Court's Final Order and Judgment becomes "final," that is, 75 days after the date
such order is entered if there are no appeals filed, or 14 days after the date any such
appeals are resolved. Id. § 1.13.

### 2.  Coverage for Qualified Future Repairs

The Settlement Agreement provides for coverage for a Qualified Future Repair[6] relating to the repainting of a Subject Vehicle because of bubbling, peeling, or flaking of the exterior clear coat on a sliding scale based upon the Subject Vehicle's age/mileage as follows:

| Vehicle Age/Mileage Periods of Coverage | Covered Amount |
|---|---|
| Category 1: Future repair to be performed within 7 years or 105,000 miles from purchase/lease of Subject Vehicle, whichever occurs first (3 year/50,000 mile extension from standard warranty coverage) | 100% |
| Category 2: Subject Vehicle not within Category 1 and future repair to be performed within 10 years or 150,000 miles from purchase/lease of Subject Vehicle, whichever occurs first (6 year/100,000 mile extension from standard warranty coverage) | 50% |
| Category 3: Subject Vehicle not within Categories 1 or 2 and future repair to be performed 15 years or 150,000 miles from purchase/lease of Subject Vehicle, whichever occurs first (11 year/100,000 mile extension from standard warranty coverage) | 25% |

---

[6] A "Qualified Future Repair" is one that occurs on or after the Effective Date and is performed in accordance with Defendants' Technical Service Bulletin, L198.00-P-058914, at an Authorized Service Center.  Settlement Agreement §§ 1.17, 1.26.

Id. §§ 1.16, 4.4. A Class Member who comes within the coverage for future repairs can bring his or her Subject Vehicle to an Authorized Service Center, which will determine eligibility and perform the repair. Id. §§ 4.4, 4.5.

The Settlement Agreement also provides for the potential of repair to a Subject Vehicle that is more than 15 years of age or has more than 150,000 miles from the original In-Service Date, whichever occurs first, if the owner or lessee presented the Subject Vehicle to an Authorized Service Center for a qualifying repair or provided notice to Defendants at a time prior to the vehicle age/mileage limitation and was denied coverage for the repair at that earlier date. Id. § 4.4(d).

### C.    Approval of Class Notice

The notice plan was developed by Class Counsel and implemented by JND Class Action Administration ("JND"). Decl. of Jennifer M. Keough Regarding Notice Administration ("Keough Decl.") [Doc. 100-1]; Settlement Agreement § 8. In accordance with the Preliminary Approval Order, a Postcard Notice was timely mailed via the United States Postal Service ("USPS") on May 28, 2021, to all Class Members who could be identified with reasonable effort, which encompassed (1) obtaining all eligible Vehicle Identification Numbers representing the Subject Vehicles from Defendants, (2) gathering mailing addresses from the respective Departments of Motor Vehicles ("DMVs"), (3) reviewing the mailing

data provided by the DMVs to identify undeliverable or duplicative addresses, and (4) updating the potential Class Member addresses using the USPS National Change of Address database. Keough Decl. ¶¶ 5-10. Notice of the settlement also was published on the Settlement Website (www.MarsRedPaintSettlement.com) maintained by JND. Id. ¶ 14.

After obtaining the records containing contact information for Class Members, a total of 168,817 potential settlement Class Members were mailed a Postcard Notice, and additional efforts were undertaken to notify the individuals for those notices that were returned as undeliverable. Id. ¶¶ 10, 13. The Postcard Notice provided Class Members with the following information: (1) the definition of the class; (2) a summary of the settlement benefits; (3) direction for how to file a claim; (4) options regarding the Settlement Agreement, including the option to file a claim, submit an exclusion request, file an objection, or do nothing; and (5) where to go to obtain more detailed information about the Settlement Agreement. Id. ¶ 12 & Ex. A. The Postcard Notice also informed Class Members of the relevant deadlines regarding their options, as well as the date of the final approval hearing and, to the extent a portion of the class may speak Spanish as their primary language, the Postcard Notice included a direction to visit the Settlement Website to view the notice in Spanish. Id. The Postcard notice also

informed Class Members of their right to object to or to opt out of the Settlement Agreement.  Id. ¶¶ 24-25 & Ex. A.

As of July 28, 2021, the Settlement Website tracked a total of 11,373 unique users who registered nearly 55,000 page views.  Id. ¶ 17.  JND also established and maintained a dedicated email address, info@MarsRedPaintSettlement.com, to receive and respond to Class Member inquiries and, as of July 28, 2021, JND received 708 emails sent to this address.  Id. ¶¶ 19-20.  JND also established and maintained a toll-free telephone number to provide Class Members with additional information regarding the Settlement Agreement, and 2,100 calls were received. Id. ¶¶ 21-22.

The Court finds that the form and methods of notifying Class Members of the terms and conditions of the proposed Settlement Agreement met the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure, any other applicable law, and due process, and constituted the best practicable notice under the circumstances; moreover, due and sufficient notices of the Fairness Hearing and rights of all Class Members have been provided to all people, powers, and entities entitled thereto.  The Class has been notified of the Settlement Agreement pursuant to the plan approved by the Court.  Class Members had the opportunity to be heard on all issues regarding the resolution and release of their claims by

submitting objections to the Settlement Agreement to the Court. In addition,

pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 et seq., notice was

provided to the Attorneys General for each of the states in which a Class Member

resides and to the Attorney General of the United States. Id. ¶ 4.

### D.   Attorneys' Fees, Expenses, and Service Awards

Class Counsel have applied for an award of $4,750,000.00, reimbursement

of $75,671.38 in expenses, and services awards of $5,000.00 for each Class

Representative. Pls.' Unopposed Mot. for Attorneys' Fees, Expenses, and Class

Representative Service Awards ("Pls.' Mot. for Att'ys' Fees") [Doc. 92]. These

amounts are in accordance with the terms of the Settlement Agreement. Settlement

Agreement §§ 5.2, 5.3. For the reasons more fully set forth below, under

prevailing precedent and the circumstances of this case, the requests for attorneys'

fees and expenses will be approved, but the request for Class Representative

service awards will be denied.

### E.   Releases

In pertinent part, the Class Members will release Defendants from claims

that were or could have been asserted in connection with the inadequacy of the 590

Mars Red paint. The releases are more fully set forth in the Settlement Agreement.

Settlement Agreement § 6.

## III.    FINAL APPROVAL OF PROPOSED SETTLEMENT AGREEMENT

After consideration of the Settlement Agreement, the arguments and authorities presented by the parties in their motions and briefing, all objections and comments regarding the Settlement Agreement, the arguments at the Fairness Hearing held on August 30, 2021, and the entire record in this case, the Court reaffirms its findings in the Preliminary Approval Order and finds that the Settlement Agreement is fair, reasonable, and adequate.

### A.    The Proposed Settlement is Fair, Reasonable, and Adequate Under Rule 23.

The Court finds that the terms of the Settlement Agreement are fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23.  As an initial matter, when presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b).  Class certification is proper when the proposed class meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b).  Rule 23(a) requires (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  FED. R. CIV. P. 23(a)(1)-(4).  Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action [be] superior to other

14

available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

The Court analyzed these factors in the Preliminary Approval Order and reaffirms them here. Specifically, the Court finds that all of the prerequisites of Rule 23(a) and (b)(3) have been satisfied for certification of the settlement class for settlement purposes only. The settlement class, which contains 168,817 potential members, is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the settlement class; the claims of the settlement class representatives are typical of the claims of the absent settlement class members; the settlement class representatives and settlement class counsel have and will adequately and fairly protect the interests of the settlement class; and the common questions of law and fact predominate over questions affecting only individual settlement class members, rendering the settlement class sufficiently cohesive to warrant a class settlement.

Next, the Court must determine whether the proposal is fair, reasonable and adequate under Rule 23(e)(2), which provides as follows:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> **(A)** the class representatives and class counsel have adequately represented the class;
> **(B)** the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

## 1. The Class Members Were Adequately Represented.

The Court finds that Class Counsel have adequately represented the Class Members in accordance with Rule 23(e)(2)(A). Additionally, the interests of the Class Representatives are aligned with those of the other members of the Class because they owned or leased one of the Subject Vehicles that were painted with 590 Mars Red paint and had no interest antagonistic to any Class Member. Class Counsel investigated the facts and merits of the legal claims prior to the filing of the Complaint, vigorously opposed Defendants' Motion to Dismiss, propounded discovery requests, reviewed responses from Defendants and non-parties, and participated in intensive settlement negotiations. Class Counsel have longstanding

experience in complex consumer class action litigation and dedicated significant resources to this action. The Court has observed Class Counsel's diligence, ability, and experience through the filings in this case, in their presentation of the Settlement Agreement to this Court, and in their attention to matters of notice and administration after the announcement of the settlement.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length.

Rule 23(e)(2)(B) is satisfied because the Settlement Agreement was not the product of fraud or collusion but negotiated at an arms-length formal mediation conducted by a neutral, highly respected mediator. The close participation of former United States District Judge Holderman in multiple mediation sessions supports the procedural fairness of the Settlement Agreement. See Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion.").

### 3.    The Relief Provided to the Class is Adequate.

In accordance with Rule 23(e)(2)(C), the Court finds that the relief provided to the class is adequate. First, taking into account the costs, risks, and delay of the trial and any appeal, there is significant uncertainty as to whether Plaintiffs could succeed on their remaining claims, even if the Class is certified, either at the

summary judgment phase or at trial. Moreover, continued litigation would likely involve additional significant attorneys' fees and expenses inherent with an appeal with a final resolution potentially years later.[7] Even if a jury awarded the settlement class more in damages that they will receive under the Settlement Agreement, such an outcome is far from guaranteed and any such relief would occur, if at all, after years of protracted litigation, including appeals. The Settlement Agreement provides the Class Members a significant benefit, either in the form of full or partial monetary reimbursement for previous repairs and extended coverage for future repairs.

Next, the Court finds that the method of distributing relief to the Class Members is effective. The claims process is straightforward. Those Class Members who qualify for reimbursement for past repairs will receive either a check or electronic payment. Those Class Members that seek further repairs based upon what is effectively an extended warranty will have all or part of the repairs made at an Authorized Service Center. The claims administrator, JND, is highly

---

[7] This Court also finds it significant that few civil trials in this district have been scheduled since the beginning of the COVID-19 pandemic and, given the backlog of criminal cases that need to be tried and the likelihood of dispositive motions being filed if no settlement occurs, it is unlikely that this case would be tried within the next two years, if then.

experienced in administering large class actions settlements and has detailed the efforts it has made in administering the settlement and facilitating the claims process.

In addition, as verified by Judge Holderman, the parties negotiated attorneys' fees for Class Counsel only after reaching agreement on the terms of the relief to the Class. The payment of fees does not impact the amount of relief available to the Class Members. Finally, there are no agreements required to be identified by Rule 23(e)(3).

### 4.    Class Members Are Treated Equally Relative to Each Other.

In accordance with Rule 23(e)(2)(D), the Settlement Agreement provides the same sliding scale of reimbursement for repairs already made or for future coverage based upon the age or mileage of the Subject Vehicle. Class Members with Subject Vehicles in the various age and mileage categories are treated equally with one another. This type of structured settlement is not uncommon when dealing with the need to repair defects in automobiles. See, e.g., Amin v. Mercedes-Benz USA, LLC, No. 1:17-CV-1701-AT, 2020 WL 5510730, at *2 (N.D. Ga. Sept. 11, 2020) (finding that "Rule 23(e)(2)(D) is satisfied because the Settlement treats Class Members equitably by providing the same durational period of coverage for every Class Vehicle and the same sliding scale of reimbursement

19

or coverage percentage based on the Vehicle's age/mileage."); Aarons v. BMW of N. Am., LLC, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) ("Age and mileage limitations are common in automotive defect cases, and reflect manufacturers' strong arguments that vehicles ordinarily fail after a number of years or miles due to wear and tear."); Sadowska v. Volkswagen Grp. of Am., Inc., No. CV 11-00665-BRO-AGRx, 2013 WL 9600948, at *3, 6 (C.D. Cal. Sept. 25, 2013) (approving settlement agreement which provided reimbursement for repairs or an extended warranty based upon the age/mileage of the vehicle, noting "[o]ther courts have upheld similar class action settlement agreements which place age and mileage restrictions[.]"). The Court finds that the Settlement Agreement treats Class Members equitably.

The Court is satisfied that the Settlement Agreement meets the requirements of Rule 23(e)(2).

### B.    The Proposed Settlement is Fair, Adequate, and Reasonable Under the Bennett Factors.

"[I]n order to approve a settlement, the district court must find that it 'is fair, adequate, and reasonable and is not the product of collusion between the parties.'" Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984) (quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)). In addition to the Rule 23 factors, the United States Court of Appeals for the Eleventh Circuit has directed

district courts to consider the following factors in determining whether to approve

a class settlement:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Id.

Courts have substantial discretion in determining whether to approve a

settlement agreement. Id. In exercising this discretion, the court should consider

the "strong judicial policy favoring settlement as well as . . . the realization that

compromise is the essence of settlement." Id. (citing United States v. City of

Miami, 614 F.2d 1322, 1344 (5th Cir. 1980)). As stated below, in consideration of

all the Bennett factors, this Court finds that the proposed Settlement Agreement

provides the best practical means of providing relief to the Class.

### 1.    Likelihood of Success at Trial and Complexity, Expense, and Duration of the Litigation

The Court considers the first and fourth Bennett factors together. The Court

finds that there were substantial hurdles that Plaintiffs faced in succeeding on the

merits of their claims. Throughout this case, Defendants vigorously disputed

liability under any of the causes of action asserted by Plaintiffs. The Court

21

narrowed the scope of the Second Amended Complaint significantly in ruling upon

Defendants' Motion to Dismiss. It is entirely possible that Plaintiffs would not

prevail on establishing liability on the part of Defendants, either on summary

judgment or after a trial on the merits. The questionable likelihood of success also

affects the possible range of recovery because, even if Plaintiffs prevailed on

liability with respect to one or more claims, they would not be assured of a

recovery to the full extent of claimed damages. This case was complex, expensive,

and time-consuming which, when combined with the uncertainty of recovery,

meant that the range of possible recovery included amounts far less than those

agreed to in the Settlement Agreement. Class Counsel have invested over 4,000

hours of attorney time to litigate this case and have made significant investments in

expenses.

In order to proceed to trial, the parties would have to devote significant time

to expert discovery after the class certification stage (assuming the Court certified

a class), would file motions for summary judgment and to exclude expert

testimony and then, if Plaintiffs' claims survived, the resulting trial would require

months of preparation. In addition, even assuming that Plaintiffs succeeded in

establishing liability and recovered all damages sought, which is highly unlikely,

the case would likely undergo a protracted appellate process with an affirmance of

22

the district court's decision far from certain.  Moreover, during this protracted

litigation process, Class Members, many of whom possess vehicles with model

years over a decade old, would be without any remedy while their vehicles

experience further depreciation from age or wear and tear.

### 2.    Range of Possible Recovery and the Point at Which the Settlement is Fair, Adequate, and Reasonable

The Court considers the second and third <u>Bennett</u> factors together.  The

Settlement Agreement provides that owners or lessees of Subject Vehicles that had

their cars repainted within 15 years of placing them in service can receive payment

to reimburse them for expenses at a range depending on the age or mileage of the

vehicle.  Those owners or lessees who choose to have a repainting performed in the

future who have placed their cars in service within 15 years will have an extended

ability to do so, with Defendants providing full or partial payment again depending

upon the age or mileage of the vehicle.  And even those with older vehicles can

take advantage of this extended warranty if they previously notified Mercedes-

Benz or presented their vehicle to a service center for repair during the relevant

time period.

Importantly, a significant number of Class Members have the opportunity to

recoup some or all of their alleged prior damages in which they paid for repairs or

the opportunity to have Defendants pay for at least a portion of their future repairs.

The fact that the amount of damages is less than the damages that some members of the Class might hope to recover at trial does not present an obstacle to approval of the Settlement Agreement. See In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 325 (N.D. Ga. 1993) ("That the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair."). Indeed, courts regularly find settlements to be fair even where "[p]laintiffs have not received the optimal relief." Warren v. City of Tampa, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988). Many of the objections to the Settlement Agreement raised by only a miniscule number of objectors revolve around the failure to provide damages for the diminution of value of the Subject Vehicles. However, as further discussed in this Order, an award of such damages is far from likely.

### 3.    The Substance and Amount of Opposition to the Settlement

The amount of opposition to the Settlement Agreement is small. The total number of objectors who filed timely objections was ten, one person filed an objection one day past the deadline for objections, and one person filed no objection but testified at the Fairness Hearing. Even if all twelve individuals who submitted a written objection and testified are considered, that is just 0.007% of the

total 168,817 members of the Class.[8]  It is also noteworthy that, as of July 30,

2020, only ten persons have submitted requests to opt-out of the Settlement

Agreement.  Keough Decl. ¶ 24.

   As will be discussed in this Order, the Court has carefully considered the

contentions of the individuals who filed objections to the Settlement Agreement,

and has determined that none of the objections are sufficient to overcome the

fairness of the Settlement Agreement.

### 4.   The Stage of the Proceedings at Which Settlement was Achieved

   The stage of the proceedings also weighs in favor of the Settlement

Agreement.  The time from the filing of the initial Complaint until the settlement

was reached was twenty-eight months.  The settlement was not achieved until after

a ruling on a motion to dismiss and after both sides engaged in extensive

discovery.  The Court is satisfied that Plaintiffs were able to evaluate the

desirability of the settlement as opposed to continuing with the litigation.

---

[8] While the number of objectors is "not controlling," Cotton, 559 F.2d at 1331, a relatively small number of objectors can be taken as "some indication that the class members as a group did not think the settlement was unfair."  Kincade v. Gen. Tire & Rubber Co., 635 F.2d 501, 506 n. 4 (5th Cir. 1981); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981).

### 5.    Judgment of Class Counsel

In addition, "[i]n a case where experienced counsel represent the class, the Court 'absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel.'" Ingram, 200 F.R.D. at 691 (quoting Cotton, 559 F.2d at 1330). In light of Class Counsel's qualifications, which include substantial experience litigating class actions and other complex cases, the Court "has confidence in their collective judgment that the benefits of this settlement far outweigh the delay and considerable risk of proceeding to trial." Id. Also significant is Judge Holderman's endorsement of the Settlement Agreement.

All of the Bennett factors weigh in favor of granting final approval.

## IV.    THE COURT OVERRULES ALL OBJECTIONS TO THE SETTLEMENT AGREEMENT.

There are a total of ten individuals who made timely objections to the Settlement Agreement and two that have made untimely objections. As an initial matter, the Court notes that seven of the twelve objectors are plaintiffs in a parallel class action related to the same 590 Mars Red paint defect in the United States District Court for the District of New Jersey. Ponzio v. Mercedes-Benz USA, LLC, 1:18-cv-12544-JHR-JS (D.N.J. filed Aug. 8, 2018). These seven objectors are Robert Ponzio [Doc. 96-4], Alexander Acuna [Doc. 96-1], Brian Madsen [Doc. 96-7], Vanessa M. Montgomery [Doc. 96-6], Robert Mull [Doc. 96-3], Hadiya

Nelthrope [Doc. 96-2], and Samuel Salgado [Doc. 96-5] (the "Ponzio Plaintiffs"),

and are joined by an eighth objector Frederick J. Parker [Doc. 96-8] (collectively,

the "Ponzio Objectors"). See Mem. of Law in Supp. of Ponzio Objectors' Objs. to

Proposed Class Action Settlement and Att'ys' Fees Request ("Ponzio Objs.")

[Doc. 96]. The Ponzio Objectors are represented in this action by Interim Ponzio

Class Counsel.[9]

Two other objectors timely filed objections: Zarine Armstrong [Doc. 97]

and Rafael Pesi [Doc. 98], and one putative objector, Gustavo Guerra, filed an

objection one day past the time permitted by the Settlement Agreement[10] [Doc.

99]. These three objectors hardly can be called independent of the Ponzio

Objectors or their attorneys. At least two of the three, Zarine Armstrong and

Guerra Gustavo, had their objections mailed into the Court by Interim Co-Lead

Class Counsel for the Ponzio Plaintiffs, Gordon & Partner, P.A. See Ponzio Objs.

---

[9] The Ponzio Plaintiffs previously filed a Motion to Intervene in this case, which
was denied by the Court. Mar. 29, 2021, Order [Doc. 89].

[10] The Settlement Agreement states that "[a]ny Settlement Class Member who
intends to object to the Settlement must do so by filing the objection with the Court
(and serving it on Class Counsel and Defense Counsel) not later than sixty (60)
days after the Notice Date." Settlement Agreement § 8.13. The Notice Date in
this case was May 28, 2021, and the Notice clearly indicated that the deadline to
object to the Settlement was July 27, 2021 (60 days from May 28, 2021). Keough
Decl. ¶ 10 & Ex. A.

at 56; Doc. 97 at 4; and Doc. 99 at 4. The third, Rafael Pesi, may or may not have

had his objection mailed in the same way (the docket fails to include the envelope

in which the objection was mailed, meaning it could or could not have been mailed

in one of the other envelopes), but the objection itself contains an internal

document number of "738849v1," the identical internal document number

referenced in each of the Ponzio Objectors' and Parker's declarations. See Decl. of

Alexander Acuna [Doc. 96-1 at 1-2]; Decl. of Hadiya Nelthrope [Doc. 96-2 at 1-2];

Decl. of Robert Dayton Mull [Doc. 96-3 at 1-2]; Decl. of Robert James Ponzio

[Doc. 96-4 at 1-2]; Decl. of Samuel Jesus Salgado [Doc. 96-2 at 2]; Decl. of

Vanessa Marie Montgomery [Doc. 96-6 at 1-2]; Decl. of Brian Christopher

Madsen [Doc. 96-7 at 1-2]; Decl. of Frederick Joseph Parker [Doc. 96-8 at 1-2].

Zarine Armstrong, Rafael Pesi, and Gustavo Guerra all have presented their

objections on forms obviously prepared by Ponzio Interim Class Counsel.

At the Fairness Hearing, Cindy Wensell appeared and was permitted to

make a statement in opposition to the Settlement Agreement. According to Ms.

Wensell, she owns a 2012 SLK-Class Vehicle that was placed in service in March

2020. Ms. Wensell admitted receiving the Postcard Notice, being aware of the

deadline for filing objections, and acknowledging that the deadline had passed.

She believes that Mercedes-Benz should have recalled and repainted all Subject

Vehicles with defective 590 Mars Red paint and that the sliding scale recovery imposed in the Settlement Agreement leaves owners "at the mercy of the individual practitioners." However, this Court notes that if Ms. Wensell placed her Subject Vehicle in service in March 2020, she would be entitled to a repainting of the damage to her vehicle at no cost to her under the terms of the Settlement Agreement. Following the hearing, Ms. Wensell and her husband Joshua filed a document indicating her intent to provide a statement to the Court and a request that Mercedes-Benz "have the paint repair handled as a recall." [Doc. 115]. To the extent the Clerk docketed this request as a "Motion to Handle as a Recall," the motion is denied.

The Court also observes that out of the 168,817 potential settlement class members, the total number of objectors (both timely and untimely) represent 0.007 percent of the class and, as just discussed above, eleven objectors (one of whom submitted his objections out-of-time) were submitted by Ponzio's Interim Class Counsel. Nevertheless, the Court has considered and hereby rejects all of the objections on their merits, whether or not the objections are procedurally valid or whatever may have motivated their filing.[11] All of the objections are on the record,

---

[11] The credibility of two of the objectors has been legitimately called into question by Plaintiffs. Objectors Acuna and Montgomery dismissed their claims in Ponzio after facing a motion for sanctions. See Defs.' Mot. to Dismiss the Claims of Pls.

having been publicly filed on the Court's docket. The objections can be grouped

as follows: (1) objections as to the adequacy of the relief and the inequitable

treatment of Class Members; (2) objections of the terms of the proposed attorneys'

fees application; (3) objections as to the adequacy of Class Counsel and the Class

Representatives; (4) objections that the settlement is a result of collusion and a

reverse auction; and (5) objections that the proposed settlement fails to satisfy the

Bennett factors. Ponzio Objs. at 13-54. The Court has reviewed all of the

objections, the responses to the objections filed by Plaintiffs [Doc. 107] and

Defendants [Doc. 106], as well as the declarations, affidavits, and exhibits

submitted by the objectors and the parties, and the supplemental submissions

---

Miller, Montgomery, and Acuna as a Sanction, Ponzio v. Mercedes-Benz USA, LLC, No. 1:18-cv-12544-JHR-MJS (D.N.J. Nov. 10, 2020) [ECF 102]; Stipulation of Dismissal of Pl. Alex Acuna, Ponzio v. Mercedes-Benz USA, LLC, No. 1:18-cv-12544-JHR-MJS (D.N.J. Dec. 10, 2020) [ECF 111]; Stipulation of Dismissal of Pl. Vanessa Montgomery, Ponzio v. Mercedes-Benz USA, LLC, No. 1:18-cv-12544-JHR-MJS (D.N.J. Dec. 10, 2020) [ECF 112]. Moreover, (1) Acuna sold his 2012 SLK-Class 250 Subject Vehicle in May 2018, never paid for any prior repairs to remedy any paint defect, and received $19,752.34, which was in excess of market value for such a sale. Decl. of Alex Acuna ¶¶ 4, 6, 7; Decl. of James F. McDonough ("McDonough Decl.") [Doc. 107-1] ¶ 3; 2012 Mercedes-Benz SLK-Class 2012 Private Sale Value [Doc. 107-4]; and (2) Montgomery's 2014 C250-Class Subject Vehicle was stolen and later declared a total loss and there is no evidence before the Court that her insurance payout of $12,461.04 was less than market value of the vehicle. Decl. of Vanessa Marie Montgomery ¶¶ 4-7; McDonough Decl. ¶ 6; 2012 Mercedes-Benz C250-Class 2014 Private Sale Value [Doc. 107-6].

following the Fairness Hearing [Docs. 117, 121]. The Court's determinations are

not dependent upon any individual declaration, affidavit, or exhibit, but based upon

the Court's own independent judgment.

### A.    Objections to the Adequacy of the Relief

The Ponzio Objectors contend throughout their objections that most class

Members will get no relief from the settlement in this case. Ponzio Objs. at 13-25.

In addition, they contend that those Class Members who choose to have their

Subject Vehicles repainted will lose because they are not getting paid for the

diminished value of their automobiles. Id. at 24-26. Finally, the Ponzio objectors

assert that the proposed settlement is an improper coupon settlement. Id. at 27-29.

As to the objection that most Class Members will get no relief, the Ponzio

Objectors, as well as their experts, come to this faulty conclusion based upon a

significantly flawed premise—that every Subject Vehicle presented for repair *will

have to be repainted in its entirety.*[12] Id. at 16 (arguing that the cost of repainting

---

[12] Specifically, the Ponzio Objectors contend that no rational class member would take advantage of the discounted repainting offered by the Settlement Agreement because the Ponzio Objectors' inflated calculation of potential costs to class members is greater than their estimate of the trade-in value which would be added to a vehicle by repainting.

the Subject Vehicles costs between $7,000 and $11,300[13]); Decl. of Professor

Robert Klonoff [Doc. 96-10] ¶ 25 (presuming in his opinions that the cost to

repaint a Subject Vehicle will be at least $7,000 and as much as $11,300) and

¶¶ 32, 36, 38, 39 (presuming that the cost of repainting will exceed $10,000); Decl.

of Richard J. Eichmann ("Eichmann Decl.") [Doc. 96-12] ¶ 11 (basing his

"understanding" of the settlement on the cost to repaint a Subject Vehicle being

between $7,000 and 11,300); Expert Report of Garrett Glasgow, Ph.D. [Doc. 96-

13] ¶¶ 32, 41 (incorrectly describing a "repainted" Subject Vehicle as one "under

which the entire vehicle would be repainted at an Authorized Service Center" and

clarifying in his survey that "repainted" meant that "the entire vehicle had been

repainted"). The Settlement Agreement, contrary to the presumption adopted by

---

[13] The Ponzio Objectors cite to three allegations in the Third Amended Complaint
to support this presumption, Ponzio Objs. at 16 (citing Third Am. Compl. ¶¶ 53,
93, 122), but these allegations are limited only to specific vehicles of three named
class members and were not admitted by Defendants during the course of the
litigation. There is nothing in the record of this case that purports to establish that
"most" Subject Vehicles will need to be completely repainted. At the Fairness
Hearing, counsel for the Ponzio Objectors conceded that their experts based their
opinions on the presumption of complete repainting for each Subject Vehicle. See
Tr. of Fairness Hr'g ("Tr.") [Doc. 116] at 55 (MR. DEARMAN: "[M]y position is
whether you use a full paint job, 7 to 11,000, or you use a partial paint job, 2,000 to
3,000, it is still irrational. You have the same problem because -- THE COURT:
That's not what your experts looked at, though. They looked at the full paint job.
MR. DEARMAN: And I don't disagree with that, I don't disagree with that.").

the Ponzio Objectors and their experts, specifically provides that "qualified" repairs are limited to "refinishing of affected areas only" in accordance with Defendants' Technical Service Bulletin.  Settlement Agreement §§ 1.26, 1.27. Indeed, anyone who has had their vehicle damaged in an accident is aware that when a quarter panel, hood, trunk, or other separate unit is damaged but the rest of the automobile is not, there is a repainting of the damaged unit, not the entire vehicle (unless of course, the paint color no longer exists, which is not the case here).[14]

Because the Ponzio Objectors' argument as to the inadequacy of the settlement is based on this flawed premise, none of their statements about most Class Members receiving "nothing" can be seriously considered.  Based upon the terms of the Settlement Agreement, all owners and lessees of Subject Vehicles whose automobiles were placed in service prior to seven years ago with less than

---

[14] The Court is aware of the Ponzio Objectors' contention that even using Class Counsel's estimated cost for repainting, many Class Members in the 25% and 50% discount categories would pay more for a future repair than they would receive in increased vehicle trade-in value with a commercial dealer.  Post-Fairness Hearing Suppl. Mem. of Law of Ponzio Objectors ("Ponzio Suppl.") [Doc. 121] at 7. However, accounting for the individualized nature of vehicle valuations and the range of potential costs of repainting, the Court finds that the possibility of a difference in the increase of trade-in value and the cost to some Class Members who receive a Future Qualifying Repair is reasonable and acceptable.

150,000 miles will not be getting "nothing" but are eligible for reimbursement for

qualified past repairs up to 100% of the amount paid for the repairs.  Those same

persons whose vehicles were placed in service between seven and fifteen years ago

are eligible for qualified past repairs at a rate of 25% to 50% depending upon the

age of the vehicle.  Even those vehicles who were placed in service over fifteen

years ago or with over 150,000 miles are eligible for a qualified future repair if

they can show they presented their vehicle for such a previous repair or notified

Defendants of the need for the repair prior to the expiration of 15 years or meeting

the 150,000 mile limit.[15]  Moreover, the Ponzio Objectors provide no authority to

support their assertion that the Settlement Agreement is inadequate merely because

some of the potential Class Members will not be eligible for reimbursed future

repairs based solely on the sliding scale for relief.  See Amin, 2020 WL 5510730,

at *3-4 (approving a settlement agreement with relief based on a sliding scale

based on vehicle age and mileage which excluded some vehicles from any

reimbursement for future repairs).

---

[15] The Ponzio Objectors' argument that the Settlement Agreement denies recovery
to any former lessees who were unwilling to pay for a new paint job on a leased
vehicle also ignores this aspect of the Settlement Agreement.  See Ponzio Objs. at
19-20.

Indeed, the examples offered by the Ponzio Objectors as to their own purported losses undercut their own objections. Objector Montgomery complains about receiving "nothing," but her vehicle was totaled, she apparently incurred no costs to repaint her vehicle, she received an insurance payment about the market value of the vehicle, and she offers no evidence that the Settlement Agreement adversely affects her in the slightest. Objector Acuna appears not to have incurred any costs to repair his Subject Vehicle (he could recover those costs if he did and submitted a claim) and suffered no loss in the market value of the vehicle after his trade-in. Objectors Nelthrope's, Ponzio's, and Madsen's Subject Vehicles are eligible for a repair at 50% of cost. Objector Mull has had his Subject Vehicle repainted twice, once where Defendants actually paid for the repaint, see Ponzio [Doc. 1] at ¶ 50, and the second repaint came at a time when Mull would be eligible for a full reimbursement if he timely submits his claim. Although Objector Salgado's mileage takes his Subject Vehicle out of automatic coverage, if he can show he presented his automobile to an Authorized Service Center or notified Defendants within the first fifteen years, he is entitled to coverage similar to others. Objector Parker sold his vehicle in 2020 and does not contend that he received less than the market value of that vehicle.

35

The gravamen of the Ponzio Objectors' complaints (and much of their expert's critiques) is that there is no provision in the Settlement Agreement for the diminution in value of the vehicle after it is repainted, which makes the settlement inadequate. Ponzio Objs. at 24-26, 31-37. But these objectors provide no case authority for the proposition that a settlement that provides for repairs to vehicles under a sliding scale based upon a vehicle's age and mileage is inadequate for failing also to provide for diminished value of the vehicle. In fact, case authority suggests the opposite. In Eisen v. Porsche Cars N. Am., Inc., No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014), the district court overruled a similar objection, and stated:

> These objectors have not taken into account the difficulties of establishing classwide diminution in value damages in light of the twelve-year vehicle in-service period (as exists here), with owners buying and selling at different times and in different circumstances. Although some class settlements have provided compensation for diminished value, courts have rejected the notion that class action settlement must provide compensation for diminished value.

Id., 2014 WL 439006, at *8. See also Milligan v. Toyota Motor Sales, U.S.A., Inc., No. C 09-05418 RS, 2012 WL 10277179, at *7 (N.D. Cal. Jan. 6, 2012) (approving settlement with extended warranty and overruling objections as to the lack of a diminished value provision: "Objectors who raised these concerns could have simply opted out of the settlement. . . .[D]iminution in value cases face

36

significant obstacles regarding proof. Here, it was reasonable for the parties to focus on enhanced warranty benefits and the provision of monetary compensation for class members who could document out-of-pocket repair costs."); Vaughn v. Am. Honda Motor Co., 627 F. Supp. 2d 738, 749 (E.D. Tex. 2007) (approving settlement for extended warranty and overruling objection that the settlement does not compensate for diminution in value; "the court observes that plaintiffs in diminution in value cases have faced significant hurdles when attempting to prove such claims."). And the Court notes that just last year, another judge in this district approved a final settlement to compensate for an alleged design defect to Mercedes-Benz class vehicles by providing reimbursements for past payments and forward-looking warranty relief, the same two components of the proposed Settlement Agreement in this case. Amin, 2020 WL 5510730, at *4.

Contrary to the Ponzio Objectors' assertion, the Court finds that the proposed settlement is not an "improper coupon settlement." The settlement does not involve any coupons or vouchers but direct cash payments to those Class Members who previously paid for repairs or coverage for future repairs. See Hillis v. Equifax Consumer Servs., Inc., No. 104-CV-3400-TCB, 2007 WL 1953464, at *11 (N.D. Ga, June 12, 2007) ("A coupon settlement implied that Class Members will receive a coupon that will entitle Class Members to a discount on some future

37

purchase."); Figueroa v. Sharper Image Corp., 517 F. Supp. 2d 1292, 1301-02

(S.D. Fla. 2007) (stating that "coupon settlements" are those "under which class

members are awarded coupons or merchandise credits rather than cash.").

Finally, the Ponzio Objectors argue that the Settlement Agreement is

inadequate because Plaintiffs' asserted value of the Settlement Agreement is based

on improper calculations in Plaintiffs' submitted evidence. Ponzio Objs. at 25.

With respect to both past and forward-looking relief, Class Counsel submitted a

declaration from Lee M. Bowron ("Bowron"), a 30-year experienced actuary, who

conducted an analysis of estimated reimbursement for past claims (which was

performed *before* the actual claims submitted following notice to Class Members)

and the estimated value of future repairs to the Subject Vehicles. Decl. of Lee M.

Bowron ("Bowron Decl.") [Doc. 92-2]. Bowron originally estimated the total

value of the settlement at $44.1 million, with a range between $32.1 million and

$56.1 million. Id. at 4. The Ponzio Objectors contend that the Bowron

Declaration, unreasonably and without sufficient evidentiary basis, assumes an

inflated number of future repair claims per Subject Vehicle, providing the

Eichmann Declaration in support of their position.

During the Fairness Hearing, the Court noted that it need not credit

Bowron's estimation of past claims because of the actual claims now received, and

expressed its concern with Bowron's inclusion in the value of the settlement of

$33.5 million (with a range of between $26.8 million and $40 million) for the

"Retail Price of Service Contract." See Tr. at 14-18 (referencing Bowron Decl. at

4). In the Court's view, the cost to Mercedes-Benz of a service contract for each

vehicle owner that would cover the value of an extended warranty (which would

include administrative and marketing expenses) should not properly be included in

the value of the proposed settlement to the Class Members. Consequently, the

Court viewed Bowron's original estimated value of the settlement as high. The

Court granted Plaintiffs' request for additional time to submit a supplemental

declaration that addressed the Court's concerns and provided the Ponzio Objectors

with additional time to respond thereto.

In his supplemental declaration, Bowron removed his analysis on the

estimated value of reimbursement for past repairs because of the actual data

submitted on claims for reimbursement, as well as the prior inclusion of the retail

price of service contracts that would cover a warranty that equates with the

settlement proposal. Suppl. Decl. of Lee M. Bowron ("Bowron Suppl.") [Doc.

117-2] at 3-4. Under his revised analysis, Bowron now estimates the value of

future repairs to be $13.1 million, with a range of between $10.5 million and $15.7

million. Id. at 5-10. Including the value of the 1,532 claims for repairs submitted

by Class Members ranging from $3.1 million to $4.6 million (multiplying the

number of claims by the average repair amount of $2,000-$3,000), the total value

of the settlement is now estimated by Plaintiffs as averaging between $16.2 million

and $17.7 million (assuming the value of future repairs at $13.1 million). See

Keough Decl. ¶ 27.   In response, the Ponzio objectors submit the supplemental

declaration of Richard J. Eichmann ("Eichmann Suppl.") [Doc. 121-2], which calls

into question the methodology of Bowron's analysis and recalculates the potential

value of future qualifying repairs to be $6,264,850.  Eichmann Suppl. at 20, 22.

The Court finds Bowron's revised analysis to be reliable and notes that it is

similar to that submitted by the plaintiffs' expert in Amin, which was cited with

approval by the district court in that case.  Amin, 2020 WL 5510730, at *2; see

also Decl. of Lucy P. Allen submitted in Amin [Doc. 117-1].  However, even if

this Court rejected Bowron's revised analysis as to the value of future claims and

credited Eichmann's valuation of future qualifying repairs, the Court would still

find that the relief afforded to Class Members in the Settlement Agreement to be

adequate.[16]

---

[16] Based upon Eichmann's assessment of the value of future claims, the total value
of the settlement would be between $9.4 million and $10.9 million (after adding
the value of the claims already submitted).

**B.      Objections to the Terms of the Attorneys' Fees Application**

The Ponzio Objectors contend that the proposed $4.75 million attorneys' fee

award is flawed because it "is sought in connection with coupon settlements or

where much of the Class receives no recovery or cash." Ponzio Objs. at 29.  As

previously discussed, the assertion that this is a coupon settlement where most of

the Class Members receive nothing is unsupported by the record.  The Ponzio

Objectors make no other substantive objection to the proposed fee award.

**C.      Objections as to the Adequacy of Class Counsel and Class
          Representatives**

The Ponzio Objectors argue that Class Counsel is inadequate because Class

Members are treated disproportionately, the settlement did not encompass damages

for diminution in value, and Class Counsel improperly excluded Ponzio Counsel

from settlement negotiations.  Ponzio Objs. at 30-37.  First, Class Members are not

treated disproportionately.  All Class Members who owned or leased a Subject

Vehicle during the applicable time periods are treated the same based upon the age

or mileage of the vehicle when placed in service.  The Eleventh Circuit case relied

upon by the Ponzio Objectors is inapposite.  In Holmes v. Continental Can Co.,

706 F.2d 1144 (11th Cir. 1983), a Title VII case, the appellants objected to a

$43,000 back pay award when eight named plaintiffs would receive half of the

fund.  The Eleventh Circuit found that "the settlement proponents have not

overcome the facial unfairness of the allocation of half the back pay award to the

eight named plaintiffs" as opposed to "the remaining 118 members of the class."

Id. at 1147-48. There is no such disparity here.

Second, this Court has discussed the issue of diminution in value and why

the failure of the settlement to include such damages does not show any

inadequacy. Class Counsel cannot be deemed to be inadequate for failing to insist

on the inclusion of a category for diminution in value in the final settlement.

Finally, the complaint that Class Counsel improperly excluded Ponzio

Counsel from settlement negotiations already was considered by this Court and

rejected when the Court denied Ponzio Counsel's motion to intervene.

> [T]he negotiations remained confidential for reasons that should be
> obvious to [Ponzio Counsel]. Namely the Pinon discovery and
> litigation process, including settlement discussion, was covered by a
> protective order. In fact, Plaintiffs advised [Ponzio Counsel] of the
> protective order via email. Plaintiffs even proposed including [Ponzio
> Counsel] under the Pinon protective order for the purpose of sharing
> information before communications between [Ponzio Counsel] and
> Plaintiffs broke down. . . . [T]he publicly available protective order
> explicitly prohibited them from sharing information about settlement
> discussions, and [Ponzio Counsel] do not argue that sharing
> information about the negotiations with them was in any way exempted.

May 29, 2021, Order [Doc. 89] at 18.

The Ponzio Objectors' contention as to the inadequacy of the Class

Representatives fails for reasons already discussed. The argument that the Class

Representatives recover some kind of windfall while most of the other Class Members recover nothing is untrue. The Class Representatives will obtain the same relief as similarly situated Class Members, including some of the Objectors themselves.

### D.    Objection That the Settlement is the Result of Collusion and a Reverse Auction

The <u>Ponzio</u> Objectors resurrect their arguments made in their motion to intervene that the settlement was indicative of collusion and a reverse auction. <u>See</u> <u>Ponzio</u> Pls.' Mot. to Intervene [Doc. 72] at 17-24. Rather than restating what this Court has already said in finding no evidence that events leading up to the Settlement Agreement are indicative of collusion or a collusive reverse auction, the Court incorporates by reference that portion of its earlier order which dispels any such assertions. Mar. 29, 2021, Order at 16-21.

### E.    Objection That the Proposed Settlement Fails to Satisfy the <u>Bennett</u> Factors

The Court has considered the Settlement Agreement in light of all of the six <u>Bennett</u> factors and finds that those factors are satisfied. <u>See</u> III. B., *supra*.

Based on the foregoing, the Court hereby **OVERRULES** all objections to the Settlement Agreement and finally **APPROVES** in all respects the Settlement

Agreement, finding that the Settlement Agreement is in all respects fair, reasonable, and adequate, and is in the best interest of the Class Members.

## V.   ATTORNEYS' FEES, EXPENSES OF LITIGATION, AND CLASS REPRESENTATIVE AWARDS

### A.   Calculation of Attorneys' Fees

The Court finds that the parties' agreement with regard to the payment of fees was not negotiated while they were negotiating the other terms of the Settlement Agreement and that the agreement with regard to the payment of fees and expenses was not the product of collusion or fraud.  The requested attorneys' fee award of $4,750,000 is justified under approach adopted by the Eleventh Circuit in Camden I Condo. Ass'n, Inc. v. Dunkle, 946 F.2d 768 (11th Cir. 1991). See also Lunsford v. Woodforest Nat'l Bank, No. 1:12-CV-103-CAP, 2014 WL 12740375, at *11 (N.D. Ga. May 19, 2014) (citing Camden I, 946 F.2d at 771) ("It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.").

The benefits to the Class Members in this case are two-fold: reimbursement for past payments for repairs and an extended warranty to provide the opportunity for future payments.  Based upon the 1,532 claims filed as of July 28, 2020, the cash reimbursement is between $2,000 to $3,000 for each claim.  Keough Decl.

¶ 27. The value of these claims, if verified, ranges from $3.1 million to $4.6 million (Class Member claims as of July 28, 2021, multiplied by the average repair amount of $2,000 to $3,000). There is likely to be an additional amount of reimbursement for past qualifying repairs as claims continue to be submitted between the Notice Date and Effective Date. Settlement Agreement § 9.4.

The Court finds that the amount of attorney's fees requested by Class Counsel is reasonable whether one applies Bowron's valuation of future qualifying repairs at $13.1 million or Eichmann's valuation of future qualifying repairs at $6.3 million. If Bowron's calculations are credited, the total value of the Settlement Agreement for Class Members is between $16.2 million and $17.7 million. The costs of administration which, as of July 30, 2021, totaled $137,000.00, will be paid by Defendants. See Keough Decl. ¶ 3. Defendants also will pay Class Counsel a total of $75,671.38 for expenses incurred in litigation. Decl. of William Lewis Garrison, Jr. ("Garrison Decl. II") [Doc. 92-1] ¶ 13.

To determine the fee percentage from a constructive fund, courts add the requested fee and expenses to the denominator. Amin, 2020 WL 5510730, at *4 (citing In re Arby's Rest. Grp., Inc. Data Sec. Litig., No. 1:17-CV-1035-WMR, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019) (determining the "total benefit to the class" by "adding the requested fee, litigation expenses, and the cost of

administration to the $2 million aggregate cap for claims"). In this case, the combined total of the two Settlement Agreement components and notice and claims administration costs paid by Defendants is $16.33 million to $17.83 million; adding the $4.75 million in fees and approximately $75,000 in expenses takes that number to $21.15 million to $22.65 million. Class Counsel's requested fee of $4.75 million thus represents between 20.97% and 22.46% of the gross constructive settlement fund. This fee percentage falls well below the percentage awarded in similar cases in this circuit. See In re: Arby's Rest. Grp., 2019 WL 2720818, at *4 (awarding a fee of approximately 30% and noting that "[a]wards of up to 33% of the common fund are not uncommon in the Eleventh Circuit, and especially in cases where Class Counsel assume substantial risk by taking complex cases on a contingency basis."). "[T]he average percentage fee award in this Circuit is now at or above 30%, as 'courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund.'" Cabot E. Broward 2 LLC v. Cabot, No. 16-61218-CIV, 2018 WL 5905415, at *7 (S.D. Fla. Nov. 9, 2018) (quoting Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 15-22782-CIV, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017)).

If this Court rejected Bowron's valuation and instead used Eichmann's valuation of future qualifying repairs at $6.3 million, the combined total of the two Settlement Agreement components and notice and claims administration costs paid by Defendants would be $9.53 million to $11.03 million; adding the $4.75 million in fees and approximately $75,000 in expenses takes that number to $14.35 million to $15.85 million. Class Counsel's requested fee of $4.75 million thus represents between 29.97% and 33.10% of the gross constructive settlement fund, which is at or below the percentage awarded in similar cases in this circuit.

**B.      The <u>Camden I</u> Factors Weigh in Favor of Approving the Requested Attorney's Fees.**

In approving the requested fee, the Court has carefully considered the factors listed in <u>Camden I</u>, including: the time and labor involved; the novelty and difficulty of the questions involved; the skill needed to perform the services properly; the preclusion of other employment; the customary fee; the fact that the fee was entirely contingent on a successful outcome; the time limitations imposed by the circumstances; the amount involved and the results obtained; the experience, reputation and ability of the attorneys; awards in similar cases; the objections by Class Members; the risks undertaken by Class Counsel; the economics involved in prosecuting class actions; and the other relevant circumstances. <u>Camden I</u>, 946 F.2d at 775; <u>see also</u> Johnson v. Ga. Highway

Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). The record shows that all of these factors support the requested fee.

### 1. The Time and Labor Required

The Court has observed the intense amount of time and labor required to litigate the claims in this case. Class Counsel spent just below 4,400 attorney hours and 785 non-attorney hours litigating this action from its investigative stage, through the filing of the Complaint and Amended Complaints, responding to a motion to dismiss, engaging in extensive discovery, and responding to a motion to intervene. See Garrison Decl. II ¶¶ 3, 10. Prior to the August 30, 2021, Fairness Hearing, these numbers increased to 4,612.9 attorney hours and 845.7 non-attorney hours. Decl. of William Lewis Garrison, Jr. [Doc. 117-3]. The Court finds that Class Counsel's hours are justified in view of the issues, the complexity of the case, the manner in which the case was defended, the quality and sophistication of Class Counsel, the result, and the magnitude of the settlement. This factor weighs in favor of Plaintiffs' fee request.

### 2. The Novelty and Difficulty of the Relevant Questions

Although a number of Plaintiffs' claims survived a motion to dismiss, their path forward remained difficult. This litigation involved highly technical knowledge of complex product liability and Rule 23 class action law. The

difficulty of the questions posed is borne out by the challenges indicated by the claims lost both here and in the parallel <u>Ponzio</u> litigation at the motion to dismiss stage.

### 3.    The Skill Needed to Perform the Services Properly and the Experience, Reputation, and Ability of the Lawyers

This case required a high level of experience and skill.  Class Counsel are highly experienced and recognized experts in class action litigation, and their experience includes multiple class action cases for automotive products liability. <u>See</u> Garrison Decl. I at 18-23 (listing cases).  Class Counsel's unique experience representing plaintiffs like Class Members in this case supports Plaintiffs' fee request.

### 4.    The Preclusion of Other Employment and the Time Limitations Imposed by the Circumstances

But for the time and effort they spent in this case, and given the demand for their services attributable to their high level of skill and competence, Plaintiffs' attorneys would have spent significant time on other matters.  Class Counsel was compelled at various times during the litigation to work under significant time pressure and had to commit significant resources.  These factors weigh in favor of the requested fee.

### 5.    The Customary Fee and Whether the Fee is Fixed or Contingent

The percentage used to calculate the requested fee in this case is consistent with experienced attorneys who handle complex class action litigation, and has been found reasonable in numerous cases in federal district courts. See, e.g., Amin, 2020 WL 5510730, at *4; George v. Acad. Mortg. Corp. (UT), 369 F. Supp. 3d 1356, 1380-81 (N.D. Ga. 2019) (approving attorney's fees amounting to 33% of the settlement fund where the original engagement with Class counsel was for a contingent fee of 40%, as is the case here). A contingency fee often justifies a larger award of attorneys' fees because, if the case is lost, an attorney realizes no return for investing large amounts of time and resources in the case. In re Friedman's, Inc. Sec. Litig., No. 1:03-cv-3475-WSD, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009). Class Counsel's requested fee is justified by their substantial work in this case.

For these reasons, the Court finds these factors weigh in favor of the requested fee.

### 6.    The Amount Involved and the Results Obtained

Class Counsel obtained a substantial award for the Class. All Class Members who paid for past qualifying repairs while their vehicles were within the year and mileage limitations were eligible for reimbursement on a sliding scale. In

addition, all Class Members whose vehicles are within the age and mileage limitations are eligible for free or discounted future repainting.  This factor weighs in favor of the requested fee.

### 7.    Awards in Similar Cases

Other courts in this district have approved awards of similar percentages of the class fund.  See, e.g., In re: Arby's Rest. Grp., 2019 WL 2720818, at *4;  This factor weighs in favor of the fee request in this case; see also In re Equifax Inc. Customer Data Sec. Breach Litig., No. 1:17-MD-2800-TWT, 2020 WL 256132, at *34 (N.D. Ga. Mar. 17, 2020) (listing cases), aff'd in part, rev'd in part and remanded, 999 F.3d 1247 (11th Cir. 2021).

### 8.    The Objections By Class Members

As addressed above, the only objection to the Plaintiffs' Motion for Attorney's Fees is rooted in the Ponzio Objectors' assertion that the Settlement Agreement is an improper coupon settlement.  See Ponzio Suppl. at 29.  Because this Court has found that the Settlement Agreement is not an improper coupon settlement, the objections as to the requested attorney's fees are inconsequential.

### 9.    The Risks Undertaken by Class Counsel

Given the time and effort required to litigate this case, and the previously discussed difficulty and uncertainty in obtaining a successful result, Class Counsel undertook an extraordinary litigation risk of nonpayment.

The Court finds that all of the Camden I factors support the requested attorneys' fee of $4,750,000, which shall be paid out of the Settlement Fund.

### 10.    A Lodestar Cross-Check Supports the Requested Fee

Although a lodestar "cross-check" is not required, it may be used "to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee." In re Home Depot Inc., 931 F.3d 1065, 1091, n.25 (11th Cir. 2019).  Rates greater than Class Counsel's hourly rates recently have been approved in other class action litigation in this district.  See Memorandum and Order, Henderson v. Emory Univ., No. 16-CV-2920-CAP (N.D. Ga. Nov. 4, 2020) [ECF 236] at 5. Class Counsel's reasonable hourly rates are as follows: for partner attorneys with over 30 years of experience, $894 per hour; for partner attorneys with 11-30 years of experience, $742 per hour; for partner attorneys and associate attorneys with 8-10 years of experience, $658 per hour; for attorneys with less than 8 years of experience, $455 per hour; and for Paralegals, $202 per hour.  See id. (approving higher rates for attorneys and paralegals with fewer years of experience).

Using these rates, multiplied by the number of hours expended in this case, which the Court finds is reasonable, the lodestar would be $3,417,064.60, creating a multiplier of just 1.39—only minimally above a straight hourly rate without accounting for the additional risk of a contingency fee. This is well within the range of multipliers approved by courts in this circuit. Columbus Drywall & Insulation, Inc. v. Masco Corp., No. 04-CV-3066-JEC, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008) (approving fee with lodestar multiplier between 2 and 3); Ingram, 200 F.R.D. at 696 (noting that courts have approved lodestar multipliers greater than five); Cox v. Cmty. Loans of Am., Inc., No. 11-177-CDL, 2016 WL 9130979, at *3 (M.D. Ga. Oct. 6, 2016) (lodestar multipliers "in large and complicated class actions range from 2.26 to 4.5 while three appears to be the average[.]"); see also Davis v. Locke, 936 F.2d 1208, 1215 (11th Cir. 1991) (affirming district court's enhancement of lodestar by a multiplier of 1.6 to compensate, among other things, for the risk associated with a contingency fee).

## C.   Expenses of Litigation

Under Rule 23(h) of the Federal Rules of Civil Procedure, a trial court may award nontaxable costs that are authorized by law or the parties' agreement. FED. R. CIV. P. 23(h). Class Counsel have submitted evidence in support of their request for reimbursement of $75,671.38. Garrison Decl. II ¶ 13 & Ex. A. The

Settlement Agreement provides that expenses would not exceed $100,000.

Settlement Agreement § 5.3. The Court finds that these expenses are reasonable

and necessarily incurred on behalf of the Class, and shall be paid by Defendants.

## D.     Class Representative Service Awards

The Settlement Agreement provides for the payment in an amount not to

exceed $30,000 (or a maximum of $5,000 for each of the six Class

Representatives) in this case, to be paid by Defendants. Settlement Agreement

§§ 1.10, 5.2.

Prior to September 17, 2020, courts in this circuit routinely approved

incentive awards to compensate class representatives for the services they provide

and the risks they incur on behalf of the Class. See, e.g., Ingram, 200 F.R.D. at

695-96. On that date, the United States Court of Appeals for the Eleventh Circuit

decided Johnson v. NPAS Sols., 975 F.3d 1244 (11th Cir. 2020),[17] in which the

court held that "[a] plaintiff suing on behalf of a class . . . cannot be paid a salary

or be reimbursed for his personal expenses." Id. at 1257. In Johnson, the Eleventh

---

[17] A petition for en banc review is pending in NPAS Solutions, and a judge of the Eleventh Circuit has withheld issuance of the mandate. Order, Johnson v. NPAS Sols., No. 18-12344 (entered for the court Nov. 9, 2020) (withholding issuance of the mandate in the appeal); Pet. for Reh'g or for Reh'g En Banc, Johnson v. NPAS Sols., No. 18-12344 (filed Oct. 22, 2020).

Circuit was presented with a class action settlement arising out of alleged

violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, that

included an incentive payment to the class representative. After reviewing the

Nineteenth Century precedents of Trustees v. Greenough, 105 U.S. 527 (1882),

and Cent. R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885), the court found that

these two cases "prohibit the type of incentive award that the district court

approved here—one that compensates a class representative for his time and

rewards him for bringing a lawsuit." NPAS Sols., 975 F.3d at 1260.

Class Counsel acknowledges the precedent of NPAS Solutions, and requests

that the Court deny the service awards without prejudice and retain jurisdiction for

the limited purpose of "revisiting" this issue if NPAS Solutions is reversed. Pls.'

Mot. for Att'ys' Fees at 24-25; see also In re Equifax Inc. Customer Data Sec.

Breach Litig., 999 F.3d 1247, 1281-82 (11th Cir. 2021) (vacating incentive awards

made by the district court prior to the opinion in NPAS Solutions). The Court

finds this appropriate, given that the mandate in NPAS Solutions has been withheld

and there still is a pending petition for en banc review. See Sabal Trail

Transmission, LLC v. Lasseter, 823 F. App'x 914, 918 (11th Cir. 2020) (quoting

Flagship Marine Svcs., Inc. v. Belcher Towing Co., 23 F.3d 341, 342 (11th Cir.

1994) ("Until a mandate issues, an appellate judgment is not final; the decision

reached in the opinion may be revised by the panel, or reconsidered by the *en banc* court, or certiorari may be granted by the Supreme Court."); see also Fruitstone v. Spartan Race, Inc., No. 20-cv-20836-BLOOM/Louis, 2021 WL 2012362, at *13 (S.D. Fla. May 20, 2021) (disapproving service award but reserving jurisdiction to allow Class Counsel to renew the request should NPAS Solutions be reversed).

## VI.    RELEASES

Pursuant to, and as more fully described in Section 6 of the Settlement Agreement, upon entry of the Final Order and Judgment, the Releasing Parties shall be deemed to have fully and irrevocably released and forever discharged the Released Parties from the Released Claims.

## VII.   CONCLUSION

For the reasons set forth herein, the Court hereby enters the following Orders:

(1)    The Court **CERTIFIES** the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(3) and (e).

(2)    The Court **CONFIRMS** the appointment of W. Lewis Garrison, Jr., James F. McDonough, III, Taylor C. Bartlett, and Travis Lynch of Heninger Garrison Davis, LLC and Stephen Jackson of Jackson & Tucker, P.C. as Class Counsel, and the appointment of the Settlement

Class Representatives named in the Settlement Agreement.

(3)    The Court finds the class notice satisfied the requirements of Rule 23, due process, and all other legal requirements, and the Court **GRANTS** the Motion for Final Approval of the Settlement Agreement [Doc. 100].

(4)    The Court hereby **DISMISSES** this action **WITH PREJUDICE** as against to all Class Members and Defendants.

(5)    The Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Award of Attorney's Fees, Expenses, and Class Representative Service Awards [Doc. 92].  The Motion is **GRANTED** with respect to the award of attorneys' fees and expenses, and the Court **AWARDS** attorneys' fees of $4,750,000.00 and reimbursement of expenses of $75,671.38.  The Motion is **DENIED WITHOUT PREJUDICE** with respect to the request for an aggregate service award of $30,000.00 consisting of $5,000.00 to each Class Representative.  Plaintiffs' may renew such motion in the event the decision in Johnson v. NPAS Solutions, Inc., 975 F.3d 1244 (11th Cir. 2020), is overturned on en banc review or further appeal.

(6)     The Motion to Handle as Recall filed by Joshua Wensell and Cindy

Addis [Doc. 115] is **DENIED**.

**IT IS SO ORDERED** this 30th day of November, 2021.

_____
MARK H. COHEN
United States District Judge